HV-13 199

TRIAL COURT CAUSE NO: 380-81972-07
A REINDICTMENT OF NO: 380-82629-06

IN THE 380TH DISTRICT COURT
OF COLLIN COUNTY, TEXAS,
HONORABLE CHARLES SANDOVAL JUDGE PRESIDING

---

KOSOUL CHANTHAKOUMMANE                                    APPELLANT

**FILED IN
COURT OF CRIMINAL APPEALS**

VS.

FEB 26 2008

THE STATE OF TEXAS                                       APPELLEE

**Louise Pearson, Clerk**

---

APPEALED TO THE
COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS

---

ATTORNEY FOR APPELLANT:                    ATTORNEY FOR APPELLEE:
NAME:  C WAYNE HUFF                        NAME:    JOHN R ROACH
ADDRESS: P O BOX 2334                      ADDRESS: 2100 BLOOMDALE RD
         BOERNE   TX 78006-2334                     MCKINNEY TX 75069
TELEPHONE: (214)803-4127                   TELEPHONE:  (972) 548-4323
FAX NO: (830)230-5567                      FAX NO:     (972) 548-4388
SBOT NO: 10180600                          SBOT NO:    90001601

---

DELIVERED TO THE COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS
ON THE 13TH DAY OF FEBRUARY 2008

SIGNATURE OF CLERK: _Carolyn McCarley_
NAME OF CLERK: CAROLYN MCCARLEY
TITLE:  DEPUTY CLERK

---

APPELLATE COURT CAUSE NO. AP-75,794

FILED IN THE COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS

ON THE_____DAY OF_____20__.

_____,CLERK

BY_____,DEPUTY

NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 380th JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## NOTICE OF FILING OF BUSINESS RECORDS PURSUANT TO RULE 902 (10)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through its Assistant District Attorney, Gregory S.

Davis, and files this Notice of Filing of Business Records Pursuant to Rule 902 (10), Rules of

Criminal Evidence, and respectfully shows unto the Court the following:

I.

The State hereby files self-authenticated business records from the following persons or

entities more than fourteen (14) days prior to the commencement of trial:

1.     InTown Suites.

Respectfully submitted,

GREGORY S. DAVIS
First Assistant District Attorney
Collin County, Texas
Bar No. 05493550

400

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true copies of the foregoing instrument and business records were delivered via certified mail to opposing counsel on the 7th day of May, 2007.

_____
GREGORY S. DAVIS

380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 380TH DISTRICT |
| VS. | § | COURT OF |
| CHANTHAKOUMMANE,KOSOUL | § | COLLIN COUNTY, TEXAS |

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared the herein named affiant, who, being by me duly sworn, deposed as follows:

My name is _Mike Weinstein_ , I am the affiant herein and I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of _InTown Suites_ , hereinafter referred to as "Business". Attached hereto are _41_ pages of records from said Business. These said pages of records are kept by the said Business in the regular course of business, and it was in the regular course of business of the said Business for an employee or representative of the said Business, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of the act, event, condition, opinion, or diagnosis recorded, or reasonably soon thereafter. The records attached hereto are original or exact duplicates of the original.

_____
AFFIANT

SWORN TO AND SUBSCRIBED before me on the _1_ day of _MAY 2007_



_Darlene Shepherd_
Notary Public in and for

_COBB_ County, ~~Texas~~ _GEORGIA_
My Commission Expires _3-8-08_

402



# GUEST INFORMATION

| | |
|---|---|
| Date: 5/29/06 | Room Number: 245 |
| Primary Guest Name: Tiffany Katerndah | Telephone: (512) 576-9491 |
| Street Address: 1500 Crossing Place #119 | Make/Model Car: Acura / Itegra |
| City, State, Zip: Austin, TX, 78741 | License Plate #: 707MNJ |
| Company Name: | Drivers Lic. #: 19534925 |
| Company Address: | Date of Birth: 09/05/1989 |
| Company City: | Rate: 169.99 |

**What brings you to InTown Suites?**
- [ ] Apart. Search
- [X] Bus. Trav.
- [ ] Constr. Work
- [ ] Divorce
- [ ] Living at Pro
- [ ] Nightly
- [ ] Relocation
- [ ] Traveler/Vac.
- [ ] Waiting on Home

**How did you hear about us?**
- [ ] Flyer
- [ ] Flyer Other
- [ ] Internet
- [ ] News Paper
- [X] Referral
- [ ] Repeat Guest
- [ ] Sign
- [ ] Yellow Pages

## Hotel Rules

By signing this sheet, guest acknowledges receipt of the Guest Agreement on the Lodging Information Brochure, which if not adhered to, could result in removal of the guest from the property and forfeiture of deposit.

Primary Guest Signed: *Tiffany Kat*   Date: 05/29/06

Identification of Guest:
Type: TX Dc   Number: 19534925

## Additional Guest Authorization:

I request that _____ be added to my room as a registered guest. I understand I am solely responsible for all room charges and this does not release me of my obligations for payment. I further acknowledge that I will be responsible for ensuring my secondary guest adheres to all policies contained in the Guest Agreement on the Lodging Information Brochure. While the additional registered guest may make payments for room charges, the deposit refund will only be given to the primary registered guest. I understand that if I no longer want this person in my room, I must come to the office and sign this same form revoking my authorization.

Primary Guest Signed: _____   Date: _____

Primary Guest Revocation: _____   Date: _____

Additional Guest Signature: _____   Date: _____

## Identification of Additional Guest:

Type: _____   Number: _____      403



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 6/5/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | 5/29/06 | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | 5/29/06 | Phone | $20.00 | $0.00 | $50.00 |
| 121998 | 5/29/06 | Rm: 245 11/8 Weekly | $169.99 | $0.00 | $219.99 |
| 121999 | 5/29/06 | State Sales Tax | $10.20 | $0.00 | $230.19 |
| 122000 | 5/29/06 | City Sales Tax | $11.90 | $0.00 | $242.09 |
| 122001 | 5/29/06 | Credit Card Visa | $0.00 | $242.09 | $0.00 |
| | | | | **Balance:** | **$0.00** |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 5/29/06 3:43:44 PM | 9740 | VISA | katerndahl/tiffany/anne | XXXX XXXX XXXX 2630 | XX/X X | 144316 | $242.09 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: *Tiffany Kat*

**Folio Summary**

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $169.99 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $22.10 |
| Less Payments: | $242.09 |
| **Total Amount Due:** | **$0.00** |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property

404

occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 6/12/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | 5/29/06 | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | 5/29/06 | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | 5/29/06 | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | 5/29/06 | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 122584 | 6/3/06 | Credit Card Visa | $0.00 | $192.09 | ($192.09) |
| | | | | **Balance:** | **($192.09)** |

Credit Card Information

| ate/Time | Trans# | Type | Card Holder | Card Number | Exp. Auth Code | Amount |
|----------|--------|------|-------------|-------------|----------------|--------|
| /3/06 1:14:32 PM | 9802 | VISA | katerndahl/tiffany/anne | XXXX XXXX XXXX 2630 | XX/X 151822 X | $192.09 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

| Folio Summary | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $242.09 |
| Total Amount Due: | ($192.09) |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any

Page 1 of 2

**406**

personal property removed, and the room v . be rented to another party at Management's .venience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _Tiffany Katt_



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

| | |
|---|---|
| Guest Folio # 4536 | Room: 245 |
| Katerndahl, Tiffany A | Arrival: 5/29/06 |
| 13135 winding creek | Next Payment Due Date: 6/19/06 |
| SAN ANTONIO, TX 78231 | Clerk: todd |

| Trans # | Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 123417 | 6/10/06 | Credit Card Visa | $0.00 | $192.09 | ($192.09) |
| | | | | **Balance:** | **($192.09)** |

### Credit Card Information

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|---|---|---|---|---|---|---|---|
| 6/10/06 12:11:10 PM | 9879 | VISA | Tiffany A Katerndahl | XXXX XXXX XXXX 2630 | XX/X X | 140787 | $192.09 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

| Folio Summary | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $242.09 |
| **Total Amount Due:** | **($192.09)** |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any

408

personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableuse.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____

**409**



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 6/26/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 124360 | 6/17/06 | Credit Card Visa | $0.00 | $192.09 | ($192.09) |
| | | | | Balance: | ($192.09) |

### Credit Card Information

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 6/17/06 12:19:10 PM | 9966 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 121052 | $192.09 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: *Tiffany Katerndahl*

### Folio Summary

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $242.09 |
| Total Amount Due: | ($192.09) |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossession action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any

410

personal property removed, and the room will ue rented to another party at Management's cu. ⌐nience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____

411



# Intown Suites Carrollton
## 2661 Westgrove Drive
## Carrollton, TX 75006-2335
## 972-248-8330

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 7/3/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 125165 | 6/24/06 | Credit Card Visa | $0.00 | $192.09 | ($192.09) |
| | | | | Balance: | ($192.09) |

### Credit Card Information

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|---|---|---|---|---|---|---|---|
| 6/24/06 11:56:33 AM | 10036 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 145438 | $192.09 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: _Tiffany Katt_

### Folio Summary

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $242.09 |
| Total Amount Due: | ($192.09) |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any

412

personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _Tiffany Platt_



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

| Guest Folio # 4536 | Room: | 245 |
| Katerndahl, Tiffany A | Arrival: | 5/29/06 |
| 13135 winding creek | Next Payment Due Date: | 7/10/06 |
| SAN ANTONIO, TX 78231 | Clerk: | todd |

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 125720 | 6/29/06 | Expired Tax Refund | -$51.00 | $0.00 | ($51.00) |
| 125723 | 6/29/06 | Expired Tax Refund | -$59.50 | $0.00 | ($110.50) |
| 126158 | 7/1/06 | Credit Card Visa | $0.00 | $59.49 | ($169.99) |
| | | | | **Balance:** | **($169.99)** |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 7/1/06 4:34:18 PM | 10124 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 143811 | $59.49 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: *Tiffany A.C.*

| Folio Summary | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | ($110.50) |
| Less Payments: | $109.49 |
| **Total Amount Due:** | **($169.99)** |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on

414

premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableuse.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _Tiffany Tate_



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 7/17/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 126903 | 7/8/06 | Credit Card Visa | $0.00 | $169.99 | ($169.99) |
| | | | | Balance: | ($169.99) |

### Credit Card Information

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 7/8/06 1:50:19 PM | 10208 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 154574 | $169.99 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: _Ta Katerndale_

**Folio Summary**

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $219.99 |
| Total Amount Due: | ($169.99) |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any

**416**

personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html,
http://www.business.att.com/policy/, and
http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here:
http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____

417



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 7/17/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 127158 | 7/11/06 | Wireless Deposit | $80.00 | $0.00 | $80.00 |
| 127159 | 7/11/06 | Credit Card Visa | $0.00 | $80.00 | $0.00 |

**Balance:** **$0.00**

### Credit Card Information

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 7/11/06 6:04:21 PM | 10242 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 140412 | $80.00 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

**Folio Summary**

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $110.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $130.00 |
| Total Amount Due: | $0.00 |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property

418

occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableuse.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____

419



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 7/24/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 127158 | 7/11/06 | Wireless Deposit | $80.00 | $0.00 | $80.00 |
| 127161 | 7/11/06 | Sec. Dep. Brought Forward | $0.00 | $80.00 | $0.00 |
| 127668 | 7/15/06 | Credit Card Visa | $0.00 | $169.99 | ($169.99) |
| | | | | **Balance:** | **($169.99)** |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 7/15/06 2:49:04 PM | 10303 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 144062 | $169.99 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

**Folio Summary**

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $110.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $299.99 |
| Total Amount Due: | ($169.99) |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on

420

premises. Guest shall indemnify Manage    .t against all liability arising during the renta    m from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____

421



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

| | |
|---|---|
| Guest Folio # 4536 | **Room:** 245 |
| Katerndahl, Tiffany A | **Arrival:** 5/29/06 |
| 13135 winding creek | **Next Payment Due Date:** 7/31/06 |
| SAN ANTONIO, TX 78231 | **Clerk:** todd |

| Trans # | Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 127158 | | Wireless Deposit | $80.00 | $0.00 | $80.00 |
| 127161 | | Sec. Dep. Brought Forward | $0.00 | $80.00 | $0.00 |
| 128607 | 7/22/06 | Credit Card Visa | $0.00 | $169.99 | ($169.99) |
| | | | | **Balance:** | ($169.99) |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|---|---|---|---|---|---|---|---|
| 7/22/06 6:19:40 PM | 10386 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 191460 | $169.99 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: _Tiffany K A_

| Folio Summary | |
|---|---|
| **Previous Balance:** | $0.00 |
| **Room Charges:** | $0.00 |
| **Other Charges/Credits:** | $110.00 |
| **Phone Charges:** | $20.00 |
| **Tax:** | $0.00 |
| **Less Payments:** | $299.99 |
| **Total Amount Due:** | ($169.99) |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on

422

premises. Guest shall indemnify Manage....nt against all liability arising during the renta. .erm from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableuse.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature:

**423**



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 8/7/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 127158 | | Wireless Deposit | $80.00 | $0.00 | $80.00 |
| 127161 | | Sec. Dep. Brought Forward | $0.00 | $80.00 | $0.00 |
| 129198 | 7/29/06 | Credit Card Visa | $0.00 | $169.99 | ($169.99) |
| | | | | Balance: | ($169.99) |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. Auth Code | Amount |
|---|---|---|---|---|---|---|
| 7/29/06 12:11:21 PM | 10453 | VISA | katerndahl/tiffany/anne | XXXX XXXX XXXX 2630 | XX/X 140682 X | $169.99 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: *Tiffany Kat*

**Folio Summary**

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $110.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $299.99 |
| Total Amount Due: | ($169.99) |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on

424

premises. Guest shall indemnify Manage........nt against all liability arising during the renta.....m from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _Tiffany Tab_

425



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

**Room:** 245
**Arrival:** 5/29/06
**Next Payment Due Date:** 8/14/06
**Clerk:** phyllis

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 127158 | | Wireless Deposit | $80.00 | $0.00 | $80.00 |
| 127161 | | Sec. Dep. Brought Forward | $0.00 | $80.00 | $0.00 |
| 130074 | 8/5/06 | Credit Card Master Card | $0.00 | $169.99 | ($169.99) |
| | | | | **Balance:** | **($169.99)** |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 8/5/06 2:27:18 PM | 10540 | MasterCard | katerndahl/tiffany a | XXXX XXXX XXXX 9120 | XX/XXX | 025692 | $169.99 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: _____

**Folio Summary**

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $110.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $299.99 |
| **Total Amount Due:** | **($169.99)** |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on

426

premises. Guest shall indemnify Manage᷈ ᷈nt against all liability arising during the renta᷈ ᷈rm from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableuse.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____

**427**



2002.2.0023

## Intown Suites Carrollton
### 2661 Westgrove Drive
### Carrollton, TX 75006-2335
### 972-248-8330

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 8/9/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 127158 | | Wireless Deposit | $80.00 | $0.00 | $80.00 |
| 127161 | | Sec. Dep. Brought Forward | $0.00 | $80.00 | $0.00 |
| 130462 | 8/9/06 | Wireless Deposit Refund | -$80.00 | $0.00 | ($80.00) |
| 130463 | 8/9/06 | Credit Card Visa | $0.00 | -$80.00 | $0.00 |
| | | | | **Balance:** | **$0.00** |

### Credit Card Information

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 8/9/06 6:51:14 PM | 10587 | VISA | katerndahl/tiffany/anne | XXXX XXXX XXXX 2630 | XX/X X | 000000 | ($80.00) |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

| Folio Summary | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $50.00 |
| Total Amount Due: | $0.00 |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the

428

prescribed checkout time. Guest agrees th.... Managemen is not responsible for damage o. ..eft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableuse.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here:
http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____

429



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 8/21/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 130590 | 8/10/06 | Credit Card Visa | $0.00 | $169.99 | ($169.99) |
| | | | | **Balance:** | **($169.99)** |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 8/10/06 5:38:18 PM | 10596 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 193454 | $169.99 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

| Folio Summary | |
|---------------|--|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $219.99 |
| Total Amount Due: | ($169.99) |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any

430

personal property removed, and the room. ..ll be rented to another party at Management ..onvenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____



**Intown Suites Carrollton**
**2661 Westgrove Drive**
**Carrollton, TX 75006-2335**
**972-248-8330**

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: .245
Arrival: 5/29/06
Next Payment Due Date: 8/23/06
Clerk: phyllis

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 131685 | 8/19/06 | Credit Card Visa | $0.00 | $79.98 | ($79.98) |
| | | | | Balance: | ($79.98) |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|-----------|--------|------|-------------|-------------|------|-----------|--------|
| 8/19/06 1:56:48 PM | 10707 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 165138 | .$79.98 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: _____

**Folio Summary**

| | |
|---|---:|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $0.00 |
| Less Payments: | $129.98 |
| **Total Amount Due:** | **($79.98)** |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any

personal property removed, and the room ...l be rented to another party at Management'. ...nvenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableuse.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature: _____



# Intown Suites Carrollton
## 2661 Westgrove Drive
## Carrollton, TX 75006-2335
## 972-248-8330

## Room Agreement

Guest Folio # 4536
Katerndahl, Tiffany A
13135 winding creek
SAN ANTONIO, TX 78231

Room: 245
Arrival: 5/29/06
Next Payment Due Date: 8/23/06
Clerk: todd

| Trans # | Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 121996 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 121997 | | Phone | $20.00 | $0.00 | $50.00 |
| 122003 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 122005 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 132018 | 8/23/06 | Room Deposit Refund | -$30.00 | $0.00 | ($30.00) |
| 132019 | 8/23/06 | Phone Refund | -$20.00 | $0.00 | ($50.00) |
| 132020 | 8/23/06 | Credit Card Visa Refund | $0.00 | -$50.00 | $0.00 |
| | | | | Balance: | $0.00 |

**Credit Card Information**

| Date/Time | Trans# | Type | Card Holder | Card Number | Exp. | Auth Code | Amount |
|---|---|---|---|---|---|---|---|
| 8/23/06 12:16:59 PM | 10736 | VISA | KATERNDAHL/TIFFANY /ANNE | XXXX XXXX XXXX 2630 | XX/X X | 000000 | ($50.00) |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

**Folio Summary**

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $0.00 |
| Other Charges/Credits: | $0.00 |
| Phone Charges: | $0.00 |
| Tax: | $0.00 |
| Less Payments: | $0.00 |
| Total Amount Due: | $0.00 |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Carrollton or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 fee if guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on

434

premises. Guest shall indemnify Manage_ _t against all liability arising during the renta. _m from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the Guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus e.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp


Guest Signature:_____

**435**



Date: 9-15-06          Room: 213

Guest Name: SOPHA CHANTHAKOUM-MANE          Company Name:
(Check for additional guest)

Mail Address: 2530 FORT ST.          Company Address:

City, State, Zip: CHAR, NC 2820          Company City:

Make/Car License: FORD EXPLORER          Telephone: (214) 783-9928
Driver's Lic. No.: 28516601          Date of Birth: 2/19/79

Rate: 169.99 + TAX

DSO-MLN

**What brings you to Intown Suites?**
☐ Apart. Search   ☐ Bus. Trip   ☐ Constr. Work   ☐ Divorce   ☐ Living at Prop.
X ☐ Nightly   ☐ Relocation   ☐ Traveler/Vac.   ☐ Waiting on Home

**How did you hear about us?**
X ☐ Flyer   ☐ Flyer Other   ☐ Internet   ☐ News Paper
☐ Referral   ☐ Repeat Guest   ☐ Sign   ☐ Yellow Pages

*(handwritten diagonal: CHO 9/16/06 to get Cash Refund)*

## Hotel Rules

By signing this sheet, guest acknowledges receipt of hotel rules on the Lodging Policy Form, which if broken, will lead to immediate removal of the guest from the property.

Primary Guest Signed: _____   Date: 09/15/06
Identification of Guest:
Type: _____   Number: _____

## Additional Guest Authorization:

I request that X JASON HERRIN be entered as a guest. By requesting this guest I understand this does not release me of my obligations for payment and regarding the conduct of myself or the guest. Payments for room charges can be made by the additional registered guest but the deposit can only be received by me. I understand that if I no longer want this person in my room, I must come to the office and sign this same form rescinding my request.

