HP 75 174

TRIAL COURT CAUSE NO: 380-81972-07
A REINDICTMENT OF NO: 380-82629-06

IN THE 380TH DISTRICT COURT
OF COLLIN COUNTY, TEXAS,
HONORABLE CHARLES SANDOVAL JUDGE PRESIDING

KOSOUL CHANTHAKOUMMANE

APPELLANT

VS.

THE STATE OF TEXAS

APPELLEE

**FILED IN**
**COURT OF CRIMINAL APPEALS**

FEB 2 6 2008

**Louise Pearson, Clerk**

APPEALED TO THE
COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS

ATTORNEY FOR APPELLANT:
NAME:  C WAYNE HUFF
ADDRESS: P O BOX 2334
         BOERNE   TX  78006-2334
TELEPHONE: (214)803-4127
FAX NO: (830)230-5567
SBOT NO: 10180600

ATTORNEY FOR APPELLEE:
NAME:    JOHN R ROACH
ADDRESS: 2100 BLOOMDALE RD
         MCKINNEY TX 75069
TELEPHONE:   (972) 548-4323
FAX NO:      (972) 548-4388
SBOT NO:     90001601

DELIVERED TO THE COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS
ON THE 13TH DAY OF FEBRUARY 2008

SIGNATURE OF CLERK: Carolyn McCarley
NAME OF CLERK:  CAROLYN MCCARLEY
TITLE: DEPUTY CLERK

APPELLATE COURT CAUSE NO. AP-75,794

FILED IN THE COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS

ON THE_____DAY OF_____20___.

_____, CLERK

BY_____,DEPUTY

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | IN THE DISTRICT COURT OF |
| vs. | COLLIN COUNTY, TEXAS |
| KOSOUL CHANTHAKOUMMANE | 380TH JUDICIAL DISTRICT |

## DEFENDANT'S MOTION TO VIDEOTAPE THE INDIVIDUAL VOIR DIRE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant, KOSOUL CHANTHAKOUMANNE, by and through his attorneys of record, STEVEN R. MIEARS and KEITH GORE, and moves this Honorable Court to videotape the individual voir dire and make the tapes part of the record on appeal. In support of this motion, the Defendant will show:

I.     The Defendant "has a statutory and constitutional right to an 'adequate' appellate record at (the) state's expense" because he is indigent. *Dunn v. State*, 733 S.W.2d 212, 214 n.3 (Tex.Crim.App. 1987) (emphasis added).



II.     An adequate record includes a complete record of the voir dire. *Austell v. State*, 638 S.W.2d 888, 890 (Tex.Crim.App. 1979).

III.     The record of the individual voir dire will be incomplete and inadequate if it is not videotaped.

IV.     An appeal of an adverse ruling on a *Batson* objection may turn on whether the attire or haircut of one juror was different from the attire or haircut of other venire persons. See e.g. *Woods v. State*, 801 S.W.2d 932, 936-37 (Tex.App. – Austin 1990); *Vann v. State,* 788 S.W.2d 899, 903-05 (Tex.App. – Dallas 1990).

V.     Counsel cannot seriously be expected to verbally describe the appearance of every juror.

VI.     Moreover, "[t]he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words." *Wainwright v. Witt,* 469 U.S. 412, 428 n.9 (1985) (citation omitted).

VII.    Appellate courts compensate for this "lack of clarity in the printed record" by giving great deference to the rulings of "the trial judge who sees and hears the juror." *Wainwright v. Witt,* 469 U.S. at 425-26.

VIII.   That doctrine was developed more than a century ago when the record for an appeal was made with a fountain pen. See *Wainwright v. Witt,* 469 U.S. at 428 n.9 (citing *Reynolds v. United States,* 98 U.S. 145, 156-157 (1879)).

IX.     When "advances in scientific knowledge" make a legal practice obsolete, it should be modified to preserve its purpose. *Berger v. United States,* 388 U.S. 41, 49 (1967).

X.      Tex. Code Crim. Proc. Art. 40.09, requires the court reporter to transcribe her notes of the voir dire upon request for the purpose of ensuring as complete a record in criminal proceedings as possible. *Morris v. State,* 411 S.W.2d 730 (Tex.Crim.App. 1967).

XI.     The statute has been interpreted to prohibit the use of a mechanical recording in lieu of a transcript of the reporter's notes if the defendant objected, *Soto v. State*, 671 S.W.2d 43 (Tex.Crim.App. 1984), but it does not bar the use of a mechanical recording to supplement the written transcript.

XII.    In fact, Tex. Code Crim. Proc. Art. 40.09(4), gives the Court broad authority to make the written record "speak the truth".

XIII. A videotape of the individual voir dire will accomplish that objective and contribute to the accuracy of appellate review because the Court of Criminal Appeals will be able to see and hear anything that the trial judge did.

XIV. The obsolete practice of relying on a written transcript of the voir dire gives the state an unfair advantage. A competent prosecutor can get almost any prospective juror to equivocate and the slightest vacillation in the written record makes the judge's ruling on a challenge for cause virtually immune to appellate review.

XV. The cost of videotaping the voir dire is minimal.

XVI. A videotape of the voir dire will not delay or disrupt the trial.

WHEREFORE, for the reasons stated above, the Court should have a videotape of the individual voir dire made and include it in the record on appeal.

Respectfully submitted,

STEVEN R. MIEARS
State Bar No. 14025600
211 North Main
P.O. Box 736
Bonham, TX 75418
903-640-4963
903-640-4964 FAX
stevenmiears@msn.com

KEITH GORE
State Bar No. 24002164
2301 W. Virginia Parkway
McKinney, TX 75071
972-670-6288

COUNSEL FOR THE DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing

instrument has been furnished to counsel for the State by hand-delivery of a copy of same

this the 22 day of ____June____ , 2007.

_____

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER ON DEFENDANT'S MOTION TO VIDEOTAPE THE INDIVIDUAL VOIR DIRE

BE IT REMEMBERED, that on the _____ day of

_____, 2007, came to be considered the above Motion to

Videotape the Individual Voir Dire.   After consideration of the motion, it is the opinion

of the court that defendant's motion be:

GRANTED   _____

DENIED   _____, to which the Defendant excepts.


_____
                                        JUDGE PRESIDING

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO LIST WITNESSES
## AND REQUEST FOR CRIMINAL HISTORIES

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-entitled and numbered cause, and respectfully requests that the court instruct the prosecution to list for the defendant all witnesses along with their addresses, including expert witnesses whose testimony will be offered pursuant to Rules 702, 703, and 705 of the Texas Rules of Evidence, which the State may, in good faith, expect to use during the case-in-chief or rebuttal, during either the guilt/innocence stage or the punishment stage of trial, at least thirty (30) days prior to commencement of jury selection. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993) (en banc); TEX. CODE CRIM. PROC. art. 39.14.

Additionally, the Defendant requests the prosecution to provide the defense with a complete criminal history for each of these witnesses. *See* TEX. R. EVID. 609. It is necessary for the prosecution to provide a criminal history because the Defendant does not have access to NCIC or TCIC as does the District Attorney's Office. Moreover, ordering the District Attorney to provide a criminal history is not unduly burdensome.

This information is necessary for the defense to properly prepare for trial, to exercise his allotted peremptory strikes intelligently, and to impeach the State's witnesses. Absent a witness list and a criminal history concerning each witness the Defendant will be deprived of due course

1

610

and process of law as guaranteed in the Texas and United States Constitutions, as well as his rights under TEX. CODE CRIM. PROC. art. 1.04, 1.05, and 1.051(a).

WHEREFORE, PREMISES CONSIDERED, the Defendant moves this court to grant this motion directing the prosecuting attorney to list all witnesses who are reasonably subject to use by the State, and that the State be further required to provide, before trial, a criminal history on each such witness.

Respectfully submitted,

_____
Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

_____
Steven R. Miears

2

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

**ORDER**

BE IT REMEMBERED, that on the _____ day of _____,

200__, came to be considered the above Motion to List Witnesses and Request for

Criminal Histories. After consideration of the motion, it is the opinion of the court that

Defendant's motion be:

GRANTED     _____

DENIED      _____, to which action the Defendant excepts.


_____
Judge Presiding

3                                                      612

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO PRECLUDE UNIFORMED POLICE OFFICERS FROM ATTENDING THE PROCEEDINGS AGAINST MR. CHANTHAKOUMMANE AND LIMIT THE SHOW OF FORCE IN THE COURTROOM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-styled and numbered cause, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and moves this Court to enter an order ensuring that his right to a fair trial is safeguarded by limiting the show of force in the courtroom and precluding uniformed police officers from attending the proceedings against him. In support of his motion, Mr. Chanthakoummane states as follows:

1. This is a capital murder case. Mr. Chanthakoummane, an indigent, faces the death penalty.

2. The State of Texas is seeking the death penalty. The Eight Amendment requires greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3. The Defense anticipates that there will be uniformed law enforcement officers present in the courtroom during this trial. There may even be some officers who come in to watch the trial. At any given time they are either being paid by the state or, while in their uniforms, acting under apparent state authority.

613

4. It is clear that the presence of uniformed police officers will violate Mr.

Chanthakoummane's right to a fair trial. In <u>Mata v. Johnson</u>, 99 F.3d 1261 (5th Cir. Tex. 1996),

the Fifth Circuit recognized that the conspicuous presence of heavily armed personnel in and

around the courtroom, installation of surveillance video cameras and metal detectors for the

duration of the trial and the conspicuous presence of uniformed prison guards as spectators in the

courtroom throughout the trial was a constitutionally cognizable claim that the defendant

suffered a grave deprivation of his constitutional right to a fair trial.

5. Even where there is a *bona fide* need for additional security the courts have held that

the trial courts should explore the least restrictive alternative:

> [O]nce it has been determined that special security precautions are
> called for, `the least drastic and conspicuous measures reasonably
> available that will meet the particular need' should be employed. It
> is well settled that unusual physical restraints should be employed
> only as a last resort.

<u>Commonwealth v. De Vasto</u>, 7 Mass. App. Ct. 363, 387 N.E.2d 1169, 1172 (1979) (quoting

<u>Commonwealth v. Brown</u>, 364 Mass. 471, 476, 305 N.E.2d 830 (1973)); <u>accord</u> <u>Commonwealth</u>

<u>v. Agiasottelis</u>, 336 Mass. 12, 16, 142 N.E.2d 386 (1957); <u>Hall v. State</u>, 199 Ind. 592, 601 (1928)

("In the modern court-room, as little show of arms must be made as possible and ordinarily the

necessary restraint can be accomplished by placing *ununiformed* guards near the prisoner")

(emphasis supplied); <u>Eaddy v. People</u>, 115 Colo. 488, 492, 174 P.2d 717, 718-719 (1946);

Anthony v. State, 521 P.2d 486, 496 (Alaska 1974); <u>Dorman v. United States</u>, 435 F.2d 385,

397-398, 140 U.S. App. D.C. 313, 325-326 (1970); <u>Kennedy v. Cardwell</u>, 487 F.2d 101, 108-09

(6th Cir. 1973); <u>Woods v. Dugger</u>, 923 F.2d 1454 (11th Cir. 1991).

6. It is well accepted that 'extraneous influences' should not be allowed to permeate the

audience of a capital trial with the potential for influencing the jury. The Fourteenth

Amendment incorporates the essence of the Sixth Amendment right to be tried "by a panel of impartial, 'indifferent' jurors [whose] verdict must be based upon the evidence developed at the trial." Irvin v. Dowd, 366 U.S. 717, 722 (1961) (citations omitted). Chief Justice Warren noted in his concurrence in Estes v. Texas, 381 U.S. 532, 552 (1965) (Warren, C.J., concurring) that due process requires the courts to safeguard against "the intrusion of factors into the trial process that tend to subvert its purpose." Id. at 560. In particular, the courts must guard against "the atmosphere in and around the courtroom [becoming] so hostile as to interfere with the trial process, even though ... all the forms of trial conformed to the requirements of law. . . ." Id. at 561.

7. The trial court may, and indeed in some circumstances must, take whatever steps are required to purge the courtroom of potential taint, even if that extends to excluding members of the audience. As the Supreme Court of West Virginia has stated: "Mere reliance on 'policy' or judgement of local law enforcement officials is not sufficient justification. *The discretion is in the court's name and must be exercised, not delegated.*" State v. Peacher, 280 S.E.2d 559, 573 (W.Va. 1981)(holding that the trial court should have held an evidentiary hearing on the reasonableness of extra security precautions before allowing a plainclothes deputy sheriff who was alleged to have had contact with the jury sit within the bar of the court fifteen feet behind the defendant). Here, the relief requested is merely a safeguard against the intimidation of the jury - by ranks of armed, uniformed officers in the courtroom.

WHEREFORE, PREMISES CONSIDERED, Mr. Chanthakoummane prays that this Court enter an order which:

a) excludes all uniformed policemen and/or law enforcement officers from the courtroom during the trial of this case, and

b) requires that any armed security officers be unobtrusively placed so that the jury cannot see their weapons.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of ___June___, 2007.

Steven R. Miears

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION TO PRECLUDE UNIFORMED POLICE OFFICERS
## FROM ATTENDING THE PROCEEDINGS AGAINST
## MR. CHANTHAKOUMMANE AND
## LIMIT THE SHOW OF FORCE IN THE COURTROOM

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED


_____ DENIED, to which action the Defendant excepts.


So Ordered on this the ___ day of _____, 200___.



_____
Judge Presiding

617

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO LIMIT STATE'S CROSS-EXAMINATION OF DEFENDANT TO THE SCOPE OF THE DIRECT EXAMINATION BY THE DEFENSE DURING PUNISHMENT PHASE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant, by counsel, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13, 19 and 29 and moves this Court to limit the State's cross-examination of Defendant to the scope of the direct examination by defense counsel during the punishment phase. In support thereof, the Defendant would show:

1. Defendant may wish to testify about numerous mitigating circumstances that, he believes, will militate in favor of a life sentence.

2. There are increasing numbers of cases in other jurisdictions which hold that, if a capital defendant testifies during the punishment phase, a prosecutor cannot cross-examine the defendant about anything except *what the defendant testified about on direct examination*. *See, e.g., Lesko v. Lehman*, 925 F.2d 1527 (3d Cir. Pa. 1991); *State v. Cazes*, 875 S.W.2d 253 (Tenn. 1994). Texas should join these courts.

3. The courts in these cases have reasoned that a capital defendant's limited testimony during the punishment phase about mitigating circumstances is not a full waiver of his Fifth Amendment right against self-incrimination.

4. Moreover, the Eighth and Fourteenth Amendments require that a capital defendant be

613

permitted to introduce to the sentencing jury any and all constitutionally relevant mitigating circumstances. Permitting the State to cross-examine a capital defendant about things such as the circumstances of the offense, his remorse or lack thereof, unadjudicated extraneous offenses, and the like will unduly chill the defense's ability to present constitutionally relevant mitigating evidence that is only available through the testimony of the capital defendant himself.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that upon hearing, this Court sustain this Motion and limit the State's cross-examination to the scope of the direct examination of Defendant during the punishment phase. If this Motion is denied, Defendant requests the right to perfect an adequate bill of exception.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June , 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

ORDER OF THE COURT ON THE DEFENDANT'S
MOTION TO LIMIT STATE'S CROSS-EXAMINATION OF
DEFENDANT TO THE SCOPE OF THE DIRECT
EXAMINATION BY THE DEFENSE DURING PUNISHMENT PHASE


BE IT REMEMBERED, that on the _____day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.


_____
JUDGE PRESIDING

620

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

### MOTION TO INTRODUCE THE TESTIMONY OF DEFENDANT'S FAMILY AND FRIENDS REGARDING THEIR FEELINGS ON THE PROSPECT OF A DEATH SENTENCE AND THE IMPACT AN EXECUTION WOULD HAVE ON THEM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 & 19 of the Texas Constitution and offers the following in support of this Motion:

**THE EIGHTH AMENDMENT REQUIRES THAT A CAPITAL DEFENDANT SHOULD HAVE THE RIGHT TO PRESENT, AS MITIGATION EVIDENCE DURING HIS SENTENCING HEARING, TESTIMONY FROM HIS FAMILY AND FRIENDS REGARDING NOT ONLY THEIR FEELINGS ABOUT WHETHER THEIR LOVED ONE SHOULD BE EXECUTED, BUT ALSO THE IMPACT THAT AN EXECUTION WOULD HAVE ON THEM.**

A. <u>Introduction.</u>

Defendant moves this Court to permit him to question his family members and friends regarding two topics: (i) whether Defendant's family and friends want Defendant to live or die; and (ii) what the impact would be on such persons if Defendant were in fact sentenced to death and ultimately executed.

B. <u>Controlling authority from the lower courts.</u>

Pursuant to the ethical duties imposed on members of the Bar, undersigned counsel calls

2007 JUN 22 PH 1: 04
HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY. ___ DEPUTY.

1

621

the following judicial decisions to this Court's attention.

In *Fuller v. State*, 827 S.W.2d 919 (Tex. Crim. App. 1992), the Court of Criminal Appeals rejected a capital defendant's argument that Supreme Court decisions such as *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104 (1982) (overruled in part on other grounds), require that a sentencing jury be permitted to consider mercy pleas from a capital defendant's family members during the sentencing phase. The court held that since testimony from a capital defendant's family regarding their feelings about the possible execution of their loved one does not relate to "evidence concerning his background, character, or the circumstances surrounding the offense," it is not admissible under *Lockett* and its progeny. Presumably, in view of *Fuller*, the Court of Criminal Appeals' holding also applies to testimony from the family of the victim as to the impact that an execution would have on them.

Similarly, the Fifth Circuit has held that "[t]hough [mercy pleas from a capital defendant's family] may well impact a jury's decision, they are not mitigating evidence" required to be admitted under the Eighth Amendment. *See Kelly v. Lynaugh*, 862 F.2d 1126, 1133 n. 12 (5th Cir. 1988). *But, see, People v. Mickle*, 814 P.2d 290, 321 (1991) ("[A] capital defendant is entitled to introduce at the penalty phase the opinions of family and friends about the appropriateness of a death sentence."); *Romine v. State*, 305 S.E.2d 93, 251 Ga. 208, 216-17 (1983) (same).

Defendant contends that, while these decisions may control this Court's disposition of this Motion, they were wrongly decided. This Motion is being filed in order to challenge *Fuller* and *Kelly* in the U.S. Supreme Court. Defendant will also request the Court of Criminal Appeals to overrule *Fuller*.

2

622

C.    *Payne v. Tennessee.*

In *Payne v. Tennessee*, 111 S. Ct. 2597 (1991), the U.S. Supreme Court removed the

prior *per se* bar on the introduction of "victim impact statements" by the prosecution as part of

aggravating evidence during a capital sentencing hearing. *Id.* at 2616. Chief Justice Rehnquist's

opinion for the Court in *Payne* noted that in the context of mitigating evidence, the Court's

decisions have allowed the sentencer to consider "'any relevant mitigating evidence' that the

defendant proffers in support of a sentence less than death," *Payne*, 111 S. Ct. at 2606 (citing

*Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982)), and that a capital defendant should be "treated

as a 'uniquely individual human being'" during capital sentencing, *Id.* at 2606-07 (quoting

*Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). The Chief Justice then concluded,

comparing aggravation and mitigation evidence, that what is good for the goose is good for the

gander: that a sentencing jury should be permitted to know about the individual characteristics of

the murder victim – as well as of the convicted capital defendant – which necessarily includes

evidence about the victim's family and their reaction to the murder. *See*, *Payne*, 111 S. Ct. at

2607-09. He held that it was not a bar to introducing such aggravating evidence that it "was

[not] related to the circumstances of Payne's brutal crimes." *Id.* at 2609. As the Chief Justice

noted:

> Human nature being what it is, capable lawyers trying cases to
> juries try to convey to the jurors that the people involved in the
> underlying events [i.e., including the victim's survivors] are . . .
> living human beings who have something to be gained or lost from
> the jury's verdict. Under the aegis of the Eighth Amendment, we
> have given the broadest latitude to the defendant to introduce
> relevant mitigating evidence reflecting his own individual
> personality. ...[W]e now reject the view . . . that a State may not
> permit the prosecutor to similarly argue to the jury the human cost

3

> of the crime of which the defendant stands convicted. ..."[J]ustice,
> though due to the accused, is due to the accuser also. ...We are to
> keep the balance true." (citing *Snyder v. Massachusetts*, 291 U.S.
> 97 (1934).

*Id.* (emphasis added).

Justice O'Connor's concurrence in *Payne* also sheds some light on the Court's reasoning. She noted at the outset of her opinion that "[a] State may decide that the jury, before determining whether a convicted murder should receive the death penalty, should know the full extent of the harm caused by the crime, including its impact on the victim's family. . . ." *Id.* at 2611. She later noted, like the Chief Justice, that a victim should be portrayed to the jury as a "unique human being" -- which includes knowledge of the victim's family's reaction to the murder. *See, Id.* at 2612.

Justice Scalia's concurring opinion echoed Chief Justice Rehnquist's reciprocity arguments: "The Court correctly observes the injustice of requiring the exclusion of relevant aggravating evidence during the capital sentencing, while requiring the admission of all relevant mitigating evidence. ". . [T]he Eighth Amendment permits parity between mitigating and aggravating factors." *Id.* at 2613.

Justice Souter's concurring opinion noted, like the Court's opinion did, *Id.* at 2605, that "traditionally" criminal conduct has been punished in view of the degree of harm, if any, caused. Hence, he argued, a victim impact statement was relevant because it allowed the jury to better know this "traditional" factor in assessing punishment. *Id.* at 2614. Such aggravating evidence was considered "morally relevant" and allowed for a "reasoned moral response" from the jury. It also permitted the jury to better know the victim as a "uniquely individual human being," whose unique personality was in part a product of his family. *Id.* at 2614-15. As Justice Souter stated:

4

> Just as defendants know that they are not faceless human ciphers,
> they know that their victims are not faceless fungibles, and <u>just as
> defendants appreciate the web of relationship and dependencies in
> which they live, they know that their victims are not human
> islands, but individuals with parents or children, spouses or friends,
> or dependents.</u> Thus, when a defendant chooses to kill . . . this
> choice necessarily relates to a whole human being and threatens
> the association of others, who may be distinctly hurt.

*Id.* at 2616 (emphasis added).

The collective reasoning of the Court and the concurring opinions in *Payne* applies equally to testimony from a capital defendant's family and friends about their feelings regarding the possible execution of their loved one and the impact that an execution would have on them.

Such testimony is relevant to mitigation in at least three ways: first, it goes directly to the question of mercy, a quintessential element of mitigation. *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 199 (1976) (plurality) ("Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution."); *People v. Sanchez*, 115 Ill. 2d 238, 269 (1986) ("mercy" recognized as important part of mitigation); *State v. Petary*, 781 S.W.2d 534, 541 (Mo. 1989) (same).

Any objective standard of human decency permits close relatives and friends to ask the jury not to impose death on their loved one. Preventing a capital defendant's relatives and friends from expressing such opinions, and instructing a sentencing jury to disregard them, is as cruel and unusual as can be imagined. Allowing the jury to consider such testimony surely aids in eliciting a "reasoned moral response," *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). Mercy is an integral part of the traditional Western notion of dispensing justice. *See, e.g.,* John Milton, <u>Paradise Lost</u>, Book X, line 77 ("so temper justice with mercy"); William Shakespeare, <u>The Merchant of Venice</u>, Act 4, Scene 1, lines 184 et seq.;

5

Holy Bible, New Testament, Matthew 5:5; Old Testament, Mica 6:8. If the exclusion from the jury's consideration of such a basic human response as a mother's concern for her child's life -- which hardly disappears when he is convicted of capital murder -- does not violate the Eighth Amendment, nothing does.

In *Saffle v. Parks*, 110 S. Ct. 1257, 1266 (1990) (Brennan, J., dissenting), Justice Brennan quoted the Tenth Circuit's *en banc* opinion below, which recognized that, "mercy, humane treatment, compassion, and consideration of the unique humanity of the defendant . . . have all been affirmed as relevant considerations in the penalty phase of a capital case." *Id.* at 1266 (quoting *Parks v. Brown*, 860 F.2d 1545, 1556 (10th Cir. 1988) (en banc). Such factors, of course, were of the very type relied upon by the *Payne* Court in holding that the prosecution's use of victim impact statements was proper during a capital sentencing hearing, *see* discussion *supra*, albeit with reference to the victims' family.

Not to apply the same considerations to the testimony of a capital defendant's relatives regarding their feelings about the possible execution of their loved one would be as "unfair" and "imbalanced" an approach during sentencing as the Court's prior approach in *Booth v. Maryland*, which Chief Justice Rehnquist so condemned in *Payne*. *See,* 111 S. Ct. at 2609. Once again, what is good for the goose is good for the gander. If *Payne* permits testimony from the victim's relatives regarding their feelings about the crime as part of the prosecution's presentation of aggravating circumstances, the Court should likewise permit testimony of the capital defendant's relatives regarding their feelings about the proposed punishment as part of the defense's presentation of mitigating circumstances.

A second way that such testimony is relevant as mitigating evidence is that it evinces that

a particular defendant may still possess enough redeeming qualities as a human being to warrant his life being spared. The clear message sent to jury by such testimony is that the defendant's life until the murder had enough positive elements to lead his family members to express their love by pleading that a life sentence be imposed. *People v. Mickle*, 814 P.2d 290, 321 (Cal. 1991) (Such testimony "exemplifie[s] the feelings held toward the defendant by a person with whom he [has] had a significant relationship" and "bears on his overall character and humanity" (citation omitted)); *cf. Martin v. Dugger*, 686 F. Supp. 1523, 1538-41 (S.D. Fla. 1988) (quoting extensive testimony from capital defendant's relative in which numerous pleas for mercy interspersed with discussions of defendant's character and background).

Third, as was extensively discussed in *Payne* with respect to the testimony of the victim's survivors used as aggravation evidence, but equally applicable to testimony of the defendant's relatives used as mitigation evidence, testimony from the defendant's family aids the sentencing jury in seeing the defendant as a "uniquely individual human being." He is part of a family who still loves him, notwithstanding his crime, and that family, just like the victim's family, has a vested interest in the jury's verdict. To refuse to consider the defendant's family's feelings, which in many cases would be juxtaposed to the victim's family's feelings, simply because the former is related to a convicted capital murderer would violate a basic principle of our criminal jurisprudence: the criminal law does not visit the sins of one family member upon the remainder of his family.[1]

Just as Chief Justice Rehnquist argued the need to convey to a jury that "the people involved in the underlying events [i.e., the victim's survivors] are . . . living human beings, with

---

[1] This was even recognized by the Framers of the Constitution. *See*, U.S. Const. Art. III, Sec. 3, Clause 2 (punishment for treason may not work "Corruption of Blood"). *See also, King v. Smith*, 88 S. Ct. 2128, 2143 n.5 (1968) (Douglas, J., concurring).

something to be gained or lost from the jury's verdict," *Id.* at 2609, a capital sentencing jury should likewise know that a capital defendant also has a family of "living human beings," who care deeply about what verdict the jury reaches. Just as Justice Souter noted of a murder victim, a capital defendant is not a "human island." He has "a web of relationships and dependencies." He is "an individual[] with parents or children, [a] spouse or friends, or dependents." The jury's choice that the State of Texas should kill the Defendant "necessarily relates to [the] whole human being and threatens [the] association of others, who may be distinctly hurt." *Payne*, 111 S. Ct. at 2615. And just as Justice O'Connor noted that a jury cannot fully know a murder victim as a "unique human being" without knowing of the impact of the crime on the victim's family, *see Id.* at 2611, neither can a jury know of the capital defendant as a "uniquely individual human being[]," *see, Woodson v. North Carolina*, 428 U.S. 280, 304, without hearing the defendant's family's feelings about the possible execution of their loved one.