Primary Guest Signed: _____   Date: 09/15/06

Primary Guest Rescinded: _____   Date: _____

Additional Guest Signature: _____   Date: _____

☐ Identification of additional guest:

Type: _____   Number: 436

Revised – 9/23/03          W:\FORMS\ITS1009.DOC



**Intown Suites Trinity Mills**
1240 West Trinity Mills Rd.
Carrollton, TX 75006
972-323-0904

## Room Agreement

Guest Folio # 3612
Chanthakoummane, Sopha
2530 ft st
CHARLOTTE, NC 28205

Room: 213
Arrival: 9/15/06
Next Payment Due Date: 9/22/06
Clerk: michael

| Trans # | Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 14643 | 9/15/06 | Room Deposit | $30.00 | $0.00 | $30.00 |
| 14644 | 9/15/06 | Phone | $20.00 | $0.00 | $50.00 |
| 114645 | 9/15/06 | Rm: 213 4/19 Weekly | $169.99 | $0.00 | $219.99 |
| 14646 | 9/15/06 | State Sales Tax | $10.20 | $0.00 | $230.19 |
| 14647 | 9/15/06 | City Sales Tax | $11.90 | $0.00 | $242.09 |
| 114650 | 9/15/06 | Cash | $0.00 | $242.09 | $0.00 |
| | | | | Balance: | $0.00 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

```
Folio Summary

        Previous Balance:        $0.00
          Room Charges:       $169.99
 Other Charges/Credits:        $30.00
        Phone Charges:         $20.00
                   Tax:        $22.10
        Less Payments:        $242.09

      Total Amount Due:         $0.00
```

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Trinity Mills or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 late checkout charge if the guest does not vacate room by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no

437"

possessory action need be taken and that if pa ent has not been received in full by 12:01 p. n the due date, occupant's room l be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest rees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, d other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all est's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any ovisions o. this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the llateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time · rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly en if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The nedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and ler applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the emises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate : room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

est acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest nowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also ees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a w period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been noved from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon ing the guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that nue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the 's of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall tinue in full force and effect. I have read, understand and agree to the above.

lanagement provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet vice providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at p://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, o://www.business.att.com/policy/, and o://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus tm."

est also agrees to comply with the Intown Suites Internet Use Policy which can be found here: p://www.intownsuites.com/InTown_InternetPolicy.asp

est Signature

438



...all liability arising during the rental term....
Guest a ...owledges and agrees that no
...due date, occupant's room
Guest

**Intown Suites Trinity Mills**
1240 West Trinity Mills Rd.
Carrollton, TX 75006
972-323-0904

2002.2.0023

## Room Agreement

uest Folio # 3612
...anthakoummane, Sopha
30 ft st
IARLOTTE, NC 28205
ra Guest: jason herrin

Room: 213
Arrival: 9/15/06
Next Payment Due Date: 10/6/06
Clerk: michael

| # | Date | Description | Charges | Payments | Balance |
|---|------|-------------|---------|----------|---------|
| 3 | 9/15/06 | Room Deposit | | | |
| | 9/15/06 | Phone | $30.00 | $0.00 | $30.00 |
| | 9/15/06 | Sec. Dep. Brought Forward | $20.00 | $0.00 | $50.00 |
| | 9/22/06 | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| | 9/22/06 | Rm: 213 4/19 Weekly | $0.00 | $20.00 | $0.00 |
| | 9/22/06 | State Sales Tax | $169.99 | $0.00 | $169.99 |
| | 9/22/06 | City Sales Tax | $10.20 | $0.00 | $180.19 |
| | | Cash | $11.90 | $0.00 | $192.09 |
| | | | $0.00 | $192.09 | $0.00 |

Balance: $0.00

acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth
...lember's agreement with the issuer.

rs Signature:

**Folio Summary**

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $169.99 |
| Other Charges/Credits: | $30.00 |
| Phone Charges: | $20.00 |
| Tax: | $22.10 |
| Less Payments: | $242.09 |
| Total Amount Due: | $0.00 |

occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not
. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a
hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated
n. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the
sit does not cover the damages, Management, (Management is defined herafter as Intown Suites Trinity Mills or Intown
ement Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do
within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened
here is a $25 late fee if a guest renews after checkout time. There is a $50 late checkout charge if the guest does not vacate
rescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property

439



**Intown Suites Trinity Mills**
**1240 West Trinity Mills Rd.**
**Carrollton, TX 75006**
**972-323-0904**

## Room Agreement

| | |
|---|---|
| Guest Folio # 3612 | **Room:** 213 |
| Chanthakoummane, Sopha | **Arrival:** 9/15/06 |
| 2530 ft st | **Next Payment Due Date:** 10/6/06 |
| CHARLOTTE, NC 28205 | **Clerk:** michael |
| Extra Guest: jason herrin | |

| Trans # | Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 114643 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 114644 | | Phone | $20.00 | $0.00 | $50.00 |
| 114654 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 114656 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 116369 | 9/29/06 | Rm: 213 4/19 Weekly | $169.99 | $0.00 | $169.99 |
| 116370 | 9/29/06 | State Sales Tax | $10.20 | $0.00 | $180.19 |
| 116371 | 9/29/06 | City Sales Tax | $11.90 | $0.00 | $192.09 |
| 116384 | 9/29/06 | Late Charge | $25.00 | $0.00 | $217.09 |
| 116450 | 9/29/06 | Cash | $0.00 | $217.09 | $0.00 |
| | | | | **Balance:** | $0.00 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature: _____

| Folio Summary | |
|---|---|
| **Previous Balance:** | $0.00 |
| **Room Charges:** | $169.99 |
| **Other Charges/Credits:** | $55.00 |
| **Phone Charges:** | $20.00 |
| **Tax:** | $22.10 |
| **Less Payments:** | $267.09 |
| **Total Amount Due:** | $0.00 |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance. Room charges will not be pro-rated. A damage deposit of $50.00 is charged. The damage deposit is refundable to the Guest named above only if: a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period. Any and all damages to the room will be deducted from the damage deposit. If the damage deposit does not cover the damages, Management, (Management is defined herafter as Intown Suites Trinity Mills or Intown Suites Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do not collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened is $10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 late checkout charge if the guest does not vacate

440

room by the prescribed checkout time. G    . agrees that Management is not responsible      damage or theft of any personal property brought on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or property occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no dispossessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room will be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest agrees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods, and other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all Guest's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any provisions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the Collateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time any rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available to Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly given if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The remedies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and under applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the premises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate the room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

Guest acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination of Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest acknowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also agrees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a new period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been removed from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves the right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon giving the guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that venue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the laws of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect. I have read, understand and agree to the above.

"Management provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation in conjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet service providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at http://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html, http://www.business.att.com/policy/, and http://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableuse.htm."

Guest also agrees to comply with the Intown Suites Internet Use Policy which can be found here: http://www.intownsuites.com/InTown_InternetPolicy.asp

Guest Signature:_____

441

2002.2.0023



## Intown Suites Trinity Mills
## 1240 West Trinity Mills Rd.
## Carrollton, TX 75006
## 972-323-0904

## Room Agreement

Guest Folio # 3612
Chanthakoummane, Sopha
2530 ft st
CHARLOTTE, NC 28205
Extra Guest: jason herrin

Room: 213
Arrival: 9/15/06
Next Payment Due Date: 10/13/06
Clerk: john

| Trans # | Date | Description | Charges | Payments | Balance |
|---------|------|-------------|---------|----------|---------|
| 114643 | | Room Deposit | $30.00 | $0.00 | $30.00 |
| 114644 | | Phone | $20.00 | $0.00 | $50.00 |
| 114654 | | Sec. Dep. Brought Forward | $0.00 | $30.00 | $20.00 |
| 114656 | | Sec. Dep. Brought Forward | $0.00 | $20.00 | $0.00 |
| 117203 | 10/6/06 | Rm: 213 10/1 Special Daily | $39.99 | $0.00 | $39.99 |
| 117204 | 10/6/06 | State Sales Tax | $2.40 | $0.00 | $42.39 |
| 117205 | 10/6/06 | City Sales Tax | $2.80 | $0.00 | $45.19 |
| 117206 | 10/6/06 | Cash | $0.00 | $45.19 | $0.00 |
| 117299 | 10/6/06 | Room Deposit  Refund | -$30.00 | $0.00 | ($30.00) |
| 117300 | 10/6/06 | Cash Refund | $0.00 | -$30.00 | $0.00 |
| 117301 | 10/6/06 | Phone Refund | -$20.00 | $0.00 | ($20.00) |
| 117302 | 10/6/06 | Cash Refund | $0.00 | -$20.00 | $0.00 |
| | | | | Balance: | $0.00 |

Cardmember acknowledges receipt of goods and/or services in the amount of the total shown hereon and agrees to perform the obligations set forth by the Cardmember's agreement with the issuer.

Card Holders Signature:

### Folio Summary

| | |
|---|---|
| Previous Balance: | $0.00 |
| Room Charges: | $39.99 |
| Other Charges/Credits: | $0.00 |
| Phone Charges: | $0.00 |
| Tax: | $5.20 |
| Less Payments: | $45.19 |
| Total Amount Due: | $0.00 |

Maximum occupancy for each suite is two adults and one child. The room charges will be payable in advance.  Room charges will not be pro-rated.  A damage deposit of $50.00 is charged.  The damage deposit is refundable to the Guest named above only if:  a twenty-four hour written notice is given, the room is left in a clean rentable condition, and the keys are returned and the room vacated by 12:01 p.m. on the last day of the rental period.  Any and all damages to the room will be deducted from the damage deposit.  If the

442

iage deposit does not cover the damages, Man   ment, (Management is defined herafter as In   n Suites Trinity Mills or Intown
.es Management Inc.) reserves the right to, and will, bring charges against the Guest. If you are entitled to a deposit refund and do
collect it within ninety days of check out, it is forfeited. The charge for a lost key is $10.00. The charge to have your door opened
10.00. There is a $25 late fee if a guest renews after checkout time. There is a $50 late checkout charge if the guest does not vacate
m by the prescribed checkout time. Guest agrees that Management is not responsible for damage or theft of any personal property
ught on premises. Guest shall indemnify Management against all liability arising during the rental term from injury to person or
perty occasioned wholly or in part by any act or omission of Guest or it's guest. Guest acknowledges and agrees that no
possessory action need be taken and that if payment has not been received in full by 12:01 p.m. on the due date, occupant's room
. be cleaned, any personal property removed, and the room will be rented to another party at Management's convenience. Guest
ees that Management shall have a lien upon, security title to and a security in all furniture, machinery, equipment, consumer goods,
other personal property of the Guest brought upon Managements property (the "Collateral") to secure the performance of all
est's obligations hereunder if Guest fails to pay room or other charges due hereunder, or otherwise defaults with respect to any
visions of this Room Agreement. Guest shall not without Managements permission remove, sell, or otherwise dispose of any of the
lateral and Management shall have the right to take possession of the Collateral, and Management may exercise from time to time
 rights and remedies available to it under the Uniform Commercial Code as in effect at that time in this state or otherwise available
Management. Any notice of intended disposition of Collateral required by applicable law shall be deemed reasonably and properly
en if delivered personally to Guest or if mailed by first class mail, postage prepaid, to the Guest's address set forth above. The
edies provided for herein shall be in addition to all other rights and remedies of Management under this Room Agreement and
er applicable law. Guest hereby authorizes Managment to disconnect the utilities and to remove the Guests' property from the
mises in the event Management terminates Guest's room rental for any reason. In the event Guest fails or refuses to promptly vacate
room, Guest shall be responsible for any and all expenses including attorney's fees and Court cost incurred in effecting the eviction.

est acknowledges receipt of the hotels rules. There shall be no refund of Guest room charges or deposit in the event of termination
Guest's room rental for any violation of this Room Agreement or the hotel rules. By signing this Room Agreement, Guest
nowledges and agrees that this rental does not establish a landlord tenant relationship or a permanent residence. The Guest also
ees that they are checking out at the end of each rental period and will be checking in only if Management accepts payment for a
y period. The term of the Guest's stay is one period regardless of whether or not the Guest's personal belongings have been
oved from the room and the Guest does not have the right to use or possess the room for 30 days or longer. Management reserves
 right to enter and inspect a room at any time. Management reserves the right to require Guest to move rooms for any reason upon
ing the guest 48 hours notice. This agreement shall be governed in accordance with the Laws of Texas. Guest hereby consents that
ue with respect to any actions or proceeding arising out of this Agreement or Guest's occupation of the premises shall lie in the
s of Texas. If any provision of this Agreement shall be declared invalid or unenforceable, the remainder of this Agreement shall
tinue in full force and effect. I have read, understand and agree to the above.

anagement provides Internet access for its guests through Sprint, ACC (a division of AT&T), Broadwing, or BellSouth Corporation
onjunction with UUNET Technologies, Inc. Accordingly, Guest agrees to comply with the acceptable use policies of these Internet
vice providers as is applicable to the hotel where guest is staying. The current complete policies are available for review at
)://www.biz.bellsouth.net/legal/acceptable_use_policy.asp, http://www.sprint.net/policy/index.html,
.://www.business.att.com/policy/, and
.://www.broadwing.com/prodserv/midlarge/midlarge_services/midlarge_services_internet/midlarge_services_internet_acceptableus
tm."

est also agrees to comply with the Intown Suites Internet Use Policy which can be found here:
)://www.intownsuites.com/InTown_InternetPolicy.asp

est Signature

NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 380th JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## NOTICE OF FILING OF BUSINESS RECORDS PURSUANT TO RULE 902 (10)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through its Assistant District Attorney, Gregory S. Davis, and files this Notice of Filing of Business Records Pursuant to Rule 902 (10), Rules of Criminal Evidence, and respectfully shows unto the Court the following:

I.

The State hereby files self-authenticated business records from the following persons or entities more than fourteen (14) days prior to the commencement of trial:

1. UNC Charlotte.
2. Texas Instruments.

Respectfully submitted,

GREGORY S. DAVIS
First Assistant District Attorney
Collin County, Texas
Bar No. 05493550

444

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true copies of the foregoing instrument and business records were delivered via certified mail to opposing counsel on the 8th day of May, 2007.

_____
GREGORY S. DAVIS

380-82629-06

| THE STATE OF TEXAS | § | IN THE 380TH DISTRICT |
|---|---|---|
| VS. | § | COURT OF |
| CHANTHAKOUMMANE, KOSOUL | § | COLLIN COUNTY, TEXAS |

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared the herein named affiant, who, being by me duly sworn, deposed as follows:

My name is _Richard L. Yount_, I am the affiant herein and I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of _UNC Charlotte_, hereinafter referred to as "Business". Attached hereto are __/__ pages of records from said Business. These said pages of records are kept by the said Business in the regular course of business, and it was in the regular course of business of the said Business for an employee or representative of the said Business, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of the act, event, condition, opinion, or diagnosis recorded, or reasonably soon thereafter. The records attached hereto are original or exact duplicates of the original.

_____
AFFIANT

SWORN TO AND SUBSCRIBED before me on the _1_ day of _May_, 2007.

_____
Notary Public in and for

_Mecklenburg_ County, ~~Texas~~ NC
My Commission Expires _6 January 2012_

446

The University of North Carolina at Charlotte has no records of a student by the name of Chan Lee or Kosoul Chanthakoummane.

| THE STATE OF TEXAS | § | IN THE 380TH DISTRICT |
|---|---|---|
| | § | |
| VS. | § | COURT OF |
| | § | |
| CHANTHAKOUMMANE, KOSOUL | § | COLLIN COUNTY, TEXAS |

## AFFIDAVIT OF NO RECORDS

RECORDS PERTAINING TO:    Chanthakoummane,Kosoul.

Before me, the undersigned authority, personally appeared _MAE JENKINS_ who by me being duly sworn, deposed as follows:

I, the undersigned, am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated;

I am CUSTODIAN OF EMPLOYMENT RECORDS FOR: TEXAS INSTRUMENTS INCORPORATED

Our regulations and/or our official procedures state that our employment records are kept in the regular course of business at the office of the above. It is in the regular course of business, at the office of the above for an employee or representative, or a doctor, with personal knowledge of the act, event or condition, opinion, or diagnosis recorded to make memorandum or record or to transmit information to be included in such memorandum or record; and our memorandum or records are made at or near the time of the act, event or condition recorded or reasonably soon thereafter.

**After a thorough and diligent search of our files with the information provided we cannot locate any records on the above named individual/subject.**

_Mae Jenkins_
**AFFIANT**

SUBSCRIBED AND SWORN TO BEFORE ME this the ___30th___ day of ___April___ 20_7_.

_Patricia Currey_
Notary Public in and for
The State of TX

PATRICIA CURREY
Notary Public
STATE OF TEXAS
My Comm. Exp. 07/05/2010

My commission expires _7-5-2010_

448

 **TEXAS INSTRUMENTS**

Susie Collins, Paralegal Manager
TI Law Department
Texas Instruments Incorporated
P.O. Box 655474, MS 3999
Dallas, Texas 75265
972-917-4153

May 2, 2007

VIA: Federal Express

K. D. Adley, Investigator
District Attorney's Office
Collin County Courthouse
210 S. McDonald, Suite 324
McKinney, Texas 75069

      Re: *The State of Texas v. Chanthakoummane, Kosoul*
             *Cause No. 380-82629-06*

Dear Investigator Adley:

    Enclosed please find the response of Texas Instruments Incorporated ("TI") to the subpoena issued for the employment records of Kosoul Chanthakoummane. Said response is an Affidavit of No Records. Should you have any additional questions, please do not hesitate to call me at (972) 917-4153.

               Very truly yours,

               Susie Collins
               Paralegal Manager
               TI Law Department

449

CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN DISTRICT COURT |
| VS. | § | 380TH JUDICIAL DISTRICT |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## APPLICATION FOR SUBPOENA DUCES TECUM

TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the Defendant by and through his Attorney and makes application for the issuance of a subpoena duces tecum for the following named entities to compel the attendance of their representatives as witness for the Defendant; exact location and vocation of said witnesses (where known), appears as follows, to-wit:

WITNESS NAME:

1. **SOUTHWESTERN INSTITUTE OF FORENSIC SCIENCES AT DALLAS**
   5230 Medical Center Drive
   Dallas, TX 75235



   DUCES TECUM –
   **All documents relating to the homicide investigation in the death of Sarah Ann Walker, including the following:**
   a. Chain of Custody documents
   b. All lab notes and bench notes
   c. Copies of electropherograms or gel images
   d. Data base information
   e. Protocols used for case analysis
   f. Copies of photographs of evidence
   g. Interpretation guidelines
   h. Copy of all reports issued
   i. CV of analyst performing testing
   j. Quantatation results and images
   k. Copies of all law enforcement laboratory evidence submission report forms

2. **DRUG ENFORCEMENT AGENCY**
   Dallas, Texas

   **All laboratory submission report forms from any law enforcement agency relating to the homicide investigation in the death of Sarah Ann Walker which were conducted either by other law enforcement agencies or conducted by the DEA**

450

10

Said persons are witnesses on behalf of the Defendant in the above entitled and numbered cause, and the testimony of said witness is material for the Defendant on trial in said case.

Applicant prays that said the subpoena be made returnable instanter in the 380th Judicial District Courtroom, 200 S. McDonald Street, McKinney, Texas. In the alternative, the documents subpoenaed duces tecum can be delivered to the Law Office of Steven Richard Miears at 211 North Main, Bonham, Texas instanter.

KEITH GORE
Attorney for Defendant
TX BAR NO. 24002164

FILED: _____

HANNAH KUNKLE
DISTRICT CLERK

By:_____
      Deputy Clerk

451

NO. 380-82629-06

| THE STATE OF TEXAS | § | IN THE 380th JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## STATE'S CHALLENGE TO EXPERT WITNESSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas by and through her Assistant District Attorney,

Gregory S. Davis, and pursuant to the Court's Pretrial Scheduling and Discovery Order (IV, ¶4)

the State hereby files its Challenge to Expert Witnesses, and respectfully shows:

I.

The Defendant has designated Gilda Kessner as an expert witness in this case. In previous

death penalty cases Ms. Kessner has testified as a defense expert on future dangerousness using an

"actuarial" approach. The State assumes that Ms. Kessner will testify in the same capacity in this case,

using the same "actuarial" approach. This approach has been shown to be unreliable and misleading.

The State wishes to examine Ms. Kessner in a Daubert/Kelly hearing on July 6, 2007.

Respectfully submitted,

GREGORY S. DAVIS
First Assistant District Attorney
Collin County, Texas
Bar No. 05493550

STATE'S CHALLENGE TO EXPERT WITNESSES - Page 1

452

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing instrument was delivered by certified mail to opposing counsel on the 6th day of June, 2007.

_____
GREGORY S. DAVIS

NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 380th JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## SUPPLEMENTAL NOTICE OF INTENT TO USE
## EXTRANEOUS AND UNADJUDICATED OFFENSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas by and through her Assistant District Attorney, Gregory S.

Davis, and pursuant to Rule 404(b), Texas Rules of Criminal Procedure and Art. 37.07, Code of

Criminal Procedure files this Notice of Intent to Use Extraneous and Unadjudicated Offenses and

respectfully shows:

I.

The State of Texas may offer proof of the following bad acts or unadjudicated offenses

committed by Defendant at the guilt/innocence or punishment stage of this case:

1.    Date: On or about December 5, 1994
       County: Mecklenburg, NC
       Victim: Waves
       Offense or Act: Larceny

2.    Date: On or about December 5, 1994
       County: Mecklenburg, NC
       Victim: Merry-Go-Round
       Offense or Act: Larceny

FILED

2007 JUN 18 AM 10: 35

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY _____ DEPUTY

454

3.     Date: On or about March 17, 1995
       County: Mecklenburg, NC
       Victim: Lawrence Stuart Smith
       Offense or Act: Assault

4.     Date: On or about March 27, 1995
       County: Mecklenburg, NC
       Victim: Norman Joseph Smith
       Offense or Act: Communicating a Threat

5.     Date: On or about August 3, 1995
       County: Mecklenburg, NC
       Victim: Rhea Ellis
       Offense or Act: Automobile Larceny

6.     Date: On or about September 26, 1995
       County: Mecklenburg, NC
       Victim: Sabrina Maxwell
       Offense or Act: Automobile Larceny

7.     Date: On or about October 4, 1995
       County: Mecklenburg, NC
       Victim: Gayle Watson
       Offense or Act: Automobile Larceny

8.     Date: On or about July 21, 1995
       County: Mecklenburg, NC
       Victim: Angela Fox
       Offense or Act: Automobile Larceny

9.     Date: On or about July 20, 1995
       County: Mecklenburg, NC
       Victim: Marc Whitfield
       Offense or Act: Automobile Larceny

10.    Date: On or about October 10, 1995
       County: Mecklenburg, NC
       Victim: Shawn Banks
       Offense or Act: Assault with a Deadly Weapon

## II.

The State of Texas reserves the right to supplement this notice if new information becomes available.

Respectfully submitted,

GREGORY S. DAVIS
First Assistant District Attorney
Collin County, Texas
Bar No. 05493550

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing instrument was delivered by fax and

certified mail to opposing counsel on the 18th day of June, 2007.

GREGORY S. DAVIS

NO. 380-82629-06

| THE STATE OF TEXAS | § | IN THE 380th JUDICIAL |
|---|---|---|
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## SUPPLEMENTAL NOTICE OF INTENT TO USE
## EXTRANEOUS AND UNADJUDICATED OFFENSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas by and through her Assistant District Attorney, Gregory S. Davis, and pursuant to Rule 404(b), Texas Rules of Criminal Procedure and Art. 37.07, Code of Criminal Procedure files this Notice of Intent to Use Extraneous and Unadjudicated Offenses and respectfully shows:

I.