In non-capital cases, countless courts in various ways have taken into consideration a criminal defendant's family in imposing a particular sentence. *See, e.g., State v. Laird*, 547 So. 2d 1, 3 (La.App. 3 Cir. 1989); *United States v. Denardi*, 892 F.2d 269, 271 (3d Cir. Pa. 1989); *United States v. Risco*, 1989 U.S. Dist. LEXIS 16493 at *2 (E.D. Pa. Mar. 16, 1989); *United States v. Moran*, 601 F. Supp. 205 (D. Me. 1985); *United States v. Ramos*, 605 F. Supp. 277, 279 (S.D.N.Y. 1985); *Irizzary v. United States*, 58 F.R.D. 65 (D. Mass. 1973); *United States v. Orlando*, 206 F. Supp. 419, 420-21 (E.D.N.Y. 1962). As the First Circuit noted in *United States v. Villarin Gerena*, 553 F.2d 723, 727 (1st Cir. 1977), "[t]hat any sentence may be a hardship to [a criminal defendant's] family is undeniable, the consequences of any crime are rarely visited only upon the actor and the immediate victim." Since "traditionally," *cf. Payne*, 111 S. Ct. at

8

623

2614 (Souter, J. concurring), a criminal defendant's family has not been irrelevant to non-capital sentencing, a fortiori it should not be excluded from capital sentencing.

In sum, almost every argument made by the majority and concurring members in *Payne* regarding the propriety of victim impact statements applies with equal force to a capital defendant's right to offer testimony by his family regarding their feelings about the prospect of losing their loved one. Thus, especially in view of the reasoning in *Payne*, the Court of Criminal Appeals decision in *Fuller v. State, supra*, was wrongly decided.

D.    Defendant's Right to put on a Bill of Exception.

Assuming that this Court denies Defendant the right to introduce such testimony to the jury, Defendant requests the right to make a bill of exception in narrative form for purposes of appeal. As will be explained in such a bill, counsel for Defendant would ask numerous friends and family members of Defendant whether they wished for Defendant's life to be spared. Defendant would also ask such persons about what impact that a death sentence and execution would have on them.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that upon hearing hereof the court find that testimony from the family of the Defendant, all as set out herein, is admissible and that the Defendant have such other and further relief to which he may show himself to be just entitled.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418

9

629

Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June ___, 2007.

_____
Steven R. Miears

10

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION TO INTRODUCE THE TESTIMONY OF DEFENDANT'S
## FAMILY AND FRIENDS REGARDING THEIR FEELINGS ON THE PROSPECT
## OF A DEATH SENTENCE AND THE IMPACT AN EXECUTION WOULD
## HAVE ON THEM

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

11

631

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO INTRODUCE THE DEFENDANT'S STATEMENT OF ALLOCUTION, FREE FROM CROSS-EXAMINATION BY THE STATE, REFLECTING HIS REMORSE FOR THE OFFENSE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by Counsel, and offers the following in support of this Motion:

THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 '13 AND '19 OF THE TEXAS CONSTITUTION REQUIRE THAT A CAPITAL DEFENDANT SHOULD HAVE THE RIGHT TO PRESENT A PERSONAL STATEMENT OF ALLOCUTION TO THE JURY, FREE FROM CROSS-EXAMINATION FROM THE STATE. THIS IS PARTICULARLY SO IN TEXAS BECAUSE THE MITIGATION ISSUE IS NOT SUBJECT TO REVIEW FOR SUFFICIENCY OR PROPORTIONALITY, AND REMORSE IS A STATUTORILY RECOGNIZED MITIGATING FACTOR.

**Summary of Argument**

Increasing numbers of jurisdictions within the United States are recognizing a capital

defendant's right to testify during the punishment phase of trial, free from cross-examination by

the prosecution. These courts have recognized that the right to allocution is required by the eighth

and fourteenth amendments of the Constitution, and in some instances by common law or statutory

law. They have also recognized that statements of allocution are peculiar to capital trials, and that

they present issues which are wholly collateral to the merits of the charges against the defendant

and more general mitigation.

632

Texas has recognized that there may be constitutional or statutory exceptions to the general rule that a defendant who takes the stand can be cross-examined by the prosecution. It is submitted that subsequent development of constitutional guarantees and statutory law as applicable to capital defendants have extended the exceptional circumstances applicable to defendants in capital trials, and have fortified the right to allocution in Texas. Based on the sound reasoning of courts in other jurisdictions in the United States, and the development of capital law in Texas, the defendant should be permitted to present a statement of allocution to the jury.

**Constitutional requirement of a right to allocution**

It is well settled that due process protects rights are "deeply rooted in this Nation's history and tradition", *Moore v City of East Cleveland*, 431 U.S. 494, 503 (1977) (finding that reasonable doubt requirement was protected by due process because firmly entrenched in history of Anglo-American trial). Few rights are more deeply rooted in the traditions of Anglo-American justice than the right of allocution; *see McGautha v. California,* 402 U.S. 183, 217 (1971) (right is "of immemorial origin"), *United States v. Behrens,* 375 U.S. 162 (1963) (right is "ancient law"), *DeAngelo v. Schneider,* 757 P.2d 1355, 1356 (Or. 1988) ([a]llocution…is of such ancientness that it is difficult, if not impossible, to discover its historical origin").

While the Supreme Court has yet to rule that denial of allocution violates due process, several lower federal courts have held that it does, on the basis that the right is so firmly rooted in the history and traditions of the Anglo-American trial, *see Boardman v. Estelle,* 957 F.2d 1523, 1523-30 (9th Cir. 1992) ("[W]e hold that allocution is a right guaranteed by the due process clause

of the Constitution", limited to circumstances in which the defendant affirmatively requests opportunity to allocute).

Because allocution is mitigating in nature, its denial also violates the prohibition of cruel and unusual punishment in both the United States and the Texas constitution. *See Young*, 853 P.2d at 376 (noting that the Supreme Court has not decided whether denial of allocution violates post-*Furman* Eighth Amendment safeguards and concluding that "[f]oreclosing the jury's opportunity to hear [the defendant's] personal statement prevented the jury from making the individualized sentencing determination required by the Eighth Amendment"). In *United States v. Myers*, 150 F.3d 459, 461-62 (5th Cir. 1998) the court recognized defendant's personal statement to sentencer as opportunity for mitigation of punishment.

**Recognition of the limited nature of allocution**

This concept of limited allocution has been recognized by courts outside Texas; In *State v. Cazez*, 875 S.W.2d 253, 266 (Tenn. 1994) the court agreed with the analysis of the Third Circuit in *Lesko v. Lehman*, 925 F.2d 1527 (3d Cir. 1991), *cert. denied* 502 U.S. 898, which held that the fifth amendment right against self-compelled incrimination and the eighth amendment right of a capital defendant to place mitigating evidence before a jury were very much in play in a request to permit only limited or no cross-examination of a defendant. The Tennessee court, while recognizing the general rule that a testifying defendant could be cross-examined on any matter relevant to the issue in the case, nevertheless found that:

> "…[W]e are also cognizant of the gravity of a capital sentencing proceeding and the constitutional mandate to ensure that all relevant mitigating circumstances be presented to a

sentencing body. We thus conclude that, <u>only in the limited sphere of a death penalty</u> <u>sentencing hearing,</u> a capital defendant's testimony regarding mitigating factors that are <u>wholly collateral to the merits of the charges</u> against him does not operate as a complete waiver of the privilege against self-incrimination. Accordingly, a defendant has a right to limited cross-examination if he or she wishes to testify about <u>only collateral mitigating</u> <u>circumstances</u> at the penalty phase of a capital trial. We reiterate, however, that even in such special situations, a defendant may be completely and thoroughly cross-examined about all testimony given or fairly raised by that defendant on direct examination".

*State v. Cazez, supra.*

The concept of 'partial waiver' is particularly appropriate in the circumstances of this

particular type of testimony in the special arena of a capital trial.


## The Position in Texas

Defendant recognizes the following general rule as stated in *Huffman v. State*, 747 S.W.2d

212 (Tex. Crim. App. 1988), and submits that the underlined exception should be applicable in this

case:

"It is well established that a defendant who takes the stand as a witness on the trial on the merits may be cross-examined and impeached in the same manner as any other witness. McCormick and Ray, *Texas Law of Evidence*, Vol. 1, Chapter 8, SS 643, p. 487; 1 Branch's Ann. P.C., 2nd Ed., SS 168, p. 170, and cases ther ecited; 62 Tex.Jur.2d, Witnesses, SS 205, p. 130: *Shelton v. State*, 397 S.W.2d 850 (Tex. Crim. App. 1965); *Cevda v. State*, 26 S.W. 922 (1894). See also *Davis v State,* 478 S.W.2d 958 (Tex. Crim. App. 1972); *Dunlap v State*, 440 S.W.2d 672 (Tex. Crim. App. 1969). Thus such a defendant may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter and treated in every respect as any other witness <u>except when there are overriding constitutional and</u> <u>statutory provisions.</u> *Taylor v. State,* 612 S.W.2d 566, (Tex. Crim. App. 1981), *Williams v. State*, 607 S.W.2d 577(Tex. Crim. App 1980); *Myre v. State*, 545 S.W.2d 820 (Tex. Crim. App. 1977) *Sensabaugh v. State,* 426 S.E.2d 224 (Tex. Crim. App. 1968); *Gonzales v. State*, 160 Tex. Crim. 548, 272 W.E.2d 524 (1954)."


Once the defendant testifies "the interests of the other party and regard for the

function of the courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination". *Brown v. United States,* 356 U.S. 148 (1958). *See also, Fitzpatrick v. United States,* 178 U.S. 304 (1900)".

**New constitutional and statutory provisions, since Huffman, override the State's right to cross-examine the capital defendant's statement in mitigation.**

When *Huffman,* supra was decided, in 1988, the "constitutional and statutory provisions" that might override the State's right to cross-examine a testifying defendant were different from and less than they are today. After the Supreme Court's decisions in *Penry v. Lynaugh,* 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989) and *Penry v. Johnson,* 532 U.S. 782, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (overruled on other grounds), and the Texas legislature's passage of the statute granting the capital defendant independent consideration of his proffered mitigating evidence in the special issue, the Texas capital defendant gained a greater interest, guaranteed by constitutional and statutory provisions, in presenting his personal statement in mitigation, free from cross-examination by the state.

The State's interest in cross-examination; to contradict, impeach, discredit and attack a witness and to make him give evidence against himself, did not change. The regard for the function of the courts to ascertain the truth did not change. Only the capital defendant's interest was enlarged and secured by the Eighth Amendment decisions of the supreme court affecting the scope of his mitigation rights and the actions of the Texas legislature codifying those rights. Therefore it has become the capital defendant's interest in placing mitigation before the jury that "prevail(ed) in the balance of considerations" determining the scope of his right to testify in

mitigation without being cross-examined by the prosecutor. The *Huffman* balancing of interests may remain the same, but the scales have shifted.

It is clear that with regard to this very unusual type of 'testimony' offered in capital trials, which the defendant seeks to present, the State does not have a justifiable interest in cross-examination in its usual sense. Defendant's statement of remorse to the jury is simply not the kind of historical fact that cross-examination is designed to test, in a search for the truth. Even the additional use of cross-examination, as a tool for revealing a witness's motive to lie, is but a corollary to the search for the truth. It has no legitimate role in a capital trial punishment phase, when the defendant is making a statement to the jury revealing his remorse, his character, his apology, the feelings in his heart, the effect on him of the crime he committed, and perhaps a plea for mercy. The defendant has a right to offer his statement to the jury as a basis for finding a life sentence more appropriate than death.

New factor of Victim Impact/Character evidence, admissible after *Huffman*, gives a capital defendant greater interest in making personal statement of allocution, free from cross-examination.

The Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808 (1991) followed by the decision in *Mosley v. State,* 983 S.W.2d 249 (Tex. Crim. App. 1998), *cert. denied,* 526 U.S. 1070 (1999), established the admissibility of victim impact/victim character evidence at the punishment phase of a capital trial. Although defendant argues the irrationality and the unfairness of this rule, the reality of trial is that this jury will hear from the victim's survivors how they miss their loved one and what harm they have suffered from her loss. (Although in theory the victim's survivors are subject to cross-examination, even the Supreme Court recognized that the 'prudent' defense lawyer will likely refrain from such action; the witnesses are in effect free from cross-examination).

Defendant wants to tell the jury that he is sorry and he wants to apologize for the harm he has caused. He should be able to do so without being attacked on "cross-examination" by the prosecutors.

At the time *Huffman* was decided in 1988, balancing the interests of the State and the defendants, the defendant had no secured constitutional and statutory right to present independent mitigating evidence and submit the question to the jury as a basis for sparing his life. The Texas Court of Criminal Appeals later decided to place the prize of victim impact evidence upon the mitigation question, and this court should recognize the changed conditions for the defendant in determining now that he has an even greater need to be able to address the jury personally and make his statement in mitigation as it relates to the victim and her survivors.

The mitigation special issue is not subject to review, so this is the only opportunity the Defendant will have to present this type of mitigation.

In the Texas "non-weighing" capital murder statute, there is no list of aggravating and mitigating factors for the jury, and the statutory definition of mitigating evidence restricts the jurors to considering only that evidence which they "might regard as reducing the defendant's moral blameworthiness", Art. 37.071, Sec.2(f)(4), V.A.C.C.P. The mitigation verdict is not reviewable for sufficiency and there is no proportionality review. In these circumstances, it is obvious that this capital defendant has one and only one chance to gain a benefit from evidence he proffers as mitigating. If he does not persuade the jury, he will have no chance of persuading any reviewing court. This emphasizes the constitutional importance of giving him this opportunity now.

Defendant therefore asks the court to acknowledge that the law in Texas since *Huffman* has been altered, by the restructuring of the special issue and the decisions in *Penry* and *Mosley*, supra. Based on those considerations and the sound reasoning in other courts on this issue, defendant urges the court to allow him to present his personal statement in mitigation to the jury.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

Steven R. Miears

639

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## <u>ORDER OF THE COURT ON THE DEFENDANT'S MOTION TO INTRODUCE THE DEFENDANT'S STATEMENT OF ALLOCUTION, FREE FROM CROSS-EXAMINATION BY THE STATE, REFLECTING HIS REMORSE FOR THE OFFENSE</u>

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____

JUDGE PRESIDING

640

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR LIMITING INSTRUCTIONS TO THE JURY
## REGARDING EXTRANEOUS OFFENSES

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by counsel, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 and Tex. Code Crim. Proc. arts. 1.05, 1.06 and 1.09 and Rule 404(b) of the Texas Rules of Evidence and moves the Court for discovery and jury instructions concerning extraneous offenses and in support thereof would show:

1. The Defendant has been indicted by the Collin County grand jury for capital murder.

2. The State is seeking the death penalty.

3. If the State intends to introduce in its case-in-chief evidence of other crimes, wrongs or acts other than that arising in the same transaction, the Defendant hereby gives timely notice of its right and request to have reasonable notice of such acts, in advance of trial pursuant to Texas Rule of Evidence 404(b). Further, the State should be required to advise the Court and counsel for the Defendant of the specific purpose for which such evidence is being offered. Additionally, notice of any other unadjudicated offenses that the State intends to offer evidence of during the penalty phase of the trial should be given in order to avoid any unfair surprise to this Defendant.



4. Movant requests the Court, in performing its "gatekeeping" function with respect to

extraneous offenses, to hold a hearing, in advance of trial, to determine if the State's evidence "clearly proves that an offense was committed and that the Defendant was the perpetrator." *Kemp v. State*, 846 S.W.2d 289, 307 (Tex. Crim. App. 1992); and *Kutzner v. State,* 994 S.W.2d 180, 1888 (Tex. Crim. App. 1999). In doing so, the Court should consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. The admission of extraneous acts during a capital trial must be closely scrutinized. *Davis v. State*, 597 S.W.2d 358, 361 (Tex. Crim. App. 1980).

5. Movant requests that if evidence of extraneous, unadjudicated offenses is admitted, that immediately after the admission and without necessity of further request, the jury be orally instructed that the evidence is to be considered for the limited purpose for which the evidence has been found to be admissible. Further, that the jury cannot consider against the Defendant such collateral crimes, unless it has been shown to their satisfaction, beyond a reasonable doubt, that the Defendant is guilty of those acts. *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996); and *Ex Parte Varelas*, 45 S.W.3d 627 (Tex. Crim. App. 2001).

6. Movant further requests that when the jury is instructed upon the whole case that it further be given written instructions that (a) the evidence of extraneous crimes, wrongs or acts can only be considered for the purpose for which the Court admitted such evidence and (b) it cannot consider the crimes, wrongs or acts against the Defendant unless it believes, beyond a reasonable doubt, that the acts were committed and the defendant committed those acts. *Harrell v. State*, 884 S.W.2d 154, 157 (Tex. Crim. App. 1994).

7. Should the State intend to offer evidence of extraneous, unadjudicated offenses during the penalty phase of the trial, the Court, in addition to the other "gatekeeping" functions

should determine if such evidence is relevant to the Defendant's "deathworthiness." *Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996).

8. Movant further requests that the jury be instructed that during any penalty phase deliberations they are not to consider the Defendant's guilt of this indicted charge in determining if he was the perpetrator of the extraneous acts.

9. In submitting and arguing this motion to the Court, the Defendant does not waive any of his objections to the blatantly unconstitutional practice of allowing the state to use evidence of unadjudicated conduct in its attempt to secure a sentence of death.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that upon hearing, this Court sustain this Motion and relief be granted as prayed for herein.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____, 2007.

Steven R. Miears

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION FOR LIMITING INSTRUCTIONS TO THE JURY
## CONCERNING EXTRANEOUS OFFENSES

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.

_____
Judge Presiding

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION FOR LIMITED DAILY TRANSCRIPTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KOSOUL CHANTHAKOUMMANE, the Defendant in the

above-styled and numbered cause, and pursuant to the 5th, 6th, 8th and 14th Amendments

to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas

Constitution and moves this Court to order that provision be made for such limited daily

transcripts as may be required in this case, and in support thereof respectfully shows as

follows:

I.

The Defendant has been indicted by the Collin County Grand Jury for Capital

Murder.

II.

The State is seeking the death penalty. The Eight Amendment requires a greater

degree of accuracy and procedural safeguards than would be true in a non-capital case.

*Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and

*Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

III.

Destitute defendants must be afforded access to transcripts in the same manner

"as defendants who have money enough to buy transcripts." *Griffin v. Illinois*, 351 U.S.

12, 19, 76 S. Ct. 585, 100 L. Ed. 891 (1956). In many federal cases where life is not at stake, daily transcripts are ordered of the entire testimony.

## IV.

It is uncontroverted that were the Defendant not indigent, he would make arrangements to secure daily transcripts of such portions of the record as might prove important to saving his life. Where a wealthy defendant would want such a transcript, a poor person should also be allowed a daily transcript. *Britt v. North Carolina*, 404 U.S. 226, at 229 n.6 (1971) (opinion of Douglas, J.).

## V.

More recently, it has been held to be "an abuse of discretion to decline to order [daily] transcripts. . . ." *United States v. Bari*, 750 F.2d 1169, 1182 (2d Cir. 1984).

## VI.

The Defendant does not ask that this Court order the provision of a transcript of all the case as it progresses. Rather, there will be specific areas in which such a transcript will be of critical significance. For example, the Defendant anticipates that the State may seek to use some unreliable snitch testimony from people who can be expected to vary their stories with the day of the week. If there is a particularly offensive inexactitude that arises during this confabulation, it may be very important to assure its immediate transcription. Other testimony of importance may be that of experts for the State.

## VII.

Anything short of a copy of these portions of the record will not be adequate to preserve the Defendant's rights. *Britt v. North Carolina*, 404 U.S. at 229 (rejecting suggestion that in order to render effective assistance, counsel must have a perfect

memory or keep exhaustive notes of the testimony given).

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this Court grant this motion, or in the alternative, enter an order requiring the prosecution to respond in writing, with citations to authority, with respect to the allegations found in his motions.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the

22 day of _____June_____, 2007.

Steven R. Miears

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

### ORDER OF THE COURT ON THE DEFENDANT'S
### MOTION FOR LIMITED DAILY TRANSCRIPTS

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the \_\_\_ day of _____, 200\_\_\_.

_____
Judge Presiding

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO ADJOURN AT A REASONABLE TIME

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN MIEARS, Attorney for the Kosoul Chanthakoummane, Defendant herein, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and moves this Court to adjourn the proceedings at a reasonable time each day throughout the trial and in any pre-trial proceedings, and in support of thereof respectfully shows as follows:

1.    Mr. Chanthakoummane has been indicted by the County Grand Jury for Capital Murder.

2.    The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a noncapital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3.    Mr. Chanthakoummane is represented by already overworked and underpaid attorneys.

4.    Defense counsel anticipates that the trial could last two to three weeks. A traditional work day consists of eight hours. Each evening throughout this trial, counsel must prepare to confront or present the case the next day. Counsel must consult with Mr. Chanthakoummane concerning each day's developments and the strategy to be pursued on the next day. Counsel must research legal questions which arise in the trial, make arrangements for witnesses' travel, and confer with them prior to their testimony. An excessive work schedule would prohibit Mr.

2008 JUN 22 PM 1: 04
HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY_____ DEPUTY

649

Chanthakoummane from receiving effective representation.

5.     The 14th Amendment right to Due Process is violated when a defendant is denied reasonably alert jurors and reasonably alert witnesses, let alone the deprivation of the right to effective assistance of counsel which occurs when counsel is not alert and performing to the utmost of her ability through no fault of her own or of her client's. The Sixth Amendment guarantees to a criminal defendant the right to effective assistance of counsel at every step in the proceedings. It is reversible error for a Court to insist on proceeding late into the evening when the defendant's counsel has made it clear that she can no longer be effective. Hembree v. State, 546 S.W.2d 235 (Tenn. Crim. App. 1976) (finding that the trial court erred in not adjourning late at night when counsel stated that they could no longer be effective and that they were not thinking clearly); See also State v. McMullin, 801 S.W.2d 826 (Tenn. Crim. App. 1990) (finding that even for a sequestered jury in a first degree murder case, lengthy hours, when protested to by defense counsel and with no express consent of the jury was violation of federal constitutional right to a fair trial); People v. Rodgers, 131 N.Y.S.2d 622 (submitting assault case to jury at approximately 2:30 a.m. violated substantial rights of defendant and prevented him from having a fair, unbiased and impartial trial); State v. Parton, 817 S.W.2d 28 (Tenn. Crim App. 1991) (conducting criminal trial on armed robbery and felonious escape charges into late night and early morning hours of next day constituted plain error).

        WHEREFORE, PREMISES CONSIDERED, prayer is made that this motion be granted and that this Court should adjourn at a reasonable time each day of pre-trial proceedings and during the trial.

650

Respectfully submitted,

_____
Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone:  903-640-4963
Telefax:  903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____, 2007.

_____
Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

### ORDER OF THE COURT ON THE DEFENDANT'S
### MOTION TO ADJOURN AT A REASONABLE TIME

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.

_____
Judge Presiding

652

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## DEFENDANT'S ASSERTION OF RIGHTS

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-styled and numbered cause, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13 & 19 of the Texas Constitution, does hereby assert both his 5th and 6th Amendment rights relative to speaking with any person, other than his attorneys, about anything, including, but not limited to, his history and background, the facts underlying any pending charges against the Defendant, any alleged involvement in criminal activity whether related to pending charges or not, any investigations of whatever kind, and the Defendant's political, religious or cultural views on any subject whatsoever.

This assertion of rights not to speak with any person on any of the above subjects shall include, but is not limited to, jailers and deputy jailers, members of the County Sheriff's Office, local city police officers, members of the District Attorney's Office and any and all agents of the foregoing, including persons within the jail and/or Texas Highway Patrol, Texas Rangers, City of McKinney Police Department, fellow inmates and members of the print or broadcast media.

The Defendant specifically requests his lawyer to be present at any time that the Defendant is interviewed by any agency of the state. The Defendant should not be interviewed regarding any matter, nor should anything be presented to the Defendant for his review, consideration, action and or signature unless his attorneys have been notified and have been permitted to review any such documents without first contacting the undersigned counsel. The

653

Defendant does not wish to waive any of his constitutional rights and nothing should be interpreted as an intention on his part to waive any of his constitutional rights.

The Defendant also assets his right to not have his conversations or calls monitored by any person unless he is expressly noticed of this fact beforehand.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S ASSERTION OF RIGHTS

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED

_____ DENIED, to which action the Defendant excepts.

So Ordered on this the ___ day of _____, 200___.


_____
Judge Presiding

655

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION IN LIMINE - GENERAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-entitled and numbered criminal action, and moves this Honorable Court to instruct the prosecution and its witnesses and all those associated with the prosecution from referring, mentioning or alluding to the matters outlined below, either during voir dire examination of the prospective jurors, opening statement, direct and cross-examination, and closing argument. These matters include:

1. That the defendant in this case has the right to appeal the judgment of conviction.

2. A hearing outside the presence of the jury is necessary because of a motion or request filed by the defendant in this case, thereby placing "blame" upon the defendant for actions taken by counsel for the defendant in accordance with the defendant's constitutional and statutory rights.

3. That the defendant, subsequent to his arrest in this case, exercised his constitutional right to remain silent and not answer any questions asked of him by law enforcement officials.

4. That the defendant may have made a statement immediately after he was detained and/or arrested in this cause, to any law enforcement official.

5. That any witness for the prosecution or the defense including the accused, has taken or

656

refused to take the polygraph examination and the results of any such polygraph examination.

6. That the prosecutor represents the family of the victim. *Rougeau v. State*, 738 S.W.2d 651 (Tex. Crim. App. 1987) (overruled on other grounds).

7. That the defendant may have been previously convicted of any criminal offense or may have been charged or arrested for any criminal offense or may have any criminal case presently pending against him, or may have committed some "bad act" at some prior time. This evidence is inadmissable because the defendant has not been given proper notice as requested and its probative value is substantially outweighed by unfair prejudice and confusion of the issues pursuant to Rule 403 of the Texas Rules of Evidence. Moreover, the court must hold a hearing outside the jury's presence to determine if an offense was committed by the defendant. *See Kemp v. State*, 846 S.W.2d 289, 309 (Tex. Crim. App. 1992). If the court ultimately rules that the proffered evidence is admissible, the court must instruct the jury that it cannot consider that evidence unless the state has proved, beyond a reasonable doubt, that the defendant committed the acts. *Mitchell v. State*, 931 S.W.2d 950, 954 ( Tex. Crim. App. 1996); *Ex parte Varelas*, 45 S.W.3d 627, 630-31 (Tex. Crim. App. 2001). Lastly, the court must determine whether this evidence is relevant to "deathworthiness." *See Rachal v. State* 917 SW.2d 799, 807 (Tex. Crim. App. 1996)

8. That certain prosecution witnesses may be called to testify that the defendant has a "bad reputation" in the community or has an unfavorable character trait.

9. Any and all testimony concerning the impact of the offense on the deceased's family and friends and evidence of the deceased's character.

10. Any and all photographs and videos of the deceased as well as the defendant.

2

657

11. Any and all evidence concerning violence in the Texas Department of Criminal Justice, Institutional Division. Admission of this evidence is unconstitutional because it runs afoul of the request that sentencing must be individualized. *See Jurek v. Texas*, 428 U.S. 262 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 303-051 (1976).