The State of Texas may offer proof of the following bad acts or unadjudicated offenses committed by Defendant at the guilt/innocence or punishment stage of this case:

1. Date: On or about December 5, 1994
   County: Mecklenburg, NC
   Victim: Waves
   Offense or Act: Larceny

2. Date: On or about December 5, 1994
   County: Mecklenburg, NC
   Victim: Merry-Go-Round
   Offense or Act: Larceny

NOTICE OF INTENT TO USE EXTRANEOUS
AND UNADJUDICATED OFFENSES - Page 1

FILED

2007 JUN 18 AM 10: 07

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
DEPUTY

458

10-1

3. Date: On or about March 17, 1995
   County: Mecklenburg, NC
   Victim: Lawrence Stuart Smith
   Offense or Act: Larceny

4. Date: On or about March 27, 1995
   County: Mecklenburg, NC
   Victim: Norman Joseph Smith
   Offense or Act: Communicating a Threat

5. Date: On or about August 3, 1995
   County: Mecklenburg, NC
   Victim: Rhea Ellis
   Offense or Act: Automobile Larceny

6. Date: On or about September 26, 1995
   County: Mecklenburg, NC
   Victim: Sabrina Maxwell
   Offense or Act: Automobile Larceny

7. Date: On or about October 4, 1995
   County: Mecklenburg, NC
   Victim: Gayle Watson
   Offense or Act: Automobile Larceny

8. Date: On or about July 21, 1995
   County: Mecklenburg, NC
   Victim: Angela Fox
   Offense or Act: Automobile Larceny

9. Date: On or about July 20, 1995
   County: Mecklenburg, NC
   Victim: Marc Whitfield
   Offense or Act: Automobile Larceny

10. Date: On or about October 10, 1995
    County: Mecklenburg, NC
    Victim: Shawn Banks
    Offense or Act: Assault with a Deadly Weapon

II.

The State of Texas reserves the right to supplement this notice if new information

becomes available.

Respectfully submitted,

GREGORY S. DAVIS
First Assistant District Attorney
Collin County, Texas
Bar No. 05493550

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing instrument was delivered by fax and certified mail to opposing counsel on the 18th day of June, 2007.

_____
GREGORY S. DAVIS

# STEVEN R. MIEARS, P.C.

**MAILING ADDRESS:**
P.O. Box 736
Bonham, TX   75418

Bonham, Texas Office:
211 North Main
Bonham, Texas 75418
903-640-4963
903-640-4964 FAX
E-mail: stevenmiears@msn.com

Board Certified in Criminal Law
Texas Board of Legal Specialization

June 22, 2007

Ms. Hannah Kunkle
District Clerk
Collin County Courthouse
210 S. McDonald Street
McKinney, TX   75069

Re:     Cause No. 380-82629-06, The State of Texas vs. Kosoul Chanthakoummane

Dear Ms. Kunkle:

Enclosed for filing in the above referenced case is Defendant's Motion to Suppress Testimony Based Upon Hyponotically Enhanced Memory, Or In the Alternative, Defendant's Motion in Limine Regarding Testimony Based Upon Hypnotically Enhanced Memory.

By copy of this letter, I am furnishing a copy of the Motion to the Collin County District Attorney's Office.

Sincerely,

Steven Richard Miears    pcd
Lawyer

SRM/pd

Enclosures

Cc:     Collin County District Attorney

462

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

### DEFENDANT'S MOTION TO SUPPRESS TESTIMONY BASED UPON HYPNOTICALLY ENHANCED MEMORY, OR IN THE ALTERNATIVE, DEFENDANT'S MOTIN IN LIMINE REGARDING TESTIMONY BASED UPON HYPNOTICALLY ENHANCED MEMORY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-entitled and numbered criminal action, by and through counsel, and moves the Court to suppress any and all testimony based upon hypnotically enhanced memory, or in the alternative, moves the Court to grant a motion in limine regarding testimony based upon hypnotically enhanced memory, and in thereof the Defendant will show the following:

I.

The Defendant has been indicted by the Collin County Grand Jury for capital murder. The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

II.

The Texas Court of Criminal Appeals has held that the proponent of hypnotically refreshed testimony must demonstrate, by clear and convincing evidence, that the testimony is trustworthy. Zani v. State, 758 S.W.2d 233, 243 (Tex.Crim.App. 1988). If the trial court, after

1

463

considering the totality of the circumstances, finds by clear and convincing evidence that hypnosis neither rendered the witness's post-hypnotic memory untrustworthy nor substantially impaired the ability of the opponent to fairly test the witness's recall by cross-examination, the court may admit the testimony. Zani, 758 S.W.2d at 244.

In conducting this analysis, the trial court must be mindful of the four-prong dangers of hypnosis: hypersuggestibility, confabulation, loss of critical judgment, and memory cementing. "Hypersuggestibility" means that the hypnotized is in a state of increased suggestibility in which his disassociated attention is constantly sensitive to and responsive to cues from the hypnotist. Zani v. State, 767 S.W.2d 825, 835 (Tex.App. – Texarkana 1989, pet. ref'd). The courts have defined "confabulation" to mean that the hypnotized creates memory perceptions in an unconscious effort to please the hypnotist and believes the fabricated memories are real. Zani at 767 S.W.2d at 836. The courts find that "loss of critical judgment" occurs when the hypnotized loses the ability to make a mental evaluation of his ideas, images, and feelings. Id. at 837. "Memory cementing" occurs as the hypnotized goes over and over the memory in his mind, convincing the hypnotized that his memory is an accurate remembrance. Id.

The Court of Criminal Appeals in Zani enunciated ten factors trial courts should employ in assessing the likelihood of whether the four-prong dangers occurred. The ten factors are as follows:

1.     The level of training in the clinical uses and forensic applications of hypnosis by the person performing the hypnosis;

2.     The hypnotist's independence from law enforcement investigators, prosecution, and defense;

2

3.     The existence of a record of any information given or known by the hypnotists

concerning the case prior to the hypnosis session;

4.     The existence of a written or recorded account of the facts as the hypnosis subject

remembers them prior to undergoing hypnosis.

5.     The creating of recording of all contact between the hypnotist and the subject;

6.     The presence of persons other than the hypnotist and the subject during any phase of the

hypnosis session, as well as the location of the session;

7.     The appropriateness of the induction and memory retrieval techniques used;

8.     The appropriateness of using hypnosis on the kind of memory loss involved;

9.     The existence of any evidence to corroborate the hypnotically-enhanced testimony; and

10.    The presence or absence of overt of subtle cuing or suggestion of answers during the

hypnotic session.

See also Soliz v. State, 961 S.W.2d 545, 547 (Tex.App. – San Antonio, reh'g overruled);

and State v. Medrano, 127 S.W.3d 781 (Tex.Crim.App. 2004) (approving of the Zani standard

for evaluating admissibility of hypnotically enhanced memory/testimony). The Zani court also

recognized that the reliability of hypnotically enhanced testimony is "especially in question due

to the undetected amplification of disabilities in perception, memory and articulation in a

witnesses' testimony." Medrano, 127 S.W.3d at 786.

The individual administering hypnosis must be familiar with the Zani factors, and must

know the four-prong dangers of hypnosis. Soliz, 961 S.W.2d at 549. If the individual

administering hypnosis does not possess this knowledge at the time of hypnosis, it is impossible

for the proper safeguards to be implemented. Id. Such a lack of knowledge, and a failure to

3

safeguard against the four-prong dangers of hypnosis, would render the results of the hypnotic session unreliable. *Id.*

Section 415.036(a) of the Texas Government Code provides that "[a] peace officer may not use any hypnotic interview technique unless the officer has completed a training course approved by the commission and passed an examination that is designed to test the officer's knowledge of investigative hypnosis and that is administered by the commission." Tex. Gov't Code Ann. §415.036(a).

The Defendant objects to any hypnosis testimony on the grounds that it is an area of expert testimony and therefore the requirements of Tex. R. Evid. 702 must be met prior to its admission. Reliability of evidence is the primary concern of Tex. R. Evid. 702 because the rule requires that any expert be able to "assist the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. Moreover, "[u]nreliable ... scientific evidence simply will not assist the [jury] to understand the evidence or accurately determine a fact in issue." Kelly v. State, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992). The Defendant objects that hypnotically enhanced testimony in this case is unreliable and untrustworthy and should therefore be suppressed.

The Defendant alleges that the requirements of Zani, Soliz, Medrano, related cases and statutory law, including Tex. Gov't Code Ann. §415.036(a) and Texas Rule of Evidence 702, are not met in regards to the hypnotically enhanced memory and hypnotically enhanced testimony in this case. Admission of hypnotically enhanced testimony denies the Defendant his federal and state rights to a fair trial, due process, equal protection, and confrontation, and the Defendant

4

therefore objects to its admission on those grounds. The Defendant moves this Court to suppress any and all hypnotically enhanced testimony.

In the alternative, the Defendant moves the Court to grant a motion in limine instructing the prosecution, its agents and witnesses not to mention, refer, allude, or in any way make reference to anything related to hypnosis, hypnotically enhanced memories or hypnotically enhanced testimony without first approaching the bench out of the hearing of the jury and informing the Court of its intention to offer evidence of same so that the Court may conduct a hearing outside of the jury's presence regarding the admissibility of same.

### III.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant prays that the Court will suppress any and all evidence of hypnotically enhanced memories or hypnotically enhanced testimony; or in the alternative, that the Court grant a motion in limine instructing the prosecution, its agents and witnesses, not to mention, refer, allude, or in any way make reference to anything related to hypnosis, hypnotically enhanced memories or hypnotically enhanced testimony without first approaching the bench out of the hearing of the jury and informing the Court of its intention to offer evidence of same so that the Court may conduct a hearing outside of the jury's presence regarding the admissibility of same. The Defendant prays for any other relief to which he is entitled.

5

467

Respectfully submitted,

_____
Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

June, 2007.

_____
Steven R. Miears

6

468

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE
## DEFENDANT'S MOTION TO SUPPRESS TESTIMONY BASED UPON
## HYPNOTICALLY ENHANCED MEMORY, OR IN THE ALTERNATIVE,
## DEFENDANT'S MOTIN IN LIMINE REGARDING TESTIMONY BASED UPON
## HYPNOTICALLY ENHANCED MEMORY

BE IT REMEMBERED, that on the _____day of _____,

2007, came to be considered the above Motion to Suppress. After consideration of the motion, it

is the opinion of the court that defendant's motion be:

GRANTED _____

DENIED _____, to which the Defendant excepts.


_____
JUDGE PRESIDING


7

469

# STEVEN R. MIEARS, P.C.

Board Certified in Criminal Law
Texas Board of Legal Specialization

MAILING ADDRESS:
P.O. Box 736
Bonham, TX 75418

Bonham, Texas Office:
211 North Main
Bonham, Texas 75418
903-640-4963
903-640-4964 FAX
E-mail: stevenmiears@msn.com

June 22, 2007

Ms. Hannah Kunkle
District Clerk
Collin County Courthouse
210 S. McDonald Street
McKinney, TX   75069

Re:   Cause No. 380-82629-06, The State of Texas vs. Kosoul Chanthakoummane

Dear Ms. Kunkle:

Enclosed are the following Defendant's motions to be filed in the above referenced matter:

1.  Motion to Suppress Evidence and Statements;
2.  Request that Defendant Be Allowed to Occupy Counsel Table Nearest to Jury Box;
3.  Defendant's Motion for a Restrictive Order Regulating News Accounts, Comments and Editorials Concerning Certain Circumstances of the Case;
4.  Motion to Require the Prosecution to Respond in Writing to Every Written Motion Filed by the Defense;
5.  Motion for the Court to Direct the Court Reporter to Record Proceedings;
6.  Motion to Prohibit Comment on the Weight to Be Given or Credibility of Testimony During Trial;
7.  Motion for the Production of Witness Interview Notes;
8.  Motion to Preserve Right to File Other Motions;
9.  Motion to Preserve Evidence;
10. Motion to Preclude Creation of Snitch Testimony;
11. Motion to Preclude Mr. Chanthakoummane from Being Shackled in Public;
12. Motion For Equal Access to Background Information on Prospective Jurors;
13. Motion for in Camera Inspections;
14. Motion for Production of Evidence Relating to Expert Witnesses;
15. Motion to List Exhibits to Be Offered in Both Phases of Trial;

470

16. Motion to Discover the Portions of the Defendant's Statement Which the State Intends to Use at Time of Trial;

17. Motion for Production of Exculpatory, Impeachment and Mitigating Evidence;

18. Motion Regarding Victim Character/Impact Testimony after *Mosley v. State;*

19. Motion to Prevent Improper Jury Argument by State;

20. Motion for Identification Hearing Outside Presence of Jury and Motion to Suppress Testimony Resulting from Hypnosis;

21. Motion for Hearing on Admissibility of Any Statement by Defendant Whether Written or Oral or Evidence Resulting from Same;

22. Motion for Rule 702/705 Hearing;

23. Motion for Bifurcation Punishment Hearing and Right to Open and Close in Punishment Phase;

24. Motion to Videotape the Individual Voir Dire;

25. Motion to List Witnesses and Request for Criminal Histories;

26. Motion to Preclude Uniformed Police Officers from Attending the Proceedings Against Mr. Chanthakoummane and Limit the Show of Force in the Courtroom;

27. Motion to Limit State's Cross-Examination of Defendant to the Scope of the Direct Examination by the Defense During Punishment Phase;

28. Motion to Introduce the Testimony of Defendant's Family and Friends Regarding Their Feelings on the Prospect of a Death Sentence and the Impact and Execution Would Have on Them;

29. Motion to Introduce the Defendant's Statement of Allocution, Free from Cross-Examination by the State, Reflecting His Remorse for the Offense;

30. Motion for Limiting Instructions to the Jury Regarding Extraneous Offenses;

31. Motion for Limited Daily Transcripts;

32. Assertion of Rights;

33. Motion to Adjourn at a Reasonable Time;

34. Motion in Limine – General;

35. Motion in Limine (Guarantee of No Violence);

36. Motion in Limine Regarding the Offer of Evidence of Extraneous Offenses (Ring v. Arizona);

37. Motion in Limine to Exclude Psychiatric or Psychological Testimony Concerning Future Dangerousness;

38. Memorandum of Law in Support of Defendant's Motion In Limine to Exclude Psychiatric or Psychological Testimony Concerning Future Dangerousness;

39. Motion in Limine Regarding Admission of Prejudicial Photographs;

40. Motion In Limine (Preclude Testimony About Violent Acts by Others);

41. Motion for Order "In Limine" to Preserve the True and Correct Meaning of "Probability: in the Future Dangerousness Instruction;

42. Motion in Limine (Victim Impact Type Evidence);

43. Motion to Preclude the Death Penalty as a Sentencing Option – Constitutional Motion Number 1;

44. Motion to Preclude the Death Penalty as a Sentencing Option – Constitutional Motion Number 2;

45. Motion to Preclude the Death Penalty as a Sentencing Option – Constitutional Motion Number 3;

46. Motion to Declare the Current Treatment of the "Sudden Passion" Defense in Capital Murder Cases Unconstitutional – Constitutional Motion Number 4;

47. Motion to Quash Indictment on Grounds that Tex. Code Crim. Proc. Art. 37.071(2) is Unconstitutional – Constitutional Motion Number 5;

48. Motion to Preclude Death Penalty as a Sentencing Option or, In the Alternative, to Quash the Indictment *Apprendi v. New Jersey/Ring v. Arizona/Blakely v. Washington/Bush v. Gore* – Constitutional Motion Number 6; Requests to Voir Dire/Requested Instructions/Motions in Limine, Related to Claims in This Motion;

49. Memorandum in Support of Motion to Preclude the Death Penalty as a Sentencing Option;

50. Motion to Preclude Death Penalty as a Sentencing Option Due to Equal Protection Violations – Constitutional Motion No. 7;

51. Motion to Preclude the Death Penalty Due to the Grand Jury's Failure to Allege in the Indictment All Elements Necessary to Make the Defendant Death-Eligible-Constitutional Motion Number 8;

52. Motion to Preclude the Death Penalty as a Sentencing Option and to Declare Tex.Code Crim. Proc. Art. 37.071 Unconstitutional (*Ring v. Arizona*) – Constitutional Motion Number 9:

53. Motion to Preclude the Death Penalty as a Sentencing Option – Constitutional Motion Number 10;

54. Motion to Preclude the Death Penalty as a Sentencing Option and Declare Article 37.071 Unconstitutional (*Jones v. United States; Apprendi v. New Jersey; and Ring v. Arizona* – Constitutional Motion Number 11;

55. Motion to Preclude the Death Penalty as a Sentencing Option (Selection of Death Penalty Cases) – Constitutional Motion Number 12;

56. Motion to Preclude Prosecution from Seeking the Death Penalty – Constitutional Motion Number 13;

57. Motion to Hold that Tex. Code Crim. Proc. Art. 37.01 is Unconstitutional – Constitutional Motion Number 14;

58. Motion to Preclude the Death Penalty as a Sentencing Option –Constitutional Motion Number 15;

472

59. Motion to Hold Statutory Definition of Mitigating Evidence Unconstitutional as Applied to Impose a "Nexus" Limitation, and to Grant Defendant's Requested Clarifying Voir Dire, Instruction, Argument and Motion in Limine, *Tennard v. Dretke* – Constitutional Motion Number 16;

60. Motion to Hold that Tex. Code Crim. Proc. Art. 37.01 Is Unconstitutional – Constitutional Motion Number 17;

61. Motion Requesting the Court to Find Tex. Code Crim. Proc. Art. 37.071 Section 2(f)(4) to Be Unconstitutional – Constitutional Motion Number 18;

62. Motion to Declare Texas Death Penalty Statute to Be Unconstitutional (Juror's Inability to Predict Future Dangerousness)- Constitutional Motion Number 19;

63. Motion to Declare the Capital Sentencing Statute Unconstitutional Because It Allows Juries to Decide Future Dangerousness Based Solely on the Factors of the Case – Constitutional Motion Number 20;

64. Motion to Declare the "10-12 Rule" Unconstitutional – Constitutional Motion Number 21;

65. Motion to Find that Tex. Code Crim. Proc. Art. 37.071 Sec. 2 (2)(b)(1) Is Unconstitutional (Future Danger Issue) – Constitutional Motion Number 22;

66. Motion to Hold Unconstitutional Tex. Code Crim. Proc. Art. 37.071 Sec. 2(e) and (f)- Failure to Require Mitigation Be Considered – Constitutional Motion Number 23;

67. Motion to Declare Article 37.071 of the Texas Code of Criminal Procedure Unconstitutional Due to Unreliability – Constitutional Motion Number 24;

68. Motion to Hold Unconstitutional Tex. Code Crim. Proc. Art. 37.071 Sec. 2(e) and (f) – Burden of Proof – Constitutional Motion Number 25;

69. Motion for Court to Find Art. 37.071 of the Texas Code of Criminal Procedure Unconstitutional as Applied to This Defendant – Constitutional Motion Number 26;

70. Motion to Declare Article 37.071, § 2(b)(1) of the Texas Code of Criminal Procedure Unconstitutional on Its Face – Constitutional Motion Number 27;

71. Motion to Declare Article 37.071 § 2(2) of the Texas Code of Criminal Procedure Unconstitutional On Its Face – Constitutional Motion Number 28;

72. Motion to Hold Unconstitutional Tex. Code Crim. Proc. Art. 37.071 Sec. 2(e) and (f) – Burden of Proof – Constitutional Motion Number 29;

73. Motion to Declare Section 19:02- 19:03 Texas Penal Code Unconstitutional – Constitutional Motion Number 30;

74. Motion to Suppress Evidence Obtained Pursuant to Warrant No. W219-09052006-02;

75. Motion to Suppress Evidence Obtained Pursuant to Warrant No. W219-09202006-01;

473

76.     Motion to Suppress Evidence Obtained Pursuant to Warrant No. W219-
        09182006-01.

By copy of this letter, I am furnishing copies of the above listed Motion to the Collin County
District Attorney's Office.

Sincerely,

Steven Richard Miears
Lawyer

SRM/pd

Enclosures

Cc:     Collin County District Attorney

474

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-entitled and numbered criminal action, by and through counsel, and moves to suppress certain items of physical evidence and any statements he allegedly made to law enforcement. In support, the Defendant will show the following.

### Background

The Defendant has been indicted by the Collin County Grand Jury for capital murder. The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

### Facts

The Defendant's home and automobile were searched and several pairs of shoes, clothing, and physical items were recovered by law enforcement officers. Moreover, law enforcement officers seized the Defendant's shoes and clothing after his arrest. The Defendant was also forced to give his dental impressions, and saliva samples for the alleged purpose of

MOTION TO SUPPRESS EVIDENCE AND STATEMENTS – Page 1

475

DNA testing.

After his arrest, law enforcement officers attempted to interrogate the Defendant. The Defendant allegedly made some statements.

## Analysis

A.    Search and Seizure Without a Warrant

Law enforcement officers must have a search warrant, based on probable cause, issued by a neutral and detached magistrate to seize a person's property or search that person. U.S. Const. amend. IV and XIV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. art. 1.04 and 1.06. If a law enforcement officer searches a person or seizes his property without a warrant, unless there is a valid exception to the warrant requirement, he violates the dictates of the United States and Texas Constitutions as well as the Texas Code of Criminal Procedure, and, thus, the evidence obtained as a result must be suppressed. Mapp v. Ohio, 367 U.S. 643, 660 (1961); Tex. Code of Crim. Proc. art. 38.23. The Defendant and his residence were searched and his property was seized without a valid warrant. Therefore, the evidence obtained therefrom must be suppressed.

B.    Search and Seizure With a Warrant

The Defendant was searched and seized pursuant to a warrant. The Defendant's DNA and dental impressions were taken pursuant to a warrant. No search warrant shall issue unless sufficient facts are presented to a neutral magistrate establishing probable cause.[1] U.S. Const.