12. Any statement made, or adopted, by the defendant. It must be determined whether (1) the dictates of Article 38.22 and 15.17 were observed; (2) the statement was freely and voluntary given, *Jackson v. Denno*, 378 U.S. 368 (1964); TEX. CODE CRIM. PROC. Art. 38.21; (3) whether dictates *Miranda v. Arizona*, 384 U.S. 436 (1966), were observed; and (4) whether the statement is the product of a unconstitutional search or seizure.

13. Any and all expert testimony concerning, *inter alia*, future dangerousness, ballistics, cause of death, DNA, blood spatter, and scene reconstruction. *See Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992); *Jordan v. State*, 928 S.W.2d 550 (Tex. Crim. App. 1996); *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998) (overruled in part on other grounds).

14. Any evidence or assertions of the deceased's family members' opinions of the alleged offense or of the defendant.

15. That the prosecutor takes an oath to see that justice be done, while defense counsel does not.

16. Any expression relating to the prosecutor's belief that the defendant is guilty of the offense with which he has been charged.

17. Any expression of any law that is not included in the court's charge to the jury.

18. Any appeal to the jury using racial, national, or religious prejudice.

19. Any reference to public opinion if the defendant were acquitted.

20. Any reference as to punishment during the guilt/innocence phase of the trial.

WHEREFORE, PREMISES CONSIDERED, the defendant respectfully prays that this court instruct the prosecuting attorney not to mention, refer to or otherwise bring before the jury either directly or indirectly the matters set forth above without first obtaining a specific ruling from the court outside the presence of the jury that such reference and testimony is proper and admissible. Moreover, the defendant requests the court to instruct the prosecutor to advise his witnesses of this motion and order. Failure to grant this motion will adversely affect the defendant's substantial rights and cannot be cured by an instruction to disregard.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June, 2007.

Steven R. Miears

4

659

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION IN LIMINE - GENERAL

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____

JUDGE PRESIDING

660

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION IN LIMINE
(Guarantee of No Violence)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by and

through his attorneys of record, and pursuant to Rule 104 of the Texas Rules of Evidence and the

5th, 6th, 8th, and 14th Amendments to the United States Constitution and Article 1, Sections 1, 3,

10, 13, 19 and 29 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05 and 1.09 and

makes this his Motion in Limine. In support thereof, Defendant would show:

1. The Defendant has been indicted for capital murder.

2. The state is seeking the death penalty. The Eighth Amendment to the United States

Constitution requires a greater degree of accuracy, fact finding than would be true in a

noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993);

and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. It is the duty of this Court and the Texas Court of Criminal Appeals to make certain

that the death sentence is not "wantonly or freakishly" imposed and that the purposes of Art.

37.071 are accomplished. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

4. A fact ("future dangerousness") that increases the penalty for a crime beyond the

prescribed statutory maximum( a sentence of LWOP increased to death) must be alleged in the

indictment and proved to the jury beyond a reasonable doubt. *Jones v. United States* 526 U.S.

227 (1999); *Apprendi v. New Jersey*, 530, U.S.466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

In *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002), the Supreme Court held that the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to capital cases.

5. The burden is on the state to prove, beyond a reasonable doubt, that a probability exists that the accused will commit criminal acts of violence that will constitute a continuing threat to society. Any attempt by the State, to shift that burden, whether it be through the introduction of evidence, direct or cross examination of witnesses or argument to the jury is a violation of the rights of the accused as guaranteed by the 5th, 6th, 8th and 14th Amendments to the United States Constitution.

6. Just as a juror would be challengeable for cause because he would assign a burden (or greater or lesser burden) to the State or Defendant than is provided by the law so too is it improper when a prosecutor attempts to confuse the jury by improperly imputing a burden to the defense through its cross-examination of a defense witness.

7. Just as it would be improper for a judge in his or her charge to the jury, to improperly assign to a party a burden that is contrary to the law, so too is it improper when a prosecutor attempts to confuse the jury by improperly imputing a burden to the defense through its cross-examination of a defense witness.

8. The Defendant anticipates that a prison classification witness will be called to testify should this case proceed to the mitigation phase. This witness will, among other things describe the classification, security and safety policies within TDCJ for an inmate who has been convicted of capital murder. This witness cannot "guarantee" or "insure" to the jury that this defendant or any other defendant will not commit some act of violence in the future. Not only is this not within the capability of this witness, it is not relevant to the issues as they are framed by Art. 37.071. The jury must decide if there is a "probability" that the defendant will commit criminal

acts of violence that will constitute a continuing threat to society. Therefore, any questioning concerning violence within TDCJ should be limited to the "probability" of any such violence occurring.

9. Any cross-examination wherein the witness is asked if he can "guarantee" or "insure" or similar language will not only serve to confuse the jury and the issue, but will be an impermissible shifting of the burden to the defendant, all in violation of the Constitutional protections cited above.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be sustained and relief be granted by appropriate Order.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June, 2007.

Steven R. Miears

663

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380$^{1H}$ JUDICIAL DISTRICT |

## <u>ORDER OF THE COURT ON THE DEFENDANT'S</u>
## <u>MOTION IN LIMINE</u>
### (Guarantee of No Violence)

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion.  The court is of the opinion the motion should be in

all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

664

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION IN LIMINE REGARDING THE OFFER OF EVIDENCE OF EXTRANEOUS OFFENSES (RING V. ARIZONA)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 3, 10, 13 and 19 of the Texas Constitution, moves this Court to preclude the offer of extraneous offenses during any penalty phase of this case because of the constitutionally defective indictment against him. In support of his motion, the Defendant would show as follows:

1. The Defendant has been indicted for the offense of capital murder by the Collin County grand jury. The State is seeking the death penalty.

2. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). The courts of this state are bound by the law to make certain that a death sentence is not wantonly or freakishly imposed and that the purposes of Art. 37.071 are accomplished in a constitutional manner. *Ellason v. State*, 815 S.W.2d 656 (Tex. Crim. App. 1991).

3. The maximum penalty for the offense of capital murder is life in prison. Tex. Penal Code § 12.31 (Lexis through 2002). It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and then only if the jury concludes, beyond a

reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b)(1) (West 2002). The Texas legislature has created two offenses: (1) a Capital Felony where the state seeks the death penalty, and (2) a Capital Felony where the state does not seek the death penalty. Tex. Penal Code § 12.31(a) (Lexis through 2002).

4. The Defendant has the constitutional right to be accused of Capital Murder only on an indictment of a grand jury. Tex. Const. art I, § 10 ("no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary"); *Cook v. State*, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995) (holding that Texas Constitution guarantees right to indictment by grand jury for all felony offenses). Further, the Defendant has the right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10, 13, and 19 of the Texas Constitution, to be informed of the specific nature of the accusations against him. *See In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense ... are basic in our system of jurisprudence...").

5. Indictment by grand jury protects citizens against arbitrary accusations by the government. *King v. State*, 473 S.W.2d 43, 45 (Tex. Crim. App. 1971). The most "celebrated purpose" of the grand jury "is to stand between the government and the citizen" and protect individuals from the abuse of arbitrary prosecution. *United States v. Mara*, 410 U.S. 19, 33 (1973).

6. An indictment is essential to vest the trial court with jurisdiction. Tex. Const. art. V, § 12(b); *Cook*, 902 S.W.2d at 475. The purpose of an indictment is to provide notice of the

charged offense so that the presumptively innocent accused may prepare, before trial, an informed and effective defense. *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). "The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish." *Brasfield v. State*, 600 S.W.2d 288, 295 (Tex. Crim. App. 1980) (overruled on other grounds by *Janecka v. State*, 739 S.W.2d 813, 819 (Tex. Crim. App. 1987)).

7. Therefore, an indictment must aver all the elements of the crime with which it charges. *Campbell v. State*, 5 S.W.3d 693, 701 (Tex. Crim. App. 1999); *Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998) ("[A]n indictment must allege, in plain and intelligible language, all the facts and circumstances necessary to establish all the material elements of the offense charged."); *Ward v. State*, 829 S.W.2d 787, 794 (Tex. Crim. App. 1992) (overruled on other grounds, *Riney*, 28 S.W.3d at 566); *Labelle v. State*, 720 S.W.2d 101, 110 (Tex. Crim. App. 1986); *Ex parte County*, 577 S.W.2d 260, 261 (Tex. Crim. App. 1979); *Benoit v. State*, 561 S.W.2d 810, 813 (Tex. Crim. App. 1977); *State v. Draper*, 940 S.W.2d 824, 826 (Tex. App.— Austin 1997); *cf. Hamling v. United States*, 418 U.S. 87, 117 (1974). Indeed, the Texas Legislature has mandated that an indictment must contain all material elements of the offense charged: "Everything should be stated in an indictment which is necessary to be proved." Tex. Code Crim. Proc. Ann. art. 21.03 (West 2002); *see also* Tex. Code Crim. Proc. Ann. art. 21.11 (West 2002).

8. In the past, Texas courts have rejected the contention that, where the State seeks the death penalty, the failure of the capital murder indictment to allege the punishment criteria—the special issues for the jury, mandated by Article 37.071, section 2(b), of the Texas Code of Criminal Procedure—renders a subsequent death sentence constitutionally invalid. *See, e.g.*, *Moore v. State*, 969 S.W.2d 4, 13 (Tex. Crim. App. 1998).

9. Those courts justified their holdings with two arguments. First, the courts reasoned that since the purpose of an indictment is to provide notice, the punishment special issues need not be alleged in the indictment because "the very fact of a capital murder indictment places the defendant on notice that conviction will result in either life imprisonment or the death penalty" *Aranda v. State*, 640 S.W.2d 766, 770 (Tex. App.—San Antonio 1982); *see also*, *Moore*, 969 S.W.2d at 13; *Callins v. State*, 780 S.W.2d 176, 187 (Tex. Crim. App. 1986) ("a defendant who is charged under capital murder indictment is effectively put on notice that the special questions under Article 37.071, . . . will be issues in the case and that such procedural provisions need not be alleged in the indictment") (citations omitted); *Castillo v. State*, 739 S.W.2d 280, 298-99 (Tex. Crim. App. 1987); *Vigneault v. State*, 600 S.W.2d 318, 330 (Tex. Crim. App. 1980) (observing that "the fact that the issues to be submitted to the jury are in every capital case identical and wholly independent of the varying fact situations which may come to trial places the capital defendant in a substantially different posture as regards notice thereof, from that of a civil litigant," and therefore holding that the failure to allege the special issues in the indictment did not deprive the appellant of notice) (footnote omitted).

9. The argument that capital defendants are already provided all the notice constitutionally required of the punishment special issues by a capital murder indictment that does not allege the facts to support the issues cannot seriously be maintained. With respect to the Defendant's rights under the Texas Constitution, that notice must "come from the face of the indictment. Indeed the accused is not required to look elsewhere." *Ward*, 829 S.W.2d at 794; *Labelle*, 720 S.W.2d at 110 (observing that Article I, section 10, of the Texas Constitution requires that notice must come from the face of the indictment); *Benoit*, 561 S.W.2d at 813 (holding that defendant's knowledge of the offense with which he was charged does not obviate

inquiry into whether the charge, in writing, furnished that information in plain and intelligible language). An indictment that does not allege, for example, that a probability exists that the Defendant would commit criminal acts of violence that constitutes a "continuing threat to society" fails to provide notice of that accusation from its face. Likewise, an indictment that fails to allege that no circumstance exists that would justify a life sentence fails to provide notice of that allegation. The Defendant is not clairvoyant; he cannot use the indictment sworn out against him as a crystal ball to read the prosecutor's mind and foresee the State's intention to prove at trial that the Defendant is a "continuing threat to society" and that there is nothing that will justify a life sentence.

10. The clear purpose of the state in offering evidence of extraneous offenses is to convince the jurors that each should agree to elevate the level of the Defendant's punishment above the maximum of life, and return a verdict of death. The extraneous offenses are used by the state as "non-statutory aggravators" which function as the equivalent of an element of a greater offense. *Ring*, 122 S. Ct.at 2443. The relevant inquiry is one of form, but of effect. *Apprendi*, 530 U.S. at 494.

It doesn't make any difference what you call them, it is what effect they have on the sentencing process. Accordingly, evidence of extraneous offenses must be presented to the grand jury, and if true billed the extraneous offenses must be alleged in the indictment. At trial, each of them must be submitted to the jury and proven beyond a reasonable doubt. *Jones v. United States*, 526 U.S. 227, 243, n.6. (1999) However, the indictment returned by the grand jury against this defendant fails to allege any extraneous offenses that the jurors may be asked to consider in determining if the level of punishment should be raised above the maximum. Therefor, this court should preclude the state from offering evidence of extraneous offenses.

11. The Texas Court of Criminal Appeals has held that a capital defendant is not entitled to notice (absent unfair surprise) of the state's intent to offer extraneous offenses at the punishment phase under either article 37.07 or rule 404(b) because neither of these provisions applies to the punishment phase of a capital trial. This penalty phase is instead governed by Article 37.071 and Rule 404(c), neither of which have notice requirements. *Guidry v. State*, 9 S.W.3d 133,153 (Tex. Crim. App. 1999). This result oriented opinion in *Guidry*, not only fails to provide justification for further depriving the Defendant of due process and equal protection of the laws, but it also fails to provide justification for the prosecutors who fail to properly give notice to an accused by indictment This ruling (and many others of the Court of Criminal Appeals) cannot stand under the weight of *Jones, Apprendi and Ring*.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully submitted,

_____

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

670

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June _, 2007.

_____

Steven R. Miears

671

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION IN LIMINE REGARDING THE OFFER OF EVIDENCE OF
## EXTRANEOUS OFFENSES (RING V. ARIZONA)

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the Defendant's Motion to Preclude the Offer of Evidence of Extraneous

Offenses (Ring v. Arizona). The court is of the opinion the motion should be in all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

672

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION *IN LIMINE* TO EXCLUDE PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE DANGEROUSNESS

Pursuant to the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, Art. I, §§ 10, 13, 15, and 19 of the Texas Constitution, Tex. Code Crim. Pro. art. 28.01 and Tex. R. Evid. 401, 403, 702, 703, and 705, and for the reasons set forth below and in the attached *Memorandum of Law*, the Defendant respectfully moves this Court to exclude all psychiatric or psychological expert opinion testimony offered by the State as to the probability that the Defendant will commit future "criminal acts of violence that would constitute a continuing threat to society" under Tex. Code Crim. Proc. Ann. art. 37.071 (2)(b)(1)(Vernon Supp. 2001).

1. The Defendant has been indicted by the Collin County Grand Jury for the offense of capital murder;

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976);

3. The State seeks to call one or more witnesses to offer psychiatric or psychological expert opinions or predictions as to the Defendant's eligibility for the death penalty under Tex. Code Crim. Proc. Ann. art. 37.071 § (2)(b)(1)(Vernon Supp. 2001).

1

2007 JUN 22 PH 1: 0_ HANNAH KUNKLE DISTRICT CLERK COLLIN COUNTY TEXAS BY_____ DEPUTY

4. The opinions proffered will be either scientific in nature or based on personal training and experience.

5. The admissibility of these opinions is governed by Tex. R. Evid. 401, 403, 702, 703, and 705 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992); *E.I. du Pont Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995); *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713 (Tex. 1998); *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998) (overruled in part on other grounds).

6. Psychiatric or psychological predictions as to a whether a defendant will constitute a continuing threat to society, or a defendant's "future dangerousness," are inadmissible because they do not meet the standards for reliability articulated in the rules of evidence and the common law. Such predictions are unreliable due to (a) their overwhelming rate of error; (b) their lack of acceptance in the relevant scientific community, (c) the subjective, inconsistent, ad-hoc, and standardless manner in which they are formed, (d) the absence of a proper and adequately reliable data source upon which to base them. Any testimony the State seeks to admit incorporating such predictions does not satisfy the reliability requirement of Tex. R. Evid. 702, and must be excluded.

7. Psychiatric or psychological predictions of a defendant's future dangerousness are further inadmissible because they do not meet the standards for relevance articulated in the rules of evidence and the common law. Such predictions are irrelevant because they do not assist the juror in determining a question of fact. Psychiatric or psychological predictions of a defendant's future dangerousness are further inadmissible because any probative value is substantially outweighed by the danger of unfair prejudice pursuant to Tex. R. Evid. 403.

674

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that the Court exclude any and all psychiatric or psychological expert testimony offered by the State that incorporates a prediction as to whether Defendant is a future danger or will constitute a continuing threat to society.

Respectfully submitted,

_____
Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _22_ day of _____June_____, 2007.

_____
Steven R. Miears

675

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE DANGEROUSNESS

BE IT REMEMBERED, that on the _____ day of _____, 2007, came to be considered the foregoing motion. The court is of the opinion the motion should be in all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

676

4

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PSYCHIATRIC OR PSYCHOLOGICAL TESTIMONY CONCERNING FUTURE DANGEROUSNESS

Pursuant to the 5th, 6th, 8th, and 14th Amendments to the United States Constitution, Art. I, §§ 10, 13, 15, and 19 of the Texas Constitution, Tex. Code Crim. Proc. art. 28.01 and Tex. R. Evid. 401, 403, 702, 703, and 705, Defendant requests that this Court exclude all psychiatric or psychological expert opinion testimony offered by the State as to the probability that Defendant will commit future "criminal acts of violence that would constitute a continuing threat to society" under Tex. Code Crim. Proc. art. 37.071  (2)(b)(1)(Vernon Supp. 2001).  Defendant respectfully submits that such testimony does not meet the requirements of Rules 702 or 403.

### INTRODUCTION

For expert testimony to be admitted as evidence under Tex. R. Evid. 702, a trial court must determine whether such testimony is reliable and relevant. *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 720 (Tex. 1998). The trial court functions in a "gatekeeping role" for the admission of such evidence. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995); *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998) (overruled in part on other grounds). The proponent of expert testimony bears the strict burden of

1

677

proving both the reliability and relevance of such testimony before it may be admitted into evidence. *Robinson*, 923 S.W.2d at 557.

Additionally, evidence deemed reliable and relevant must be excluded if "its probative value is substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury, by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.

In the penalty phase of a capital trial, a court must evaluate psychiatric or psychological testimony that predicts a defendant's continuing threat to society under Art. 37.071 § (2)(b)(1), or "future dangerousness," using these reliability, relevance, and prejudice considerations. *Nenno*, 970 S.W.2d 549 (performing a reliability, relevance, and prejudice inquiry for psychiatric testimony in penalty phase of capital murder trial); *Joiner v. State*, 825 S.W.2d 701 (Tex. Crim. App. 1992) (same). When evaluated for reliability, relevance, and prejudice, the gross impropriety and inadmissibility of psychiatric and psychological predictions of future dangerousness becomes clear. The admission of testimony that incorporates these predictions violates the rules of evidence, the constitutional rights of the accused, and the common law.

## ARGUMENT

### 1. PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS ARE UNRELIABLE, AND <u>MUST BE EXCLUDED UNDER TEX. R. EVID. 702.</u>

The reliability of expert testimony rests on a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and may properly be applied to the facts in issue. *Daubert*, 509 U.S. at 593-94. A preliminary assessment of reliability is guided by (a) the validity of the underlying scientific theory (b) the validity of the technique applying the theory and (c) the proper application of the technique on the occasion in question. *Kelly*, 824

678

S.W.2d at 573; *Nenno*, 970 S.W.2d at 561. Questions of validity and proper application are to be guided by certain factors, which include, but are not limited to:

(a) The qualifications, experience, and skill of the person testifying;

(b) The extent to which the reasoning or methodology can be and has been tested;

(c) The extent to which the reasoning or methodology relies upon the subjective interpretation of the person testifying;

(d) Whether the reasoning or methodology has been subjected to peer review and/or publication, and whether the theory or technique has been rejected in such literature;

(e) The availability of other experts to test and evaluate the technique;

(f) The potential or known rate of error of the reasoning or methodology;

(g) Whether the reasoning or methodology has been generally accepted as valid by the relevant scientific community;

(h) The non-judicial uses which have been made of the reasoning or methodology;

(i) The clarity with which the underlying theory and technique can be explained to the court.

*Daubert,* 509 U.S. at 593; *Gammill* 972 S.W.2d at 720; *Kelly,* 824 S.W.2d at 573.

The above-listed factors [*Daubert* and *Kelly* factors] are germane to evaluating the reliability of both scientific and non-scientific expert testimony, "[w]hether the expert would opine on economic valuation, advertising psychology, or engineering. . . ." *Gammill*, 972 S.W.2d at 725. *See also Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) (holding that clinical medical expert's testimony was not admissible because it did not fulfill the *Daubert* factors); *Perez v. State*, 25 S.W.3d 830 (Tex. App.—Houston [1st Dist.] 2000) (applying *Daubert* analysis to non-scientific expert); *American Tourmaline Fields v. International Paper Co.*, No.

3

CIV.A.3:96CV3363D, 1999 WL 242690 at *4 (N.D. Tex. April 19, 1999)(same). As such, the above listed principles govern the admissibility of psychiatric and psychological testimony, which is based on a combination of training, experience, and scientific inquiry. *Nenno*, 970 S.W.2d at 560-62. *See also Muhammad v. State*, 46 S.W.3d 493, 506-507 (Tex. App.—El Paso [8th Dist.] 2001) (using the *Kelly* factors to determine whether psychological evidence should be admitted); *Green v. State*, 55 S.W.3d 633, 639-41 (Tex. App.—Tyler [12th Dist.] 2001)(same). In evaluating "fields of study aside from the hard sciences," courts should tailor the above analysis to examine closely the data collection procedures, such as personal interviews, document review, or statistical analysis, conducted by the witness in question. *Nenno*, 970 S.W.2d at 561.

### A. Psychiatric or psychological predictions of future dangerousness, as generally performed and offered, fail to meet the Rule 702 standards of reliability.

In general, psychiatric or psychological testimony as to whether a defendant will constitute a continuing threat to society, or a defendant's "future dangerousness," in capital cases is an ad-hoc determination solicited by a hypothetical fact pattern presented to the witness by the State. Occasionally, a limited record review accompanies the hypothetical fact pattern. The hypothetical fact pattern primarily incorporates the facts of the specific crime for which the defendant has been convicted. Occasionally, the hypothetical fact pattern will incorporate supplemental evidence, such as extraneous offenses, uncharged prior misconduct, and limited character evidence, to be considered in the ad-hoc determination.

Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, must be excluded because they fail to meet adequate standards for reliability.

> i.    **The proponent of the expert testimony bears the burden of proving the reliability of the expert's testimony.**

4

680

The proponent of psychiatric or psychological predictions of a defendant's future

dangerousness bears the burden of proving the reliability of such predictions. *Robinson*, 923

S.W.2d at 557. In order to satisfy this burden the proponent must demonstrate his experience and

skill in a sub-specialty of forensic psychology or psychiatry that addresses the prediction of

future dangerousness of criminal defendants in capital cases. A general degree in psychiatry or

psychology is not sufficient to establish expertise in the predictions of future dangerousness in

capital cases. *See Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)(holding that a testifying

expert must have expertise on the very matter about which he is to give an opinion and that a

medical degree is not sufficient to establish this expertise). The proffered expert also bears the

burden of proving his skill in predicting the future dangerousness of criminals. Experience

testifying as an expert witness on the issue at hand is not sufficient to establish reliability. In fact,

absent a showing of the reliability of the proffered testimony, the Texas Supreme Court has

squarely rejected the testimony of those who have had long histories of testifying by noting that

"'the only review the plaintiffs' experts' work has received has been by judges and juries, and

the only place their theories and studies have been published is in the pages of the federal and

state reporters.'" *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 726 (Tex. 1997) (quoting

*Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1318 (9th Cir. 1995)). Furthermore,

experience in the field is not sufficient to establish expertise if such experience is not skillful.

*See Sosa v. State*, 841 S.W.2d 912, 916 (Tex. App.—Houston [1st Dist.] 1992) (rejecting

testimony of proffered "graphonalaysis" expert who had been a graphoanalyst for fifteen years

and had reviewed thousands of handwriting samples because testimony otherwise not proved

reliable).

In order to demonstrate this skill, the expert should be asked to proffer specific

publications on the reliability and acceptability of the methodologies employed in predicting

5

future dangerousness. *See Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 794-95 (S.D. Tex. 2000) (rejecting experts' testimony who did not point to medical or scientific literature supporting their conclusions); *Green*, 55 S.W.3d at 640 (rejecting expert's testimony who did not provide the trial court with any actual authorities and authorities supporting his analysis); *American Tourmaline Fields*, 1999 WL 242690 at *3 (rejecting testimony of proffered expert who has not provided court with copies of articles upon which he purported to rely and could not recall the name or citation for any articles that have discussed his technique). Further, the methodologies that the proffered expert employs in predicting future dangerousness must be consistent with the methodologies and principles of predicting future dangerousness that are detailed in those publications the expert brings to the court's attention. *See Green*, 55 S.W.3d at 640 (rejecting expert's testimony when expert did not indicate that he had followed the methodologies of the "authorities" that he cited); *Bennett v. PRC Pub. Sector*, 931 F. Supp. 484, 494 (S.D. Tex. 1996) (rejecting expert's testimony noting that the methodology he employed was not consistent with the methodologies described by experts and literature in the field that he had named).

        ii.        **Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable, and therefore inadmissible, due to the overwhelming potential rate of error of such predictions**.

It is generally accepted by the scientific community that psychiatrists and psychologists are more often incorrect in their assessments of future dangerousness than they are correct. The American Psychiatric Association [APA], has consistently maintained that "[t]he unreliability of psychiatric predictions of long-term future dangerousness is by now an established fact within the profession." *Barefoot v. Estelle*, 463 U.S. 880, 920 (1983) (Blackmun, J., dissenting) (quoting Brief Amicus Curiae for the American Psychiatric Association, *Barefoot v. Estelle*, 463

682

U.S. 880 (1983)(No. 82-6080) [hereinafter APA Brief]. *See also Flores v. Johnson*, 210 F.3d

456, 463 (5th Cir. 2000) (Garza, J., specially concurring) (noting that the scientific community's

rejection of the reliability of predictions of future dangerousness is "as true today as it was in

1983."). Predictions that a person will be dangerous in the future are wrong two out of three

times. *Barefoot*, 463 U.S. at 920 (citing APA Brief at 9, 13); J. Monahan, The Clinical Prediction

of Violent Behavior 47-49 (1981); C. Slobogin, ARTICLE: DANGEROUSNESS AND

EXPERTISE, 133 U. Pa. L. Rev. 97, 111-17 (1984) (citing results of the major studies:

Baxstrom study: 20% accuracy; Thornberry Study: 20% accuracy; New York study 14%

accuracy: Kozol study: 34.7% accuracy; Paxtuxent study: 41.3% accuracy; Wenk study: 8%

accuracy). As such, a jury member could more accurately predict dangerousness by flipping a

coin rather than relying on an expert psychologist or psychiatrist's testimony. Because the

conclusions drawn from ad-hoc psychiatric or psychological predictions of future dangerousness

are more often wrong than right, the amorphous and undefined methodologies they employ

should be deemed unreliable. *See GE v. Joiner*, 522 U.S. 136, 146 (1997) (holding that

"conclusions and methodology are not entirely distinct from one another" and that erroneous

conclusions may indicate a faulty underlying methodology).

Even the more generous studies, done under the most controlled settings, indicate that

predictions of future dangerousness will be accurate only half of the time. As such, these

predictions are no better than chance determinations of who will be dangerous in the future.