---

[1]These facts must be set forth in a sworn affidavit. Tex. Code Crim. Proc. art. 18.01. The affidavit must recite facts and circumstances within the affiant's knowledge and belief of which the affiant has reasonably trustworthy information sufficient to warrant a reasonably cautious person's belief that the offense has been committed. Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (overruled on other grounds); Wynn v. State, 996 S.W.2d 324, 324 (Tex. App. – Ft. Worth 1999). A mere conclusory statement will not do. Gates, 462 U.S. at 239.

amend IV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. art. 1.06. Probable cause is sufficient to support the issuance of a search warrant where the facts contained in the affidavit and reasonable inferences drawn therefrom justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); Janecka v. State, 739 S.W.2d 813, 823 (Tex. Crim. App. 1987); Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992).

1.        Confidential Informant and Hearsay

Probable cause may be based on information provided by a confidential informant and based on hearsay. However, the veracity and basis of knowledge of persons supplying hearsay information are relevant considerations in determining whether probable cause exists. Barraza v. State, 900 S.W.2d 840, 842 (Tex. App.—Corpus Christi 1995). An unnamed informant's reliability may be established by the affiant's general assertions stated in the affidavit concerning the informant's prior reliability. Cerda, 846 S.W.2d at 534. Id. at 223. Furthermore, an affiant may rely on hearsay as long as a substantial basis for crediting the hearsay is presented. Gates, 462 U.S. at 241-42; Green v. State, 736 S.W.2d 218, 219 (Tex. App.—Corpus Christi 1987, no pet.) Thus, an informant's tip should be corroborated through the independent investigation of the police or through other sources of information. Gates, 462 U.S. at 241-42; Green, 736 S.W.2d at 219. In Barraza v. State, 900 S.W.2d 840, 842 (Tex. App. – Corpus Christi 1999), the Court of Appeals held that the evidence should be suppressed where, in respect to the reliability of the informant, the affiant simply stated that he was told by a law enforcement officer that he "had been contacted by a reliable and credible confidential informant." 900 S.W.2d at 842. The court held that this mere conclusory statement as to the reliability of the informant is insufficient

because there is nothing in the affidavit to show that the informant had previously given information which turned out to be reliable. Id.

2.    False Statement

A search warrant must not contain false information. In Franks v. Delaware, 438 U.S. 154, 667 (1978), the Supreme Court held that when a defendant makes a substantial preliminary showing that a false statement, made knowingly, intentionally, or with reckless disregard for the truth, is included in the search warrant affidavit and that the false statement was necessary to the finding of probable cause, the Fourth Amendment requires a hearing at the defendant's request. Franks, 438 U.S. at 155-56; Hinojosa v. State, 4 S.W.3d 240, 246-49 (Tex. Crim. App. 1999). Under Franks, to be entitled to an evidentiary hearing on the allegations concerning the veracity of the affidavit, the defendant must (1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false;[2] (2) accompany these allegations with an offer of proof stating the supporting reasons;[3] and (3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant. Franks, 438 U.S. at 171-72.

3.    Description

Not only must the search warrant affidavit establish probable cause, but it must also particularly describe the place to be searched. The test for ascertaining the adequacy of a search warrant's description of the place to be searched is whether the place described is sufficient to

---

[2]Allegations of negligence or innocent mistakes are insufficient, and the allegations must be more than conclusory.

[3]Affidavits or otherwise reliable statements of witnesses should be furnished. If not, the absence of written support of the allegations must be satisfactorily explained.

inform officers of the place where they are to conduct the search.  Haynes v. State, 475 S.W.2d 739, 740 (Tex. Crim. App. 1971); Mansell v. State, 756 S.W.2d 95, 98 (Tex. App.—San Antonio 1988, pet. ref'd).  Where the search warrant is for a multi-unit dwelling, the place described must contain adequate guidelines to apprize the officers executing the warrant of the particular unit to be searched.  Haynes, 475 S.W.2d at 740; Mansell, 756 S.W.2d at 98.

4.    Four Corners of Affidavit

In judging the adequacy of a search warrant affidavit, this court must look within the "four corners" of the affidavit because that is what the magistrate had before it when the warrant issued.  Cassias, 719 S.W.2d at 587-88; Cerda v. State, 846 S.W.2d 533, 534 (Tex. App.— Corpus Christi 1993, no pet.).  The magistrate, not the officer, is responsible for determining whether probable cause exists.  Tex. Code Crim. Proc. art. 18.01.

5.    Standard of Review

In evaluating whether probable cause exists for the issuance of a warrant, this court must assess the totality of the circumstances.  Gates, 462 U.S. at 238-39; Wynn, 996 S.W.2d at 326-27.  Furthermore, this court must review the determination of probable cause de novo.  Ornelas v. United States, 517 U.S. 690, 696-97 (1996); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Based on the foregoing, the evidence obtained as a result of the search warrants must be suppressed under exclusionary rule articulated in Mapp v. Ohio, 367 U.S. 643, 660 (1961), and its progeny, and Article 38.23 of the Texas Code of Criminal Procedure.

C.    Motion to Suppress Statements

The Defendant also moves to suppress any statements made by him because the dictates

of Article 38.22 of the Texas Code of Criminal Procedure and <u>Miranda v. Arizona</u>, 384 U.S. 436

(1966), were not observed, because the statements were involuntary, <u>Jackson v. Denno</u>, 378 U.S.

368 (1964), because the statements were a result of the unconstitutional search and seizure, and

because the defendant's right to counsel was violated, all in violation of the Fifth, Sixth and

Fourteenth Amendments to the United States Constitution, Article 1, section 10, of the Texas

Constitution, and Articles 1.04, 1.05, and 1.051 of the Texas Code of Criminal Procedure.

Moreover, the Defendant's statements must be suppressed because the dictates of Article 15.17

of the Texas Code of Criminal Procedure were ignored and a causal connection exists between

this failure and the statements. <u>See</u> <u>Cantu v. State</u>, 342 S.W.2d (Tex. Crim. App. 1992).

This court, therefore, must suppress the defendant's statements under exclusionary rule

articulated in <u>Mapp v. Ohio</u>, 367 U.S. 643, 660 (1961), and its progeny, and Article 38.23 of the

Texas Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, the defendant prays that this motion be

granted and for any other relief to which he is entitled.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

**MOTION TO SUPPRESS EVIDENCE AND STATEMENTS – Page 8**

480

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of ___June___, 2007.

_____
Steven R. Miears

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER ON THE DEFENDANT'S MOTION TO
## SUPPRESS EVIDENCE AND STATEMENTS

BE IT REMEMBERED, that on the _____ day of _____,

2007, came to be considered the above Motion to Suppress Evidence and Statements. After

consideration of the motion, it is the opinion of the court that defendant's motion be:

GRANTED _____

DENIED _____, to which the Defendant excepts.


_____
JUDGE PRESIDING

482

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## REQUEST THAT DEFENSE BE ALLOWED TO OCCUPY
## COUNSEL TABLE NEAREST TO JURY BOX

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant, by counsel, and

pursuant to 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, §§3,

10, 13, 19 and 29 and Tex. Code Crim. Proc. arts. 1.03, 1.04, 1.05, 1.23 and 1.24 and moves the

Court to allow the Defendant and defense counsel to occupy counsel table nearest to the jury box

and in support there of would show:

I.

The Defendant has been indicted by the Collin County grand jury for capital murder.

II.

The State is seeking the death penalty. The Eighth Amendment to the United States

Constitution requires a greater degree of accuracy and fact finding than would be true in a non

capital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and

*Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

III.

Movant anticipates that due to the nature of the offense charged, the pre-trial publicity that

has been given to this case, and the high emotional level that can be anticipated during trial that

the gallery will be full of family, friends and supporters of the deceased along with interested

citizens, members of law enforcement and media. These observers customarily sit behind the

counsel table nearest to the jury box as that is the counsel table that is often occupied by the

FILED 2007 JUN 22 PH 1: [ ]
HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY

483

prosecution. This crowd of people is so close to the jury box that their proximity can have an intimidating effect on the jury and make them reluctant to decide issues in favor of the Defendant for fear that they would not be popular with the crowd in the courtroom.

IV.

There can be no practical reason why the prosecution should occupy the counsel table closest to the jury box. Should the prosecution maintain that this is "custom" then this court should find that no custom should outweigh the Defendant's right to a Fair Trial under the State and Federal Constitutions nor the need for heightened reliability in the determination process that has been mandated by the United States Supreme Court in *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Should the State maintain that it is entitled to occupy this counsel table because it "has the burden of proof", then it acknowledges that in fact there is an influential factor in the prosecution's proximity to the jury box.

V.

Should at any time the seating arrangement in the gallery reasonably appear to be effecting the fairness of the trial, Movant requests that this Court address that unfairness by appropriate Order.

Wherefore, premises considered, Movant prays that relief be granted as prayed for herein.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June _____, 2007.

_____
Steven R. Miears

485

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## REQUEST THAT DEFENSE BE ALLOWED TO OCCUPY
## COUNSEL TABLE NEAREST TO JURY BOX

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.

_____
Judge Presiding

486

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## DEFENDANT'S MOTION FOR A RESTRICTIVE ORDER REGULATING NEWS ACCOUNTS, COMMENTS AND EDITORIALS CONCERNING CERTAIN CIRCUMSTANCES OF THE CASE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-entitled

and numbered criminal action, and moves the court to issue a protective order directed to

newspapers, television stations, and broadcasting stations which circulate, communicate, or

disseminate, any or all information relating to this case within the boundary of Collin County,

Texas. The order would bar and restrict aforementioned news media in the following particulars:

1.  Bars the pre-trial publication of any witness accounts which identify the defendant as having committed the alleged crime;

2.  Bars the publication of names and addresses of prospective witnesses until they have testified at trial;

3.  Bars the publication of the names and addresses of the selected, excused and/or prospective jurors;

4.  Bars the publication of testimony adduced at any hearing on the defendant's motion to suppress illegally seized evidence;

5.  Limits the news comment and reporting of the afore-stated members of the news media during the trial of the accused for the crime of capital murder to a factual account of the evidence and trial proceedings which are a part of the trial jurors knowledge by virtue of the introduction of such information and/or exhibits into evidence in open court in the presence of the jury;

6.  Bars any courtroom broadcasting and televising during the trial and prohibits sound, broadcasting and television equipment within the courtroom during the trial;

1

2007 JUN 22 PM 1:00
HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY

487

7.    Bars any courtroom photography, both while court is in session and in recess and prohibits photographers from taking photographs in the courthouse, especially photographs of the defendant and witnesses;

8.    Bars the making of sketches in the courtroom;

9.    Arranges the physical accommodations for the news media in the courtroom but outside the bar in such manner that the activities of the reporters present will be as unobtrusive to the jurors and the parties as possible and excludes members of the media from physically appearing and being within the bar in the courtroom while the trial in this case is held during the time when court is in session in such trial, and

10.   Bars the press from handling or photographing any exhibits during the course of the trial.

This case involves circumstances which may cause it to receive the concentrated attention of the news media and thereby to receive great notoriety and publicity, especially in the local community of Collin County, Texas, where the offense allegedly took place.

Unless some procedural rules and guidelines are immediately propounded by the court to the news media of Collin County, Texas, it can be expected that the community will be exposed to massive dosages of pre-trial and trial publicity and reports concerning the facts of the case and the defendant's implication therein. News editors, reporters and commentators cannot be relied upon to subject their reports to the standards which due process and procedural rules impose on the admissibility of evidence. Therefore, to avoid the clear and present danger that the defendant's right to fair trial in Collin County, Texas will be violated, the court should take preventative action to avoid prejudicial new media reporting from the commencement of the trial until the rendering of the verdict.

WHEREFORE, PREMISES CONSIDERED, the defendant prays that the court will issue a protective regulatory order and injunctive order encompassing the specific particulars herein

2

488

above designated as well as any other regulatory measures that will protect the defendant's right to a fair trial.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

Steven R. Miears

3

489

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S MOTION
## FOR A RESTRICTIVE ORDER REGULATING
## NEWS ACCOUNTS, COMMENTS AND EDITORIALS CONCERNING
## CERTAIN CIRCUMSTANCES OF THE CASE

BE IT REMEMBERED, that on this day, came to be considered the defendant's Motion

for a Restrictive Order Regulating News Accounts, Comments and Editorials Concerning Certain

Circumstances of the case. The court is of the opinion the motion should be in all things:

_____ GRANTED

_____ DENIED

So Ordered on this the \_\_\_ day of _____, 200\_\_.


_____
JUDGE PRESIDING

4

490

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO REQUIRE THE PROSECUTION TO RESPOND IN WRITING TO EVERY WRITTEN MOTION FILED BY THE DEFENSE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-styled and numbered cause, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and moves this Court to require the prosecution to respond in writing to each motion that he files, and in support thereof respectfully shows as follows:

1. Mr. Chanthakoummane has been indicted by the Collin County Grand Jury for Capital Murder.

2. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3. Several reasons exist for requiring the prosecution to respond in writing to each motion filed by the defense, and to require that the prosecution cite the authorities on which they rely.

-1-

491

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June _____, 2007.

Steven R. Miears

492

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

**MOTION FOR THE COURT TO DIRECT
THE COURT REPORTER TO RECORD PROCEEDINGS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-entitled and numbered cause, and moves this court to instruct the Court Reporter to take down in shorthand, or by any other method, and to record all proceedings held in this cause, including, but not limited to, the following:

1. All pre-trial hearings held in conjunction with the guilt-innocence hearing and the punishment hearing, if any;

2. The entire voir dire examination of the jury panel during the trial of this cause on the merits;

3. All opening statements by counsel for the prosecution and counsel for the defendant during the hearing on guilt-innocence, all objections made thereto and the ruling of the Court thereof;

4. All testimony of any and all witnesses during the guilt-innocence hearing and the punishment hearing, if any;

5. All testimony adduced at hearings held outside the presence of the jury during the guilt-innocence hearing and the punishment hearing, if any;

6. All communications between the Court and the Jury during the guilt-innocence and

1

493

punishment hearing, if any;

7. All arguments made to the jury by counsel for the prosecution and counsel for the defendant during the guilt-innocence hearing and the punishment hearing, if any;

8. All objections made by the defense counsel and the District Attorney, and all rulings of the Court thereon, during the pre-trial hearings, and the hearing to determine guilt-innocence and the punishment hearing, if any; and

9. All objections to the Charge of the Court made by the defense counsel and the District Attorney, during the guilt-innocence hearing and the punishment hearing, if any, and all rulings of the Court with respect thereto.

10. All bench conferences held during any pre-trial hearing as well as all bench conferences held during the trial of this cause.

11. Any and ll proceedings held in connection with this cause.

WHEREFORE, PREMISES CONSIDERED, the defendant prays that this motion be granted.

Respectfully submitted,

_____
Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

2

494

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June , 2007.

_____
Steven R. Miears

3

495

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION FOR THE COURT TO DIRECT
## THE COURT REPORTER TO RECORD PROCEEDINGS

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.


_____
Judge Presiding

4

496

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by counsel, and pursuant to 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of The Texas Constitution and Tex. Code. Crim. Proc. arts. 1.03, 1.04, 1.05, 38.04 and 38.05 and moves the Court to refrain from commenting on the weight to be given to evidence and in particular the credibility of testimony of any witness for the State or Defendant and in support thereof would show:

1. The Defendant has been indicted by the Collin County grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. Upon information and belief, the Defendant anticipates that the State will offer testimony from a witness who will attempt to offer one or more opinions pursuant to Tex. R. Evid. 702.

4. A determination by the Court that any witness who testifies for the State or the Defendant is an expert should be made outside of the hearing of the jury. Announcing to the jury that a witness is accepted by the Court as an "expert" is an inappropriate and unfair comment by

FILED
2007 JUN 2 PM: 00
HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY_____ DEPUTY

497

the Court on the credibility of the testimony and the weight that should be given to testimony by the witness and violates Tex. Code Crim. Proc. arts. 38.04 and 38.05. "Consequently, a jury more readily accepts the opinion of an expert witness as true simply because of her or her designation as an expert." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 722 (Tex. 1998) (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995); *see also, Flores v. Johnson*, 210 F.3d 456, 465-6 (5th Cir. 2000) (Garza, J. specially concurring) "the problem here is not the introduction of one man's opinion on another's future dangerousness, but the fact that the opinion is introduced by one whose title and education [not to mention designation as an 'expert'], gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact.

5. Tex. Code Crim. Proc. art. 38.04 provides, in part: "[t]he jury is the **exclusive** judge of the facts proved, and of the weight to be given to the testimony...". (emphasis added)

6. Tex. Code Crim. Proc. art. 38.05 provides in part: "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, **but shall simply decide whether or not it is admissible**..." (emphasis added)

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that upon hearing herein, this Court make its Order that any determination that a particular witness qualifies as an "expert" shall be made outside of the presence of the jury. Further, that the Defendant have such other relief as he may show himself to be justly entitled.

2

49S

Respectfully submitted,

_____

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

\

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the _22_ day of

_____ June, 2007.

_____

Steven R. Miears

3

499

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR
## CREDIBILITY OF TESTIMONY DURING TRIAL

BE IT REMEMBERED, that on the _____day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

GRANTED    _____

DENIED        _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

4

500

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

MOTION TO PRESERVE RIGHT TO FILE OTHER MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion to Preserve Right to File Other Motions, and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder, and the State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

2. Defense counsel is not always able to present every pertinent motion at the initial pre-trial motion hearing in that, even with due diligence, they may not learn of the relevance of a particular motion until after said hearing, e.g., Motion to Quash because of defective indictment based on recent Court of Criminal Appeals of federal court ruling, or a Motion to Suppress based on evidence that is produced as a result of a Pre-Trial Motion hearing.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that relief be granted as prayed for herein.

501

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____, 2007.

Steven R. Miears

502

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION TO PRESERVE RIGHT TO FILE OTHER MOTIONS

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.

_____
Judge Presiding

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR THE PRODUCTION OF WITNESS INTERVIEW NOTES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion For the Production of Witness Interview Notes and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder, and the State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. <u>Gilmore v. Taylor</u> 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305 (1976).

2. The above Defendant, by and though his attorney of record, moves the Court for an Order compelling the State to produce copies of any of the following documents that are in the possession, custody or control of the State:

(a) Notes or memoranda of interviews conducted by any Assistant District Attorney, police officer or any agent of the State with any person whom the State expects to call as a witness at this trial or any hearing relating hereto which record verbatim, or in substantial detail, the actual words or account of such person and which are relevant to any of the facts or issues

504

pertinent to the instant case, whether or not said writings were acknowledged or signed by the respective witnesses.

(b) Additionally, in the event the prosecuting attorney asserts a work product or similar privilege in regard to some of the contents of the above described writings, the Defendant requests that the Court order the prosecuting attorney to deliver two copies of such writings to the Court for use as follows:

(i) One copy, for the use of the Defendant, sanitized by the excision of any part of the writing for which the claim of a work product or other privilege is accepted by the Court;

(ii) One copy, to be kept by the Court, as part of the record herein, without any excision of portions thereof.

3. In accordance with the decision of the Court in <u>Goldberg v. United States</u>, 425 U.S. 94, 96 S. Ct. 1338, 47 L. Ed. 2d 603 (1976), the notes and memoranda made by government counsel during the interviewing of witnesses whom the government intends to call in support of its case in chief.

4. At a minimum, this trial court is respectfully urged to order that the state preserve all notes and memoranda, including those subsequently taken and/or transcribed to typewritten form, until all proceedings are finally completed in this action.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that relief be granted as prayed for herein.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June _____, 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION FOR THE PRODUCTION OF WITNESS INTERVIEW NOTES

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.

_____
Judge Presiding

507

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO PRESERVE EVIDENCE

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by and through Counsel and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the UNITED STATES CONSTITUTION and Article 1, Sections 10, 13 & 19 of the TEXAS CONSTITUTION and in support of his right to a full and fair hearing under both the state and federal constitutions, moves this Court to Order the State of Texas to preserve all physical evidence in this case and grant all other relief prayed for herein. In support, the Defendant would show:

### I.

### FACTUAL BACKGROUND

Defendant has been indicted for the offense of capital murder and the State is seeking the death penalty. The Eighth Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

### II.

### MOTION

Defendant moves for an Order requiring the State of Texas to preserve all physical evidence related to all offenses alleged against Defendant in this case. For purposes of this motion, the "State of Texas" is defined to include the District Attorney of

508

Collin County, Texas, the City of McKinney Police Department, the Collin County Sheriff's Office, the Texas Department of Public Safety, the Texas Highway Patrol, the Texas Rangers, the Federal Bureau of Investigation, the Internal Revenue Service, the Collin County Police Crime Lab, and any agents or employees of those offices, any other law enforcement officer and any other person acting in conjunction with the above named entities or on behalf of any law enforcement or other governmental agency.

For the purpose of this motion, the term "offenses" is the crime alleged in the indictment returned herein against Defendant as well as any other alleged crime or bad act which the State of Texas offered during the trial of this cause.

This motion seeks to include all items that are currently within the actual or constructive possession, custody, control or knowledge of the State of Texas and items which may become known, identified or available through the exercise of due diligence by the State of Texas.