Randy Otto, On the Ability of Mental Health Professionals to "Predict Dangerousness": A

Commentary on Interpretations of the "Dangerousness" Literature, 18 Law & Psych. Rev. 43, 64

& n.65 (1994); *See also* Melvin Goldzband, Dangerousness: A Mutating Concept Passes

Through the Literature, 26 J. Am Acad. Psych. & L. 649, 651 (1998) (noting that predictions of

dangerousness are increasingly demanded by courts but because of their unreliability such

predictions are "inherently fruitless" and "possibly dangerous."); George B. Palermo, et al. On the Predictability of Violent Behavior, 36 J. Forensic Sci. 1435, 1442 (1991) (noting that supportive scientific studies for the accuracy of long-term predictions of violence are lacking); David Freedman, False Prediction of Future Dangerousness: Error Rates and the Psychopathy Checklist-Revised, 29 J. Am. Acad. Psych. & L. 89, 92 (2001) ("The prediction of complex behaviors such as violence remains exceedingly difficult and uncertain, and the plethora of new instruments fails to reach a scientifically reliable or valid standard of performance to be used to make decisions about a person's life or liberty in any setting.").

The reliability of psychiatric and psychological predictions of future dangerousness is tenuous when one considers how Texas courts have treated the admissibility of polygraph evidence. The Texas Court of Criminal Appeals has erected a "policy-based barrier to the admission of the existence and results of polygraph tests." *Reed v. State*, 48 S.W.3d 856, 860 (Tex. App.—Texarkana [6[th] Dist.] 2001). The court has held polygraph testimony categorically inadmissible "because it is not objective, but rather subjective, unreliable, and unduly persuasive." *Reed*, 48 S.W.3d at 863. The polygraph technique accurately predicts truth or deception "between seventy and ninety percent of the time." *United States v. Posado*, 57 F.3d 428, 434 (5th Cir. 1995). The best estimates of the accuracy of future dangerousness predictions indicate that they are correct merely fifty percent of the time. Psychiatric and psychological predictions of future dangerousness, which are both less reliable and more subjective than polygraph tests, should similarly be deemed inadmissible.

Research and literature that may indicate a more accurate prediction rate of future dangerousness is based on methods of prediction that are very different from those used in capital trials. More accurate prediction rates are garnered from studies in which clinicians have the opportunity to observe behavior in a mental health facility over an extended period of time.

8

The procedure used in this trial instead has been an ad-hoc determination of dangerousness based upon a hypothetical scenario provided by the State.

> iii. **Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable because they are not generally accepted in the relevant scientific community.**

The American Psychiatric Association [APA] has insisted that psychiatrists are not qualified to make determinations of long-term future dangerousness and has consistently urged that expert psychiatric expert testimony on future dangerousness be deemed inadmissible. The APA has urged that "[a]bsent an in-depth psychiatric examination and evaluation, the psychiatrist cannot exclude alternative diagnoses; nor can he assure that the necessary criteria for making the diagnosis in question are met. As a result, he is unable to render a medical opinion with a reasonable degree of certainty." *Flores*, 210 F.3d at 467 (Garza, J., specially concurring) (quoting APA Brief). "The scientific community virtually unanimously agrees that psychiatric testimony on future dangerousness is, to put it bluntly, unreliable and unscientific." *Flores*, 210 F.3d at 463 (Garza, J., specially concurring). As an indication of the strength of the scientific community's rejection of this sort of ad-hoc psychiatric and psychological determinations, the APA expelled Dr. James Grigson because he consistently testified as to a defendant's future dangerousness without personal examination. Bruce Vincent, A Dearth of Work for 'Doctor Death'; the Once Ubiquitous James Grigson Now Finds Little Demand for his Testimony in Texas Capital Murder Sentencings, Texas Lawyer, Dec. 4, 1995, at 4.

A testifying expert cannot establish that his methodologies are accepted in the relevant scientific community through "mere assurances . . . as to the accuracy of his own methods or results, in the absence of other credible supporting evidence." *Castellow*, 97 F.Supp.2d at 792 (citations omitted). *See also Robinson*, 923 S.W.2d at 559 (holding that an expert's "self-serving statements that his methodology was generally accepted and reasonably relied upon by other

9

experts in the field are not sufficient to establish the reliability of the technique and theory underlying his opinion."). Thus, the proffered expert's assertion that the scientific community accepts his methodologies is not sufficient in light of the overwhelming rejection of this testimony by the scientific community.

      iv.    **Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, are unreliable because they are purely subjective.**

Psychiatric or psychological predictions of a defendant's future dangerousness, particularly ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State, are unreliable because they are "simply subjective testimony without any scientific validity." *Flores*, 210 F.3d at 458 (Garza, J., specially concurring). Each psychiatric or psychological prediction of future dangerousness is determined in a different manner. There is no established and consistent methodology applied or required for psychiatric or psychological analyses of future dangerousness, and "standards controlling the operation of the technique are nonexistent." *Id.* at 465-66; *see also* Kenneth B. Dekleva, <u>Psychiatric Expertise in the Sentencing Phase of Capital Murder Cases</u>, 29 J. Am. Acad. Psych. & L. 58, 60 (2001) ("'specific'… guidelines for making dangerousness predictions in forensic populations do not currently exist.").

An ad-hoc determination of dangerousness is not externally verifiable by other experts. There has been no "testing" of the methodologies used in the predictions of each expert. The factors an expert uses in determining dangerousness are not weighted and do not correspond to any graded scale of factors that would contribute to or predict dangerousness. Other experts looking at the same data are unable to determine whether the testifying expert's particular weighting of such factors is accurate. Thus, peer review of predictions of future dangerousness is

rare, and "peer review of making such predictions in general has been uniformly negative."

Flores, 210 F.3d at 465 (Garza, J., specially concurring)(citing G. Morris, SYMPOSIUM:

Defining Dangerousness: Risking a Dangerous Definition, 10 J. Contemp. Legal Issues 61, 85-86

(1999)). *See also*, William M. Grove & Paul E. Meehl, Comparative Efficiency of Informal

(Subjective, Impressionistic) and Formal (Mechanical, Algorithmic Prediction Procedures: The

Clinical-Statistical Controversy, 2 Psych. Pub. Pol'y & L. 293, 320 (1996) (noting that clinical

experiences cannot resolve disputes among psychologists because each can appeal to his own

unique clinical experiences which lack an objective referent). Testimony such as this that is

"subjective and 'not readily re-produceable [sic]'" by others in the field should not be

admissible. *Green*, 55 S.W.3d at 638.

Key terms and concepts of the witness' testimony are amorphous and inexact. The scope

of dangerousness and the length of time at issue are not defined. Concepts such as "conscience,"

"malice," and "evil," upon which determinations of dangerousness rely, are not adequately

defined by the testifying witness.

> **v.    Ad-hoc psychiatric or psychological predictions are unreliable due to the absence of a reliable data source upon which to base a determination of dangerousness.**

As an essential component of assessing the reliability of the proffered testimony, "the

underlying data should be independently evaluated in determining if the opinion itself is

reliable." *Havner*, 953 S.W.2d at 713. The data set upon which the testifying expert here rests is

not reliable and the expert's opinion should therefore not be admissible. The data set upon which

the testifying expert relies has been prepared by the prosecution, and the testifying witness has

not verified the data provided her.  As such, the data upon which this determination is based have

not been compiled objectively, and the data have been specifically compiled to prove

dangerousness. Compilation of data in this manner has been held to "give[] rise to a 'common-sense skepticism' regarding the expert's evaluation" which has proved fatal to the reliability of such testimony. *Munoz v. Orr*, 200 F.3d 291, 301 (5th Circ. 2000) (citations omitted). *See also Castellow*, 97 F.Supp.2d at 797 (rejecting reliability of proffered expert noting that the "detailed investigation" upon which the witness relied was prepared by Plaintiff's investigator); *Green*, 55 S.W.3d at 638 (rejecting reliability of proffered expert noting that witness had not independently investigated data provided him).

Further, ad-hoc determinations based on a hypothetical fact pattern prepared and presented by the State are unreliable because they do not incorporate any personal interviewing, investigation, or background examination. Testimony which relies only on a hypothetical provided by the State decidedly lacks any of the investigation, examination, or interviewing that courts have stipulated as the bedrock of a testifying mental health professional and proper clinical opinion provider. Testifying experts "whose convictions about the ultimate conclusion of their research is so firm that they are willing to aver under oath that it is correct prior to performing the necessary validating tests [may] properly be viewed by the district as lacking the objectivity" that is required to assure the reliability of the testimony. *Castellow*, 97 F.Supp.2d at 793 (quoting *Claar v. Burlington N.R.R.*, 29 F.3d 499, 503 (9th Cir. Mont. 1994)).

The Texas Criminal Court of Appeals has acknowledged "the pivotal role that psychiatry has come to play in criminal proceedings" and has characterized that role as one in which "psychiatrists gather facts, through professional examination, interviews, and elsewhere, that they will share with the judge or jury." *Jackson v. State*, 992 S.W.2d 469, 473 (Tex. Crim. App. 1999) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 79 (1985)). The Supreme Court in *Ake v. Oklahoma* stipulated that a "competent psychiatrist" is one "who will conduct an appropriate examination." *Ake*, 470 U.S. at 83. Finally, the Texas Court of Criminal Appeals has held that

638

psychiatrists assist the jury by "laying out their investigative and analytic process to the jury." *Jackson*, 992 S.W.2d at 473. It is thus clearly recognized that an essential role of a mental health professional in court is to conduct an "investigative process" which includes examinations and interviews of the defendant.

The lack of investigation makes this method particularly unreliable because, without more information the testifying expert is unable to rule out other diagnoses and hypotheses with regard to the defendant. *See* Paul S. Appelbaum, <u>Hypotheticals, Psychiatric Testimony, and the Death Sentence</u>, 12 Bull. Am. Acad. Psych. & L. 169 (1984). The expert is unable to ascertain all the facts that might make these alternate hypotheses or diagnoses more plausible for the defendant's situation. *See Mata v. State*, 46 S.W.3d 902, 915 (Tex. Crim. App. 2001) (rejecting expert's testimony that did not take into account facts that the court found salient to the analysis). An expert's inability or failure to rule out other hypotheses for the question at issue has proved fatal to the reliability of his proffered testimony. *See Bennett v. PRC Public Sector, Inc.*, 931 F. Supp. 484, 492 (S.D. Tex. 1996) (limited fact collection impeded expert's ability to rule out other causes of Plaintiff's injury and indicated that expert's testimony was unreliable).

> **vi.    Psychiatric or psychological predictions of a defendant's future dangerousness are unreliable because they are not used outside the judicial/legal context.**

The Texas Supreme Court has asked of experts whether the methodology or study they employ "was prepared only for litigation" and whether it has "been used or relied upon outside the courtroom." *Havner*, 953 S.W.2d at 726. The expert testimony in this case is decidedly prepared only in the context of litigation and, given its lack of acceptance within the scientific community, would never be relied upon outside of the courtroom. While it is true that determinations of future dangerousness are used in involuntary civil commitment of individuals, psychotherapists' liability for their patients' actions, and post-jail detention of sexual predators,

13

689

these are all judicial uses of determinations of future dangerousness. Predictions about future dangerousness are non-existent outside of these judicial contexts.

Furthermore, the predictions of future dangerousness in these contexts are predictions of dangerousness in the short term; whereas future dangerousness predictions in capital cases are predictions of behavior in the long term. There is no procedure in Texas for reevaluating determinations of future dangerousness during the span of the defendant's sentence. Thus, the prediction of future dangerousness may concern behavior that extends for over a decade into the future. Whereas short-term predictions may be made with some degree of accuracy, long-term predictions cannot be made accurately or reliably. *See* Grant H. Morris, Defining Dangerousness: Risking a Dangerous Definintion 10 J. Contemp. L. Issues 61, 78 (1999); Douglas Mossman, Dangerous Decisions: An Essay on the Mathematics of Involuntary Hospitalization 2 U. Chi. L. School Round Table 95, 97 (1995).

### B. The Psychopathy Checklist Revised [PCL-R] is an unreliable method for predicting a defendant's dangerousness in the future.

In certain instances, the Psychopathy Checklist Revised [PCL-R], a psychiatric tool used to diagnose and assess for the presence of psychopathic traits, is utilized as a basis for predicting a defendant's future dangerousness. High scores on the PCL-R have been used to predict a defendant's "continuing threat to society." J.F. Edens, et al., Psychopathy and the Death Penalty: Can the Psychopathy Checklist-Revised Identify Offenders Who Represent a "Continuing Threat to Society?", J. Pscyh. L. (Winter 2001).

The PCL-R is both more objective and more accurate than the ad-hoc determinations based on hypothetical fact patterns prepared and presented by the State. It has been held to be the most reliable known indicator of future dangerousness. *Muhammad*, 46 S.W.3d at 506. Despite this comparative reliability, the PCL-R is not reliable enough a basis upon which to

admit a proffered expert's testimony. The PCL-R is unreliable primarily because of its very high

false-positive rates. The PCL-R has been estimated to predict violent behavior with a false

positive rate of between 54.3 and 75%. This indicates that the PCL-R predicts violence at a rate

worse than chance. *See* David Freedman, <u>False Prediction of Future Dangerousness: Error Rates</u>

<u>and the Psychopathy Checklist-Revised</u>, 29 J. Am. Acad. Psych. & L. 89, 92 (2001). The PCL-R

is further unreliable for predicting future dangerousness because it does not evaluate the potential

psychopathy as modified by age of the evaluee. Thus, the PCL-R cannot indicate how dangerous

an evaluee will be when he is released from prison decades into the future. Edens et al., *supra* at

*. It has been shown that risk of violence decreases significantly with age. J. Sorenson & R.

Pilgrim, <u>CRIMINOLOGY: AN ACTUAL RISK ASSESSMENT OF VIOLENCE POSED BY</u>

<u>CAPITAL MURDER DEFENDANTS</u>, 90 J. Crim. L. & Criminology 1251, 1266 (2000).

Finally, research examining the relationship between psychopathy and violence within

institutions and prison settings has indicated that this relationship is, at best, tenuous and weak.

Thus, researchers have concluded that "the position that PCL-R scores for any one offender

provide much useful information regarding his relative or absolute risk for future institutional

violence while incarcerated clearly is untenable." Edens et al., *supra* at *. *See also* Freedman,

*supra* at 94.

      Thus, while the PCL-R is touted as the most reliable indicator of dangerousness, this

reliability is merely reliable *comparatively* to the completely inaccurate ad-hoc predictions made

by testifying experts. Because of the above listed factors the PCL-R is not a reliable enough tool

upon which to admit psychological or psychiatric expert testimony of future dangerousness.

Expert psychological or psychiatric testimony that does not rely on the PCL-R and which is

instead merely an ad-hoc determination, *a fortiori* should be inadmissible.

For the reasons articulated above, psychiatric or psychological predictions of future dangerousness are unreliable. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 702.

## II. PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS ARE IRRELEVANT, AND MUST BE EXCLUDED UNDER TEX. R. EVID. 702.

Even if found to be reliable, expert testimony must be shown to be relevant to a factual issue in question. In determining relevance, expert testimony should be admitted only when it will aid the jury in making inferences regarding fact issues more effectively. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (affirming trial court's exclusion of expert testimony on blood-banking procedure and industry); *Glasscock v. Income Property Servs.*, 888 S.W.2d 176, 180 (Tex. App.—Houston [1st Dist.] 1994) (reversing trial court exclusion of expert testimony regarding security procedures in commercial office buildings because not an area of expertise within knowledge of reasonable juror). Psychiatric and psychological predictions of future dangerousness do not aid the jury in determining questions of fact, and are therefore inadmissible due to irrelevance under Tex. R. Evid. 702.

When the jury is equally competent to form an opinion regarding ultimate fact issues, the expert's testimony as to these issues should be excluded. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) ("That a witness has knowledge, skill, expertise, or training does not necessarily mean that the witness can assist the trier-of-fact."); *Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994) (same). If a purported expert testifies to an analysis based on factors that an average layperson juror would generally be aware of and utilize absent the expert testimony, such testimony is irrelevant. *Douglas v. State*, No. 01-98-01151-CR, 2001 WL 1048533, at *7 (Tex. App.—Houston [1st Dist.] Aug. 31, 2001) (affirming exclusion of expert testimony regarding the voluntariness of defendant's confession). Testimony that might be "of

692

some benefit" to the jury is not admissible unless the jury would not be qualified to answer the question without the benefit of the expert's specialized knowledge. *Speer v. State*, 890 S.W.2d 87, 96 (Tex. App.—Houston [1st Dist.] 1994) (affirming exclusion of expert testimony regarding defendant's "dependent personality disorder").

Psychiatric predictions of future dangerousness are not offered in every capital case. There are many instances in which juries decide the special question of future dangerousness without consideration of psychiatric testimony. *See, e.g., Jasper v. State*, No. 73,817, 2001 WL 1504674, at *1-2 (Tex. Crim. App. Nov. 28, 2001) (affirming jury finding of future dangerousness based on facts of crime, evidence of escalating criminal activity, and lack of remorse); *Conner v. State*, No. 73,591, 2001 WL 1043248, at *4 (Tex. Crim. App. Sep 12, 2001) (affirming jury finding of future dangerousness based on defendant's prior criminal history); *Trevino v. State*, 991 S.W.2d 849, 854 (Tex. Crim. App. 1999) (same); *Salazar v. State*, 38 S.W.3d 141, 146 (Tex. Crim. App. 2001) (affirming jury finding of future dangerousness based on facts of offense alone). As such, it is clear that jurors are qualified to answer the future dangerousness question, and unreliable psychiatric testimony regarding the same point must be excluded.

In cases where the State offers psychiatric expert testimony regarding future dangerousness, as described in Section IA, above, predictions are ad-hoc determinations solicited by a hypothetical fact pattern presented orally to the witness by the State. This hypothetical fact pattern is generally limited to the facts of the specific crime for which the defendant has been convicted, although occasionally incorporates supplemental evidence, such as extraneous offenses, uncharged prior misconduct, and limited character evidence. As described above in Section IA(v), the proffered "expert" rarely has interviewed or investigated the defendant personally. The factors used in constructing the hypothetical are sufficient, independent of any

17

693

psychiatric or psychological analysis, to form the basis of a jury determination. *Jasper*, 2001 WL 1502674 at \*1-2; *Conner*, 2001 WL1043248 at \*4; *Trevino*, 991 S.W.2d at 854; *Salazar*, 38 S.W.3d at 146.

Further, a psychiatric or psychological "spin" or interpretation of these same facts is unreliable, as described in Section I. Because psychiatric and psychological predictions of dangerousness have been shown to be grossly unreliable, they have no relevance to a jury's determination of the factual question. Unreliable information cannot be considered helpful, and therefore relevant, to a jury. *See Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000) ("Naturally, testimony which is unreliable or irrelevant would not assist a juror in understanding the evidence or determining a fact in issue, as is required by Rule 702."); *Griffith v. State*, 983 S.W.2d 282, 287-88 (Tex. Crim. App. 1998) ("Evidence that is not reliable is not helpful to the jury because it frustrates rather than promotes intelligent evaluation of the facts."); *Bennett*, 931 F.Supp. at 500 (finding testimony unreliable where "completely lacks specificity" and "borders on sheer speculation," and therefore irrelevant).

Psychiatric or psychological predictions of future dangerousness rely exclusively on matters within the average juror's common knowledge, and thus should be excluded. *K-Mart Corp.*, 24 S.W.3d at 361. Whereas relevant scientific or expert testimony assists a juror by introducing new facts or expertise, psychiatric predictions of future dangerousness merely "tell the jury how they should view the facts." *Id.* This is not sufficient to meet the necessary criteria for relevance. *See also Flores v. State*, 871 S.W.2d 714, 724 (Tex. Crim. App. 1993) (Clinton, J., dissenting) (noting that expert psychiatric testimony regarding future dangerousness does not "add[] anything of substance to whatever inference of future dangerousness may be gleaned from the facts themselves."); *Speer*, 890 S.W.2d at 97 (finding that psychiatric testimony regarding

694

defendant's dependent personality disorder could be found within the range of a layperson's knowledge).

For the reasons articulated above, psychiatric or psychological predictions of future dangerousness are irrelevant. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 702.

## III. PSYCHIATRIC OR PSYCHOLOGICAL PREDICTIONS OF A DEFENDANT'S FUTURE DANGEROUSNESS CREATE AN UNACCEPTABE DANGER OF UNFAIR PREJUDICE AND NEEDLESS PRESENTATION OF CUMULATIVE EVIDENCE AND MUST BE EXCLUDED UNDER TEX. R. EVID. 403.

Psychiatric or psychological predictions of future dangerousness are irrelevant and unreliable, and thus, inadmissible under Tex. R. Evid. 702. However, even if such predictions were to be found reliable and relevant, they are inadmissible under Tex. R. Evid. 403, under which reliable and relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; *Morales*, 32 S.W.3d at 865-66; *Kelly*, 824 S.W.2d at 572. Presentation to the jury of psychiatric or psychological predictions of future dangerousness creates an unacceptable risk of prejudice and needless cumulative evidence, and is impermissible under Rule 403.

In determining whether the prejudicial potential of evidence outweighs its probative value, courts are to consider (a) how compelling evidence serves to make more or less probable a fact of consequence; (b) the potential the evidence in question will impress the jury in an irrational and indelible way; (c) the extent of the proponent's need for such evidence; and (d) how much trial time will be consumed in the admission of such evidence. *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000).

> A. Because psychiatric predictions of a defendant's future dangerousness are unreliable and irrelevant, they do not make any more or less probable a fact of consequence in capital sentencing proceedings.

19

Psychiatric or psychological predictions of a defendant's future dangerousness, because of unreliability and lack of relevance alone, as described in Sections I and II, above, create an unacceptable danger for unfair prejudice. The flawed underlying methodology and high potential rate of error render psychiatric or psychological future dangerousness predictions insignificant as to whether future danger is any more or less probable. *See Morales*, 32 S.W.3d at 865 ("Naturally, testimony which is unreliable or irrelevant would not assist a juror in understanding the evidence or determining a fact in issue..."); *Griffith*, 983 S.W.2d at 288 ("Evidence that is not reliable is not helpful to the jury because it frustrates rather than promotes intelligent evaluation of the facts.")

      B. **Psychiatric or psychological predictions of a defendant's future dangerousness impress the jury in an inappropriate, irrational, and indelible way.**

Expert testimony is placed under additional evidentiary constraints because courts have reasoned that jurors are unable to evaluate such testimony thoroughly and, therefore, give it excessive weight regardless of its reliability and veracity. *Gammill*, 972 S.W.2d at 722 (citing *Robinson*, 923 S.W.2d at 553). *See also Kelly*, 824 S.W.2d at 573. In capital sentencing proceedings, there are four preexisting juror biases that compound the general tendency of unchecked acceptance of expert testimony. These biases affect jurors' perceptions of the likelihood of violent recidivism, the opportunities for recidivism, the accuracy of clinical expert testimony in general and the accuracy of expert predictions of future dangerousness specifically. Such biases reduce the effectiveness of traditional methods of adversarial testing in capital sentencing proceedings. The result is unfair prejudice that might not arise in other legal contexts.

Jurors in capital cases have a predisposed tendency to overestimate the likelihood of violent recidivism. Capital jurors estimate the probability that a defendant charged with capital

696

murder, and given a life sentence, will commit another homicide between 25 and 50%, whereas studies show the likelihood to be approximately 0.2% over a forty-year term. J.R. Sorenson & R. Pilgrim, CRIMINOLOGY: AN ACTUAL RISK ASSESSMENT OF VIOLENCE POSED BY CAPITAL MURDER DEFENDANTS, 90 J. Crim. L. & Criminology 1251, 1269 (2000). Jurors estimate the probability that a criminal defendant convicted of a violent crime will continue to engage in assaultive behavior between 50 and 85%. Again, studies show this sense to be greatly exaggerated; the risk of additional violent crimes in general is approximately 16%. Sorenson & Pilgrim, supra at 1269. Jurors in capital cases also have a predisposed tendency to overestimate the opportunity defendants will have to commit acts of violence in the outside community. Studies in Texas indicate that, on average, jurors believe a defendant sentenced to life in prison will be paroled after fifteen years, whereas under Texas law, defendants given a life sentence after conviction for a capital crime must serve forty years before becoming eligible for parole. V.T.C.A., Gov't Code § 508.145(b) (2001); Sorenson & Pilgrim, supra at 1255.

Furthermore, jurors also believe clinicians to be capable of predicting future dangerousness at a far more accurate rate than empirical studies have suggested. D.A. Krauss & B.D. Sales, The Effects of Clinical and Scientific Expert Testimony on Juror Decision Making in Capital Sentencing, 7 Psych. Pub. Pol'y & L. 267, 276, 301 (2001). Finally, jurors have an extreme predisposition toward acceptance of "clinical" opinion expert testimony, which is based on a subjective, personal assessment of the evaluee. Krauss & Sales, supra at 305. Psychiatric or psychological predictions of a defendant's future dangerousness, particularly those based on an expert's ad-hoc analysis of a hypothetical fact pattern prepared and presented by the State, are clinical determinations. *Id.* Jurors weigh clinical opinion testimony heavily in final decisions and often fail to distinguish between more and less accurate clinical opinion testimony. *Id.*

697

21

In general, jurors do not scrutinize expert testimony as intensely as lay testimony and the presumption of credibility for expert witnesses is falsely enhanced. "Consequently, a jury more readily accepts the opinion of an expert witness as true simply because of his or her designation as an expert." *Gammill*, 972 S.W.2d at 722 (citing *Robinson*, 923 S.W.2d 549); *See also Flores v. Johnson*, 210 F.3d 456, 465-6 (5th Cir. 2000) (Garza, J., specially concurring) ("the problem here . . . is not the introduction of one man's opinion on another's future dangerousness, but the fact that the opinion is introduced by one whose title and education (not to mention designation as an 'expert') gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact."); Krauss & Sales, supra at 273; C. Haney, ARTICLE: Violence and the Capital Jury: Mechanisms of Moral Disengagement and the Impulse to Condemn to Death, 49 Stan. L. Rev. 1447, 1486 & n.113 (1997) ("In this light, capital penalty trials sometimes become forums in which grossly prejudicial and unreliable predictions of future dangerousness [are presented] . . . with the imprimatur of state authority.") (citations omitted).

The preexisting tendencies of jurors in capital cases to overestimate the likelihood of violent recidivism, the opportunities criminal defendants have for recidivism, as well as the accuracy of clinical predictions of future dangerousness and the veracity and reliability of clinical predictions in general, reinforce the disproportionate credence jurors generally give expert testimony. These tendencies combined create a dangerous and unacceptable risk of prejudice in capital sentencing proceedings.

Adversarial testing is not a sufficient safeguard against the prejudicial effect of psychiatric or psychological predictions of future dangerousness. Faulty presuppositions and disproportionate acceptance of expert testimony may cause jurors to discredit expert testimony and cross-examination offered to counter a psychiatric or psychological determination of future

698

dangerousness. Krauss & Sales, *supra* at 276; E.H. Mantell, <u>A Modest Proposal to Dress the Emperor: Psychiatric & Psychological Opinion in the Courts</u>, 4 Widener J. Pub. L. 53, 65-66 (1994) ("Given a choice between an expert who says that he can predict with certainty that the defendant, whether confined in prison or free in society, will kill again, and an expert who says merely that no such prediction can be made, members of the jury charged by law with making the prediction surely will be tempted to opt for the expert who claims he can help them in performing their duty, and who predicts dire consequences if the defendant is not put to death."). The "apparent endorsement" of a medical or scientific community can be extremely detrimental to a defendant's substantive rights. *Perez v. State*, 25 S.W.3d 830, 831 (Tex. App.—Houston [1st Dist.] 2000) (finding trial court erred in allowing state's expert witness testimony as to "child abuse accommodation syndrome").