The physical evidence for which the Defendant requests preservation includes, but is not limited to, the following:

a.    Any and all forensic samples, photographs, negatives of photographs, videotapes, fingerprint samples or other material of a forensic nature, including evidence collected at the crime scene and any actual physical evidence recovered;

b.    Any other photographs, audiotapes, videotapes or electronic storage devices, made and any maps, sketches and/or diagrams made in connection with the State of Texas's investigation of the alleged crime;

c.    Any and all reports, laboratory analysis requests, notes of lab personnel and/or technicians, slides, samples and any other documentation of whatever kind

associated with or relating to the Defendant or any other person who is a possible perpetrator of the offense described in the indictment returned herein.

      d.      Any notes or reports, whether handwritten, tape recorded and/or transcribed of law enforcement or other agents of the State of Texas which relate to any investigations of the Defendant or any one else suspected of having committed the same offense as that with which the Defendant is charged;

      e.      Any notes, audiotapes, videotapes, electronic storage devices or writings known to the State of Texas, purporting to be the statement of any person having knowledge about this case.

      f.      Any and all videotapes, audiotapes and or handwritten statements the Defendant or which purport to be a verbatim statement of the Defendant. This includes statements written by someone other than the Defendant but which were acknowledged orally or in writing by the Defendant;

      g.      Autopsy reports, preliminary or otherwise, relating to any deaths attributed to the direct or indirect actions of the Defendant. This includes reports, bench notes, recordings or similar documentation made by coroners, deputy coroners and/or medical examiners;

      h.      Any and all Uniform Offense Reports or Supplements thereto;

      i.      Any reports, statements, recordings or other documentation of, by or about fellow inmates with whom the State or its agents might have discussed any matters pertaining to the Defendant;

      j.      Any police logs, records, recordings and or notes of calls and reports to the State of Texas, its agents or employees or any other law enforcement agency

regarding the Defendant his arrest or incidents related to the indictment or charge pending against the Defendant;

k.      Finger, palm and hand print specimens, latent or otherwise and photographs thereof, taken during the course of the investigation of the offenses and any and all documents related thereto and items from which print examplars were taken. This would include any and all requests for print comparisons made to the Automated Fingerprint Identification System (AFIS), any other state or federal comparison systems including requests for visual comparisons and reports provided as a result of such examination.

l.      Any and all items of a ballistics nature, including bullets, shells, slugs, cartridges or pieces or parts thereof, including photographs thereof, recovered and which in any way relate to the offenses. This would include written requests for examination or analysis, bench notes, reports and photographs of these items taken during the course of the investigation of the offenses and any and all documents related thereto. This designation would also include any and all requests for print comparisons made to the DRUGFIRE computer system, the National Integrated Ballistics Information Network (NIBIN) or any other state or federal comparison systems including requests for visual comparisons and resulting reports and bench notes.

m.      Any autopsy and toxicology findings, bench notes, photographs, material recording on electronic recording devices, body specimens taken by the State of Texas.

n.      Hospital and medical reports relating to the survivor of the offense for which the Defendant has been indicted.

In investigating and preparing its case, the State of Texas must recover and

develop physical evidence. Depending upon motions which may be filed by the defense, and rulings by the Court, the Defendant may be entitled to access to such materials and may be entitled to perform independent tests on the evidence. If this motion to preserve evidence is not granted, the Defendant will be denied due process of law, a fair trial and the effective assistance of this counsel. He will be prevented from presenting his defense because he will be unable to effectively cross-examine the State's witnesses and will be unable to call witnesses on his behalf with regard to such evidence all in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the UNITED STATES CONSTITUTION and the Article 1, Sections 10, 13 and 19 of the TEXAS CONSTITUTION

To further protect the Defendant's state and federal constitutional rights in connection with these allegations against him, he requests that none of the evidence seized in this investigation be destroyed, modified or altered without 15 days prior notice to the defense and an Order from this Court.

The defense further requests this Court to order the State of Texas to notify the defense if the State or its agents have destroyed, or consumed in testing, any materials relevant to the offenses. If such destruction has taken place, the State should be ordered to provide to counsel for the Defendant a list of: (a) what has been destroyed or consumed; (b) by whom and upon whose authority; (c) where and when the destruction occurred, and (d) why it occurred.

WHEREFORE PREMISES CONSIDERED, the Defendant respectfully requests that the Court order that:

1.     The State of Texas, as defined herein, shall preserve all evidence as described in this motion;

2.     The State of Texas shall not destroy, alter or modify any such evidence

without a prior notice to the Accused and an Order of the Court;

3.     The Defendant have such other and further relief to which he may show

himself to be justly entitled in law or in equity.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the

22 day of ____Qune____, 2007.

Steven R. Miears

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## <u>ORDER OF THE COURT ON THE<br>DEFENDANT'S MOTION TO PRESERVE EVIDENCE</u>

On the this day came the Defendant, by and through Counsel and moved this Court to Order the State of Texas to preserve all physical evidence in this case and other relief.

The Court, after duly considering the motion, hearing the arguments of counsel and otherwise being fully advised in the premises, makes the following Order:

For purposes of this motion, the "State of Texas" is defined to include the District Attorney of Collin County, the McKinney City Police Department, the Collin County Sheriff's Office, the Texas Department of Public Safety, the Texas Highway Patrol, the Texas Rangers, the Federal Bureau of Investigation, the Internal Revenue Service, the Collin County Police Crime Lab and any agents or employees of those offices, any other law enforcement officer and any other person acting in conjunction with the above named entities or on behalf of any law enforcement or other governmental agency.

For the purpose of this Order, the term "offenses" is the crime alleged in the indictment returned herein against the Defendant as well as any other alleged crime or bad act which the State of Texas offered during the trial herein.

514

This Order includes all items that are currently within the actual or constructive possession, custody, control or knowledge of the State of Texas and items which may become known, identified or available through the exercise of due diligence by the State of Texas.

It is Ordered that the State of Texas shall preserve all physical evidence in its possession or over which it has control, including, but not limited to the following:

a.      Any and all forensic samples, photographs, negatives of photographs, videotapes, fingerprint samples or other material of a forensic nature, including evidence collected at the crime scene and any actual physical evidence recovered;

b.      Any other photographs, audiotapes, videotapes or electronic storage devices, made and any maps, sketches and/or diagrams made in connection with the State of Texas's investigation of the alleged crime;

c.      Any and all reports, laboratory analysis requests, notes of lab personnel and/or technicians, slides, samples and any other documentation of whatever kind associated with or relating the Defendant or any other person who is a possible perpetrator of the offense described in the indictment returned herein.

d.      Any notes or reports, whether handwritten, tape recorded and/or transcribed of law enforcement or other agents of the State of Texas which relate to any investigations of the Defendant or any one else suspected of having committed the same offense as that with which the Defendant is charged;

e.      Any notes, audiotapes, videotapes, electronic storage devices or writings known to the State of Texas, purporting to be the statement of any person having knowledge about this case;

515

f.     Any and all videotapes, audiotapes and or handwritten statements the Defendant or which purport to be a verbatim statement of the Defendant. This includes statements written by someone other than the Defendant, but which were acknowledged orally or in writing by the Defendant;

g.     Autopsy reports, preliminary or otherwise, relating to any deaths attributed to the direct or indirect actions of the Defendant. This includes reports, bench notes, recordings or similar documentation made by coroners, deputy coroners and/or medical examiners;

h.     Any and all Uniform Offense Reports or Supplements thereto;

i.     Any reports, statements, recordings or other documentation of, by or about fellow inmates with whom the State or its agents might have discussed any matters pertaining to the Defendant;

j.     Any police logs, records, recordings and or notes of calls and reports to the State of Texas, its agents or employees or any other law enforcement agency regarding the Defendant, his arrest or incidents related to the indictment or charge pending against the Defendant;

k.     Finger, palm and hand print specimens, latent or otherwise and photographs thereof, taken during the course of the investigation of the offenses and any and all documents related thereto and items from which print examplars were taken. This would include any and all requests for print comparisons made to the Automated Fingerprint Identification System (AFIS), any other state or federal comparison systems including  requests for visual comparisons and reports provided as a result of such examination.

l.    Any and all items of a ballistics nature, including bullets, shells, slugs, cartridges or pieces or parts thereof, including photographs thereof, recovered and which in any way relate to the offenses.  This would include written requests for examination or analysis, bench notes, reports and photographs of these items taken during the course of the investigation of the offenses and any and all documents related thereto.  This designation would also include any and all requests for print comparisons made to the DRUGFIRE computer system, the National Integrated Ballistics Information Network (NIBIN) or any other state or federal comparison systems including requests for visual comparisons and resulting reports and bench notes.

m.    Any autopsy and toxicology findings, bench notes, photographs, material recording on electronic recording devices, and body specimens taken by the State of Texas.

n.    Hospital and medical reports relating to the survivor of the offense for which the Defendant has been indicted.

It is further Ordered that none of the evidence seized in the investigation of the offenses be destroyed, modified or altered without 15 days prior notice to the defense and an Order from this Court.  The office of the Collin County District Attorney is to timely notify the defense, upon discovery that the state or its agents have destroyed, or consumed in testing, any materials relevant to the offenses.  If such destruction has taken place, the State is Ordered to timely provide to counsel for the Defendant a list of: (a) what has been destroyed or consumed; (b) by whom and upon what authority; (c) where and when the destruction occurred, and (d) why it occurred.

517

ORDERED AND SIGNED on this the ____ day of _____, 200__.


_____

JUDGE PRESIDING

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO PRECLUDE CREATION OF SNITCH TESTIMONY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, and moves this Court pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article 1, sections t 3, 10, 13, 15 & 19 of the Texas Constitution, and such other law as may be set forth below, to take measures to assure that no jailhouse snitches are created in this case. In support of his motion, the Defendant shows as follows:

### REQUEST

1. The Defendant seeks by this motion to close the stable door before the horse escapes. He notes the following facts:

a. He has absolutely no intention of talking to anyone but his lawyers about the facts of the case. He has been approached by law enforcement officers, the F.B.I., and others, and has established a track record of refusing to discuss anything about his case. He is not about to change that now. *See Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (where—as here—accused invokes right to counsel, the state cannot even approach the suspect to initiate interrogation); *Michigan v. Jackson*, 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986) (same rule under the Sixth Amendment).

b. He is incarcerated, against his will, in the penal institutions of the State, with other persons who are being held by the State. It is therefore beyond his own control to dictate with

519

whom he is permitted to come in contact. He views anyone who wishes to talk to him about his

case as an agent of the states. *See Massiah v. United States*, 377 U.S. 201 (1964); *Brewer v.

Williams*, 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977); *United States v. Henry*, 447

U.S. 264, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980).

c. If he had the decision as his own, he would not associate with *anyone* whom he did

not absolutely trust between now and such time as he may be tried.

d. He is aware—as is this Court—that he does not have to actually *say* anything for a

jailhouse snitch to come forward and testify that he made a statement. He is therefore justifiably

nervous that someone in the cell with him will simply make up a story.

e. He would prefer to be placed in a single cell, where it would be much more difficult

for a jailhouse snitch to make up such a story.

2. On advice of counsel, the Defendant is keeping a log of all the inmates with whom he

comes in contact in the jail cells. He is also submitting to each person a statement for him or her

to sign acknowledging the Defendant's intent neither to discuss any aspect of his case, nor permit

the other person to initiate such discussion. Of course, the committed snitch may refuse to sign

such a statement, but there is little else the Defendant can do to avert the creation of snitch

testimony.

3. The Defendant therefore needs this Court's assistance to prevent the situation from

arising where a snitch may make up a story. He requests an order:

a. Precluding any state actor from sending in a *Henry* snitch to try to exact a statement

out of the Defendant, without prior notice to counsel, and an opportunity for counsel to be

present.

b. Requiring that the Defendant be held in solitary confinement, where no snitch can

come close to him, and make up a story.

## THE LAW GOVERNING SNITCH TESTIMONY

4. Since this is to be a capital prosecution, exacting standards must be met to assure that it is fair. The death penalty "is unique in its total irrevocability." *Furman v. Georgia*, 408 U.S. 238, 306, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972) (Stewart, J., concurring). As the United States Supreme Court has held, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special '"need for reliability in the determination that death is the appropriate punishment in any capital case." *Johnson v. Mississippi*, 486 U.S. 578, 584, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988) (quoting, *Gardner v. Florida*, 430 U.S. 349, 363-64, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) (quoting, *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976) (White, J., concurring) (overruled in part on other grounds).

5. The Fifth Circuit's approach is a reflection of the fact that cases are built on opportunist "snitches" on a frighteningly frequent basis. For this reason, that court has affirmed that accomplice-witness testimony must be scrutinized with greater care and caution than the testimony of ordinary witnesses and that an accomplice's testimony may be influenced by the hope of benefits and may be considered by the jury as tainted because of such influence. *United States v. Esparza*, 882 F.2d 143, 146, 1989 U.S. App. LEXIS 13234 (5th Cir. Tex. 1989). *see also Cool v. United States*, 409 U.S. 100, 103, 93 S. Ct. 354, 34 L. Ed. 2d 335 (1972) (there is a "recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity").

6. Indeed, the Supreme Court has also noted that

> [t]he use of informers, accessories, accomplices, false friends, or
> any of the other betrayals which are 'dirty business' may raise

serious questions of credibility.

*On Lee v. United States*, 343 U.S. 747, 757, 72 S. Ct. 967, 96 L. Ed. 1270 (1952) (emphasis

supplied) (overruled on other grounds by *Lee v. State*, 489 So. 2d 1382 (Miss. 1986); *see also*

*United States v. Swiderski*, 539 F.2d 854 (2d Cir.N.Y. 1976) (informer paid $10,000 for his

services, worked on a contingent fee basis); *United States v. Sarvis*, 523 F.2d 1177, 1180 (D.C.

Cir. 1975); *United States v. Wasko*, 473 F.2d 1282 (7th Cir. 1973); *United States v. Leonard*,

494 F.2d 955, 961 (D.C. Cir. 1974); *United States v. Garcia*, 528 F.2d 580 (5th Cir.Tex. 1976),

cert. denied sub nom., *Sandoval v. United States*, 426 U.S. 952, 96 S. Ct. 3177, 49 L. Ed. 2d

1190 (1976).

7. For these reasons, the Court has held that snitch testimony "ought not to be

passed upon . . . under the same rules governing other and apparently credible witnesses. . . ."

*Crawford v. United States*, 212 U.S. 183, 204, 29 S. Ct. 260, 53 L. Ed. 465 (1909). Indeed, the

Nevada Supreme Court recently noted "that a jail-house incrimination is not available in a fairly

large number of homicide cases." *D'Agostino v. State*, 823 P.2d 283, 285 (Nev. 1991). The

Court went on to hold that special precautions must be taken to avoid presenting unreliable

evidence to the jury:

> A legally unsophisticated jury has little knowledge as to the types
> of pressures and inducements that jail inmates are under to
> "cooperate" with the state and to say anything that is "helpful" to
> the state's case. It is up to the trial judge to see that there are
> sufficient assurances of reliability prior to admitting this kind of
> amorphous testimony to keep this kind of unreliable evidence out
> of the hands of the jury. . . .

*Id.* at 284; *see also Cal. Penal Code Section 1127a* (trial courts must instruct jurors that

"testimony of an in-custody informant should be viewed with caution and close scrutiny").

## VIII.

In light of this law that points to the inherent dangers of the snitch, this Court must take action to assist the Defendant in preventing them from surfacing--when it is clear that Mr. Client has no intention of talking to *anyone* but his lawyers about this case.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests that this Court enter an order as follows:

a. Setting the motion down for an evidentiary hearing at which may prove the basis of his motion; and,

b. Ordering that the Defendant be held in a single-person cell; and,

c. Ordering that nobody in the custody of the State may seek to initiate questioning of the Defendant concerning his case; and,

d. Taking such other action as the Court may deem fit and just.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June , 2007.

_____
Steven R. Miears

524

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

<u>ORDER OF THE COURT ON THE DEFENDANT'S</u>
<u>MOTION TO PRECLUDE CREATION OF SNITCH TESTIMONY</u>

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the Defendant's Motion to Preclude the Creation of Snitch Testimony.

The court is of the opinion the motion should be in all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

525

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

<u>MOTION TO PRECLUDE MR. CHANTHAKOUMMANE
FROM BEING SHACKLED IN PUBLIC</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-styled

and numbered cause, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States

Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and other law,

as set out below, and moves this Court to preclude his being shackled in public, and in support

thereof respectfully shows as follows:

1. This is a capital case. Mr. Chanthakoummane, an indigent, faces the death penalty.

The Eight Amendment requires a greater degree of accuracy and procedural safeguards than

would be true in a non-capital case. <u>Gilmore v. Taylor</u>, 508 U.S. 333, 113 S. Ct. 2112, 124 L.

Ed. 2d 306 (1993), and <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305 (1976).

2. A trial court commits reversible error if it allows a jury to be exposed to any vestige of

the accused's incarceration-shackles, handcuffs or other manacles. The right of a person being

tried "to be free of all manner of shackles or bonds" is a common law right. <u>Rush v. State</u>, 301

So. 2d 297, 300 (Miss. 1974). The principle behind the right was explained by the Fifth Circuit

in <u>Marquez v. Collins</u>, 11 F.3d 1241 (5th Cir. 1994):

> "[T]he appearance of a defendant in shackles and handcuffs before
> a jury in a capital case requires careful scrutiny. Shackling carries
> the message that the state and the judge think the defendant is
> dangerous, even in the courtroom. It is not that shackling signals
> the prosecutor's opinion--indeed, there is nothing subtle about the

526

prosecutor's view....__Apart from the risk of prejudice to the defendant, the indecorous appearance of a shackled defendant in an American trial demands close scrutiny of the practice. Solemnity and that indefinable but knowable ambiance of evenhanded judicial disinterest and respect for the dignity of individuals are components of a fair trial. Rules will not alone create them but rules can maintain the conditions in which they flourish."

Marquez, 11 F.3d at 1243-44.

Because of the fact that when a defendant is viewed by the jury in handcuffs or shackles, his presumption of innocence is seriously infringed, the Court of Appeals has made it clear in a long line of cases that without sound justification, the law abhors allowing a defendant to be seen by the jury wearing handcuffs or shackles. See Long v. State, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991); Clark v. State, 717 S.W.2d 910, 918-9 (Tex. Crim. App. 1986); Moore v. State, 535 S.W.2d 357, 358 (Tex. Crim. App. 1976) (overruled on other grounds); Gray v. State, 99 Tex. Crim. 305, 268 S.W. 941 (1924).

In Gray, the court stated:

"We desire to make it perfectly plain that we regard a trial with the prisoner in irons as obnoxious to the spirit of our laws and all ideas of justice, and it is only when the record brings the case clearly within one of the rare exceptions that we would consent for a conviction to stand. Before a judge should permit a case to proceed under such circumstances he should be very sure of his ground." 269 S.W. at 950.

Obviously the same prejudicial effect results whether this shackling occurs before the prospective jury in the courtroom, or before the prospective jurors in the media prior to trial. Steps should be taken, then, to close that particular stable door before the horse escapes.

3. Even after the defendant stands as a convicted felon--and the presumption of innocence deserts him--"a jury might view the shackles as first-hand evidence of future dangerousness and uncontrollable behavior which if unmanageable in the courtroom may also be unmanageable in prison, leaving death as a proper decision." Elledge v. Dugger, 823 F.2d 1439, 1450. The Court

527

in Marquez also identified the danger of having the jury view the defendant shackled at the penalty phase of a trial:

> "When the complained of restrain comes only in the sentencing phase of a capital charge, a jury has just convicted of a violent crime.... At the same time, the defendant's life turns on the same jury's answer to the question of future dangerousness, so the risk, although less, is not eliminated. Restraint at trial may carry a message that a defendant continues to be dangerous."
> 11 F.3d at 1244.

4. The accused has the right to be tried without the obvious trappings of dangerous criminality and the perception that the defendant is a dangerous "animal" may not be given by the extensive and obvious security measures of the sheriff's department. The Supreme Court has characterized shackling as an "inherently prejudicial practice." Holbrook v. Flynn, 475 U.S. 560, 106 S. Ct. 1340, 1345, 89 L. Ed. 2d 525, 534 (1986).

> "Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of the technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold."
> Illinois v. Allen, 397 U.S. 337, 344, 90 S. Ct. 1057, 1061, 25 L.

Ed. 2d 353 (1970).

5. When shackling occurs, it must be subjected to "close judicial scrutiny. . . ." Estelle v. Williams, 425 U.S. 501, 503-04, 96 S. Ct. 1691, 1692-93, 48 L. Ed. 2d 126 (1976). Elledge, 823 F.2d at 1451 (footnote omitted) (citing Woodard v. Perrin, 692 F.2d 220, 221 (1st Cir. 1982); Hardin v. Estelle, 365 F. Supp. 39, 47 (W.D. Tex.1973), aff'd on other grounds, 484 F.2d 944 (5th Cir. 1973)).

WHEREFORE, PREMISES CONSIDERED, Mr. Chanthakoummane prays that this Court enter an order that he not be shackled in public.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June _____, 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

ORDER OF THE COURT ON THE DEFENDANT'S
MOTION TO PRECLUDE MR. CHANTHAKOUMMANE
FROM BEING SHACKLED IN PUBLIC

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED


_____ DENIED, to which action the Defendant excepts.


So Ordered on this the ___ day of _____, 200___.



_____
Judge Presiding

530

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR EQUAL ACCESS TO
## BACKGROUND INFORMATION ON PROSPECTIVE JURORS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, defendant in the above-entitled and numbered criminal action, and files this Motion for Equal Access to Background Information on Prospective Jurors. In support the defendant would show the following:

This is a capital murder case. The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

The defendant is indigent and does not have access to private and confidential information gathered by law enforcement agencies regarding arrests and convictions of prospective jurors.

The defendant does not have access to private and confidential information gathered by law enforcement agencies regarding arrests and convictions of prospective jurors.

The prosecution will generally utilize confidential and restricted information regarding arrests, convictions and other data collected by law enforcement agencies.

1

531

Additionally, the prosecution has access to statewide data through N.C.I.C. that would provide them background information on prospective jurors. The defendant does not have access to such information and is specifically prohibited by laws from such access.

The defense also urges this motion on a theory that the prosecution has a state and federal constitutional statutory duty to reveal evidence or information favorable to the defense pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 2.01 of the Texas Code of Criminal Procedure and the principles enunciated in *Brady v. Maryland*, 373 U.S. 83 (1963).

WHEREFORE, PREMISES CONSIDERED, the defendant prays that the court grant this motion and provide the defense with equal access to background information on prospective jurors.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

Steven R. Miears

2

532

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION FOR EQUAL ACCESS TO
## BACKGROUND INFORMATION ON PROSPECTIVE JURORS

BE IT REMEMBERED, that on the _____ day of _____,

200___, came to be considered the defendant's Motion for Equal Access to Background

Information on Prospective Jurors. The court is of the opinion the motion should be in all

things:

GRANTED _____

DENIED _____

_____
Judge Presiding

3

533

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR IN CAMERA INSPECTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-entitled and numbered criminal action, and requests an *in camera* review by the court of the State's file in order to determine whether any exculpatory, mitigating, or impeaching evidence is included therein. In support, the defendant will show the following:

This is a capital murder case. The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

The defendant requests the court to make an *in camera* review of the State's entire file or files in this case in order to determine whether they include evidence which might tend to exculpate the defendant, which might tend to impeach state's witnesses whose credibility is material to the issue of guilt, innocence or punishment, or which might tend to mitigate punishment. The defendant further requests that such evidence be delivered to him through his counsel by the court after the court's *in camera* inspection.