Adversarial procedures are generally insufficient to remove the prejudice caused by psychiatric or psychological predictions of a defendant's future dangerousness. Krauss & Sales, *supra* at 305. The ability to impeach, or discredit, expert witnesses through cross-examination is limited. Opposing counsel is allowed to question the expert using statements contained in treatises and authoritative scientific materials, however, such cross-examination is limited to publications that the witness recognizes as authoritative or publications upon which the expert has relied. *Reynolds v. Warthan*, 896 S.W.2d 823, 827 (Tex. App.—Tyler [12th Dist.] 1995) (citing *Carter v. Steere Tank Lines, Inc.*, 835 S.W.2d 176, 182 (Tex. App.—Amarillo [7th Dist.] 1992, writ denied). *See also Bowles v. Bourdon*, 219 S.W.2d 779, 783. (Tex. 1949). This detracts from the ability to legitimately subject the testimony to the rigors of adversarial testing.

Unreliable psychiatric opinion testimony creates a risk that the jury will be impressed in an irrational and indelible way. The prejudicial potential of such testimony is great and parties

699

confronted with such testimony have limited, if any, means to rebut or remove the prejudicial impact.

### C. The State has a limited need to present psychiatric or psychological prediction of a defendant's future dangerousness because such evidence is cumulative to other evidence already presented to the jury.

The State has no pressing "need" for the admission of psychiatric or psychological predictions of future dangerousness, because it has a variety of other means available to prove the Art. 37.071 § (2)(b)(1) special question. The predictions, are generally ad-hoc determinations solicited by a hypothetical fact pattern generally limited to the facts of the specific crime for which the defendant has been convicted, occasionally incorporating supplemental evidence, such as extraneous offenses, uncharged prior misconduct, and limited character evidence. The hypothetical fact pattern, with or without the supplemental evidence, and resulting psychiatric or psychological prediction of future dangerousness, needlessly present cumulative evidence, specifically prohibited by Rule 403.

Such predictions are needless because they lack validity or reliability and thus, offer nothing to the jury in addition to the mere repeat recitation of the facts of the crime, or other evidence, that has already been presented and made a part of the record. Merely cumulative evidence that serves no additional purpose must be excluded. *Sims v. Brackett*, 885 S.W.2d 450, 454 (Tex. App.—Corpus Christi [13th Dist.] 1994) (reversing trial court exclusion of expert medical witness testimony as to cause of patient's intestinal leak because not "*merely cumulative*") (emphasis added). *See also Pace v. Sadler*, 966 S.W.2d 685 (Tex. App.—San Antonio [4th Dist.] 1998) (excluding personal narrative describing facts already on the record in medical malpractice case because cumulative and would have only served to prejudice defendants).

700

The admission of unreliable psychiatric predictions of a defendant's future dangerousness sheds no credible scientific, medical, or other light on the individual circumstances of the defendant at issue. The potential rate of error of such predictions, described in Section I(A)(ii), above, shows that a witness providing the opinion is no more qualified to accurately do so than any of the members of the jury panel might be. Because the jurors otherwise have access to the underlying evidence presented to the opinion witness in the hypothetical fact pattern, and have the authority to base their determination of future dangerousness on this data alone, the opinion testimony itself is useless except for its prejudicial potential. *See, e.g., Long v. State*, 823 S.W.2d 259 (Tex. Crim. App. 1991) (excluding autopsy photographs in murder case, even though relevant and probative, because of prejudicial nature and cumulative effect where less gruesome photographs were already in the record); *Penry v. Johnson*, 215 F.3d 504, 513 (5th Cir. 2000) (Dennis, J., dissenting) (expressing concern regarding the "cumulative effect and reinforcement" of the "erroneous" admission of psychiatric testimony regarding future dangerousness) (overruled on other grounds); *See also Jasper*, 2001 WL 1502674 at *1-2; *Conner*, 2001 WL1043248 at *4; *Trevino*, 991 S.W.2d at 854; *Salazar*, 38 S.W.3d at 146 (juries may find future dangerousness based on the facts of the offense alone or some combination of the facts of the offense, the defendant's prior criminal history, and juror interpretation of remorse or other character evidence).

Psychiatric testimony offering a prediction of a defendant's future dangerousness is cumulative to other testimony or evidence already presented to the jury. As a result, such testimony, especially given its overwhelming potential for unfair prejudice, indelible and irrational impression on the jury, and consumption of judicial resources and time, must be excluded under Rule 403.

701

**D. The interests of efficiency, preservation of judicial resources, and the rules of evidence demand the exclusion of psychiatric predictions of a defendant's future dangerousness.**

Because psychiatric and psychological predictions of future dangerousness impress the jury in an irrational and indelible manner, do not serve to make the fact of a defendant's future dangerousness any more or less probable, and do not fill a need of the proponent of such predictions that would not be met otherwise, the predictions consume an unnecessary amount of time in the sentencing phase of a capital trial.

For the reasons articulated above, the minimal, if any, probative value of psychiatric or psychological predictions of future dangerousness is outweighed by the danger of unfair prejudice such predictions cause. Any expert testimony incorporating such predictions is inadmissible under Tex. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, Defendant requests that this Court exclude any and all psychiatric or psychological expert testimony offered by the State that incorporates a prediction as to whether Defendant will constitute a continuing threat to society, or Defendant's future dangerousness.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

702

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 2ⁿᵈ day of June, 2007.

_____
Steven R. Miears

703

27

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION IN LIMINE REGARDING ADMISSION OF PREJUDICIAL PHOTOGRAPHS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by counsel, and pursuant to 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of The Texas Constitution and Tex. Code Crim. Proc. arts. 1.03, 1.04, 1.05 and moves the Court to preclude admission of prejudicial photographs of the deceased. In support thereof, the Defendant would show:

1. The Defendant has been indicted by the Collin County grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. Upon information and belief, the Defendant anticipates that the State will attempt to use as evidence against this Defendant, the following color/black and white photographs.

    a.     autopsy photographs;

    b.     crime scene photographs depicting the deceased;

    c.     photographs of the deceased while alive;

    d.     photographs of the Defendant.

4. Neither the identity of the victim, nor the fact that the victim was alive prior to being

FILED 2007 JUN 22 PM 1:04 HANNAH KUNKLE DISTRICT CLERK COLLIN COUNTY, TEXAS BY_____ DEPUTY

killed, is at issue in this case. The Court should not admit a picture of a victim taken before death. Such a photograph would be irrelevant to any issue before the Court.

5. Likewise, the use of pictures taken after death, which are yet more prejudicial, is one of the most troubling in capital cases today. Prior to the admission of such photographs the Court must determine whether the photograph is relevant to any fact that the prosecution must prove. The Court must then determine whether any probative value that the picture may have is substantially outweighed by the danger of unfair prejudice under Tex. R. Evid. 403. *Reese v. State*, 33 S.W.3d 238, (Tex. Crim. App.2000). Prior to ruling on the admissibility of photographs, the court must determine, reasonably (1) how probative is the evidence, (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Montogmery v. State*, 810 S.W.2d 372, 389-390 (Tex. Crim. App. 1990, op. on reh'g).

6. Relevant criteria for the Court's consideration in determining admissibility will include (a) whether or not the ultimate issue to which the photograph is relevant is seriously contested by the defense; (b) whether or not the State has other convincing evidence to establish the ultimate issue to which the photograph is relevant; (c) whether the probative value of the evidence was, alone or in combination with other evidence, particularly compelling; (d) whether the photograph is of such a nature that a jury instruction to disregard it, for any but its proffered purpose, would not likely have been efficacious.

7. Should this Court find that one or more of these relevant criteria is reasonably conducive to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, then the photograph should be excluded. *Montgomery v. State*, 810 S.W.2d at 392-93.

705

8. Assuming that the subject matter of the photographs has been found to be relevant and the photograph itself conditionally admissible under Tex. R. Evid. 403, the Court should then consider (a) the number of photographs, (b) the size of the photograph, (c) whether it is in color or black and white, (e) the detail shown in the photograph, (f) whether the photograph is gruesome, (g) whether the body is naked or clothed and (h) whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the Defendant's detriment. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992).

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that upon hearing herein, this Court:

(1) review each of the photographs identified as objectionable by the Defendant;

(2) determine if the content/subject matter of each of the photographs is relevant to a disputed issue that must be established by the State;

(3) determine if the photograph possesses any probative value;

(4) determine if any probative value is substantially outweighed by the prejudicial effect of the subject matter of the photograph;

(5) consider the number, color, and prejudicial effect of the photograph(s) itself, separate and apart from the prejudicial effect of the subject matter;

(6) find that the photographs identified by the Defendant are not admissible upon the trial of this case.

(7) Should one or more of the photographs be found to be admissible for any reason, this Court should consider and grant any limiting instructions requested by the defense.

(8) The Defendant further prays that this Court grant to him such other and further relief to which he may show himself to be justly entitled.

Respectfully submitted,

_____

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June , 2007.

_____

Steven R. Miears

707

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION IN LIMINE REGARDING ADMISSION OF PREJUDICIAL PHOTOGRAPHS

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the Defendant's Motion to Preclude Admission of Prejudicial

Photographs. The court is of the opinion the motion should be in all things:

GRANTED    _____

DENIED    _____, to which the Defendant excepts.

_____

JUDGE PRESIDING

708

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION IN LIMINE
## (PRECLUDE TESTIMONY ABOUT VIOLENT ACTS BY OTHERS)

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by counsel, and pursuant to Tex. R. Evid. 104 and the 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 and Tex. Code Crim. Proc. arts. 1.05, 1.06 and 1.09 and moves the Court to preclude the death penalty as a sentencing option and in support thereof would show the court the following:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact-finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. The Defendant reasonably anticipates that the State will offer evidence concerning the "potential" for violence in the Texas Department of Criminal Justice (TDCJ). This testimony will include isolated incidences of violence in maximum security facilities. These acts were committed by others in the past, under often unknown security rules, measures and regulations, and as such have no relevancy to the Defendant.

4. These alleged incidents of violence will have naturally occurred prior to this Defendant ever entering TDCJ. They may be isolated and never occur again if TDCJ

1

709

successfully implements policies of intervention and prevention that are designed to prevent them occurring again. This whole analysis reveals how simplistic and speculative that such evidence can make the sentencing process. The speculation that is inherent in the anticipated testimony denies to the Court, and this Defendant, the heightened reliability in the sentencing requirement that is mandated by the 8th and 14th Amendments to the United States Constitution.

5. The jury's consideration of such evidence will violate the Constitutional requirement that sentencing of a defendant in a capital case be "individualized" as to that defendant. *Jurek v. Texas*, 428 U.S. 262 (1976) and *Woodson v. North Carolina*, 428 U.S. 280, 303-305, (1976).

6. Defense counsel has been notified on April 25, 2002 of a TDCJ policy that prohibits TDCJ employees from testifying as to prison classifications, safety and security issues. This leaves the defense with its hands tied behind its back while the State offers testimony from State employees or contractors who are allowed to testify about violent acts that have nothing to do with this Defendant. The actions of the State of Texas are denying this Defendant the right to a fair trial and are further denying to the jurors who will be deciding his fate all of the information that they need to make a rational and informed decision.

WHEREFORE, PREMISES CONSIDERED, Movant prays that upon hearing herein, this Court order that during the penalty phase of the Defendant's trial, the State be precluded from offering on direct exam, or eliciting on cross-exam, any evidence of prior acts of violence in TDCJ that have been committed by offenders other than this Defendant and any evidence that is not otherwise individualized to this Defendant.

2

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the _22_day of

_____June_____, 2007.

Steven R. Miears

3

711

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S MOTION *IN LIMINE* TO (PRECLUDE TESTIMONY ABOUT VIOLENT ACTS BY OTHERS)

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.


_____
JUDGE PRESIDING

4

712

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

MOTION FOR ORDER "IN LIMINE" TO PRESERVE
THE TRUE AND CORRECT MEANING OF "PROBABILITY"
IN THE FUTURE DANGEROUSNESS INSTRUCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above styled

and numbered cause, who makes and files the above captioned motion, on the following

grounds:

1.      Defendant stands charged with capital murder. The State is seeking the death

penalty. The Eighth Amendment to the United States Constitution requires a greater degree of

accuracy and fact-finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S.

333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280,

305 (1976).

2.      In order to impose the death penalty, Texas law requires the state to secure a jury

verdict finding that the defendant will be sufficiently dangerous in the future that his death is the

appropriate penalty. Tex. Code Crim. Proc. art. 37.071 (2)(b)(1).

3.      The text of the future dangerousness special issue is as follows: "Whether there is

a *probability* that the defendant would commit criminal acts of violence that would constitute a

continuing threat to society".

4.      Defendant says that the common and ordinary understanding of the word

"probability" is "more likely than not", rather than the mathematical sense of the word, " any

713

possibility". *See Robison v. State*, 888 S.W.2d 473 (Tex. Crim. App. 1994), where our Court of Criminal Appeals declared that our legislature intended the common and ordinary meaning, suggested above, in the "future dangerousness" special issue.

5.    The force and meaning of the word "probability" in this special issue may not be diluted or rendered meaningless without serious constitutional implications affecting the conduct of this trial. *See Jurek v. Texas*, 428 U.S. 262 (1976) (citing *Furman v. Georgia*, 408 U.S. 238 (1972), where the Supreme Court made it clear that the three Texas special issues were needed to accommodate the Eighth Amendment and the Due Process Clause). Put simply, after *Furman*, the death penalty was reserved for the worst murders and the worst murderers; the three special issues were upheld because they were thought adequate to assist and guide Texas sentencing juries in making the final selection among those death eligible individuals for whom death is the appropriate penalty.

6.    Further, after *Furman*, the death penalty can not be imposed under sentencing procedures that create a substantial risk that it will be inflicted in an arbitrary and capricious manner. *Gregg v. Georgia*, 428 U.S. 153, 188 (1976), cautioned that the sentencing authority must be apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information." *Id.* 195. That guidance is sufficient only if it channels the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death. *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

7.    Aggravating factors, (such as the Texas future dangerousness requirement), essential to the constitutionality of any death penalty scheme, must genuinely narrow the class of death-eligible persons in a way that reasonably justifies the imposition of a more severe

sentence on the defendant compared to others found guilty of murder. *Zant v. Stephens*, 462 U.S. 862 (1983).

8.      Further, both on their face, and as applied, aggravating circumstances must permit the sentencer to make a "principled distinction between those who deserve the death penalty and those who do not." *Lewis v. Jeffers*, 497 U.S. 764, 776 (1990); *see also Richmond v. Lewis*, 506 U.S. 40, 46 (1992) ("a statutory aggravating factor is unconstitutionally vague if it fails to furnish principled guidance for the choice between death and a lesser penalty"); *Clemons v. Mississippi*, 494 U.S. 738, 738 (1990) ("invalid aggravating circumstance [provided] 'no principled way to distinguish the case in which the death penalty is imposed, from the many cases in which it was not'"); *Maynard v. Cartwright*, 486 U.S. 356 (1988) ("[t]he construction or application of an aggravating circumstance is unconstitutionally broad or vague if it does not channel or limit the sentencer's discretion in imposing the death penalty").

9.      The three special issues upheld in *Jurek* inquired into the defendant's deliberation, his expectation that his acts would cause the death of the victim, and whether the defendant had any sense of provocation or self defense, in addition to the "future dangerousness" of the defendant.

10.     The Supreme Court has not been called upon to determine the constitutionality of the Texas "future dangerousness" question, stripped, as it now is, of the other important guiding and channeling elements present in *Jurek*.

11.     Further, the many Texas and federal cases rejecting claims of Texas death sentenced prison inmates for instructional definitions of the words in the future dangerousness question have been cast into doubt by the so-called "Penry Amendments" to Art. 37.071, which *eliminated* the specific safeguards described above while adding a new, conditional, special issue

on mitigating evidence which comes into play, if at all, under a presumption in favor of death, far too easily raised by an affirmative "future dangerousness" finding.

12.     The recent Texas cases rejecting complaints of the trial court's failure or refusal to define the term "probability" have misplaced their great reliance on *Jurek v. Texas*, supra, as our Supreme Court did not then have the present, abbreviated statutory scheme before it. *See Chamberlain v. State*, 998 S.W.2d 230 (Tex. Crim. App. 1999).

13.     The elimination of the requirement of a reasonable expectation of the death of the victim has huge implications in this case; Mr. Blue apparently caused the death of the victim with less than a pint of gasoline, some of which was used on a Mr. Larence Williams, not the murder victim. The new, stripped-down version of the Texas special issues now requires the inquiry into future dangerousness to do the job of all three former issues.

14.     Defendant says that the jurors must be instructed, from voir dire on, that the word "probability" means a very high probability, because life itself is in the balance. [See the dissenting opinions of justices Odom and Roberts in *Jurek v. State*, 522 S.W.2d 934 (Tex. Crim. App. 1975) (overruled on other grounds).]

15.     This is necessary to assure that the jury will not impose death except for the worst murders and murderers, *see Furman,* and that it will engage in a *reasoned* moral process, rather than a frivolous or capricious one, as required by *Penry v. Johnson*, 121 S. Ct. 1910 (2001).

16.     By indoctrinating the jury that "probability" meant "any possibility", the state secured so great and unfair an advantage over the defendant, at the expense of the Eighth Amendment and the Due Process Clauses contained in our Bill of Rights, that confidence in the reliability of the outcome is undermined.

17.     By way of illustration, Defendant says that it is useful here to imagine the most pious and righteous person in the recent history of our civilized society, perhaps Mother Teresa,

the Reverend Billy Graham, Barbara Bush, or former president Jimmy Carter. One simply cannot say that there is "no possibility" that such a person would never, ever, pose some danger to person or property in the future. The truthful answer to the Texas special issue would have to be "yes", even in the cases of the three great citizens mentioned. To give this meaning to the word "probability" deprives the whole special issue of its intended purpose: to separate the merely bad from the worst of the worst.

18.     Defendant says that in order to secure to him the true and intended, and constitutional, meaning of the "future dangerousness" special issue, the court should order the prosecutors to refrain from stating or even suggesting to the prospective jurors, or the trial panel of 12, that the word "probability" as used in the "future dangerousness" issue, means anything less than 95% probable, and if such relief is denied, then defendant requests that the jury be instructed that the word "probability" means a high probability, and if such relief is denied, he requests that as a very minimum, the word be defined for the jury as meaning "more likely than not".

19.     To permit the prosecutor to give a false impression of our law in this regard would effectively deprive the Defendant of his rights under Texas Code of Criminal Procedure, Article 37.071, Section 2(b)(1), and the Fifth, Sixth, Eighth, and Fourteenth Amendment to the United States Constitution; the requested order in limine must issue.

WHEREFORE, PREMISES CONSIDERED, Defendant prays the court to grant this motion in all things, by signing an order in substantially the same form as that appended hereto.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June _____, 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

**ORDER OF THE COURT ON THE DEFENDANT'S
MOTION FOR ORDER "IN LIMINE" TO PRESERVE
THE TRUE AND CORRECT MEANING OF "PROBABILITY"
IN THE FUTURE DANGEROUSNESS INSTRUCTION**

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

GRANTED _____

DENIED _____, to which the Defendant excepts.


_____
JUDGE PRESIDING


719

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

### MOTION IN LIMINE
(Victim Impact Type Evidence)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by and through his attorneys of record, and pursuant to Rule 104 of the Texas Rules of Evidence and the 5th, 6th, 8th, and 14th Amendments to the United States Constitution and Article 1, Sections 1, 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. Code Crim. Proc. arts. 1.05 and 1.09 and makes this his Motion in Limine. In support thereof, the Defendant would show:

1. The Defendant requests that this Court order the State and its counsel, witnesses, and agents, to refrain from making any mention, reference, argument, or interrogation, either directly or indirectly, in any manner whatsoever, concerning any of the matters hereinafter set forth. In the alternative, the Defendant asks the Court to instruct the aforesaid individuals by appropriate order to refrain from making any such motion, reference, argument, or interrogation without first approaching the Bench and obtaining a ruling from the Court. The Court should further order that any argument as to the admissibility of any of the evidence set out below should be made outside of the presence of both prospective jurors and those jurors who are sworn to hear this case.

2. The State and its counsel, witnesses and agents, during the **guilt/innocence** phase of this trial, are not to allude to any evidence regarding the physical or psychological effect of the alleged crime on victims or their families or friends, including, but not limited to, any testimony

720

that could be considered as "victim impact" as defined in *Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991). Such evidence does not make more or less probable any fact that is of consequence during the **guilt/innocence** phase of the trial. *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990).

3. Further, the State, its witnesses and agents should be prevented by Order of this court from offering, at the guilt/innocence **OR** the penalty phase of the trial, any characterizations or opinions about the crime, the Defendant or the appropriate sentence. *Booth v. Maryland*, 482 U.S. 496 (1987) (overruled) and *Payne v. Tennessee*, 501 U.S. 808 (1991) or any evidence that tends to measure the worth of the victim as compared to other members of society. *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998); *accord Jackson v. State*, 992 S.W.2d 469, 480 (Tex. Crim. App. 1999).

4. Prior to the offer of any evidence, the court should perform a analysis under Rule 403 of the Texas Rules of Evidence to determine if the evidence is relevant. If the evidence is found not to be relevant, it should be inadmissible. If the evidence is found to be relevant, the Court should determine if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion or the issues or misleading the jury. This analysis should consider the (a) nature of the testimony, (b) the relationship between the witness and the victim, (c) the amount of testimony to be introduced, (d) the availability of other testimony relating to victim impact and character and (e) mitigating evidence introduced by the defendant. Further, the Court should prevent evidence that is cumulative and place appropriate limits upon the amount, kind and source of victim impact and character evidence *Mosley*, 983 S.W.2d at 262. Specifically, the Court should preclude the use of friends and family to prove facts which can be established through less prejudicial witnesses. As to "victim impact" evidence that is found to be

relevant, the Court should appropriately instruct the jury on the limited purpose for which each juror may consider that evidence.

5. Further, the State should be precluded from offering, at any time during the course of this trial, any "victim impact" evidence from an alleged victim of an offense for which the Defendant is not indicted in this cause. Such "extraneous victim impact evidence" is irrelevant to the special issues under Rule 401 of the Texas Rules of Evidence and Tex. Code Crim. Proc. art. 37.071. The danger of unfair prejudice from such evidence is unacceptably high. *Cantu v. State*, 939 S.W.2d 627, 635-38 (Tex. Crim. App. 1997).

6. So as to provide the Defendant with effective assistance of counsel and due process of law, as guaranteed to him by the 6th and 14th Amendments to the United States Constitution and Article 1, Sections 10 and 13 of the Texas Constitution and Art. 1.09 of the Tex. Code Crim. Proc., the Defendant moves the Court to require the prosecutor to provide to counsel for the Defendant, well in advance of trial, the names of family and friends of the deceased who will testify and any other witnesses that will offer evidence that is any way related to what is described herein as "victim impact" evidence and the substance of that testimony. Such notice is necessary so that counsel for the Defendant can effectively advocate on behalf of the Defendant during the trial of this case generally, and specifically, when the court conducts its Rule 403 analysis.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be sustained and relief be granted as prayed for herein by appropriate Order of the Court.

722

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June _____, 2007.

Steven R. Miears

723

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION IN LIMINE
### (Victim Impact Type Evidence)


      BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion. The court is of the opinion the motion should be in

all things:

      GRANTED    _____

      DENIED     _____, to which the Defendant excepts.


                           _____
                           JUDGE PRESIDING

724

CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 380TH DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION
### Constitutional Motion Number 1

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KOSOUL CHANTHAKOUMMANE, the Defendant, by and through his

attorneys of record, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States

Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution, Articles 1.05,

1.06 and 1.09 of the Texas Code of Criminal Procedure and moves the Court to preclude the

death penalty as a sentencing option and in support thereof would show the Court the following:

## DEATH IS DIFFERENT

1. The Defendant has been indicted by the county grand jury for the offense of capital

murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States

Constitution requires a greater degree of accuracy and fact finding than would be true in a

non-capital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306

(1993), and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

MOTION FOR PRODUCTION OF EXCULPATORY,
<u>IMPEACHMENT AND MITIGATING EVIDENCE</u> – Page 1

725

**ARBITRARY APPLICATION OF THE DEATH PENALTY**

3. Art. 37.071 of the Texas Code of Criminal Procedure fails to provide a method by which the State determines against whom the death penalty will be sought. This failure eliminates any possible rationality and consistency in the decision to seek death and violates the Defendant's right to Due Process as set out in the 5th Amendment to the United States Constitution and Due Process and Equal Protection mandated by the 14th Amendment to the United States Constitution, Article 1, Sections 13 and 19 of the Texas Constitution and Art. 1.04 of the Texas Code of Criminal Procedure.

4. The decision as to which defendant is to be subjected to the death penalty prosecution varies from county to county in Texas. As a result, there are likely two hundred and fifty-four (254) different methods used to determine which cases shall be prosecuted as capital cases. A different system for each of the counties exists. Often the decision can turn on the county's willingness to fund the defense, the race or status of the defendant, or the age, sex, race or status of the victim in the community.

5. When a court orders a statewide remedy, there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied. *Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). The decision of the United States Supreme Court in *Bush v. Gore* address the varying standards used to count votes in a presidential election. The Court noted that voters should be accorded Equal

Protection even though the right to vote is not guaranteed by the Constitution, but as history has "favored the voter,...the right to vote, as the legislature has prescribed is fundamental.". "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *id* 104.

6. The Supreme Court attempted to limit the application of the rule enunciated in *Bush v. Gore* to the circumstances of that particular case. However, the Supreme Court should not require those facing the death penalty to adhere to the stricter cause and prejudice standard announced in *McCleskey v. Kemp*, 481 U.S. 279 (1987) while applying a more lenient standard to its favorite political candidate.

7. The right to life is guaranteed by the Constitution, certainly the life of a citizen demands as much due process and and protection as does the right to vote. The right to life is fundamental. *Furman v. Georgia*, 408 U.S. 238, 359 (1972). The failure of the State to set forth uniform and specific standards to determine against whom a death sentence will be sought renders the penalty of death one that is wantonly and freakishly applied which is prohibited by the 8th amendment to the United States Constitution.

## DISCOVERY

8. In order to establish for this Court that the violations complained of herein are of

Constitutional proportions it is necessary to obtain data from the district attorneys in a number of Texas counties that describe the method (if any) used to determine whether or not death will be sought in a particular capital case. Justice Potter Stewart said in his concurring opinion in *Gregg v. Georgia*, 96 S.Ct. 2909, 2949 (1976):

> Petitioner's argument that prosecutors behave in a standardless fashion in deciding which cases to try as capital felonies is <u>unsupported by any facts</u>. Petitioner simply asserts that since prosecutors have the power not to charge capital felonies they will exercise that power in a standardless fashion. This is untenable. <u>Absent facts</u> to the contrary it cannot be assumed that prosecutors will be motivated in their charging decisions by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts.