Without regard to whether the court grants the motion for an *in camera* inspection, and without regard to whether the court delivered to the defendant any of the items so requested

1

534

above, the defendant independently requests that the entire file or files of the State be copied by court personnel upon conclusion of the trial, and that the same be sealed in order to become a permanent part of the records of this trial, so that it be available for appellate review.

WHEREFORE, PREMISES CONSIDERED, the defendant prays the court will grant this motion in all things or in the alternative, that this court will set this matter down for a hearing prior to trial on the merits and that at such hearing this motion will be in all things granted, and for such other and further relief to which the defendant may be entitled, in justice or in equity.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June, 2007.

Steven R. Miears

2

535

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## **ORDER**

BE IT REMEMBERED, that on the _____ day of _____, 200___,

came to be considered the defendant's Motion for in Camera Inspections. The court is of the

opinion the motion should be in all things:

GRANTED     _____

DENIED     _____


_____

JUDGE PRESIDING

3

536

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR PRODUCTION OF EVIDENCE
## RELATING TO EXPERT WITNESSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-cause,

by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States

Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this

Motion For Production of Witness Related Evidence, and for good and sufficient cause would

show the Court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty. The Eight Amendment requires a greater

degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore

v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North

Carolina, 428 U.S. 280, 305 (1976).

3. The Defendant has a Constitutional right to confront and cross-examine all witnesses

who testify against him. Impeaching as well as exculpatory evidence is favorable to the accused

under *Brady v. Maryland*, 371 U.S. 812, 83 S. Ct. 56, 9 L. Ed. 2d 54 (1962); *see also, United

States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

537

4. The State, and its prosecutors, should be Ordered (with a continuing duty to disclose newly discovered material previously and here ordered), to furnish defense with, and permit defense to inspect, copy and/or photograph the following information, objects or copies relating to expert and/or medical evidence within the possession, custody, control or knowledge of the prosecution or which by exercise of due diligence may become known to the State:

The identity of each expert witness the State consulted with or intends to call as a witness in the instant matter, including:

(a) name and title;

(b) work address and home addresses (if known);

(d) work and home telephone numbers;

(e) profession or occupation, and the field in which (s)he is allegedly an expert;

(f) a copy of the witnesses' Curriculum Vitae that contains the formal education and training, including the name and address of each school where special education or training was received in this expert's field of expertise; the dates of said education and training; the name or description of each degree (s)he received, including the date when each was received and the name of the school from which received;

(g) membership in any professional or trade association in that field of expertise including the name of each professional or trade association, dates of membership and description of office(s) held;

(h) authorship of any books, papers or articles, including title and subject matter

of book, paper or article, name and address of each item's publisher and each item's date of publication;

(i) licenses to practice in the field of expertise, including the governmental authority by whom licensed, the general requirements that had to be met and how these requirements were fulfilled; and whether any license had ever been revoked or suspended;

(j) employment, including type of practice or work in the field of expertise, names and addresses of employers and/or associates, dates of said employment, positions held and/or duty performed.

The identity of any object, sample or material tested, analyzed or examined by each expert in regard to the instant matter, including as to said test, analysis and/or examination (all three are hereinafter called "exam")

(a) the exam's date;

(b) the exam's location;

(c) the exam's purpose;

(d) the steps or methods employed in said exam;

(e) the information provided by another to the expert prior to said exam;

(f) the identity of any other person(s) assisting in said exam; and

(g) the present location of any samples or materials used in said exam.

The results or conclusions reached by each expert the State consulted or intends to call as a witness in the instant matter, including:

(a) written reports;

(b) oral opinions, including the date thereof and to whom reported; and

(c) all underlying studies, treatises, facts and data which support or tend to not

support the expert's opinions.

5. The amount of compensation provided to each expert consulted or whom the State

intends to call as a witness in regard to this matter; and any written fee agreement concerning

same.

6. In support of said motion, the Defendant respectfully states that the scientific

complexity of the instant case requires that full discovery of medical and scientific facts and

opinions be provided. The prosecution had access and opportunity to perform scientific analysis

prior to counsel's appearance in the case or in some instances, such analysis can no longer be

replicated or reproduced by defense counsel. The defendant requires a complete exposition of

that information prior to the beginning of the introduction of evidence to the jury in the above

case.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that relief be granted as

prayed for herein.

Respectfully submitted,

_____

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418

MOTION FOR PRODUCTION OF EVIDENCE
RELATING TO EXPERT WITNESSES – Page 4

540

Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____, 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION FOR PRODUCTION OF IMPEACHMENT EVIDENCE

BE IT REMEMBERED, that on the _____ day of _____, 200__, came

to be considered the above motion. After consideration of the motion, it is the opinion of the

court that Defendant's motion be:

GRANTED _____

DENIED _____, to which action the Defendant excepts.


_____
Judge Presiding

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

**MOTION TO LIST EXHIBITS TO BE OFFERED
IN BOTH PHASES OF TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-entitled and numbered criminal action, and moves the Court to order the prosecutor to provide him an exhibit list thirty (30) days prior to the beginning of jury selection. In support, the defendant will show the following:

This is a capital murder case. The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

The Defendant would respectfully request this court to instruct the district attorney to list and designate in writing all exhibits he seeks to introduce or attempt to introduce in both phases of the trial of this case thirty (30) days prior to the beginning of jury selection so that defense counsel may have an opportunity to inspect and copy or photograph them prior to trial. If the court does not grant this motion, counsel's ability to provide effective assistance may be jeopardized.

Judicial economy also supports this motion. The court's failure to grant this motion may require a continuance during the trial on the merits.

1

WHEREFORE, PREMISES CONSIDERED, the defendant prays the court will grant this motion in all respects and instruct the district attorney to list and designate in writing any an all exhibits he plans to introduce or attempt to introduce in the trial of this case at both phases and to do so at least thirty (30) days prior to the beginning of jury selection.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

Steven R. Miears

2

544

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## <u>ORDER OF THE COURT ON THE DEFENDANT'S MOTION TO LIST EXHIBITS TO BE OFFERED IN BOTH PHASES OF TRIAL</u>

BE IT REMEMBERED, that on the _____ day of _____, 2007, came to be considered the Defendant's Motion to List Exhibits to be Offered in Both Phases of Trial. After consideration of the motion, it is the opinion of the court that defendant's motion be:

GRANTED _____

DENIED _____ (to which the Defendant excepts).


_____
JUDGE PRESIDING

3

545

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

### MOTION TO DISCOVER THE PORTIONS OF THE DEFENDANT'S STATEMENT WHICH THE STATE INTENDS TO USE AT TIME OF TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KOSOUL CHANTHAKOUMMANE, Defendant herein, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. Code Crim. Proc. art. 1.05, and Rules 1.06 and 1.07, Texas Rules of Criminal Evidence files this Motion to Discover the Portions of the Defendant's Statement Which the State Intends to Use at Time of Trial and in support thereof would show the Court:

1. The Defendant has been indicted by the Collin County Grand Jury for the offense of capital murder. The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

2. The State is in possession of a statement(s) allegedly made by the Defendant.

3. At the trial of this cause, the State will seek to offer into evidence the alleged statement in order to convict the Defendant. Prior to its introduction, the State will, in all probability, seek to edit the alleged statement and redact portions of the statement.

4. In order to afford the Defendant effective assistance of counsel as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Texas Constitution, defense counsel *must know*, prior to trial, what portions of the alleged

546

statements the State will redact. Without knowing, prior to trial, the portions of the statements the State will redact, defense counsel will not be able to adequately prepare his defense to the allegations in the indictment.

5. Defense counsel should be provided with a redacted copy of the statement well in advance of trial.

WHEREFORE, PREMISES CONSIDERED, the Defendant requests that this Motion be sustained and relief granted as prayed for herein.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June, 2007.

Steven R..Miears

547

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION TO DISCOVER THE PORTIONS OF THE DEFENDANT'S
## STATEMENT WHICH THE STATE INTENDS TO USE AT TIME OF TRIAL

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.


_____
Judge Presiding

548

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR PRODUCTION OF EXCULPATORY, IMPEACHMENT AND MITIGATING EVIDENCE

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-entitled and numbered criminal action, files this motion for production of all exculpatory, impeachment and mitigating evidence. In support, the defendant will show the following:

This is a capital murder case. The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

The prosecution has an obligation to produce all evidence which is exculpatory, impeaches one of their witnesses, or mitigates punishment. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); *Kyles v. Whitley*, 514 U.S. 419 (1995). Moreover, the prosecution has an affirmative obligation not to use false testimony. *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). In fact, the prosecutor has an obligation to correct the testimony of a witness when he believes that it was false even if he did not solicit or anticipate the lie. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio*, 405 U.S. at 154.

The defendant specifically requests the court to order the State to produce any

MOTION FOR PRODUCTION OF EXCULPATORY,
IMPEACHMENT AND MITIGATING EVIDENCE – Page 1

549

exculpatory or mitigating evidence, including, but not limited to, evidence suggesting that:

1.  The Defendant had a relationship of any kind with the deceased prior to the date of her death;

2.  Someone other than the Defendant caused the death of Sarah Walker;

3.  That the Defendant did not personally assault Sarah Walker, other alternative suspects identified by law enforcement;

4.  Any evidence impeaching the statements or testimony of any witness;

5.  Any evidence concerning the bad reputation for truth and veracity of any State witness, any immunity agreements with any witness (both express and implied);

6.  Any promises of reward or benefit (express or implied) conferred upon any witness,

7.  The history of drug abuse and mental illness of any witness;

8.  The motive of any witness to lie;

9.  The bias or prejudice of any witness against the defendant;

10. Any evidence suggesting that the defendant is not a future danger;

11. Any evidence that any State or police procedure involved in the investigation of this case or the processing of any evidence was not followed or was deviated from;

12. Any evidence suggesting that the Defendant was offered renumeration by any person for committing the crime made the basis of this prosecution; and

13. Any other exculpatory or mitigating evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

WHEREFORE, PREMISES CONSIDERED, the defendant prays that this motion be

**MOTION FOR PRODUCTION OF EXCULPATORY,**
**IMPEACHMENT AND MITIGATING EVIDENCE – Page 2**

550

granted and that he be given any other relief to which he is entitled.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____, 2007.

Steven R. Miears

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION FOR PRODUCTION OF EXCULPATORY, IMPEACHMENT
## AND MITIGATING EVIDENCE

BE IT REMEMBERED, that on the _____ day of _____,

2007, came to be considered the above Motion For Production of Exculpatory And Mitigating

Evidence. After consideration of the motion, it is the opinion of the court that defendant's

motion be:

GRANTED _____

DENIED _____ (to which the Defendant excepts).


_____
JUDGE PRESIDING


**MOTION FOR PRODUCTION OF EXCULPATORY,**
**IMPEACHMENT AND MITIGATING EVIDENCE – Page 4**

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

### DEFENDANT'S MOTION REGARDING VICTIM CHARACTER/IMPACT TESTIMONY AFTER *MOSLEY V. STATE*

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by and

through his attorneys of record, and files this his Amended Motion Regarding Victim

Character/Impact Testimony After *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998), and

as grounds therefor would show the following:

1. The Court of Criminal Appeals has recently issued a significant opinion on the issue

of victim impact and character evidence. In that opinion, written by Judge Keller, the Court

informs us that:

> "Our jurisprudence in this area has been somewhat inconsistent
> and confusing at times. We take this opportunity to announce a
> consistent, if not always clear-cut rule to be followed in future
> cases: Both victim impact and victim character evidence are
> admissible, in the context of the mitigation special issue, to show
> the uniqueness of the victim, the harm caused by the Defendant,
> and as rebuttal to the Defendant's mitigating evidence. Rule 403
> limits the admissibility of such evidence when the evidence
> predominantly encourages comparisons based upon the greater or
> lesser worth or morality of the victim. When the focus of the
> evidence shifts from humanizing the victim and illustrating the
> harm caused by the Defendant to measuring the worth of the
> victim compared to other members of society then the State
> exceeds the bounds of permissible testimony. We recognize that
> this standard does not draw a bright and easy line for determining
> when evidence concerning the victim is admissible and when it is
> not. Trial judges should exercise their sound discretion in
> permitting some evidence about the victim's character and the
> impact on others' lives while limiting the amount and scope of



2007 JUN 22 PM 1: 03

HANNAH KUHNKE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY _____ DEPUTY

1

such testimony. Considerations in determining whether testimony should be excluded under Rule 403 should include the nature of the testimony, the relationship between the witness and the victim, the amount of testimony to be introduced, and the availability of other testimony relating to victim impact and character. And, mitigating evidence introduced by the Defendant may also be considered in evaluating whether the State may subsequently offer victim-related testimony" *Mosley* 983 S.W.2d 249 (Tex. Crim. App. 1998)

## 2. VICTIMS DEFINED BY INDICTMENT

There are several things this opinion does not do. It does not broaden the right of the State to include victim impact or character evidence about people not named in the indictment. Only those named in the indictment are properly considered as "victims." *See Cantu v. State* 939 S.W.2d 627 (Tex. Crim. App. 1997).

## 3. DISCOVERY AND HEARING NECESSARY

Counsel requests that the State be required to detail, in writing, exactly which witness will testify and the substance of the testimony regarding victim impact. Counsel further requests that the Court conduct a pretrial hearing to evaluate each witness's testimony and demeanor. Only with this pretrial disclosure and hearing can the Court properly engage in the balancing test now required by the Court of Criminal Appeals, and only in that manner can Counsel render effective assistance in deciding whether to waive submission of the mitigation special issue to prevent the State's introducing the victim testimony.

## 4. *BRADY* IMPLICATED

If the State attempts to offer victim impact or character evidence to create a sympathetic picture of the victims, the State is also obligated to disclose, and indeed to discover, any information which is to the contrary. The "anti-victim impact" evidence sought includes

2

conviction and arrest records, problems in school, work or family, and any other character related information which, in fairness, might rebut the good character or impact evidence as offered by the State. This evidence must be disclosed under *Brady v. Maryland,* 373 U.S. 83 (1963).

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Motion be in all things sustained.

Respectfully submitted,

_____
Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June, 2007.

_____
Steven R. Miears

555

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

ORDER OF THE COURT ON THE DEFENDANT'S
MOTION REGARDING VICTIM
CHARACTER/IMPACT TESTIMONY AFTER *MOSLEY V. STATE*

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

4

555

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO PREVENT
## IMPROPER JURY ARGUMENT BY STATE

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by counsel, and pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the UNITED STATES CONSTITUTION, Article 1, Sections 3, 10, 13, 19 and 29 of the TEXAS CONSTITUTION and Articles 1.03, 1.04, 1.05, 38.04 and 38.05 of the TEXAS CODE OF CRIMINAL PROCEDURE and moves the court to Prevent Improper Jury Argument by the State and in support thereof would show:

## I.

## FACTUAL STATEMENT

The Defendant has been indicted for the offense of capital murder and the State is seeking the death penalty. The Eighth Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

## II.

## MOTION AND ARGUMENT

There are four permissible areas of jury argument for the State:

    1) A summary of the evidence;

    2) Discussion of reasonable deductions from the evidence;

557

3) Response to arguments of Defense counsel; and

4) A proper plea for law enforcement.

*Mc Farland v. State,* 845 S.W. 2d 824, 844 (Tex. Crim. App. 1992); *Walker v. State*, 664 S.W.2d 338 (Tex.Crim.App. 1984).

Naturally, any plea for law enforcement must be consistent with the oath that a juror takes pursuant to Article 35.22 of the TEXAS CODE OF CRIMINAL PROCEDURE. That oath requires to juror to ". . .a true verdict render according to the law and the evidence." Accordingly, the Defendnat seeks an Order requiring the State to confine its summation to the areas stated above, and to refrain from any mention whatsoever of the various arguments which have caused appellate courts to reverse convictions. The arguments that the defense seeks to preclude are:

- ▸ Conscience of the community arguments;

- ▸ Personal opinion and vouching for the State's case or its witnesses;

- ▸ Derogatory references to the Defendant;

- ▸ Suggestions that the Defendant has engaged in unproven acts of misconduct;

- ▸ Comments on the Defendant's failure to testify;

- ▸ Improper reasons for conviction;

- ▸ Attacks on the Defendant's defense counsel;

- ▸ Comments on the Defendant's non-testimony courtroom demeanor;

- ▸ Argue, where drug usage is referenced in evidence, the impact of drugs on the community;

- ▸ Comment on witnesses' motives for testifying or failing to testify;

2

558

- Pleas for sympathy for the victims;

- Arguments for a certain punishment;

- Improper legal arguments not supported by the Court's charge;

- Arguments outside the record.

### A.

### "CONSCIENCE OF THE COMMUNITY" ARGUMENTS ARE IMPROPER

It is improper for a prosecutor to argue that the people of the community want or expect a conviction, that there is community pressure or sentiment to convict, or that the jury verdict may or may not meet with public approval. Prohibited argument includes, but is not limited to, the following:

a. That the people are asking the jury to convict the Defendant. *Cox v. State*, 247 S.W.2d 262, 263-64 (Tex.Crim.App. 1952).

b. That the community would want the Defendant sent to prison if the people knew what he had done. *White v. State*, 699 S.W.2d 607, 611 (Tex.Crim.App. 1985) (citing *Prado v. State*, 626 S.W.2d 775 (Tex. Crim. App. 1982).

c. That any particular punishment is required to satisfy the community. *Cortez v. State*, 683 S.W.2d 419, 420-21 (Tex.Crim.App. 1982).

d. Urging the jury to convict or return a verdict of death in order to solve a social problem.

e. Any argument that diverts the jurors from their correct task which is the determination of the proper sentence for the Defendant before them, based

upon his own past conduct.

f.      Inquiring of the jury as to whether or not it has the intestinal fortitude to do its "legal duty" or using similar language that would suggest that the jury has a duty to return any particular verdict or that returning a guilty verdict or sentence of death was doing "its job."

g.      Any argument that is intended to appeal to a jury's partiality.

h.      Any argument that is contrary to the law as charged.

**B.**

## PERSONAL OPINION AND VOUCHING FOR CREDIBILITY OF WITNESSES OR THE STATE'S CASE ARE IMPROPER

It is improper for a prosecutor to express a personal opinion regarding the credibility of the witnesses, the strength of the evidence, the guilt of the Defendant or the appropriate punishment. Prohibited argument includes, but is not limited to, the following:

a.      That the Prosecutor believes that the Defendant is guilty. *Villalobos v. State*, 568 S.W.2d 134 (Tex.Crim.App. 1978).

b.      That the Prosecutor is not paid enough to try to convict an innocent man. *Elizondo v. State*, 545 S.W.2d 453 (Tex.Crim.App. 1976).

c.      That the Prosecutor does not introduce evidence unless he believes it is true. *Robillard v. State*, 641 S.W.2d 910 (Tex.Crim.App. 1982).

d.      That the Prosecutor would not prosecute the Defendant unless the State's witnesses were telling the truth and the Defendant was guilty. *Hickerson v. State*, 286 S.W. 2d 437, 438-39 (Tex.Crim.App. 1956).

e.      That the Prosecutor has personal knowledge regarding the credibility of

the witnesses. *Tinker v. State*, 93 S.W.2d 441 (Tex.Crim.App. 1936).

f.    That the Prosecutor believes that any particular witness was honest or truthful. *Menefee v. State*, 614 S.W.2d 167 (Tex.Crim.App. 1981); *Morris v. State*, 755 S.W.2d 505 (Tex.App. 1988, pet. ref'd).

g.    That police officers are entitled to greater belief than the Defendant because the Defendant has an interest in acquittal, whereas the officers are impartial and only arrest people whom they believe have committed an offense. *Caka v. State*, 302 S.W.2d 939 (Tex.Crim.App. 1957).

h.    That because the jurors are paying the police officers through their taxes and because the city has retained the officers on the payroll that the city must have confidence in their honesty and integrity. *Stearn v. State*, 487 S.W.2d 734, 736 (Tex.Crim.App. 1972) (citing *Woodard v. State*, 368 S.W.2d 623 ( Tex.Crim.App. 1963)).

i.    That police officers are sworn to tell the truth, and did tell the truth. *Puckett v. State*, 330 S.W.2d 465 (Tex.Crim.App. 1959).

j.    That the race, creed or color of any witness should be a factor in assessing his credibility. *Allison v. State*, 248 S.W.2d 142 (Tex.Crim.App. 1952), *Arnold v. State*, 256 S.W.2d 919 (Tex.Crim.App. 1923).

## C.

## DEROGATORY REFERENCES TO THE DEFENDANT
## ARE IMPROPER

It is improper for the prosecution to refer to a defendant by any name other than his given name or nickname, nor by any generic term designed to subject a defendant to personal abuse or suggest that the is "less than human." Prohibited argument includes,

561

but is not limited to, the following:

a.    References to heinous, infamous criminals such as John Dillinger, Clyde Barrow, Lee Harvey Oswald, Jeffrey Dahmer, Ted Bundy, John Wayne Gacy, or any other well known criminal. *Rehm v. State*, 78 S.W.2d 983 (Tex.Crim.App. 1935); *Lee v. State,* 97 S.W.2d 697, (Tex Crim. App. 1936); *Stell v. State,* 711 S.W.2d 746, 748 (Tex. App. 1986, no pet.), *Brown v. State*, 978 S.W.2d 708, 713-714 (Tex.App. 1998) .

b.    Derogatory references such as, but not limited to:

    1)    "cowardly cur." *Jupe v. State*, 217 S.W. 1041 (Tex. Crim. App. 1920);

    2)    "fiend from Hell." *McGrew v. State*, 143 S.W.2d 946 (Tex. Crim. App. 1940);

    3)    "beast." *Marx v. State*, 150 S.W.2d 1014 (Tex. Crim. App. 1941);

    4)    "punk." *Duran v. State*, 356 S.W.2d 937 (Tex. Crim. App. 1962);

    5)    "hippie, anti-Christ and Communist." *Renn v. State*, 495 S.W.2d 922, 924 (Tex. Crim. App. 1973) (overruled on other grounds).