The Supreme Court of the United States is saying that those facts are relevant to a challenge to the decision making process. Accordingly, it is necessary for this Court to be able to consider those facts and determine what standards are used by district attorneys in Texas in deciding what cases are to be prosecuted as death cases and those that will be prosecuted as non-death capital cases. It is only when the standards are determined, through pre-trial testimony of those charged with making the decision, can this Court properly rule on this Defendant's challenge.

9. A defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Prior to obtaining an order for discovery in a case

where the Accused said that he faced a death penalty prosecution because of his race, he must "..submit relevant evidence that similarly situated persons were treated differently." United States v. Bass, 536 U.S. _____ (2002).

10. The decisions in *Armstrong* and *Bass* above involve challenges that the decision to seek death in the respective cases was based upon race. The challenge of the Accused in this case is based not only upon race, but also on the arbitrary and capricious nature of the decisions to seek death that is unrelated to the race of the Accused.

11. Defendant requests that the Court order the State to respond to this motion in writing, at least five days prior to hearing. Defendant further requests that the Court make findings of fact and conclusions of law regarding this motion.

WHEREFORE PREMISES CONSIDERED, Defendant prays that relief be granted as prayed for herein.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the _22_ day of

_____, 2007.

_____
Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

**ORDER ON DEFENDANT'S MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION**
**Constitutional Motion Number 1**

BE IT REMEMBERED, that on the _____ day of _____,

2007, came to be considered the above Motion to Preclude the Death Penalty as a Sentencing

Option. After consideration of the motion, it is the opinion of the court that defendant's motion

be:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION – Page 7

731

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | § | IN THE 380TH DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION
### Constitutional Motion Number 2

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KOSOUL CHANTHAKOUMMANE, the Defendant, by and through his attorneys of record, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution, Articles 1.05, 1.06 and 1.09 of the Texas Code of Criminal Procedure and moves the Court to preclude the death penalty as a sentencing option and in support thereof would show the Court the following:

## DEATH IS DIFFERENT

1. The Defendant has been indicted by the county grand jury for the offense of capital murder.

2. The State is seeking the death penalty. *Furman, Furman v. Georgia,* 408 U.S. 238 (1972), mandates that where discretion is afforded in sentencing on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action. *Gregg v. Georgia,* 428 U.S. 153, 189

732

(1976). It is certainly not a novel proposition that discretion in the area of sentencing be exercised in an informed manner. *Id.*

## ARBITRARY APPLICATION OF DEATH SHOULD BE PRECLUDED

3. Section 19.03 of the Texas Penal Code defines the categories of crimes that are death eligible. It is supplemented by Art. 37.071 of the Texas Code of Criminal Procedure, which governs the procedure in which death penalty is sought. These provisions are intended to narrow the class of death eligible defendants to " insure[ ] that the death penalty will only be imposed for the most serious crimes (and) . . . that (it) will only be imposed for the same type of offenses which occur under the same types of circumstances." *Jurek v. Texas,* 428 U.S. 262, 270 (1976) (internal quotes omitted). *See also Furman,* 408 U.S. 238; *Zant v. Stephens,* 462 U.S. 862 (1983).

4. The Court has found that narrowing definitions alone are not of controlling constitutional significance. *Roberts v. Louisiana,* 428 U.S. 325, 332 (1976). Instead, what is essential is that the death penalty is not applied in such a way as to be arbitrary and capricious. To insure that death penalty statutes are applied in a consistent and meaningful way, the sentencer must be provided with adequate guidance. *Arave v. Creech,* 507 U.S. 463 (1993). The Same is true of the manner in which the state decided whether or not to seek death in a death eligible case.

5. Art. 37.071 of the Texas Code of Criminal Procedure fails to provide a method

733

by which the State determines against whom the death penalty will be sought. This failure eliminates any possible rationality and consistency in the decision to seek death. Thus, it violates the Defendant's right to Due Process as set out in the 5th Amendment to the United States Constitution and Due Process and Equal Protection mandated by the 14th Amendment to the United States Constitution, Article 1, Sections 13 and 19 of the Texas Constitution and Art. 1.04 of the Texas Code of Criminal Procedure. *See State v. Middlebrooks,* 840 S.W.2d 317 (Tenn. 1992) (holding a provision of a definitional statute, as opposed to procedural as in case at bar, that failed to sufficiently narrow the class of death eligibility must be struck down.)

6. The Eighth Amendment prohibition against the infliction of cruel and unusual punishment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society. Thus, a penalty or procedure that was permissible at one time in our Nation's history is not necessarily permissible today, such as the killing of one for the rape of an adult woman, mandatory death sentences or the killing of a person with mental retardation. See *Roberts v. Louisiana,* 428 U.S. 325 (1976), *Woodson v. North Carolina,* 428 U.S. 280 (1976) and *Atkins v. Virginia,* 536 U. S.304 ( 2002). *Furman,* 408 U.S. at 329. So, whereas the unfettered discretion of state prosecutors as a means of affording individual defendants mercy, was upheld in *Gregg,* 428 U.S. at 199 (White, J., concurring), states throughout the nation are now recognizing that a uniform means of statewide guidelines to review such selection processes are necessary.

*See* 18 U.S.C. § 3598 (a)(1)(2); Section 9-10.020, U.S. Attorney Manual:

http://www.doj.gov; New Jersey Guidelines for County Prosecutors,

www.idoc.state.il.us/ccp/ccp/reports/commission_report

*nj*guidelines_prosecutors.pdf; *see also* Illinois Report, Chapter 5:

ww.idoc.state.il.us/ccp/ccp/reports/commission_report/chapter_05.pdf;

Tennessee's Death Penalty: Costs and Consequences, John G. Morgan,

Comptroller of the Treasury Office of Research July, 2004, pp 13-15, 48: Virginia

JLARC Final Report, January 15, 2002, Summary of findings, p. iv-vi:

http://jlarc.state.va.us/pubs_rec.htm; Nebraska Commission on Law Enforcement

and Criminal Justice: http://www.nol.org/home/crimecom/; New York period of

reflection provision, NY CLS CPL § 250.40 (2004); Report of the Massachusetts

Governor's Council on Capital Punishment, p12 (2003):

www.mass.gov/Agov2/docs/5-3-04%20MassDPReportFinal.pdf; The

Constitution Project, *Mandatory Justice: Eighteen Reforms to the Death Penalty,*

2001, n. VIII: http://pweforum.org/deathpenalty/resources/reader/23.php3.


7. The decision as to which defendant is to be subjected to the death penalty

prosecution varies from county to county in Texas. There are two hundred and

fifty-four (254) counties in Texas and likely two hundred and fifty-four (254)

different methods used to determine which cases shall be prosecuted as capital

cases, a different system for each of the counties. *See* Lena Roberts, *All Over the*

*Map...How an Accident of Geography turns Texas' Death Penalty Scheme into a*

*Lethal Lottery*, p27, copyright 2003. Geography plays a stronger role than

anything else in determining whether a person is charged with a capital crime and whether the death penalty will be sought. *Id.* at p44. Because of this lack of uniformity, the county in which the defendant is prosecuted results in actual arbitrary application of the death sentence.

8. The death sentence is a charge on behalf of the citizens of the state. *See Furman,* 408 U.S. at 379. Where a fundamental right, such as the constitutionally enumerated right to life, U.S. Const. amend. XIV, § 1, is at stake, official discretion must be controlled to prevent unequal treatment in the enjoyment of that right. *Bush v. Gore*, 531 U.S. 98, 109 (2000).

9. The decision of the United States Supreme Court in *Bush v. Gore* addressed the varying standards used to count votes in a presidential election. The Court noted that voters should be accorded Equal Protection even though the right to vote is not guaranteed by the Constitution, finding "the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Id.* at 104. It then held, "the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id* 104, 105. Stated broadly, *Bush v. Gore* thus teaches that the failure to create standards to control official discretion alone can violate the Equal Protection Clause of the Fourteenth Amendment when abridgment of a fundamental right is involved. Laurence Benner et. al., *Criminal Justice in the Supreme Court: An Analysis of*

*United States Supreme Court Criminal and Habeas Corpus Decisions (October 2, 2000-September 30, 2001),* 38 Cal. W. L. Rev. 87 (2001).

10. Thus, to establish an equal protection violation, in this fundamental context, it is not necessary to prove the existence of purposeful discrimination, as was necessary under McClesky when a state's death penalty scheme was challenged due to discriminatory effect based on the suspect class of race. *McCleskey v. Kemp,* 481 U.S. 279 (1987).

11. *Stare decisis* is the preferred course to analyze the constitutional standard because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. *See Crawford v. Washington,* 124 S. Ct. 1354, 1378 (2004) (Rehnquist, C.J., concurring) (quoting *Payne v. Tennessee,* 501 U.S. 808, 827 (1991)). Furthermore, "[n]o panel is empowered to hold that a prior decision applies only to the limited facts set forth in that opinion." *Medellin v. Dretke,* 371 F.3d 270, 21 (5th Cir. 2004) (quoting *United States v. Smith,* 354 F.3d 390, 399 (5th Cir. 2003)).

12. The fundamental right to life is guaranteed by the Constitution. U.S. Const. amend. XIV, § 1. Thus, the life of a citizen at minimum demands as much due process as does the right to vote. The failure of the State to set forth uniform and specific standards to determine against whom a death sentence will be sought

renders the sentence of death one that is wantonly and freakishly applied that is prohibited by the 8th and 14th Amendments to the United States Constitution. *See* Furman *v. Georgia,* 408 U.S. 238, 310 (1972).

13. The decision to seek death is one that should rightfully be made by the grand jury and not by the prosecuting attorney. Under the Due Process Clause of the 5th Amendment and the notice and jury trial guarantees of the 6th Amendment, any fact (other than a prior conviction) that increased the maximum penalty for a crime must be charged in an indictment, submitted to a jury and proven beyond a reasonable doubt. *Jones v. U.S.* 526 U.S. 227 (1999); *Apprendi v. New Jersey,* 530 U.S. 466 (2000). This rule applies to death penalty cases. *Ring v. Arizona,* 122 S.Ct. 2428 (2002). The Texas Court of Criminal Appeals has tried to rationalize that Apprendi and Ring do not apply to Texas because there is no finding of fact that raises the level of punishment above the maximum punishment of death. (cite Texas case here). However, any question as to whether or not Jones, Apprendi and Ring apply to Texas was resolved in favor of applicability by the United States Supreme Court in Blakely v. Washington where Justice Scalia, writing for the majority said: (insert "maximum sentence" language).

Accordingly, the decision should be made by the grand jury who is the protector of the public's right to be free from arbitrary decisions of a local prosecutor (need cite here). The discretion of the prosecutor is in whether or not evidence of future dangerousness and lack of a mitigating circumstance that would justify a sentence

of life is to be offered to the grand jury. It is this body who will make the probably cause finding as to the probability that the Accused will commit criminal acts of violence that will constitute a continuing threat to society. It is also these grand jurors who should determine, under the cited cases, if there is probable cause that there is no circumstance that will justify a sentence of life. While the burden of this latter issue has historically been placed on the Defendant, by authority of Blakely v. Washington, the State should properly be required to negate beyond a reasonable doubt the existence of a circumstance that would justify a sentence of life. As this is a burden of the State at trial, so too should the grand jury be required to negate the existence of a mitigating circumstance and so allege this in the indictment.

Following indictment, the prosecuting attorney would have the discretion to determine if he/she would be offering evidence in support of the allegations of the indictment. The prosecuting attorney would still have discretion, but it would not be the discretion to seek death in the first place. This decision should rightfully be resolved by the grand jury.

13. In the alternative and without waiving the foregoing, the Defendant would show that the method (or lack of method) that is utilized by the prosecuting attorney to determine against whom he/she will seek death is arbitrary and violates the rights and protections of the Defendant under the 5th, 6th, 8th and 14th Amendments to the United States Constitution and the Constitution of the State of Texas.

14.    This method is arbitrary and constitutionally infirm for the following reasons:

> (list all of the reasons why the decision of the prosecution is
>
> or may be arbitrary, politically motivated )

This Court should find that the process that was used by the prosecuting attorney to select the Defendant as one whom the State of Texas would seek to kill violates the cited provisions of the State and Federal Constitutions and that death should be precluded as a sentencing option.

WHEREFORE PREMISES CONSIDERED, the Defendant prays that upon hearing the Court:

(1)  preclude death as a sentencing option in this case;

(2)  grant the Defendant such other and further relief as he may show himself to be justly entitled.

Respectfully submitted on this the 22 day of _June_, 2007.

STEVEN R. MIEARS
State Bar No. 14025600
211 North Main

P.O. Box 736
Bonham, TX 75418
903-640-4963
903-640-4964 FAX
stevenmiears@msn.com

KEITH GORE
State Bar No. 24002164
2301 W. Virginia Parkway
McKinney, TX 75071
972-670-6288

COUNSEL FOR THE DEFENDANT


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the

_____ day of _____June_____, 2007.

_____

_____

MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION – Page 10

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER ON DEFENDANT'S MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION
### Constitutional Motion Number 2

BE IT REMEMBERED, that on the _____ day of

_____, 2007, came to be considered the above Motion to

Preclude the Death Penalty as a Sentencing Option. After consideration of the motion, it

is the opinion of the court that defendant's motion be:

GRANTED    _____

DENIED    _____, to which the Defendant excepts.


_____
JUDGE PRESIDING

742

CAUSE NO. 380-827629-06

THE STATE OF TEXAS                    IN THE DISTRICT COURT OF

vs.                                   COLLIN COUNTY, TEXAS

KOSOUL CHANTHAKOUMMANE               380TH JUDICIAL DISTRICT


## MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION
### Constitutional Motion Number 3

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW, STEVEN R. MIEARS, Attorney for the accused, KOSOUL

CHANTHAKOUMMANE, and pursuant to the Fifth, Sixth, Eighth, and Fourteenth

Amendments to the United States Constitution and Article I, Sections 3, 10, 13 and 19 of the

Texas Constitution, moves this Court to preclude the death penalty as a sentencing option in this

case. In support of his motion, the undersigned attorney states as follows:

    1. KOSOUL CHANTHAKOUMMANE was indicted for the offense of capital murder.

The State is seeking the death penalty.

    2. The Eight Amendment requires a greater degree of accuracy and fact finding than

would be true in a noncapital case. Gilmore v. Taylor, 508 U.S. 333 (1993); Woodson v. North

Carolina, 428 U.S. 280, 305 (1976). The courts of this state are bound by the law to make certain

that a death sentence is not wantonly or freakishly imposed and that the purposes of Art. 37.071

are accomplished in a constitutional manner. *Ellason* v. State, 815 S.W.2d 656 (Tex.Crim.App.

1991).

**MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION – PAGE** 1

743

3. The maximum penalty for the offense of capital murder is life in prison without the possibility of parole for 40 years. Tex. Penal Code § 12.31 (Lexis through 2002). It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and then only if the jury concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b)(1) (West 2002). The Texas legislature has created two offenses: (1) a Capital Felony where the state seeks the death penalty, and (2) a Capital Felony where the state does not seek the death penalty. Tex. Penal Code § 12.31(a) (Lexis through 2002).

4. KOSOUL CHANTHAKOUMMANE has the constitutional right to be accused of Capital Murder only on an indictment of a grand jury. Tex. Const. art I, § 10 ("no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary"); Cook v. State, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995) (holding that Texas Constitution guarantees right to indictment by grand jury for all felony offenses). Further, KOSOUL CHANTHAKOUMMANE has the right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10, 13, and 19 of the Texas Constitution, to be informed of the specific nature of the accusations against him. See In re Oliver, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense ... are basic in our system of jurisprudence...").

5. Indictment by grand jury protects citizens against arbitrary accusations by the government. King v. State, 473 S.W.3d 43, 45 (Tex. Crim. App. 1971). The most "celebrated

**MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION – PAGE 2**

744

purpose" of the grand jury "is to stand between the government and the citizen" and protect

individuals from the abuse of arbitrary prosecution. United States v. Dionisio, 410 U.S. 19, 33

(1973).

6. An indictment is essential to vest the trial court with jurisdiction. Tex. Const. art. V, §

12(b); Cook, 902 S.W.3d at 475. The purpose of an indictment is to provide notice of the

charged offense so that the presumptively innocent accused may prepare, before trial, an

informed and effective defense. Riney v. State, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000).

"The accused is not required to anticipate any and all variant facts the State might hypothetically

seek to establish." Brasfield v. State, 600 S.W.2d 288, 295 (Tex. Crim. App. 1980), overruled on

other grounds by Janecka v. State, 739 S.W.2d 813, 819 (Tex. Crim. App. 1987).

7. In Jones v. United States, 526 U.S. 227 (1999), the United States Supreme Court held

that "under the Due Process Clause of the Fifth Amendment and the notice and jury guarantees

of the Sixth Amendment, any fact, other than a prior conviction, that increased the maximum

penalty for a crime must be charged in an indictment, submitted to a jury and proven beyond a

reasonable doubt," *Jones,*at 243, n.6. In *Apprendi v. New Jersey*, 530 U.S. 466, 475 (2000), the

United States Supreme Court extended the Jones holding (with the exception of the Indictment

Clause of the 5th Amendment) to the States through the Fourteenth Amendment. In *Ring v.

Arizona*, 122 S.Ct. 2428 (2002) the United States Supreme Court held that the rule of *Jones* and

*Apprendi* applies with equal force to capital cases. Aggravating factors operate as the functional

equivalent of an element or a greater offense. Ring, 122 S.Ct. at 2443. "The relevant inquiry is

one not of form but of effect". *Apprendi*, 530 U.S. at 494. Thus, aggravating factors must be

pled in the indictment, submitted to a jury and proved by the prosecution beyond a reasonable

doubt. Likewise, the absence of a circumstance that would justify a life sentence must be plead in the indictment and established by the state, beyond a reasonable doubt.

8. The logical conclusion that can be drawn from this is that the discretion to choose to seek death in a "capital eligible" case lies with the grand jury, not the State of Texas through its prosecutors. The only discretion that is left to the prosecutors following the application of *Jones, Apprendi* and *Ring* are to (1) decide if evidence of statutory and non-statutory aggravators are to be presented to the grand jury and (2) should the grand jury find the aggravators to be "true", whether or not the State will offer evidence in support of those aggravators. "Aggravators" that will result in the penalty of death should specifically include the issues of "future dangerousness" and the absence of a circumstance that will justify a life sentence.

9. This constitutionally mandated procedure was not followed in this case in that no evidence of "future dangerousness" nor absence of a mitigating circumstance were presented to this grand jury, no findings were made as to the existence of these aggravating circumstances. No facts have been alleged that would elevate the punishment above a life sentence, accordingly death should be precluded as a sentencing option.

WHEREFORE, PREMISES CONSIDERED, KOSOUL CHANTHAKOUMANNE prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully submitted on this the 22 day of June, 2007.

_____
STEVEN R. MIEARS

**MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION – PAGE 4**

State Bar No. 14025600
211 North Main
P.O. Box 736
Bonham, TX 75418
903-640-4963
903-640-4964 FAX
stevenmiears@msn.com

KEITH GORE
State Bar No. 24002164
2301 W. Virginia Parkway
McKinney, TX 75071
972-670-6288

COUNSEL FOR THE DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day

of _____ June _____, 2007.

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER ON DEFENDANT'S MOTION TO PRECLUDE THE DEATH PENALTY
## AS A SENTENCING OPTION
### Constitutional Motion Number 3

BE IT REMEMBERED, that on the _____ day of _____,

2007, came to be considered the above Motion to Preclude the Death Penalty as a Sentencing

Option. After consideration of the motion, it is the opinion of the court that defendant's motion

be:

GRANTED _____

DENIED _____, to which the Defendant excepts.


_____
JUDGE PRESIDING


MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION – PAGE 6

743

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO DECLARE THE CURRENT TREATMENT
## OF THE "SUDDEN PASSION" DEFENSE IN
## CAPITAL MURDER CASES UNCONSTITUTIONAL
### Constitutional Motion Number 4

TO THE HONORABLE JUDGE OF SAID COURT

COMES NOW KOSOUL CHANTHAKOUMMANE, The Defendant herein, by and through his attorney of record, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution and respectfully moves the Court to find that (1) relegating the "sudden passion" defense to a punishment phase issue, (2) preventing the Defendant in a capital case from presenting evidence of "sudden passion" at the guilt/innocence (merits) phase, and (3) prohibiting a capital Defendant from providing the jury with an instruction on the "sudden passion" issue, are unconstitutional. The Defendant would show the Court the following.

1. The Defendant has been indicted by the Collin County Grand Jury for the offense of capital murder.

2. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor,* 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

2007 JUN 22 PM 1: 05

HANNAH KUHKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY: ___ DEPUTY

3. Texas law provides that if an act is done under the influence of sudden passion-adequate cause, the crime is less culpable (TEX. PENAL CODE §19.03 (d)). Sudden Passion-Adequate Cause is a state wherein the mind of the actor is "incapable of cool reflection". (TEX. PENAL CODE §19.02 (a)(1), (2)).

## I.

### TEXAS PENAL CODE § 19.02 FORCES JURORS TO EITHER RETURN UNTRUE VERDICTS OR FIND INHERENTLY CONTRADICTORY FACTS WHERE THERE IS A MURDER WITH SUDDEN PASSION ARISING FROM ADEQUATE CAUSE.

In situations where the jury would find that a defendant committed a killing under the influence of a sudden passion arising from an adequate cause, the Texas Penal Code §19.02 requires the jury to first find that an intentional or knowing murder was committed and then, in the punishment phase, effectively nullify that earlier verdict by finding that the murder was actually committed, not intentionally or knowingly as originally found, but as the result of sudden passion arising from adequate cause.

In relevant part, TEX. PENAL CODE § 19.02(b) (1994) provides that a person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE § 6.03 (1994) defines these mental states as:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly,

or with knowledge, with respect to a result of his conduct when he is aware

that his conduct is reasonably certain to cause the result.

If the jury finds a defendant guilty under the provisions above, a punishment

phase of the trial follows the determination of guilt. At this phase, according to TEX.

PENAL CODE § 19.02(d) (1994), "the defendant may raise the issue as to whether he

caused the death under the immediate influence of sudden passion arising from an

adequate cause. If the defendant proves the issue in the affirmative by a preponderance of

the evidence, the offense is a felony of the second degree." This range of punishment for

a second-degree felony is 2-20 years.

## A.     THE *PENRY* PROBLEM AND UNTRUE VERDICTS: §19.02 Forces Jurors To Either Nullify Their Merits Phase Findings Or Stay Their True Verdict.

The constitutionally problematic result of §19.02 is evident. Effectively, the jury

has the ability to find sudden passion from an adequate cause, thereby mitigating the

offense of murder to a felony of the second degree. Functionally, the legislature has

encompassed within one definition of murder both the actual crime of murder and what

traditionally was considered voluntary manslaughter by means of a mitigation issue in the

penalty phase of a non-capital murder trial. Although the legislature has substantial

discretion in formulating the Penal Code, it cannot create a set of contradictory laws that

make it "both logically and ethically impossible for a juror to follow." *Penry v. Johnson*,

532 U.S. 782, 799 (2001) (*Penry II*).

In *Penry II*, the court found that a supplemental instruction given by the trial court

pursuant to its interpretation of the holding in *Penry v. Lynaugh*, 492 U.S. 302 (1989)

(*Penry I*) allowing jurors to change their answer to one of Texas' special issues from yes

to no based on unrelated mitigating evidence was unconstitutional. The *Penry II* court stated: "answering the special issues in the mode prescribed by the supplemental instruction necessarily meant ignoring the verdict form instructions. Indeed, jurors who wanted to answer one of the special issues falsely to give effect to the mitigating evidence would have had to violate their oath to render a 'true verdict.'" *Penry II* at 800.

The situation presented by TEX. PENAL CODE § 19.02 (1994) is similar to, yet even more problematic, than that detailed in *Penry II* Jurors are prevented from acting upon evidence related to the *mens rea* in a murder case in the merits phase of the trial, only to have an instruction appear in the punishment phase that purports to allow them to find that the murder was committed under the influences of sudden passion, which arose from an adequate cause. As the Accused will show, the culpable state of mind for murder under 19.02 and the state of mind possessed by someone committing a killing with sudden passion arising from adequate cause are irreconcilable.

If a person commits murder after cool, rational deliberation, then that person has committed an intentional or knowing murder in accordance with the terms of §19.02 (b) of the Texas Penal Code. Consequently, the prosecution must prove the corresponding state of mind beyond a reasonable doubt in order to secure a conviction. If, however, a person acts in a sudden passion arising from adequate cause, the actor's state of mind is defined by a *lack* of cool reflection, and the prosecution must prove an entirely different *mens rea* in order to secure a conviction. TEX. PENAL CODE §19.02 (a)(1) (1994)

As a result, the two mental states are neither interchangeable nor reconcilable. Murder, resulting from sudden passion, requires a different *mens rea* than murder, resulting from intentional or knowing conduct. Indeed, the two types of murders are

distinguished primarily by the presence or absence of thoughtful and premeditated deliberation. It is illogical to claim that a person possessed a knowing and intentional state of mind while concurrently possessing a mind "incapable of cool reflection." TEX. PENAL CODE §19.02 (a)(1) (1994).

It is likewise absurd to ask jurors to find (in the same trial) a person guilty of both premeditated murder and impulsive murder. When the court makes this contradictory request, jurors must either stay true to their initial verdict and reject sudden passion mitigation, despite the fact that the defendant successfully proves it, or they must find the sudden passion mitigation and effectively nullify their finding in the merits phase of the trial. The former option forces jurors to condemn a person for a crime that he did not commit. The latter option proves that the two mental states are irreconcilable and poses a dilemma for a system of justice interested in fact-finding consistency.

### B. THE PROBLEM OF COLLATERAL ESTOPPEL: §19.02 Causes Jurors to Find Sets of Contradictory Facts.

The Texas Court of Criminal Appeals has repeatedly emphasized the need for fact-finding consistency throughout court proceedings, and this need, in turn, has directly implicated the doctrine of collateral estoppel. The doctrine of collateral estoppel precludes the relitigation of an issue of ultimate fact between the same parties in any future lawsuit once that issue has been determined by a valid and final judgment. Therefore, when confronted with another case brought under this statute in 2002, the Texas Court of Criminal Appeals held that findings of fact made by the jury in the punishment phase of a murder trial in favor of the defendant retain collateral estoppel effect throughout subsequent proceedings. *Ex Parte Watkins*, 73 S.W.3d 264 (Tex. Crim.

App., 2002). Writing for the majority, Justice Cochran explained the reasoning behind
the court's decision:

> The state also argues that because "sudden passion" is no longer a guilt/innocence
> fact, but rather a mitigating punishment fact, it is not a fact that is subject to
> collateral estoppel (footnote omitted). This position does not make sense
> logically or legally. It also poses the risk expressed by Justice Scalia in the dissent
> in <u>Monge</u>. It raises the 'sinister' specter of reconfiguring all criminal offenses
> into punishment facts to . . dispensing with proof beyond a reasonable doubt,
> right to a jury trial, etc .

*Ex Parte Watkins*, 73 S.W. 3d, at 272.

If these facts have such an effect on entirely separate proceedings, surely they must be
capable of having that effect within the same trial. To find otherwise would be an affront
to a system of justice that relies on and values consistent fact-findings. Moreover, any
other conclusion would be thoroughly illogical when viewed alongside the doctrine of
collateral estoppel, which bars any retrial of specific and discrete facts that have been
fully and fairly adjudicated.