    6)    a thug, a thief and a vagrant." *Martinez v. State*, 332 S.W.2d 718 (Tex.Crim.App. 1960).

    7)    A heathen, animal, or references to the Defendant 's race. *Richardson v. State*, 257 S.W.2d 308 (Tex. Crim. App. 1953).

## D.

## SUGGESTING THE DEFENDANT HAS ENGAGED IN OTHER ACTS OF MISCONDUCT NOT IN EVIDENCE IS IMPROPER

It is improper for a prosecutor to suggest or infer that a defendant has committed

any offense or act of misconduct not in evidence. Prohibited argument includes, but is not limited to, the following:

a. There is a reasonable deduction that the Defendant has previously been arrested or jailed. *Lookabaugh v. State*, 352 S.W.2d 279 (Tex.Crim.App. 1961).

b. That the Defendant earns his livelihood committing the type of offense for which he is on trial. *Walker v. State*, 664 S.W.2d 338 (Tex. Crim. App. 1984).

c. That the evidence raised the inference that the Defendant has committed other crimes similar to the offense on trial. *Melton v. State*, 713 S.W.2d 107 (Tex.Crim.App. 1986); *Rodriguez v. State*, 520 S.W.2d 778 (Tex.Crim.App. 1975).

d. That the State is limited in its ability to introduce evidence regarding the Defendant's background, prior criminal record, juvenile record, or other offenses or acts of misconduct. *Parson v. State*, 652 S.W.2d 616 (Tex.App. 1983, no pet.); *Everett v. State*, 707 S.W.2d 638 (Tex.Crim.App. 1986).

e. That the Prosecutor was prohibited from inquiring about extraneous offenses committed by the Defendant, and was thus limited to asking the State's witnesses the only questions allowed by law. *Robinson v. State*, 701 S.W.2d 895 (Tex.Crim.App. 1985).

## E.

## IT IS IMPROPER TO COMMENT ON THE FAILURE OF THE DEFENDANT TO TESTIFY

563

It is improper for a prosecutor to comment, directly, or indirectly, on a defendant's failure to testify at either stage of the trial. Prohibited argument includes, but is not limited to, the following;

a.    That the motive for the offense has not been revealed because the only person who knows the motive (referring to the Defendant) did not offer one. *Koller v. State*, 518 S.W.2d 373 (Tex.Crim.App. 1975) (overruled on other grounds); *Lee v. State*, 628 S.W.2d 70 (Tex.Crim.App. 1982).

b.    That it has not been contested that the Defendant committed the offense. *Angel v. State* 627 S.W.2d 424 (Tex.Crim.App. 1982).

c.    That there has been no explanation for the offenses. *Myers v. State*, 573 S.W.2d 19 (Tex.Crim.App. 1978).

d.    Where only the perpetrator was in a position to rebut the State's witness or witnesses, that the State's evidence was uncontradicted or that the Defense had presented no evidence to challenge the credibility of a State's witness. *Dubose v. State*, 531 S.W.2d 330 (Tex.Crim.App. 1975); *Pollard v. State*, 552 S.W.2d 475 (Tex.Crim.App. 1977).

e.    That the Prosecutor not refer to or gesture at the Defendant and argue, "There is somebody we have not heard from in this case, and I think you know who it is," or words to that effect. *Hicks v. State*, 525 S.W.2d 177 (Tex.Crim.App. 1975); *Thompson v. State*, 651 S.W.2d 785 (Tex.Crim.App. 1983).

f.    That the Prosecutor not ask rhetorical questions of the Defendant under the guise of argument. *Bird v. State*, 527 S.W.2d 891 (Tex.Crim.App.

1975).

g.    That the Prosecutor not refer to the Defendant's failure to raise any particular defense, followed by references in the first person to the manner in which the Defendant would have articulated that defense. *Cherry v. State*, 507 S.W.2d 549, (Tex. Crim. App. 1974); *Cook v. State*, 702 S.W.2d 597, (Tex. Crim. App. 1984).

h.    That the Defendant has not apologized, expressed remorse, or explanation. *Koller v. State*, 518 S.W.2d 373 (Tex.Crim.App. 1975); *Anderson v. State*, 525 S.W.2d 20, 23 (Tex. Crim. App. 1975); *Johnson v. State*, 611 S.W.2d 649 (Tex. Crim. App. 1981); *Elkins v. State*, 647 S.W.2d 663 (Tex. Crim. App. 1983); *Dickinson v. State*, 685 S.W.2d 320 (Tex. Crim. App. 1984).

**F.**

**IT IS IMPROPER TO ARGUE REASONS TO CONVICT
THAT ARE UNRELATED TO THE CRIME**

It is improper for the prosecutor to argue that a defendant should be convicted for any reason other than that the evidence has established guilt beyond a reasonable doubt. Prohibited argument includes, but is not limited to, the following:

a.    That the Defendant should be convicted because of the rising cost of crime or that conviction would solve any other social ill. *Bridewell v. State*, 114 S.W.2d 259 (Tex.Crim.App. 1938).

b.    That the Defendant can appeal a conviction but the State cannot appeal an acquittal. *Stone v. State*, 751 S.W.2d 579, 586-87 (Tex.Crim.App. 1988) (overruled on other grounds).

c.    That any mistake made would be corrected by an appellate court. *Borgen*

*v. State*, 682 S.W.2d 620 (Tex.App. 1984, no pet.).

d.  That the Defendant would not have hired an attorney unless he was guilty. *United States v. McDonald*, 620 F.2d 559, 564 (5th Cir. 1980).

e.  That if found not guilty, the Defendant will continue to engage in criminal behavior. *Morris v. State*, 755 S.W.2d 505 (Tex.App.1988, pet. ref'd.).

f.  That the jury must "send a message to the community by their verdict. This is contrary to the oath of a juror that requires each of them to render a true verdict according to the law and the evidence. TEX. CRIM. CRIM. PROC. Art. 35.22

## G.

## IT IS IMPROPER TO CRITICIZE
## DEFENSE COUNSEL

It is improper for the prosecutor to argue that defense counsel is subject to criticism for representing persons accused of crime nor criticize counsel's conduct or ethics. Prohibited argument includes, but is not limited to, the following:

a.  That Defense counsel is a mouthpiece for criminals whereas the prosecutor is a public servant paid to represent the people of the community. *Dykes v. State*, 325 S.W.2d 135 (Tex.Crim.App. 1959).

b.  That the Prosecutor is grateful that he represents the people of the community and does not have to make a living representing criminal Defendants. *Bray v. State*, 478 S.W.2d 89 (Tex.Crim.App. 1972).

c.  that the Prosecutor took an oath to seek justice, but no such oath bears on Defense counsel. *Lewis v. State*, 529 S.W.2d 533 (Tex.Crim.App. 1975).

d.  That Defense counsel's duty is to get the Defendant off, even if counsel

has to put on witnesses to lie. *Bell v. State*, 614 S.W.2d 122, (Tex. Crim. App. 1981).

e.    Asking the jury whether, assuming Defendant is guilty, they believe that Defense counsel wants the truth before the jury. *Lewis v. State*, 529 S.W.2d 533 (Tex.Crim.App. 1975).

f.    References to any other criminal cases handled by Defense counsel. *Summers v. State*, 182 S.W.2d 720 (Tex.Crim.App. 1944).

g.    That Defense counsel has manufactured or destroyed evidence or is capable of doing so. *Jones v. State*, 205 S.W.2d 590, 592-93 (Tex.Crim.App. 1947); *Gomez v. State*, 704 S.W.2d 770 (Tex.Crim.App. 1985); *Sunday v. State*, 745 S.W.2d 436, 440 (Tex.App. 1988, pet. ref'd.).

h.    That Defense counsel and the Defendant lied in entering a plea of not guilty. *Lopez v. State*, 500 S.W.2d 844 (Tex.Crim.App. 1973).

i.    That Defense counsel was willing to or did lie to or pull the wool over the eyes of the jury. *Anderson v. State*, 525 S.W.2d 20 ( Tex.Crim.App. 1975); *Everett v. State*, 707 S.W.2d 638 (Tex. Crim. App. 1986).

j.    That Defense counsel did not argue that the Defendant was innocent. *Anderson v. State*, 525 S.W.2d 20 (Tex.Crim.App. 1975).

k.    References to or derogatory comments concerning Defense counsel's strategy, courtroom tactics or ethics, such as suggesting that counsel is shrewd, tricky or acting in bad faith. *Jones v. State*, 205 S.W.2d 590, 592-93 (Tex.Crim.App. 1947); *Cook v. State*, 537 S.W.2d 258 (Tex.Crim.App. 1976); *Fuentes v. State*, 664 S.W.2d 333 (Tex.Crim.App. 1984); *Lopez*

*vs. State*, 705 S.W.2d 296, 298 (Tex.App. 1986, no pet.).

l.      Reference to the fact that Defense counsel made objections during the trial. *Garza v. State*, 160 S.W.2d 926, 928 (Tex.Crim.App. 1942); *Anderson vs. State*, 525 S.W.2d 20, 22 (Tex.Crim.App. 1975); *Fuentes v. State*, 664 S.W.2d 333, 336-37 (Tex.Crim.App. 1984).

m.    That as long as lawyers are for hire, justice is for sale. *Borgen v. State*, 672 S.W.2d 456, 457-58 (Tex.Crim.App. 1984).

## H.

### IT IS IMPROPER TO COMMENT ON COURT PROCEEDINGS OR THE DEFENDANT'S NON-TESTIMONIAL DEMEANOR

It is improper for the prosecutor to comment on rulings of the Court or the Defendant's non-testimonial demeanor. Prohibited argument includes, but is not limited to, the following:

a.     That the State could not introduce certain evidence due to the Defendant's objections. *Lopez vs. State*, 705 S.W.2d 296, 297- 98 (Tex.App. 1986, no pet.).

b.     That the Court's inclusion in the jury charge of a defensive theory or lesser included offense does not mean that the Court believes it. *McClory v. State*, 510 S.W.2d 932 (Tex.Crim.App. 1974); *Dunbar v. State*, 551 S.W.2d 382 (Tex.Crim.App. 1977).

c.     Reference to the Defendant's non-testimonial demeanor in the courtroom. *Reynolds v. State*, 505 S.W.2d 265 (Tex.Crim.App. 1974); *Good v. State*, 723 S.W.2d 734 (Tex.Crim.App. 1986).

## I.

## IT IS IMPROPER TO ARGUE THE LAW IN A MANNER
## CONTRARY TO COURT'S CHARGE

It is improper for the prosecutor to argue the law in a manner contrary to the Court's charge. Prohibited argument includes, but is not limited to, the following;

a.    Any statement of substantive law that is not contained in or is contrary to law or to the Court's charge. *Davis v. State*, 506 S.W.2d 909 (Tex.Crim.App. 1974); *Burke v. State*, 652 S.W.2d 788 (Tex.Crim.App. 1983).

b.    That evidence admitted for a limited purpose be considered for any other purpose. *Sanchez v. State*, 591 S.W.2d 500 (Tex.Crim.App. 1979).

c.    That hearsay can be considered for the truth of the matter asserted. *Girard v. State*, 631 S.W.2d 162, 164-65 (Tex. Crim. App. 1982) (overruled on other grounds).

## J.

## IT IS IMPROPER IN DRUG CASES
## TO ARGUE ABOUT THE IMPACT OF DRUGS ON THE COMMUNITY

It is improper, in a case involving illegal drugs, for the prosecutor to argue about the impact of drugs on the community in any manner not supported by the evidence. Prohibited argument includes, but is not limited to, the following:

a.    That the quantity of drugs possessed was enough to keep someone high for a specified period of time. *Turrentine v. State*, 536 S.W.2d 219 (Tex.Crim.App. 1976).

b.    That on the basis of the quantity of drugs possessed, the Defendant was probably selling drugs. *Turrentine, v. State*, 536 S.W.2d 219

(Tex.Crim.App. 1976).

c.    That drug users also sell drugs. *Hemmeline v. State*, 314 S.W.2d 833 (Tex.Crim.App. 1958).

d.    That the jurors, as citizens, are in some manner responsible for the drug problem in the community. *Morris v. State*, 755 S.W.2d 505 (Tex.App. 1988, pet. ref'd.).

e.    That the Defendant is responsible for the drug problem among young people. *Morris v. State*, 755 S.W.2d 505 (Tex.App. 1988, pet. ref'd.).

f.    That the number of drug dealers in the community would fill any particular location. *Morris v. State*, 755 S.W.2d 505 (Tex.App. 1988, pet. ref'd.).

g.    That any particular percentage of crime in the community is attributable to drugs. *White v. State*, 492 S.W.2d 488 (Tex.Crim.App. 1973).

h.    That the Defendant 's conduct has adversely affected others in the community. *Rodriguez v. State*, 520 S.W.2d 778 (Tex.Crim.App. 1975); *Thomas v. State*, 527 S.W.2d 567 (Tex.Crim.App. 1975).

i.    That Defendant's involvement with drugs is responsible for numerous crimes committed by others to obtain money for drugs. *Person v. State*, 706 S.W.2d 153, 155-56 (Tex.App. 1986, no pet.).

## K.

### IT IS IMPROPER TO COMMENT ON VICTIM OR WITNESS MOTIVES FOR TESTIFYING OR FAILING TO TESTIFY

It is improper for the prosecutor to argue or imply that the Defendant has anything to do with a witness or victim's failure to testify or motive for testifying. Prohibited

argument includes, but is not limited to, the following:

    a.    That the complaining witness is not asking for a conviction because he/she is afraid of the Defendant. *Chambliss v. State*, 200 S.W.2d 1003 (Tex.Crim.App. 1947).

    b.    That absent witnesses are afraid to testify or have been frightened from the courtroom by the Defendant. *Person v. State*, 706 S.W.2d 153 (Tex.Crim.App. 1986, no pet.); *Johnson v. State*, 662 S.W.2d 368, 369-70 (Tex.Crim.App. 1984); *Thomas v. State*, 519 S.W.2d 430, 431 (Tex.Crim.App. 1975).

    c.    That the Defendant did not call certain witnesses because he is afraid that they will incriminate him. *Clary v. State*, 140 S.W.2d 456 (Tex.Crim.App. 1940).

    d.    That the Defendant has been courting the witnesses in order to gain favorable testimony. *Clary v. State*, 140 S.W.2d 456 (Tex.Crim.App. 1940).

    e.    Inviting the jury to speculate as to why co-defendants were not called by the Defendant to testify, and on what the co-defendant's testimony might have been. *Berryhill v. State*, 501 S.W.2d 86 (Tex.Crim.App. 1973).

## L.

## SYMPATHY FOR THE VICTIM'S FAMILY

It is improper for the prosecutor to make improper pleas for sympathy and from speculating on the future plight of the victim's children or family members. Prohibited argument includes, but is not limited to, the following:

a. That the victim's children will no longer receive Christmas of Birthday gifts from their deceased parent. *Clary v. State*, 140 S.W.2d 456 (Tex.Crim.App. 1940).

b. A plea for an abandonment of objectivity or for consideration of the expectations of the victim's family. *Stahl v. State*, 749 S.W.2d 826 (Tex.Crim.App. 1988).

## M.

### PLEAS FOR A CERTAIN PUNISHMENT ARE IMPROPER

It is improper for the prosecutor to argue for imposition of the maximum sentence based on comparisons to what other defendants have received for the same or similar crimes, or that anything less than the maximum penalty would be insufficient. Prohibited argument includes, but is not limited to, the following:

a. That giving the Defendant probation or anything less than the maximum sentence is the same as excusing Defendant for his actions or letting him off the hook. *Morris v. State,* 755 S.W.2d 505 (Tex.App.1988, pet. ref'd.).

b. That there is no reason why this Defendant should not be dealt with the same as other defendants who were tried and convicted for the same or a similar crime. *Johnson v. State*, 158 S.W.2d 313 (Tex.Crim.App. 1942).

## N.

### IT IS IMPROPER TO ARGUE OUTSIDE OF THE RECORD

It is improper for the prosecution to make statements during closing argument that go outside of the record to evidence not presented at trial. Prohibited argument includes,

but is not limited to, the following:

a.     To improperly call upon the jury to speculate as to other activities of the accused, not shown by the evidence nor can be inferred from the evidence, and to consider them in reaching a decision. *Walker v. State*, 664 S.W.2d 338 (Tex.Crim.App. 1984).

b.     To persuade the jury that the Defendant is responsible for more than just the offense alleged in the indictment and to convict him on that basis. *Melton v. State*, 713 S.W.2d 107 (Tex.Crim.App. 1986).

c.     Injecting new facts, either directly or by inference, such as implying to the jury that Defendant has been involved in criminal proceedings as a juvenile and emphasizing that the prosecution can only show in evidence final convictions of the accused as an adult. *Parson v. State*, 652 S.W.2d 616 (Tex.Crim.App. 1983, no pet.).

d.     That time in prison will do the Defendant some good, such as give him the opportunity to receive a college degree or to continue his education, and will ultimately make him a more productive member of society. *Alejandro v. State*, 493 S.W.2d 86 (Tex.Crim.App. 1973).

e.     Using hypothetical or rhetorical questions to imply that other evidence exists which was not admitted into the record, and inviting the jury to speculate on what that evidence may be. *Berryhill v. State*, 501 S.W.2d 86 (Tex.Crim.App. 1973).

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant this motion in its entirety and enter an Order precluding the

prosecution from engaging in the following improper jury arguments in this case:

a)  Conscience of the community arguments;

b)  Personal opinion and vouching for the State's case or its witnesses;

c)  Derogatory references to the Defendant;

d)  Suggestions that the Defendant has engaged in unproven acts of misconduct;

e)  Comments on the Defendant s failure to testify;

f)  Improper reasons for conviction;

g)  Attacks on the Defendant s defense counsel;

h)  Comments on the Defendant s non-testimony courtroom demeanor;

i)  Argue, where drug usage is referenced in evidence, the impact of drugs on the community;

j)  Comment on witnesses' motives for testifying or failing to testify;

k)  Pleas for sympathy for the victims;

l)  Arguments for a certain punishment;

m)  Improper legal arguments not supported by the Court's charge;

n)  Arguments outside the record.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

574

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the

22 day of _June_, 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFNDANT'S MOTION
## TO PREVENT IMPROPER JURY ARGUMENT BY STATE

On this day came on to be heard the foregoing Motion, and after due consideration, the Court is of the opinion, and it is hereby ORDERED, that the Defendant's requests are:

_____ GRANTED

_____ DENIED, to which the Defense excepts.

SIGNED this the _____ day of _____, 2007.

_____
JUDGE PRESIDING

576

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR IDENTIFICATION HEARING OUTSIDE PRESENCE OF JURY AND MOTION TO SUPPRESS TESTIMONY RESULTING FROM HYPNOSIS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-entitled and numbered criminal action, moves for a identification hearing outside the presence of the jury. In support, the defendant would show the following.

The Defendant, prior to the introduction of any testimony in this criminal action, advised the court the he objects to the introduction of any testimony from any witness in this case concerning any purported identification of the defendant by a witness until such time as the court has conducted a hearing out of the presence of the jury to determine what pre-trial identification procedures were followed by the Police Department or by any of the witnesses to determine:

Whether or not the defendant's right to counsel under the Sixth Amendment and the Fourteenth Amendment of the Constitution of the United States has in any way been violated, and

Whether or not any in-court identification by any witness has been in any way unfairly influenced by any police officer, hypnotist or anyone else in violation of the Due Process Clause of the Fourteenth Amendment.

The defendant would further object to the introduction of any hearsay evidence of identification by any witness from any third party witness who may have been present at any line-up proceeding or photograph identification proceeding on the basis that the evidence would be hearsay and on the basis as set out above.

1

577

The defendant further objects to any evidence of any identification of the Defendant, either by photograph or in a line-up in that said evidence would not be admissible as it would have been obtained:

In violation of the Defendant's right to counsel under the Sixth and Fourteenth Amendments of the Constitution of the United States of America, there being no waiver of counsel; and

The introduction of said testimony would be cumulative and would serve only to bolster a witness whose identification of the defendant has not been impeached by showing contradictory testimony as to the identification of this defendant.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays the court will grant this motion, excuse the jury and hear evidence of any pre-trial identification procedure involving any of the identification witnesses and any police officer who has investigated same. The Defendant also respectfully requests leave of this court to refer to this motion during the trial of this cause so as to avoid the necessity of repeating the foregoing objection in the presence of the jury.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June, 2007.

_____
Steven R. Miears

3

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## **ORDER**

BE IT REMEMBERED, that on the _____day of _____, 2007,

came to be considered the defendant's Motion for Identification Hearing Outside Presence of

Jury and Motion to Suppress Testimony Resulting from Hypnosis.  The court is of the opinion

the motion should be in all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.


_____
JUDGE PRESIDING

4

580

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE RESULTING FROM SAME

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, and

pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1,

sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. Code Crim.

Proc. art. 28.01 and respectfully requests the Court to hold a hearing, in advance of the trial, on

the admissibility of:

(a) statements made by the Defendant;

(b) acts that are tantamount to statements made by the Defendant;

(c) statements made in the presence of the Defendant which Defendant did not deny in

response; or

(d) any physical items, statements or witnesses obtained as a result of same, or

evidence/testimony discovered from same. In support of this Motion, Defendant respectfully

shows the Court as follows:

1. Defendant makes this request based upon the Constitutional provisions cited above

and Tex. Code Crim. Proc. art. 38.21, 38.22 and 38.23 and the requirements of *Jackson v.*

*Denno*, 378 U.S. 368, as well as the doctrine of the fruit of the poison tree of *Wong Sun v. United*

*States*, 371 U.S. 471 (1963).

581

2. Defendant further alleges that at the time of various conversations with certain police officers, the Defendant was either under arrest or substantially deprived of Defendant's freedom by the attendant conduct of the officers and the surrounding circumstances.

3. In addition, Defendant would show that said statements and/or acts were the fruit of illegal arrest and/or search and seizure, and are therefore inadmissible.