As a result, the jury must be apprised of the fact that a murder, committed in the
heat of sudden passion, is a lesser offense than a murder committed intentionally or
knowingly. In addition, the instruction and finding cannot be postponed until the
punishment phase of a capital case. The "sudden passion" issue *must* be addressed at the
merits phase in order to achieve factual and legal consistency throughout both phases of a
capital trial. Without such an instruction and finding, the facts established in the merits
phase of a trial may differ significantly from those established during the punishment
phase. These facts will be contradictory because the culpable states of mind identified in
section 19.02 and defined in 6.03, intentional or knowing, are *per se* irreconcilable with a
state of mind of sudden passion arising from an adequate cause.

And, to the extent that TEX. PENAL CODE § 19.02 (1994) requires jurors to find

that the defendant possessed one state of mind in the merits phase and another state of

mind in the punishment phases, the statute creates contradictory sets of findings of facts

within the same trial. The jury is able to make one determination about an issue of

ultimate fact, the Accused's mental state, at the merits phase of a capital trial, and then,

after the issue is "re-litigated" during the sentencing phase, the jury is allowed to make a

completely contradictory determination about the same issue of ultimate fact. This, of

course, runs averse to the policy clearly articulated in *Watkins*.

Likewise, contradictory sets of facts violate federal constitutional mandates of due

process. Since the jurors cannot give effect to the mitigating evidence provided in the

statute without finding inherently contradictory facts, the statute violates the defendant's

due process rights under the 5th Amendment to the United States Constitution, the same

being incorporated to the states by the 14th Amendment to the United States Constitution.

## C.    **CONCLUSION**

Simply put, a jury faced with a situation in which the Accused is guilty of murder

committed under the influence of a sudden passion arising from an adequate cause

(sudden passion) has three options: (1) acquit the defendant of murder (since the jury

would not be informed of the sudden passion issue in the merits phase and may reason

that sudden passion is inconsistent with a murder committed either intentionally or

knowingly); (2) find the defendant guilty of murder and not under the influence of a

sudden passion, since any other finding in the punishment phase would require them to

contradict their prior finding of intentional conduct; or (3) find the defendant guilty of

murder even though that finding requires them to effectively reverse their prior finding

that the murder was committed intentionally or knowingly. Numbers 1 and 2 would not be true verdicts and the third would violate the policies underlying collateral estoppel, which should apply with even more force in related proceedings within the same trial.

II.   **LEGISLATIVE DECISION TO MAKE DEFENSE OF SUDDEN PASSION UNAVAILABLE DURING THE MERITS PHASE OF CAPITAL MURDER CASES DEPRIVES THE ACCUSED OF THE RIGHT TO PRESENT A DEFENSE AND THEREBY DEPRIVES HIM/HER OF DUE PROCESS.**

A.   **Texas Penal Code 19.02 Deprives Defendants of Due Process by Preventing Them from Exercising Their Right to Present a Defense.**

In situations where a defendant is charged with capital murder and there exists evidence that the murder(s) was or were committed under the influence of sudden passion arising from adequate cause, the defendant is deprived of his right to have the jury properly consider relevant evidence central to his defense in the merits phase of the trial. The capital defendant is then denied a right that is accorded to non-capital defendants in that the defendant is not entitled to a jury instruction to provide the jury with a mechanism to act on this evidence. *Wesbrook v. State*, 29 S.W.3d 103 (Cr. App. 2000). By making this defense unavailable to this capital defendant, the Texas Legislature has deprived him/her of due process.

B.   **The Right to Present a Complete Defense: The Right to Offer Exculpatory Evidence to the Jury.**

It is well established that the fundamental element of due process of law requires that "criminal defendants be afforded a meaningful opportunity to present a complete defense," *California v. Trombetta*, 467 US 479, 485 (1984) and that "the right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294

(1973). Clearly, to present a complete defense, a defendant must be able to present and have the jury consider any relevant exculpatory evidence, and the state cannot exclude such evidence without valid justification. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). And even then, the Constitution "requires that competing interest [said to justify the limitation] be closely examined" *Chambers*, 410 U.S. at 295.

The Texas Legislature has already determined that evidence that the accused committed murder under sudden passion is relevant by including sudden passion in Texas Penal Code 19.02(d) as an affirmative defense to murder. The State may not "recogniz[e] testimony as relevant and competent [but] arbitrarily ba[r] its use by the defendant." *Montana v. Engelhoff*, 518 U.S. 37, 75 (1996) (Souter dissenting) quoting *Washington v. Texas,* 388 U.S. 14, 25 (1967) (Harlan, J. concurring in result). In this case, the State has recognized the relevance of this type of exculpatory evidence yet has arbitrarily barred its use by a certain class of defendants—those accused of capital crimes. The State has offered no reason to deny to capital defendants evidence which other defendants accused of murder can rightly present and have the jury consider—evidence which bears direct relevance to the defendant's state of mind. "Death is different." This is supposed to mean that there is a greater need for accuracy in the fact-finding process. *Woodson v. North Carolina*, 428 U.S. 280 (1976). It should not mean (as it apparently does under the current Texas statute) that those charged with a capital crime are provided *less* due process than those charged with non-capital crimes.

### C. The Right to Present a Complete Defense: The Right To A Jury Instruction On The Issue Of Sudden Passion/Adequate Cause.

Furthermore, if evidence is presented that the murder was committed under the influence of a sudden passion, the defendant is entitled to a jury instruction on the issue.

The Supreme Court stated in *Mathews v United States*, 485 U.S. 58 (1988), "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Stevenson v. United States*, 162 U. S. 313 (1896). Moreover, as the Court noted in *Stevenson*, "[t]he evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter…yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury." *Id.* at 315. Indeed, it is "the province of the jury to determine from *all* the evidence what the condition of mind was," and to accordingly make decisions of guilt and punishment based upon that information. *Stevenson v. United States*, 162 U.S. 313, 323 (1896) (emphasis added).

**D. The Right To Present a Complete Defense: The Right To Have The Jury Hear Evidence Concerning The Requisite Mental State Is A "Fundamental Principle of Justice."**

The defendant's right to have a jury consider evidence of his adequate provocation in determining whether he possesses the requisite mental state for murder is a "fundamental principle of justice." States are given a great deal of discretion in defining criminal offenses, but there are "obviously constitutional limits beyond which States may not go in this regard" *Patterson v. New York*, 432 U.S. 197, 210 (1977). The state definition of criminal law must yield when it "offends some principle of justice so rooted in the traditions and consciousness of our people as to be ranked as fundamental." *Patterson* 432 U.S. at 201-202 quoting *Speiser v. Randall*, 357 U.S. 513, 523 (1958). The Texas Legislature has gone beyond these limits by barring the affirmative defense of sudden passion for capital defendants.

In *Montana v. Elgelhoff*, the Court articulated a set of factors to be considered when determining whether a rule is a "fundamental principle of justice." In making this determination, the Court examined both (1) the historical practices of the United States and England as well as (2) the practices of other states. Using this same standard, the Accused will show that the defense of sudden passion is a "fundamental principle of justice" firmly rooted in our nation's history and almost universally recognized by other states.

(1) Historical Practice

The presence or absence of the heat of passion on sudden provocation has, almost from the inception of the common law of homicide, been regarded as the most important factor for assessing culpability for murder. In *Mullaney v. Wilbur*, the Supreme Court held that Maine violated due process by shifting the burden to the defendant to prove that murder was committed in the heat of passion on sudden provocation. The *Mullaney* court reviewed the history of manslaughter since it emerged as a separate crime in sixteenth-century England: "This historical review establishes two important points. First, the fact at issue here--the presence or absence of the heat of passion on sudden provocation--has been, almost from the inception of the common law of homicide, the single most important factor in determining the degree of culpability attaching to an unlawful homicide. And, second, the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact." *Mullaney v. Wilbur*, 421 U.S. 684, 698 (1975). The distinction between murder and manslaughter has persisted because criminal law "is concerned not only with guilt or innocence in the abstract, but also with the degree of criminal culpability" Id, at 687-8, and the presence or absence of heat of passion made a

substantial difference in punishment of the offender and in the stigma associated with the conviction. <u>Id.</u>, at 697-701.

(2) <u>Other State Practices</u>

The practices of other states reveal that the right to present evidence of sudden passion arising from adequate cause is a "fundamental principle of justice." Thirty states have endorsed the Model Penal Code's approach by noting a reduction in culpability where there is sudden passion. An examination of state statutes also reveals that the majority of states recognize murder, resulting from "sudden passion," as a lesser crime. Most notably, however, is the reality that *all* states recognize that murders committed under "passion," "extreme emotional disturbance," and/or "provocation" are lesser crimes.[1] The fact that nearly every state retains this distinction provides further support that evidence of sudden passion is fundamental and must be considered by a jury while deliberating the guilt or innocence of the accused.

(3) <u>The *Winship* Requirement & "Beyond a Reasonable Doubt"</u>

In 1970, the United States Supreme Court unequivocally declared that the Due Process Clause requires the state to prove, beyond a reasonable doubt, every fact necessary to constitute the crime with which the defendant is charged. *In re Winship*, 397 U.S. 358, 364 (1970). This standard has remained constant throughout the last three decades, but it has been expounded upon in numerous other criminal cases as well. For example, in *Mullaney*, the Court specifically held that a state cannot circumvent the constitutional protection of *In re Winship* by re-defining the elements of a crime by a

---

[1] *See e.g.*, GA. CODE ANN. § 16-5-2(a) (creating manslaughter for crimes committed under the influence of "irresistible passion"); KY. REV. STAT. ANN. § 507.030 (1)(b) (authorizing manslaughter for persons suffering from "extreme emotional disturbance"); ME REV. STAT. ANN. 17A, § 203 (1)(B) (noting that "adequate provocation" justifies reducing murder to manslaughter).

characterization of those elements as factors that bear solely on the extent of punishment. This holding, and the plethora of case law surrounding the *Winship* standard, reaffirm that the reasonable doubt requirement is "implicit in 'constitutions ....(which) recognize the fundamental principles that are deemed essential for the protections of life and liberty." *Davis v. United States*, 160 U.S. 469, 488 (1895), *quoted in In re Winshjp*, 397 U.S. 358, 362 (1970).

While substantive limits were not at issue in *Winship*, *Mullaney*, or *Patterson*, it is still recognized that "under other principles of due process jurisprudence, certain factors are so fundamental that a State could not, as a substantive matter, refrain from recognizing them so long as it chooses to punish given conduct as a crime." *Patterson*, 432 U.S. at 229 (Powell, Brennan, and Marshall dissenting). Indeed, *Martin v. Ohio*, while approving the shifting of the burden of proof for self-defense to the defendant, recognizes these limits in declaring that "[i]t would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case...Such an instruction would relieve the State of its burden and plainly run afoul of Winship's mandate." *Martin v. Ohio* 480 U.S. 228, 233-4 (1986).

Unlike the affirmative defenses at issue in *Patterson* and *Martin*, Texas has not shifted the burden to the defendant, but rather, it has removed from the jury's consideration a category of evidence relevant to determination of mental state where mental states of intentionally and knowingly are essential elements of the offense. A jury could find that if a person is laboring under anger, rage, resentment, or terror to the point that he is incapable of cool reflection, then he cannot possess the culpable state of mind

for murder under §19.02. The State forestalls the defendant's ability to raise an effective

defense by limiting the jury's ability to consider a type of evidence that may negate an

element of the crime. The effect is to relieve the State of its burden to prove each of the

elements of murder beyond a reasonable doubt, as mandated by *Winship*.

(4) The Impact of *Jones, Apprendi, Ring* and *Blakely*

The Texas legislator's treatment of the defense of "sudden passion" violates the

recent Supreme Court decisions in *Jones v. U.S.* 526 U.S. 227 (1999), *Apprendi v. New

Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 122 S.Ct. 2428 (2002) and *Blakely v.

Washington*, 124 S.Ct. 2531 (2004). These cases hold that any fact that raises the level of

punishment above the maximum must be proven to a jury beyond a reasonable doubt.

Under the law of this state, a person commits murder if he intentionally or knowingly

causes the death of another. TEX. PENAL CODE, § 19.02(b)(1) (1994). Under the former

law of this state, sudden passion arising from an adequate cause was a lesser included

offense of murder,[2] and its negation became an implied element of murder that the state

was obligated to prove beyond a reasonable doubt. *Bradley v. State,* 688 S.W.2d 847,

849-851 (Tex. Crim. App. 1985).[3] In 1994 the legislature repealed the voluntary

manslaughter statute and adopted the present scheme, which makes sudden passion a

---

[2] See Tex. Penal Code, § 19.04 (1973).

[3] "Both murder and manslaughter required proof of an intent to kill (or constructive proof by showing the use of a deadly weapon *per se*). *Collins v. State*, 108 Tex. Crim. 72, 299 S.W. 403, 405 (Tex. Crim. App. 1927). Murder required the additional mental element of "malice aforethought" (often referred to simply as "malice"). *Collins*, 299 S.W. at 404. Malice was traditionally defined as "a state or condition of the mind showing a heart regardless of social duty and fatally bent on mischief." *Id.* Malice has also been defined by what it is not; namely, malice was not present if the crime was committed "under the influence of sudden passion, arising from an adequate cause." *Spearman v. State*, 23 Tex. Ct. App. 224, 4 S.W. 586, 587 (Tex. Crim. App. 1887). Before 1927, then, the sudden passion issue was the distinguishing element between murder and manslaughter." *Mims v. State*, 3 S.W.3d 923, 926 (Tex. Crim. App. 1999).

punishment issue. TEX. PENAL CODE, § 19.02(d) (1994). Under this scheme, the burden rests on the defendant to raise the issue and to carry the burden of persuasion. The definitions of "sudden passion" and "adequate cause" are defined the same as in the voluntary manslaughter statute.[4] TEX. PENAL CODE, § 19.02(a)(1)&(2) (1994).[5] This change in the legislative scheme violates the 14th amendment of the United States Constitution and Article I, §§ 13 & 19, of the Texas Constitution. The State of Texas must bear the burden on this important fact issue and it must prove it to a jury beyond a reasonable doubt. *Mullaney v. Wilbur,* 421 U.S. 684 (1975), and *Apprendi v. New Jersey,* 530 U.S. 466 (2000). The legislature cannot achieve this unconstitutional burden shifting by hiding this act in a statute that purports to reduce the punishment. It is still the creation of two ranges of punishment and makes the determination of which applies based on a single determination of fact. This is condemned by *Mullaney, Apprendi,* and *Ring v. Arizona,* 536 U.S. 584, 603 (2002), which notes that "the dispositive question . . . is not of form, but effect. If a State makes an increase in a defendant's authorized punishment contingent on a finding of a fact, that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt." *Ring v. Arizona,* 536 U.S. at 602.

(5)  The *Beck* Requirement that The Jury Consider Lesser Included Offenses

Murder mitigated by sudden passion with adequate cause is voluntary manslaughter, a lesser included offense of an intentional or knowing murder. Should the jury, during the punishment phase of a murder, trial find that the defendant was under the influence of the

---

[4] The crime of voluntary manslaughter under the 1973 penal code was simply the adoption of the old crime of murder without malice under the 1925 penal code. In fact, several cases construing the voluntary manslaughter law relied on cases construing the former murder without malice law. *McCartney v. State,* 542 S.W.2d 156, 158-160 (Tex. Crim. App. 1976).

[5] Compare to former TEX. PENAL CODE, § 19.04(b)&(c) (1973).

appropriate sudden passion, TEX. PENAL CODE § 19.02(d) (1994) reduces murder from a first to second degree felony. Limiting the juror's consideration of sudden passion to the punishment phase denies to the juror his or her obligation to consider the lesser included offense of voluntary manslaughter during the culpability stage of the trial. *Beck v. Alabama*, 447 U.S. 625 (1980). The defendant is also denied his right to due process of law when a juror is so limited. In *Beck*, the trial judge was statutorily prohibited from instructing the jury to consider the lesser included offense of felony murder. *Id* at 628-9. The court held that this was constitutionally impermissible because "the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction." *Id* at 637. This risk is not reduced by allowing a sudden passion determination during the punishment phase because that is made after a conviction has already been reached.

TEX. PENAL CODE § 19.03 (1994) recognizes the importance of making lesser included options available to the fact finder. This provision provides that capital defendants "may be convicted of murder or of any other lesser included offense" provided that the fact-finder does not find that capital murder is proved beyond a reasonable doubt. However, considering that TEX. PENAL CODE § 19.02 (1994) requires that the lesser offense of murder mitigated by sudden passion arising under adequate cause be postponed until the punishment phase, the fact-finder is not in a position to hold the state to its burden as the burden of persuasion is erroneously placed on the defendant. The result of these conflicting provisions renders the Texas Penal Code a morass of inconsistent directives which undermines the due process rights guaranteed by the 14th Amendment of the United States Constitution.

III. **SECTION 19.02 OF THE TEXAS PENAL CODE VIOLATES THE 8TH AMENDMENT PRINCIPAL OF PROPORTIONALITY TO PUT SOMEONE TO DEATH FOR THE CRIME OF MANSLAUGHTER.**

The death penalty is disproportionate to the crime of murder under sudden passion, in violation of the Eighth Amendment as incorporated to the states. The Texas legislature has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor, with the former mitigated to a felony of the second degree. In Texas, a defendant can be subject to the death penalty for committing two murders out of sudden passion, even though each crime, as defined by the legislature, is punishable by no more than 20 years.

The Supreme Court has required that there must be proportionality before the death penalty is constitutional. *Furman v Georgia* 408 U.S. 238 (1972). For example, rape cannot be the basis of the death penalty as there is no proportionality between the crime and the punishment. *Coker v. Georgia*, 433 U.S. 584 (1977). Moreover, as Justice White stated, the . . .Eighth Amendment bars not only those punishments that are "barbaric," but also those that are "excessive" in relation to the crime committed," and "[u]nder *Gregg,* a punishment is "excessive" and unconstitutional if it...is grossly out of proportion to the severity of the crime. *Coker*, 433 U.S. at 592

In *Coker*, the Court also noted that whether a punishment is disproportionate for a crime is not merely a matter of subjective interpretation. Instead, the Court listed a set of objective factors to consider when determining proportionality, including "public attitudes concerning a particular sentence history and precedent" and "legislative attitudes." *Coker*, 433 U.S. at 592. An examination of these factors, such as the history and present treatment of manslaughter by state legislatures, reveals that the death penalty

is excessive and unconstitutional for the crime of manslaughter.

## A. HISTORY

The law of manslaughter emerged in sixteenth-century England in reaction to the fixed death penalty in English murder law. Wayne R. LaFave & Austin W. Scott, Jr., 2 Substantive Criminal Law § 7.10 (1986). By creating a separate crime of manslaughter, the English courts were allowed to avoid the death penalty and make concessions for what they considered "natural, albeit deplorable, human weaknesses," including provoked killings and killings committed in a "heat of passion." Taylor, Provoked Reason in Men and Women: Heat-Of-Passion Manslaughter and Imperfect Self-Defense, 33 UCLALR 1679, 1684-5 (1986). Citing W. LAFAVE & A. SCOTT, HANDBOOK ON CRIMINAL LAW 571 (1972).

The law's historical avoidance of the death penalty for provoked killers is "an objective manifestation of a societal belief that such actors should be treated leniently." Dressler, Rethinking Heat of Passion: A Defense in Search of a Rationale, 13 J. CRIM. L. & CRIMINOLOGY 421, 423 (1982). Certainly, a person who reacts violently, but only after provocation, is less culpable than someone who kills after cool, rational deliberation. And, as a result, the punishments for these crimes should be different, assigned in accordance with the level of moral culpability. Therefore, while a premeditated murder may justify the imposition of the death penalty, it would be clearly "excessive" to put someone to death for committing manslaughter—a crime which exists because of society's view that those guilty of manslaughter should be treated more leniently.

## B. CURRENT STATE STATUTES

### (1) Texas

Current state statutes, including Texas's Penal Code, reflect this philosophy. Texas law recognizes that some murders are punishable by no more than 20 years in prison if the murder occurred under the influence of sudden passion. It would be a clear violation of the eighth amendment proportionality law to put to death a person when the underlying crime was punishable by a maximum of twenty years. Where the primary crime is not punishable by life, no aggravating factor can then raise the crime first to life, and then to death, without violating the constitutional ban on proportionality. *Coker v Georgia, supra.*

Furthermore, the fact that two persons, rather than one, are dead in the same episode (as may be the case in a capital murder) does not change the underlying problem: If a defendant's state of mind was 'sudden passion,' then he/she has committed a lesser crime. If it is a lesser crime, the punishment cannot be death. To hold otherwise, would be to contradict Supreme Court case law, traditional legal practices, and basic notions of justice.

### (2) Other States

States have repeatedly chosen to differentiate between crimes and their accompanying punishments based on the offender's mental state. If, for example, a defendant's state of mind was one of 'sudden passion,' he/she has committed a lesser and thereby the punishment should be reduced. The Model Penal Code, adopted by over 30 states, notes the reduction in culpability where there is sudden passion. Likewise, all fifty states have codified the crime of manslaughter in some form for defendants with a reduced *mens rea*. These states recognize that "sudden passion," "extreme emotional

disturbance," and "provocation" are the primary factors which justify a reduction from murder to manslaughter.[6] Moreover, since such mental states decrease the individual's culpability, state statutes treat both the crime and its accompanying sentence more leniently. This type of apportionment ensures that punishments truly "fit" the crime, and more importantly, that statutes comply with the constitutional mandate of proportionality.

## IV.   <u>CONCLUSION</u>

The placement of "sudden passion" in the punishment phase of the murder prosecution and the denial of a jury instruction on the issue of "sudden passion" in the mitigation phase of a capital trial are unconstitutional. Both violate basic tenets of fairness and justice as established in the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution.

WHEREFORE THE Defendant prays that:

(a) This Court find that the denial to the Accused of an instruction on the issue of Sudden Passion from an Adequate Cause in a capital murder case violates the cited provisions of the Constitutions of the Unites States and the State of Texas.

(b) This Court find that the provisions of Tex.C.Crim.P. 19.02, requiring the jury to consider Sudden Passion from an Adequate Cause only in the punishment phase of a trial, to be in violation of the cited provisions of the Constitutions of the United States and the State of Texas;

(c) The Accused have such other relief as he may show himself to be entitled to.

---

[6] *See* Georgia, Kentucky, and Maine statutes, *supra* note 1, at 12.

Respectfully submitted,

_____
Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the

22 day of _____June_____, 2007.

_____
Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

<u>**ORDER OF THE COURT ON THE DEFENDANT'S**</u>
<u>**MOTION TO DECLARE THE CURRENT TREATMENT OF THE "SUDDEN**</u>
<u>**PASSION" DEFENSE IN CAPITAL MURDER CASES UNCONSTITUTIONAL**</u>
<u>**Constitutional Motion Number 4**</u>

On this day the Court considered the foregoing motion, and after considering the law and the evidence and the arguments of counsel, finds that said motion should be and it is hereby:

_____ GRANTED


_____ DENIED, to which action the Defendant excepts.


So Ordered on this the ___ day of _____, 200___.



_____
Judge Presiding

770

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## DEFENDANT'S MOTION TO QUASH INDICTMENT ON GROUNDS THAT TEX. CODE CRIM. PROC. ART. 37.071(2) IS UNCONSTITUTIONAL
### Constitutional Motion Number 5

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion to Quash Indictment returned by the county grand jury on grounds that Tex. Code Crim. Proc. art. 37.071 is unconstitutional and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder, and the State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

2. Defendant is charged in the indictment with the offense of Capital Murder, pursuant to Sec. 19.03(a)(1), Tex. Penal Code. The District Attorney's office, in its discretion, is seeking the death penalty, pursuant to Tex. Code Crim. Proc. art. 37.071(2). The Defendant contends that the Texas capital murder statute is unconstitutional for all of the reasons contained in this motion and that the indictment should therefore be quashed or set aside and the State be precluded from imposing any sentence of death resulting from a prosecution based thereon:

771

(a) The statute is vague and overbroad for failure to define (i) "probability"; (ii) "criminal acts of violence"; (iii) "continuing threat to society"; (iv) "personal moral culpability"; and (v) "moral blameworthiness. This failure on the part of the legislature to define these terms, and to require the trial court to do so, denies the jury the guidance necessary to exercise its discretion. *Gregg v. Georgia*, 428 U.S. 153 (1976).

(b) Requiring twelve jurors to predict the probability (whatever that means) that a person will commit criminal acts of violence (whatever that means) that constitute a continuing threat to society (whatever that means) when mental health professionals are not able to reliably make such predictions, particularly over a long term, is arbitrary and capricious and violates the evolving standards of decency of our society.

(c) The statute is unconstitutional because the state legislature has failed to provide the local district attorneys with a uniform method for determining which cases will be prosecuted as death cases and which will be prosecuted as non-death capital cases. The Texas death penalty scheme does not give district attorneys guidance in exercising their discretion in determining who will face the death penalty. Who will face death is often a matter of how much money the county is willing or has to spend to prosecute and defend a death penalty case, who the prosecutor is, what the social standing of the victim is, the race of the defendant, the race of the victim and not a constitutionally mandated narrowing system where only the worst of the worst face death.

(d) The statute is unconstitutional in that the standard of "probability" imposed on the jury by Art. 37.071(b)(1) is less stringent than proof beyond a reasonable doubt. The language of the statute impermissibly causes a juror to focus, if at all, on the probability language rather than on the real burden of proof which should be beyond a reasonable doubt. The fact that jurors

must decide if a "probability has been established beyond a reasonable doubt" makes the application of Art. 37.071 arbitrary and capricious.

(e) The statute denies the accused due process and equal protection of the law by permitting introduction at the punishment phase of "any matter that the court deems relevant to sentence;"

(f) The statute does not properly narrow the class of persons eligible for the death penalty upon conviction for a capital offense;

(g) The statute is not based on a uniform national standard, resulting in arbitrary, capricious, freakish and wanton imposition of the death penalty;

(h) The statute does not provide for a proportionality review to determine if the penalty imposed is proportionate to other similar offenses;

(i) Art. 37.071(d)(2) is unconstitutional because it requires ten votes to answer the issue with a "no" response that would be in favor of a defendant and a life sentence;"

(j) The statute forbids individual jurors from giving individual effect to their desire to return a life sentence, by requiring 10 "no" votes;

(k) Execution by lethal injection is cruel and unusual punishment and otherwise unconstitutional;

(l) The statute is unconstitutional because it prohibits the judge and the parties from informing the jury that a hung jury [failure to achieve unanimity on Special Issue #1 or less than 10 "no" votes on Special Issue #2] will result in a life sentence. This is in effect a denial of the juror's right to a fair trial as they are intentionally misinformed about who is ultimately responsible for the verdict. The statute requires that they be told that the verdict rests with 10 or 12 when, in effect, a verdict for life rests with only 1 juror. This scheme artificially frustrates

those jurors who would vote for life if properly instructed. It makes those "hold out" jurors (particularly those who are fearful of causing a "mistrial") more susceptible to the pressures from the death voting majority. There is no such thing as a "mistrial" during the penalty phase of a capital trial and the jurors should be so informed.

(m) The statute fails to provide an alternative to the death penalty via an option of "life without parole;"

(n) The statute violates equal protection and due process by permitting the introduction of unadjudicated extraneous offenses at the punishment phase. There is required in capital cases a heightened need for reliability in the sentencing decision. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Allowing evidence of unadjudicated offenses, particularly in situations where those offenses would be inadmissible in a non-capital trial, denies the jury's verdict and the Court's sentence the reliability required by the 8th Amendment to the United States Constitution.