4. This motion is sought by the defendant as a continuing motion to suppress any and all statements or acts. It is sought to suppress evidence as the same exists at the time of the hearing on this motion to suppress, or at any time during trial when evidence appears, subsequent to the initial suppression hearing, to be the subject of this motion. Defendant moves this honorable court to consider this motion as continuing from the date of filing to the time this case is finally concluded.

5. Defendant further requests the Court to instruct the District Attorney and his assistants to ask no questions in the presence of the jury concerning:

> (a) statements made by the Defendant;
>
> (b) acts or the failure to act that may be considered tantamount to statements made by the Defendant; and
>
> (c) statements made in the presence of Defendant which he did not deny in response, whether oral or written, or whether incriminating or exculpatory until hearing has been given the Defendant with findings of fact and conclusions of law made by this Court.

6. It is further urged, that this hearing be held prior to the empaneling of the jury. The jury would not then be needlessly idle during the time that this Motion would be heard outside the presence of the jury. This reasoning was endorsed by the Court of Criminal Appeals in *Martinez v. State*, 437 S.W.2d 842 in a parallel suppression situation.

7. Furthermore, a hearing on this Motion in advance of trial will avoid misleading and potentially harmful *voir dire* regarding the prospective jurors' attitudes toward a confession that may found to be inadmissible.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that this Motion be in all things granted, and that a hearing be conducted prior to trial on the admissibility of any statements by Defendant, at the conclusion of which, such statements by Defendant be found to be inadmissible.

Respectfully submitted,


Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June , 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE RESULTING FROM SAME

On this day came on to be heard the foregoing Motion, and after due consideration, the Court is of the opinion, and it is hereby ORDERED, that the Defendant's requests are:

_____ GRANTED


_____ DENIED, to which the Defendant excepts.


SIGNED this the _____ day of _____, 2007.


_____
JUDGE PRESIDING

585

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR RULE 702/705 HEARING

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-styled and numbered cause, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. Code Crim. Proc. arts. 39.14 (a) and (b) and Tex. R. Evid. 104, 702, 703 and 705, and respectfully shows this Honorable Court as follows:

1. The Defendant has been indicted by the Collin County grand jury for the offense of capital murder.

2. The State is seeking the death penalty.

3. The Defendant anticipates that during trial of this case the State will call one or more witnesses who will offer opinions that are either scientific in nature or are based upon personal training or experience. The admissibility of such opinions is governed by Tex. R. Evid. 702, 703, 705 and *Daubert v. Merrell Dow Pharms.*, 113 S. Ct. 2786 (1993), *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999), *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) and *Jordan v. State*, 928 S.W.2d 550 (Tex. Crim. App. 1996) and *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998) (overruled in part on other grounds).

1

2007 JUN 22 PM 1: 03

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS

BY _____ DEPUTY

586

4. The proponent of scientific evidence bears the burden of demonstrating by clear and convincing evidence that the evidence is reliable. This is accomplished by showing: (1) the validity of the underlying scientific theory; (2) the validity of the technique applying the theory; and (3) proper application of the technique on the occasion in question. *Kelly*, 824 S.W.2d at 573.

Prior to the offer of scientific evidence, the trial court must conduct a hearing outside the presence of the jury to determine whether the proponent has established all three criteria. This pre-admission determination is required whether the science at issue is novel or well established. *Jackson v. State*, 17 S.W.3d 664 (Tex. Crim. App. 2000).

5. The United States Supreme Court has said:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 113 S. Ct. at 482;

6. This Court must find that the opinion evidence is not only reliable, but that it is relevant under Tex. R. Evid. 401, that it meets the standard set in Rule 702 and that it "assists the trier of fact [in] understanding the evidence [in] determining a fact in issue." If the trial judge finds the proposed expert testimony meets both the Rule 401 and Rule 702 requirements, then the judge must perform a Rule 403 analysis to determine whether

2

the evidence should, in fact, be presented to the jury. *Morales v. State*, 32 S.W.3d 862 (Tex. Crim. App. 2000) at page 6. This Court is the "gatekeeper" that must screen expert testimony for scientific reliability. Evidentiary reliability is based on scientific validity. *Jordan*, 928 S.W.2d at 6.

7. The Texas Court of Criminal Appeals, identified the following factors that the trial judge could consider in performing its "gatekeeper function":

(a) the extent to which the underlying scientific theory and technique are accepted, as valid, by the relevant scientific community, if such a community can be ascertained;

(b) the qualifications of the expert(s) testifying;

(c) the existence of literature supporting or rejecting the underlying scientific theory and technique; specifically, this Court should be provided citations to empirical studies supporting the opinion and citations to articles or chapters in scientific treatises or journals supporting the opinion.

(d) the potential rate of error of the technique;

(e) the availability of other experts to test and evaluate the technique;

(f) the clarity with which the underlying scientific theory and technique can be explained to the court;

(g) the experience and skill of the person(s) who applied the technique on the occasion in question.

*Kelly*, 824 S.W.2d at 573.

8. Should the Court determine that the testimony to be offered is in a field of science that is based upon experience and training, as opposed to a scientific method, the

3

Court's review of the reliability of the science is even more important and the Court must find:

> (a) whether the field of expertise is a legitimate one;
>
> (b) whether the subject matter of the expert's testimony is within the scope of that field; and
>
> (c) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field.
>
> *Nenno*, 970 S.W.2d at 561.

9. The Court of Criminal Appeals in *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App.1998) said that not only were the criteria described in *Kelly* (peer review, rate of error, etc.) not categorically ruled out when reviewing the reliability of opinions based on "soft science" but in addition, the Court listed the following **additional** criteria for the trial court to consider:

> (i) interviews conducted by the witness while in the field in which he is to express an opinion;
>
> (ii) the facts of the cases in which he conducted those interviews;
>
> (iii) statistical research performed in the field in which the witness is to express an opinion. Specifically, the witness should provide to the Court data collected by the witness or those under his or her supervision and provide the data collection instruments that were used, the data collection procedures and the statistical analysis applied to the data in forming the opinion to be proffered.

10. The United States Supreme Court has held that the reliability standard announced in *Daubert* applies to all expert testimony regardless of whether it is scientific expert testimony or

4

clinical opinion expert testimony. *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999). All

of the material that is sought by this motion is relevant to reliability of opinions based upon "soft

or hard science" testimony. The Supreme Court of Texas has held that *Daubert*, and therefore

*Robinson*, applies to all expert testimony–"Whether the expert would opine on economic

valuation, **advertising psychology** (emphasis added), or engineering, application of the *Daubert*

factors is germane to evaluating whether the expert is a hired gun or a person whose opinion in

the courtroom will withstand the same scrutiny that it would among his professional peers."

*Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 725 (Tex. 1998) (affirmed in part and

reversed in part).

11.   So as to aid the Court in its "gatekeeping" function to determine the reliability of

the offered opinion, the State should be required to provide the Defendant and the Court, at least

twenty (20) days prior to the Daubert hearing , the following:

>  (a) a concise and specific statement of each expert opinion the State intends to
>  introduce at trial;
>
>  (b) the name, address and curriculum vita of each witness the State intends to
>  qualify as an exert in order to present such testimony;
>
>  (c) all literature supporting or rejecting the underlying theory, methodology or
>  technique used or relied upon by each State witness that will provide opinion
>  testimony at trial. This information will allow the Court to determine if the
>  relevant theory, methodology or technique has been subjected to review by the
>  witnesses's peers and if the purported science is generally accepted in the field.
>
>  (d) the results of any tests that have been performed on the science or

5

methodology relied upon by each State witness that will provide opinion testimony at trial. This information will allow the Court to determine if the basis for the opinion has been or can be subjected to testing to determine its reliability;

(e) the names of each case about whom a witness to be called by the state has expressed an opinion in the past and the opinion expressed as to each by the State's witness. This information will allow the Court to determine if a known or potential rate of error exists;

(f) a listing of any standards that control the technique or methodology used to arrive at any opinion that may be expressed at trial. This will allow the Court to determine if there is an accepted protocol for gathering relevant information and interpreting that information in arriving at an opinion;

(g) the qualifications that allow the witnesses to form and express the opinions. This will allow the Court to determine if the opinion of the witness is based on scientific knowledge and training or is merely an opinion based on personal belief, bias or prejudice.

(h) a list of each interview conducted by the witness while in the field in which he is to express and opinion;

(i) the facts in each of the cases in which he conducted those interviews;

(j) statistical research performed in the field in which the witness is to express an opinion with supporting documentation as outlined in Paragraph 9 (iii) above.

12. In *Nenno* the court said: "To the extent that a fact finder could decide that the absence of peer review casts doubt on the credibility of the testimony, such affects the weight of the evidence rather than its admissibility." *Nenno*, 970 S.W.2d at 562. If some of the described

6

material goes to the weight that a jury should give the testimony, as is stated in *Nenno*, then it should be provided to the Defendant as impeachment material under *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481. In addition and as provided for in Tex. C. Crim. Proc. Art. 39.14(a), counsel for the Defendant should be given the opportunity to not only examine, but to copy any documents that are provided to the Court pursuant to its Order.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this Court will:

(1) Order the State to provide to the Court those documents that have been identified in this motion as being important to the Court's "gatekeeping" function;

(2) Order that counsel for the Defendant be allowed to photocopy each of the documents, if any, produced by the State in support of the witness's opinion testimony;

(3) Order that this matter be set for a pre-trial hearing at which the State be required to establish, under the cited authority, the reliability of any opinions that are to be offered at trial;

(4) Order that this hearing be set sufficiently in advance of trial so that the accused can arrange for necessary rebuttal testimony should any of the State's opinion testimony be found to be scientifically reliable and helpful to the trier of fact; and

(5) Such other and further relief to which the Defendant, or his counsel, may show himself to be entitled.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main

7

Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June _____, 2007.

_____
Steven R. Miears

8

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION FOR RULE 702/705 HEARING

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.

_____
Judge Presiding

9

594

CAUSE NO. 380-82629-06

THE STATE OF TEXAS

vs.

KOSOUL CHANTHAKOUMMANE

IN THE DISTRICT COURT OF

COLLIN COUNTY, TEXAS

380TH JUDICIAL DISTRICT

## MOTION FOR BIFURCATION PUNISHMENT HEARING AND RIGHT TO OPEN AND CLOSE IN PUNISHMENT PHASE

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now the Defendant, KOSOUL CHANTHAKOUMMANE, by and through his attorneys of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. R. Crim.P. Art. 28.01 makes this his Motion to Bifurcate the Punishment Phase and Close Arguments on Special Issue #2 (or #3) - Mitigation and as grounds therefor would show the Court the following:

1. The Defendant has been indicted for capital murder.

2. The state is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact finding than would be true in a noncapital case. <u>Gilmore v. Taylor</u>, 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306 (1993) and <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305 (1976).

3. Tex. C.Crim.P. Art. 37.071(2)(a)(1) provides:

" If a defendant is tried for a capital offense in which

the state seeks the death penalty, on a finding that the
defendant is guilty of a capital offense, the court shall
conduct a separate sentencing proceeding to determine
whether the defendant shall be sentenced to death or
life imprisonment."

The legislature does not preclude this court from bifurcating the punishment phase
according to the Special Issues to be considered by the jurors.

The same section goes on to say:

In the proceeding, evidence may be presented by the
state and the defendant or the defendant's counsel as
to any matter that the court deems relevant to sentence,
including evidence of the defendant's background or
character or the circumstances of the offense that mitigates
against the imposition of the death penalty. (emphasis added).

This section does not authorize the offer of evidence that militates in favor of the death penalty
unless the court finds it is otherwise relevant to sentence.

4. The United States Supreme Court has held that any fact, other than a prior conviction, that
raises the level of punishment above the statutory maximum must be submitted to a jury and
proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Court
later held that the rule in Apprendi was applicable to death penalty cases. *Ring v. Arizona*, 122
S.Ct. 2428 (2002). In response to the rule in *Apprendi/Ring*, the Texas Court of Criminal
Appeals held that death is the maximum punishment under Section 19.03 of the Texas Penal
Code. *Allen v. State*, 108 S.W. 3d 281 (Tex.Crim.App. 2003). As Tex.C.Crim.P. Art. 37.071

already requires the "future danger" issue to be found by a jury beyond a reasonable doubt, the statute complies with the 8th Amendment dictate in *Apprendi* and *Ring*.

The Texas Court of Criminal Appeals (CCA) then reasoned that as the mitigation issue required by Tex.C.Crim.P. Art. 37.071§2.3(e)(1), involves the finding of a fact (i.e. is there a sufficient mitigating circumstance that would justify a sentence of life, rather than death) that can only lower the punishment from death to life.) The defendant is already "death eligible" at the time that the mitigation issue is considered, therefore the response to mitigation cannot raise the level of punishment. *Blue v. State*, 125 S.W.3d. 491 (Tex.Crim.App. 2003). The CCA continues to ignore the fact that should the jurors be unable to agree upon the answer to the mitigation issue, the court must sentence the defendant to life in prison as required by Tex.C.Crim.P. Art. 37.071§2(4)(g). As the defendant is guaranteed a life sentence until all special issues are answered, a "NO" answer to the mitigation issue will, in fact, raise the punishment to death.

*Apprendi,* and *Ring* suggest that the "mitigation issue" is incorrectly worded under Apprendi/Ring. Accordingly, the state should be assigned the burden to negate the existence of a sufficient mitigating circumstance that would justify a sentence of life.

The Supreme Court followed its decision in *Ring* with *Blakely v. Washington*[1], which calls into question the CCA's analysis. *In Blakely*, the majority opinion written by Justice Antonin Scalia held that the "maximum sentence " for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.[2]

In Texas, the maximum that a judge may impose in a capital case, "solely based upon the basis

---

[1] 124 S.Ct. 2531 (2004).

[2] *Id* at 2537.

of the facts reflected in the jury verdict or admitted by the defendant" is life in prison. [3]

In spite of the Supreme Court's ruling in *Blakely*, the CCA has sought to circumvent the obvious mandate of the Apprendi line of cases. In *Perry v. State*, No. AP-74,591 (12-15-04) the CCA considered the impact of *Blakely* on *Apprendi/Ring* and said:

> "It is, therefore, clear that what a jury is asked to decide in the
> mitigation special issue is not a '[fact] legally essential to the punishment.'
> See *Blakely*, U.S. at 124 S.Ct. at 2531 (*Apprendi* holds that every
> defendant has the right to insist that the prosecutor prove to a jury all
> facts legally essential to the punishment); *Blue*, 124 S.W.3d at 501
> (by the time jury reaches the mitigation special issue, the State has already
> demonstrated this defendant's eligibility for a death sentence). By the
> time the jury reaches the mitigation special issue, the prosecution
> has proven all aggravating "facts legally essential to the punishment.
> See *Blakely*, 124 S.Ct. 531 (2004); *Tuilaepa*, 512 U.S. at 971`-75. This Court's
> decisions in cases such as *Blue* are consistent with *Apprendi, Ring* and *Blakely*."

5. Accordingly, the CCA is saying that the jury's response to the mitigation issue is not essential to punishment. This same Court has said that it does not violate the Constitutions of the United States nor the State of Texas to impose the burden of proof on the defendant. *Ladd v. State*, 3 S.W. 3d 547, 573-74 (Tex.Crim.App. 1999). There is therefore no reason to conduct a phase of the trial where the parties offer evidence on issues that are both essential (future danger) and non-essential (mitigation). This is particularly true where the state has the burden on the future danger issue and (although unassigned by statute) the defendant has the burden on the mitigation issue. This burden is clearly on the defendant in that he/she has to convince each juror that there

---

[3] Tex. Pen. D.§12.31(a) and Tex.C.Crim.P. art. 37.071

is at least a sufficient mitigating circumstance to justify a sentence of life. There is nothing in the cited opinions (nor in Tex.C.Crim. P. Art. 37.071) that would prohibit this court from bifurcating the punishment phase of the trial. The punishment phase would proceed as follows:

(a) In a separate proceeding following a jury's finding the defendant guilty of capital murder, "evidence may be presented by the state and the defendant or the defendant's counsel as to any matter that the court deems <u>relevant to sentence</u>, including evidence of the defendant's background or character or the circumstances of the offense that <u>mitigates against</u> he imposition of the death penalty."[4] After the jury has heard this evidence, the jury would retire to deliberate and would consider "<u>all evidence admitted at the guilt or innocence stage and the punishment state, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty</u>"[5] It should be noted that the evidence that the jury is to consider, outlined above, is applicable only to their deliberations on the "future danger" issue and the "anti-parties" issue, not the mitigation issue.[6]

(emphasis added).

(b) After hearing evidence on the issue of the probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, should the jurors answer "NO" to the "future danger" issue, the defendant would be sentenced to life. Should the jurors answer "YES", then a separate proceeding (the mitigation phase) would follow where the defendant would offer any evidence that would justify a sentence of life.[7] Again, if this issue were to be worded correctly, the burden would be on the state to negate the existence of any circumstance that would justify a sentence of life. The Defendant also asserts there should

---

[4] Tex.C.Crim.P. Art. 37.071§2.

[5] *Id.* Art. 37.071§2(d)(1)

[6] *Scheanette v. State*, 144 S.W. 3d 503 (Tex.Crim.App. 2004).

[7] *Tennard v. Dretke*, 124 S.Ct. 2562 (2004).

<u>MOTION IN LIMINE, FOR BIFURCATION AND RIGHT TO OPEN AND CLOSE IN PUNISHMENT PHASE</u> – Page 5

be a bifurcated sentencing hearing so that the Defendant can make a rational and voluntary decision on whether to present any mitigating evidence at all. The CCA has held that the Defendant may preclude the admission by the Sate of victim impact evidence by waiving the mitigation issue. Victim impact and character evidence is relevant only to the mitigation issue and not the future dangerousness issue.[8]

The Defendant is forced to make the decision without the benefit of knowing whether the State has met its burden of proof on the future dangerousness issue. Such a dilemma could and does impact the Defendant's right to waive his Fifth and Sixth Amendment rights to remain silent and his right to present witnesses in his favor. The Defendant should not be required to decide whether to give up one constitutional right in order to assert another. The Defendant may very well decide to claim his right to remain silent and put the State to its burden of proving he will be a future danger beyond a reasonable doubt. If the jury does so find, then the Defendant may wish to invoke the mitigation issue wherein the State has no burden of proof and testify in his own behalf.

## MOTION TO CLOSE THE ARGUMENT ON THE MITIGATION ISSUE

1. Although there is no mandate for the procedure under Tex. C. Crim P. Art. 37.071, the State is generally permitted to make the concluding argument to the jury. The only justification for this procedure is the fact that the State has the burden of proof on the "Future Dangerousness" issue and the "Anti-Parties" issue, if applicable.

2. Tex. C. Crim. P. Art 36.07, "Order of Argument," recognizing that the State does have the burden on guilt/innocence issues, provides that the State's Counsel shall have the right to make the concluding address to the jury. This is presumably referring to the guilt/innocence phase of

---

[8] *Mosley v. State*, 983 S.W. 2d 263-264 (Tex. Crim. App. 1998).

MOTION IN LIMINE, FOR BIFURCATION AND RIGHT TO OPEN AND CLOSE IN PUNISHMENT PHASE – Page 6

the trial, but in any event, this article has no application to the trial of a capital case that is governed by the Art. 37.071.

3. Tex.C.Crim.P. Art. 36.01 that describes the "Order of Proceeding in Trial" does not specify the order of argument for the punishment phase of the trial. Tex.C.Crim.P. Art. 37.071 governs the procedure in a capital case. The only reference to the order of argument is contained in Art. 37.071(2) which provides:

> "The state and the defendant or the defendant's counsel shall be
> permitted to present argument for or against sentence of death."

This places the argument of defense counsel as the concluding argument.

4. Allowing the State to conclude the argument in the penalty phase cannot be justified by the rationale that the "State has the burden" on the mitigation issue. Although Art 37.071 (2)(c) does place a burden of "beyond a reasonable doubt" as to the future dangerousness and anti-parties issue, the state has no such burden with respect to the mitigation issue described in Art. 37.071(2) (e)(1). In fact, the burden of proof is impermissibly shifted to the defendant.

The importance of being able to respond to the final arguments of the State, regarding whether or not there is sufficient mitigation in defendant's case, cannot be overstated. Defendant's counsel makes this request in order to provide the defendant with effective assistance of counsel as guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution and Articles I, Section 3,10, 15 & 19 of the Texas Constitution.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that he be granted the following relief:

(1) the punishment phase of this trial be bifurcated between evidence, argument and deliberation on the future danger issue and the mitigation issue;

(2) the defendant be given the right to open and close the argument on the mitigation issue;

(3) evidence of victim impact evidence be precluded, including rebuttal, from the punishment hearing of the trial and offered only at a formal sentencing of the defendant, after verdict;

(4) during the mitigation phase of the punishment hearing, the state be precluded from offering any evidence, including rebuttal, that militates in favor of a verdict of death;

(5) and that he have such other and further relief to which he may show himself to be entitled.

Respectfully submitted on this the _____ day of_____, 2007.

_____
STEVEN R. MIEARS
State Bar No. 14025600
211 North Main
P.O. Box 736
Bonham, TX 75418
903-640-4963
903-640-4964 FAX
stevenmiears@msn.com

KEITH GORE
State Bar No. 24002164
2301 W. Virginia Parkway

MOTION IN LIMINE, FOR BIFURCATION AND RIGHT TO OPEN AND CLOSE IN PUNISHMENT PHASE – Page 8

602

McKinney, TX    75071
972-670-6288

COUNSEL FOR THE DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER ON DEFENDANT'S MOTION FOR BIFURCATION PUNISHMENT HEARING AND RIGHT TO OPEN AND CLOSE IN PUNISHMENT PHASE

BE IT REMEMBERED, that on the _____ day of _____,

2007, came to be considered the above Motion for Bifurcation Punishment Hearing and Right to

Open and Close in Punishment Phase. After consideration of the motion, it is the opinion of the

court that defendant's motion be:

GRANTED     _____

DENIED     _____, to which the Defendant excepts.


_____
JUDGE PRESIDING