(o) The statute violates the equal protection and due process clauses of the United States Constitution, Amendments 5 and 14, by permitting the introduction of juvenile offenses at the punishment phase;

(p) The statute is unconstitutional because there are no appellate standards for determining the sufficiency of the evidence to support the jury's answers to the special issues, and the Texas Court of Criminal Appeals has repeatedly and consistently refused to conduct any meaningful appellate review of mitigation sufficiency;

(q) The statute effects a denial of equal protection and due process by having in place more than one capital sentencing procedure for capital offenses depending on the date of the offense.

(r) The statute does not require the indictment to allege the special issues, *i.e.*, the "facts" relied upon to enhance the capital sentence from life to death, contrary to the U.S. Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

(s) Article 39.071, as interpreted by the Texas Court of Criminal Appeals, denies to the Defendant the right to due process guaranteed by the 5th Amendment to the United States Constitution and the right to Equal Protection under the law as guaranteed by the 14th Amendment to the United States Constitution as protections that are afforded to non-capital defendants are not afforded to those who are prosecuted for a capital crime. The Accomplice Witness Rule in Art 38.14 does not apply to testimony offered to prove extraneous offenses at the punishment state of a capital trial. *Jones v. State*, 982 S.W.2d 386 (Tex. Crim. App. 1998); certain unadjudicated offenses that are not admissible in a non-capital trial may be admissible in a capital trial. *Felder v. State*, 848 S.W.2d 85, 98 (Tex. Crim. App. 1992); a defendant is not entitled to an instruction that the jury is not to consider unadjudicated extraneous offenses unless it is believed that they occurred beyond a reasonable doubt. *Fuentes v. State*, 991 S.W.2d 267, 280 (Tex. Crim. App. 1999).

3. An indictment based on an unconstitutional statute should be quashed. *See, e.g.*, *White v. State*, 440 S.W.2d 660, 667 (Tex. Crim. App. 1969).

WHEREFORE, PREMISES CONSIDERED, Defendant prays that relief be granted as prayed for herein.

Respectfully submitted,

_Steven R. Miears_ (signature)

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_June_, 2007.

_Steven R. Miears_ (signature)

Steven R. Miears

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION TO QUASH INDICTMENT ON GROUNDS
## THAT TEX. CODE CRIM. PROC. ART. 37.071(2) IS UNCONSTITUTIONAL
### Constitutional Motion Number 5

BE IT REMEMBERED, that on the _____ day of _____, 200__, came

to be considered the above motion. After consideration of the motion, it is the opinion of the

court that Defendant's motion be:

GRANTED _____

DENIED _____, to which action the Defendant excepts.


_____
Judge Presiding


777

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO PRECLUDE DEATH PENALTY AS A SENTENCING OPTION OR, IN THE ALTERNATIVE, TO QUASH THE INDICTMENT *Apprendi v. New Jersey/ Ring v. Arizona/ Blakely v. Washington/ Bush v. Gore* Constitutional Motion Number 6 REQUESTS TO VOIR DIRE/ REQUESTED INSTRUCTIONS/ MOTIONS IN LIMINE, RELATED TO CLAIMS IN THIS MOTION

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by counsel, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article I, Sections 3, 10, 13, 19 and 29 of the Texas Constitution and files this, his Motion to Preclude Death Penalty as a Sentencing Option, or, in the Alternative, to Quash Indictment. Defendant invokes each of the above provisions in support of each of his following claims, and would respectfully show the Court as follows:

I.

## VIOLATION OF SIXTH, FOURTEENTH, AND EIGHTH AMENDMENTS AND PARALLEL STATE CONSTITUTIONAL PROVISIONS, Art. I, SECS. 3, 10,19, 13

The basic premise of all Defendant's requests in this Motion is that he has the constitutional rights to have a grand jury consider and allege in the indictment all specific facts legally essential to his conviction and death sentence, and then to have a trial jury determine beyond a reasonable doubt, all such facts (including

1

facts supporting a negative answer to the mitigation special issue) legally essential to his sentence. In support of his assertion of these rights, Defendant cites the recent Supreme Court decisions in *Jones v. United States* 526 U.S. 227 (1999), *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) and *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (2004). The Eighth Amendment protection against the arbitrary imposition of the death penalty provides further support for the application of the *Apprendi/Ring/Blakely* due process and Sixth Amendment holdings to Defendant's case.

The United States Supreme Court has held in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), that any fact other than a prior conviction <u>that increases the maximum penalty</u> for a crime must be <u>charged in an indictment</u>, then submitted to a jury <u>and proven beyond a reasonable doubt</u>. The decision in *Ring v. Arizona, supra*, was premised upon the Sixth Amendment right to trial by jury; the Court held the jury, rather than the trial court, must decide the facts justifying the state's death penalty, and in *Blakely v. Washington, supra*, the Supreme Court clarified what it meant by the term "maximum penalty".

The "maximum penalty" for *Apprendi/Ring/Blakely* purposes, under Texas death penalty law, is the <u>life sentence</u> that is authorized up to and until the jury returns a unanimous negative answer on the sufficiency of mitigation. That finding is legally essential to the imposition of death in Texas. This "maximum penalty" concept is crucial to both of Defendant's claims, that:

779

**Indictment Must Allege Statutory Special Issues and Supporting Facts**

A.) Defendant is entitled to a Grand Jury determination and an indictment that charges the "special issue elements" of the death penalty, and the facts relied upon to support the charge that Defendant is "guilty" of the special issues; as a matter of <u>Sixth Amendment</u> Right to Jury Trial and <u>Fourteenth Amendment Due Process</u>, as a matter of <u>Eighth Amendment</u> fairness in a capital case and as a matter of <u>Fourteenth Amendment Equal Protection.</u>

In addition to this federal Fourteenth Amendment due process and Sixth Amendment right to jury trial basis for requiring written charging and a jury finding upon proof beyond a reasonable doubt of facts used to increase a defendant's maximum penalty, the Texas Constitution affords a parallel right to the right to trial by jury and to "due course of law" and also guarantees that, "No person shall be held to answer for a criminal offense unless on an indictment of a grand jury." , Tex. Const. Art. I, Secs. 10 and 19.; Tex. Const. Art. I, Sec. 3.

**State Has Burden of Negating Mitigation Beyond a Reasonable Doubt**

B.) Defendant is entitled to place upon the State the burden of proving beyond a reasonable doubt a negative answer to the mitigation special issue as a matter of <u>Sixth Amendment</u> Right to Jury Trial and <u>Fourteenth Amendment Due Process</u>, and as a matter of <u>Eighth Amendment</u> fairness in a capital case.

**A.) The Indictment is Constitutionally Deficient**

<u>Sixth Amendment Right to Jury Trial, Fourteenth Amendment Due Process, Eighth Amendment fairness in a capital case/ Parallel Texas Rights and Texas Constitutional Right to Grand Jury Indictment.</u>

1.) <u>Violation of Constitutional Right s to Jury Trial and to Due Process of Law</u>

The indictment for the crime of capital murder does not contain any Grand

Jury charge that there is a probability Defendant would commit future acts of

3

violence that would constitute a continuing threat to society, nor does it reflect a Grand Jury charge that the mitigating circumstances are insufficient to warrant a sentence of life imprisonment, rather than the death sentence. Those statutory facts are the <u>statutory elements required to impose the sentence of death; they have a unique status as the only facts upon which he can be held to answer for the crime with his life.</u>

This Court can sentence Defendant to death <u>only if</u> a jury returns a unanimous answer to each of two special issues: first, the jury must find unanimously, beyond a reasonable doubt that there is a probability Defendant would commit criminal acts of violence that would constitute a continuing threat to society; second, the Court may not sentence Defendant to death unless the jury further finds unanimously that there is <u>not</u> a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment, rather than a death sentence, be imposed. Tex. Code Crim. Proc. art. 37.071(2)(b)(1)(c), (d)(2), (e), (f)(2), (g).

Under the arguments submitted above, and the Supreme Court cases cited, the lack of indictment on the Texas "death facts": the special Issues and the supporting facts, Defendant has suffered violation of his Sixth, Fourteenth and Eighth Amendment rights, and his parallel state constitutional rights, so that the Court should preclude the State from seeking the death penalty, or quash the indictment as constitutionally deficient.

4

2.)     Violation of Texas Constitutional right to Grand Jury Indictment

Art. I, Sec. 3 of the Texas Constitution guarantees that no person shall be held to answer for a criminal offense except by indictment returned by a Grand Jury. The State of Texas, now trying to kill this Defendant, has denied him that right to due process and the consequent notice and opportunity to prepare that it implies, by failing to present evidence to the Grand Jury so that it could decide if there were facts supporting the State's seeking the death penalty. It is the prosecutor's uncontrolled discretion, rather than the Grand Jury's indictment, upon which Defendant is being held to answer for a criminal offense in this case.

3.)     Violation of Equal Protection

The Grand Jury does not participate in the decision to seek the death penalty, the prosecution does not present to the Grand Jury any of the factors the elected District Attorney is gathering, evaluating and using to make the unreviewed decision to seek death. Members of the Grand Jury are not asked to screen the information for factual accuracy, or weigh its significance according to its source or according to their own perception of the propriety of seeking death in a particular case. The prosecution has complete discretion in selecting the particular facts that will be used to prove the special issue answers so as to impose the death penalty. Those facts are legally essential to the imposition of the death penalty, yet they are not included in the indictment; even the special issues are not charged in the indictment, because the Grand Jury hears no evidence and makes no finding that the Defendant will be a continuing threat, or that the aggravating

5

circumstances will require a negative answer to the mitigation issue. In the absence of a written charge—from the Grand Jury—the prosecutor's discretion is so broad as to offend the federal and state constitutional guarantees of equal protection under the law. The equal protection guarantees are intended to avoid the vagaries and unfairness (the arbitrariness and capriciousness) that may attend the application of the law to similarly situated citizens in a system of elected prosecutors.

By interposing a Grand Jury composed of citizens of the community, and the presentation of facts and the return of an indictment on the decision to seek death, the State would at least dilute the unequal treatment that exists under the present system: that capital defendants who are similarly situated are tried differently in different counties (or even within the same county) based upon considerations that do not properly single one out for death. This procedure denies those charged with capital offenses the equal protection under the law as a defendant charged with capital murder under the same fact situation might face a death prosecution if he were prosecuted in Harris County, but face a non-death capital prosecution in another county. *See generally, Bush v. Gore*, 531 U.S. 98, 121 S. Ct. 525, 148 L. Ed. 2d 388 (2000).

The decisions in *Apprendi, Ring* and *Blakely* support the proposition that even though unfettered discretion has been afforded previously to the prosecution, it is now a constitutional prerequisite that in order to seek the death penalty, the State must use the Grand Jury process in the punishment decision: there must be

6

783

the return of an indictment alleging the existence of the legally essential "death facts" in terms of the Texas special issues, as well as the non-statutory aggravating facts upon which it has based its charge that the special issues will be answered for death. Without the indictment on the punishment facts, the Texas system violates the constitutional guarantees of equal protection of the laws. U.S. Const. Amend. 14; Tex. Const. Art. I, Sec. 3.

Based upon the foregoing arguments and authorities, and upon each constitutional guarantee listed in the opening paragraph of this Motion, Defendant makes the following requests and objections, and asks for the Court's rulings on each:

### Request to Preclude Death Penalty or Quash Indictment/ Indictment Violates Due Process, Due Course of Law

1.) Defendant moves the Court to preclude the State from seeking the death penalty against him in this proceeding, or to quash the indictment, because the indictment does not allege the existence of the statutory special issues and the supporting facts necessary to impose a death sentence, in violation of Defendant's Fourteenth Amendment right to due process of law and his state constitutional right to due course of law. U.S. Const., Amend. 14; Tex. Const., Art. I, Sec. 19

After due consideration, it is hereby ORDERED, that said Motion is:

_____ GRANTED, and State may not seek Death Penalty

_____ GRANTED, and Indictment is quashed

_____ DENIED

### Request to Preclude Death Penalty or Quash Indictment/ Indictment Violates Right to Jury Trial

2.) Defendant moves the Court to preclude the State from seeking the death penalty against him in this proceeding, or to quash the indictment, because the indictment does not allege the existence of the statutory special

784

issues and the supporting facts necessary to impose a death sentence, in violation of Defendant's Sixth Amendment right to trial by jury and his parallel state constitutional right. U.S. Const., Amend. 6; Tex. Const., Art. I, Sec. 10

After due consideration, it is hereby ORDERED, that said Motion is:

_____ GRANTED, and State may not seek Death Penalty

_____ GRANTED, and Indictment is quashed

_____ DENIED

## Request to Preclude Death Penalty or Quash Indictment/ Indictment Violates Eighth Amendment

3.) Defendant moves the Court to preclude the State from seeking the death penalty against him in this proceeding, or to quash the indictment, because the indictment does not allege the existence of the statutory special issues or supporting facts necessary to impose a death sentence, placing such unfettered discretion in the hands of the prosecution as to produce an impermissibly arbitrary and capricious imposition of the death penalty, in violation of Defendant's federal Eighth Amendment right against the infliction of cruel and unusual punishment, and his state constitutional right against the infliction of cruel or unusual punishment. U.S. Const., Amend. 8; Tex. Const., Art. I, Sec. 13

After due consideration, it is hereby ORDERED, that said Motion is:

_____ GRANTED, and State may not seek Death Penalty

_____ GRANTED, and Indictment is quashed

_____ DENIED

## Request to Preclude Death Penalty or Quash Indictment/ Indictment Violates Equal Protection

4.) Defendant moves the Court to preclude the State from seeking the death penalty against him in this proceeding, or to quash the indictment, because the indictment does not allege the existence of the statutory special issues or supporting facts necessary to impose a death sentence, placing such unfettered discretion in the hands of the prosecution as to deny him equal protection of the laws, in violation of Defendant's federal Fourteenth Amendment right to equal protection under the laws, and his parallel state constitutional right U.S. Const., Amend. 14; Tex. Const., Art. I, Sec. 3

8

785

After due consideration, it is hereby ORDERED, that said Motion is:

_____ GRANTED, and State may not seek Death Penalty

_____ GRANTED, and Indictment is quashed

_____ DENIED

## Request to Preclude Death Penalty or Quash Indictment/ Indictment Violates Texas Constitutional Right to Be Held to Answer For Crime Only Upon Indictment.

5.) Defendant moves the Court to preclude the State from seeking the death penalty against him in this proceeding, or to quash the indictment, because the indictment does not allege the existence of the statutory special issues or supporting facts necessary to impose a death sentence, in violation of Defendant's state constitutional right to be "held to answer" for a crime only by indictment. Tex. Const. Art. I, Sec. 3

After due consideration, it is hereby ORDERED, that said Motion is:

_____ GRANTED, and State may not seek Death Penalty

_____ GRANTED, and Indictment is quashed

_____ DENIED

## B.) It is Constitutionally Necessary to Place Upon the State the Burden of Proving Negative Answer on Mitigation Special Issue

1.) Request to Voir Dire
2.) Request for Instruction
3.) Motion in Limine to Prevent Improper Prosecutorial Argument.

The law in Texas currently places no burden of proof upon the State, to any degree, to prove the negative answer on the mitigation special issue that is the prerequisite for imposing the death penalty. *See, e.g., Hankins v. State*, 132 S.W.3d 380, 386 (Tex. Crim. App. 2004)

As stated above, one question is central to the resolution of Defendant's claims regarding the application of the *Apprendi/Ring/Blakely* principle to the

9

786

Texas death penalty: What is the "maximum statutory punishment" in the Texas scheme, for purposes of an *Apprendi-as-affected-by-Ring-as-affected-by-Blakely* analysis? The Court of Criminal Appeals has said in at least 12 recent capital cases that the maximum statutory punishment is death, and that a negative finding on mitigation does not have the effect of increasing a defendant's punishment beyond that maximum; it has only the potential to reduce the sentence already authorized by the jury's finding that he is a continuing threat. *See, e.g., Hankins, supra; Blue v. State*, 125 S.W.3d 491 (Tex. Crim. App. 2003).

The decision in *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (2004) certainly contradicts the Texas court's reasoning. In that case, the defendant entered a guilty plea in state court and was convicted of second-degree kidnapping. Under the applicable Washington statute, the maximum punishment was ten years (120 months) confinement. However, under the state's sentencing reform act, the defendant's offense carried a "standard range" of 49 to 53 months. The judge was permitted to assess a sentence outside the statutory standard range (and within the statutory maximum) only upon making certain fact findings. After conducting a hearing, the trial judge made findings of fact and determined that Blakely had acted with "deliberate cruelty". Based on that finding he assessed Blakely's punishment at 90 months confinement, within the statutory maximum but well above the standard range.

When the defendant appealed his sentence on *Apprendi* grounds, claiming that he was denied his constitutional right to have a jury determine beyond a

10

reasonable doubt all facts legally essential to his sentence, the State responded that

*Apprendi* did not apply because the relevant "statutory maximum" was 120

months, not 53 months, pointing out that no "exceptional sentence" delivered

under the sentencing guidelines was permitted to exceed that maximum. Writing

for a majority of the Court, Justice Scalia explained the significance of the

"statutory maximum":

> "Our precedents make clear, however, that the 'statutory maximum'
> for *Apprendi* purposes is the maximum sentence a judge may impose
> solely on the basis of the facts reflected in the jury verdict or
> admitted by the defendant.....In other words, the relevant statutory
> maximum is not the maximum sentence a judge may impose after
> finding additional facts, but the maximum he may impose <u>without</u>
> any additional findings. When a judge inflicts punishment that the
> jury's verdict alone does not allow, the jury has not found all the
> facts 'which the law makes essential to the punishment',.... and the
> judge exceeds his proper authority." *Blakely v. Washington, supra,*
> 124 S.Ct. at 2534-2535. (citations omitted, emphasis in opinion)

Under Texas law <u>the jury's negative answer to the mitigation special issue</u>

<u>is legally essential to the imposition of the death penalty</u>. The affirmative answer

to the statutory aggravating issue or issues will not alone authorize the death

sentence. Tex. Code Crim. Proc. art. 37.071, Sec. 2(g) (Life sentence shall be

imposed unless jury unanimously answers first question (first two questions if

both aggravators submitted) "yes" <u>and</u> mitigation question "no".) Therefore, even

after a capital jury answers the continuing threat special issue "yes", their verdict

authorizes only a life sentence under Texas law. <u>Only if</u> they make an additional

unanimous finding of "no" to the mitigation special does Texas law authorize the

sentence of death. If the jury is unable to answer the mitigation special issue, the

11

affirmative answer on the aggravating special issue <u>still</u> does not authorize the imposition of death.

Based upon the foregoing arguments and authorities, Defendant requests the following:

<u>Request to Voir Dire on State's Burden to Prove Negative Answer to Mitigation</u>

6.) Defendant requests that the Court permit him to conduct voir dire based upon the proposition that the State has the burden to prove beyond a reasonable doubt that the mitigation special issue should be answered "No", before a juror may answer it "No". Defendant bases this request on the constitutional authority listed in the first paragraph of this Motion, and upon the above-cited Supreme Court decisions. U.S. Const. Amends. 6, 8 and 14, Tex. Const. Secs. 10, 13 and 19.

After due consideration, it is hereby ORDERED, that said Request is:

_____ GRANTED

_____ DENIED

<u>Request For Instruction on State's Burden to Prove Negative Answer to Mitigation</u>

7.) Defendant requests that the Court instruct the jury at the close of punishment that the State has the burden to prove beyond a reasonable doubt that the mitigation special issue should be answered "No", before a juror may answer it "No". Defendant bases this request on the constitutional authority listed in the first paragraph of this Motion, and upon the above-cited Supreme Court decisions. U.S. Const. Amends. 6, 8 and 14, Tex. Const. Secs. 10, 13 and 19.

After due consideration, it is hereby ORDERED, that said Request is:

_____ GRANTED

_____ DENIED

789

<u>Motion in Limine to Prevent Prosecutorial Argument Contrary to State's
Burden to Prove Negative Answer to Mitigation</u>

8.)   Defendant makes this Motion in Limine, asking that the Court instruct
the prosecutors not to make any argument or suggestion to the jurors that
would tend to relieve the State of the burden to prove beyond a reasonable
doubt that the mitigation special issue should be answered "No", before a
juror may answer it "No", or to suggest to them that such an answer is
incapable of proof beyond a reasonable doubt, or to suggest that it is unjust
to place such burden on the State.

Defendant bases this request on the constitutional authority listed in the
first paragraph of this Motion, and upon the above-cited Supreme Court
decisions.  U.S. Const. Amends. 6, 8 and 14; Tex. Const. Secs. 10, 13 and
19.

After due consideration, it is hereby ORDERED, that said Request is:

_____      GRANTED, and the prosecutors are instructed not to make
                    any argument or suggestion like that set out in Defendant's Motion
                    in Limine, and to approach the bench and secure the Court's ruling
                    before making any argument that might violate the Court's
                    instruction.

_____      DENIED

III.

<u>**Necessity for Independent Application of Burden of Proof to Unadjudicated
Extraneous Offenses and Acts of Misconduct**</u>

A.)   <u>Request to Voir Dire</u>
B.)   <u>Request for Limiting Instruction</u>
C.)   <u>Motion in Limine to Prevent Improper Prosecutorial Argument.</u>

The Court of Criminal Appeals has not ruled that there is no burden on the

State at the punishment phase of a capital case to prove beyond a reasonable doubt

the defendant committed the unadjudicated offense or misconduct, but for some

reason the court has stoutly resisted the capital defendant's attempt to obtain a

13

separate instruction applying that burden. The Court's language has suggested in the past that the burden of proof on continuing threat somehow "encompasses" the burden of proving the unadjudicated extraneous offenses, finding that so long as the jury is properly instructed on that burden of proof, "there is no unfairness" in not having a separate instruction concerning the burden of proof on unadjudicated extraneous offenses. *See, e.g., Ladd v. State*, 3 S.W.3d 547, 574 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000)

At best, the Court's language suggests that the jury seeing the burden of proof on the on the ultimate fact (continuing threat) will assume that there also must be a burden of proof on the component facts (unadjudicated extraneous offenses). But the Court does not address the significance of the fact that the unadjudicated extraneous offenses are admitted also as "anti-mitigation evidence, non-statutory aggravating evidence independent of their relevance to the continuing threat special issue, and that the mitigation issue carries no burden of proof that can "supply" the burden on the unadjudicated extraneous offenses. (If the United States Supreme Court finds that the State must bear the burden of proving the negative mitigation answer that is legally essential to imposing the death penalty, then perhaps the Texas Court's view of the matter would be more logical. However, as the matter stands now, with no burden of proof on the mitigation special issue, the Court of Criminal Appeals' opinions do not satisfy the *Ring* requirement that the jury must find beyond a reasonable doubt that the defendant committed any unadjudicated extraneous offenses or acts of

791

misconduct, when the prosecution offers those offenses as aggravating factors to secure death answers to both special issues: continuing threat and mitigation. Without a separate instruction, there is certainly no assurance that the jury will recognize and apply the burden of proof to those alleged offenses.

Based upon the foregoing arguments and authorities, Defendant makes the following requests and objections, and asks for the Court's rulings on each:

### Request to Voir Dire on State's Burden to Prove Defendant's Commission of Unadjudicated Extraneous Offenses and Act of Misconduct.

9.) Defendant requests that the Court permit him to conduct voir dire based upon the proposition that the State has the burden to prove beyond a reasonable doubt that Defendant committed any unadjudicated extraneous offense or act of misconduct before a juror may consider or use evidence of such offense or act against him in deliberating on either special issue, whether it is to support a "Yes" answer to the continuing threat special issue or to support a "No" answer to the mitigation special issue. To allow the jury to consider such evidence against Defendant in answering either special issue, based upon a lesser burden of proof, violates his Sixth Amendment right to jury trial, his Fourteenth Amendment right to due process, and offends the Eighth Amendment's heightened need for reliability and fairness in a death penalty case, as well as his parallel rights under the Texas Constitution. Defendant bases this request on the constitutional authority listed in the first paragraph of this Motion, and upon the above-cited Supreme Court decisions. U.S. Const., Amends. 6, 8 and 14, Tex. Const., Secs. 10, 13 and 19.

After due consideration, it is hereby ORDERED, that said Request is:

_____     GRANTED

_____     DENIED

### Request For Instruction on State's Burden to Prove Unadjudicated Offenses and Acts of Misconduct

10.) Defendant requests that the Court include in the jury charge an

792

instruction that the State has the burden to prove beyond a reasonable doubt that Defendant committed any unadjudicated extraneous offense or act of misconduct before a juror may consider or use evidence of such offense or act against him in deliberating on either special issue, whether it is to support a "Yes" answer to the continuing threat special issue or to support a "No" answer to the mitigation special issue. This request is based upon the fact that the continuing threat special issue carries a burden of proof, while the mitigation issue does not (under the statute as currently interpreted), so that is insufficient to protect Defendant's Sixth Amendment right to trial by jury, his Fourteenth Amendment due process rights and his Eighth Amendment rights to rely upon the burden of the continuing threat issue to "encompass" the burden of proving an unadjudicated extraneous offense or misconduct beyond a reasonable doubt. Defendant bases this request on the constitutional authority listed in the first paragraph of this Motion, and upon the above-cited Supreme Court decisions. U.S. Const., Amends. 6, 8 and 14, Tex. Const., Secs. 10, 13 and 19.

After due consideration, it is hereby ORDERED, that said Request is:

_____     GRANTED

_____     DENIED

## Motion in Limine to Prevent Prosecutorial Argument Contrary to State's Burden to Prove Unadjudicated Extraneous Offenses and Acts of Misconduct

11.) Defendant makes this Motion in Limine, asking the Court to instruct the prosecutors not to make any argument or suggestion to the jurors that would tend to relieve the State of the burden to prove beyond a reasonable doubt that Defendant committed any unadjudicated extraneous offense or act of misconduct before a juror may consider or use evidence of such offense or act against him in deliberating on either special issue, whether it is to support a "Yes" answer to the continuing threat special issue or to support a "No" answer to the mitigation special issue This Motion is based upon on Defendant's constitutional Sixth Amendment, due process and Eighth Amendment rights to be convicted and sentenced by a jury, only upon proof beyond a reasonable doubt of every fact made statutorily necessary to the imposition of the death penalty. Defendant bases this request on the constitutional authority listed in the first paragraph of this Motion, and upon the above-cited Supreme Court decisions. U.S. Const., Amends. 6, 8 and 14, Tex. Const., Secs. 10, 13 and 19.

793

After due consideration, it is hereby ORDERED, that said Motion is:

_____     GRANTED

_____     DENIED


## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant prays that upon hearing, this Court sustain his Motion and preclude death as a sentencing option in this case or in the alternative, quash this indictment, as reflected in the rulings made in the body of the Motion.

Even if it denies Defendant's requests to preclude the State from seeking the death penalty, and denies his request to quash the indictment, Defendant prays that the Court allow him to conduct voir dire as requested, grant him the instructions requested and grant his motions in limine as requested to prevent improper argument, and record its rulings on the forms provided in the body of this Motion.

Respectfully submitted,

_____
Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

17                                                      794

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of _____, 2007.

_____
Steven R. Miears

18

795

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER
(Constitutional Motion Number 6)

On this day came on to be heard the Defendant's Motion to Preclude the Death Penalty as a Sentencing Option, or, in the Alternative, to quash the indictment, and after due consideration, the Court is of the opinion, and it is hereby ORDERED, that the Defendant's requests are GRANTED or DENIED individually as reflected in the Motion.

SIGNED this the _____ day of _____, 200___.

_____
JUDGE PRESIDING

19

796