AP-75,794

TRIAL COURT CAUSE NO: 380-81972-07
A REINDICTMENT OF NO: 380-82629-06

IN THE 380TH DISTRICT COURT
OF COLLIN COUNTY, TEXAS,
HONORABLE CHARLES SANDOVAL JUDGE PRESIDING

---

KOSOUL CHANTHAKOUMMANE                    APPELLANT

**FILED IN**
**COURT OF CRIMINAL APPEALS**

VS.                    FEB 2 6 2008

THE STATE OF TEXAS                    APPELLEE

**Louise Pearson, Clerk**

---

APPEALED TO THE
COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS

---

ATTORNEY FOR APPELLANT:
NAME:   C WAYNE HUFF
ADDRESS: P O BOX 2334
        BOERNE   TX  78006-2334
TELEPHONE: (214) 803-4127
FAX NO: (830) 230-5567
SBOT NO: 10180600

ATTORNEY FOR APPELLEE:
NAME:    JOHN R ROACH
ADDRESS: 2100 BLOOMDALE RD
         MCKINNEY TX  75069
TELEPHONE:  (972) 548-4323
FAX NO:    (972) 548-4388
SBOT NO:   90001601

---

DELIVERED TO THE COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS
ON THE 13TH DAY OF FEBRUARY 2008

SIGNATURE OF CLERK: Carolyn McCauley
NAME OF CLERK:  CAROLYN MCCARLEY
TITLE:  DEPUTY CLERK

---

APPELLATE COURT CAUSE NO. AP-75,794

FILED IN THE COURT OF CRIMINAL APPEALS IN AUSTIN, TEXAS

ON THE_____DAY OF_____20__.

_____, CLERK

BY_____, DEPUTY

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO DECLARE ARTICLE 37.071, § 2(b)(1) OF THE TEXAS CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL ON ITS FACE
### Constitutional Motion Number 27

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant in the above-entitled and numbered criminal action, files this motion to declare Article 37.071 § 2(b)(1) of the Texas Code of Criminal Procedure unconstitutional on its face. In support, the defendant will show the court the following.

### Background

The Defendant has been indicted by the Collin County Grand Jury for the offense of capital murder. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Article 37.071 of the Texas Code of Criminal Procedure sets out the framework for the trial of this criminal case.

### Analysis

A.    The Future Dangerousness Provision of the Texas Death Penalty Statute

Article 37.071, § 2(b)(1) of the Code of Criminal Procedure provides in pertinent part:

(b)    On conclusion of the presentation of the evidence, the Court shall submit the following issues to the jury:

1

1054

     (1)    whether there is a probability that the defendant would commit
criminal acts of violence that would constitute a continuing threat to
society

TEX. CODE CRIM. PROC. art. 37.071 § 2(b)(1).

B.    The Statute Violates the Defendant's Right to Trial by Jury and Presumption of Innocence

On June 24, 2002, the Supreme Court declared that Arizona's capital sentencing scheme

violates the Sixth Amendment's jury trial guarantee because it entrusts to the trial judge the

determination whether aggravating factors exist that will justify the imposition of the death

penalty. *Ring v. Arizona*, 536 U.S. 584, 609 (2002). Applying the holdings from its previous

decisions in *Jones v. United States*, 526 U.S. 227 (1999) and *Apprendi v. New Jersey*, 530 U.S.

466 (2000), the Court held that "[u]nder the Due Process Clause of the Fifth Amendment and

the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior

conviction) that increases the maximum penalty for a crime must be charged in an indictment,

submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n.6. The

Supreme Court in *Ring* rejected the distinction between elements of an offense and sentencing

factors that it had relied on in *Walton v. Arizona*, 497 U.S. 639 (1990), because that analysis was

obviated by the holding of *Apprendi*. *Ring*, 536 U.S. at 604. "If a State makes an increase in a

defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how

the State labels it – must be found by a jury beyond a reasonable doubt." *Apprendi*, 530 U.S. at

482-83. Thus, "when the term 'sentence enhancement' is used to describe an increase beyond

the maximum authorized statutory sentence, it is the functional equivalent of an element of a

greater offense than the one covered by the jury's guilty verdict." *Id.* at 495. Because Arizona's

aggravating factors operated as the functional equivalent of an element of the greater offense of

capital murder, the Sixth Amendment required that they be found by a jury. *Ring*, 536 U.S. at

2

609. The Supreme Court concluded that Arizona's capital sentencing scheme violated the Sixth Amendment's guarantee of a right to trial by jury on every element of the offense charged, because, under Arizona law, the trial judge alone determined the existence or nonexistence of the enumerated aggravating factors. *Id.*

The Supreme Court has distinguished "sentencing factors," that is, any fact that is not an element of the offense but that serves to enhance a sentence, allowing such factors to be found by the sentencing body by a lower standard of proof, typically by a preponderance of the evidence. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91092 (1986). In *McMillan*, the Supreme Court considered the constitutionality of a Pennsylvania statute that provided that anyone convicted of certain enumerated felonies was subject to a mandatory minimum sentence of five years in prison if the sentencing judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense. *Id.* at 81. The Supreme Court concluded that the visible possession of a firearm was not an element of the offense but a sentencing factor, stressing that a legislature's characterization is dispositive if it does not transgress constitutional limits. *Id.* The Court identified several features that indicated that Pennsylvania's characterization of visible possession of a firearm as a sentencing factor was constitutionally permissible. The most significant feature was the fact that the statute "neither altered the maximum penalty for the crime committed nor created a separate offense calling for a separate penalty." *Id.* at 87-88.

In 1999, the Supreme Court took up the question whether the federal car jacking statute, 18 U.S.C. § 2119, set out three separate offenses by providing for a fifteen year maximum penalty, a 25 years maximum penalty if serious bodily injury resulted, and a maximum penalty

3

of life imprisonment if death resulted. *Jones*, 526 U.S. at 230. The Court noted, "it is at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit." *Id.* at 233. Further,

> if a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determination of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment.

*Id.* at 243-44.

The following year the Supreme Court put to rest the element versus sentencing factor debate. *Apprendi*, 530 U.S. 466, involved a New Jersey "hate crime" statute that provided for a longer term of imprisonment if a trial judge found, by a preponderance of the evidence, that a defendant committed a crime with a biased purpose, as described in the statute. The Court held that the Due Process Clause required that such a factual determination be made by a jury on the basis of proof beyond a reasonable doubt and, therefore, struck down the statute. *Id.* at 469.

*Apprendi* was extended to capital prosecutions in *Ring*. Ring was convicted of felony murder in the course of armed robbery. Under Arizona law, he could not be sentenced to the statutory maximum penalty of death unless further factual determinations were made by the sentencing judge concerning the presence of absence of aggravating and mitigating circumstances. Only if the court found at least one statutory aggravating circumstance beyond a reasonable doubt and no mitigating circumstances, "sufficiently substantial to call for leniency," could it impose the death penalty. *Ring*, 536 U.S. 592-93. The United States Supreme Court reversed Ring's death sentence holding that, under *Apprendi*, "because Arizona's enumerated

4

aggravating factors operate as 'the functional equivalent of an element of a grater offense,' the Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609.

In sum, this line of cases, read together, means that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are elements of the crime for the purposes of the constitutional analysis. *Harris v. United States*, 536 U.S. 545, 549 (2002). Regardless of whether particular statutory factors have been labeled, considered or construed as elements or sentencing factors, they must now be treated as elements under the authority of *Jones, Apprendi* and *Ring*.

The Supreme Court's holding that death-eligibility factors are the functional equivalents of elements of the offense dictates that all fair trial guarantees be imported into the fact-finding process for these factors. Article 37.071 § 2(b)(1) permits the jury to find the defendant death eligible – that is, that there is a probability that he will commit criminal acts of violence that would constitute a continuing threat to society – even if the State does not prove this fact beyond a reasonable doubt. Although Article 37.071(2)(c) purportedly requires that the State prove this element beyond a reasonable doubt, it is logically inconsistent to find that a person will "beyond a reasonable doubt, probably be a future danger." Not only is this burden of proof illogical and incomprehensible, it deprives the defendant of his presumption of innocence and allows the jury to sentence the defendant to death without finding all of the essential elements of the offense beyond a reasonable doubt.

The right to the presumption of innocence is not specifically articulated in the United States Constitution, but it has been recognized by the Supreme Court as a "basic component" of the right to a fair trial secured by the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501,

5

503 (1976). Further, the Texas Code of Criminal Procedure provides, "[a]ll persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." TEX. CODE CRIM. PROC. art. 38.03. Because death-eligibility is contingent on a jury finding of future dangerousness, this finding is an element of the offense and must, therefore, be accorded full constitutional protection, including the presumption of innocence and proof beyond a reasonable doubt.

Given the unique and momentous interest at stake – the death-eligibility determination is the stage at which the penalty of life imprisonment can be converted to a death sentence – procedural rights that will ensure the highest degree of reliability in the fact-finding process are imperative. *United States v. Fell*, 217 F. Supp. 2d 469 (D. Vt. 2002).

C.      The Statute is Arbitrary and Capricious and Violates the Defendant's Due Process Rights

The Texas requirement that a jury make a factual determination that there is a probability that the defendant will commit criminal acts of violence is arbitrary and capricious because whether or not a person will commit future criminal acts of violence is not within the ability of the lay people on the jury to accurately predict. The probability that a person will commit future violence is not a prediction that even the psychiatric community can make, particularly in the long run. The unreliability of psychiatric predictions of long-term future dangerousness is by now an established fact within the profession. *See, e.g.*, CLINICAL ASPECTS OF THE VIOLENT INDIVIDUAL" (American Psychiatric Association Task Force on Clinical Aspects of the Violent Individual, ed. 1974); Amicus Brief of the American Psychiatric Association (APA) filed before the Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880 (1983). The APA, in its brief, said that the primary finding of the task force was that judgments concerning the long-run potential for

6

future violence and the dangerousness of a given individual are fundamentally of very low reliability, adding that the state of the art regarding predictions of violence is very unsatisfactory. *Id.*

The unreliability of long term predictions of future dangerousness is acknowledged even today by those who take the position that there is some ability to predict dangerousness. "Using modern assessment tools, however, there is a growing body of data to suggest that psychiatrists can, in fact, predict violence more accurately than many believe – at least in the short term. KEN HAUSMAN, "PREDICTING VIOLENCE RISK POSSIBLE BUT COMPLEX" *Psychiatric News*, Vol 36, Number 13 (2001). These predictions of violence, even if more accurate than in the past, come in a civil setting where a determination is made about possible civil commitment, not in the context of a capital murder case where the issue is whether the defendant is going to live or die, and not simply whether to suspend or limit their civil liberties for a short period of time.

> Despite the pervasiveness of violence risk assessment in mental health law, research continues to indicate that the unaided abilities of mental health professionals to perform this task are modest at best.

*MacArthur Research Network on Mental Health and the Law,* "Executive Summary," at 1. (April, 2001). The consideration for the jury must necessarily be a long-term consideration, as a defendant who is given a life sentence will not be eligible for parole for 40 calendar years. The ability to make such long-term predictions is rendered more unreliable by the propensity for violence to "age out" as a person grows older. *See* SORENSEN, JONATHAN R. AND ROCKY L. PILGRIM, <u>CRIMINOLOGY: AN ACTUARIAL RISK ASSESSMENT OF VIOLENCE POSED BY CAPITAL MURDER DEFENDANTS</u>, *Journal of Law and Criminology*, 90 J. Crim. L. & Criminology, 1251, 1255 (2000).

7

1010

## Conclusion

Based on the reasons discussed above, Article 37.071(b)(1) must be found to be unconstitutional and the death penalty must be precluded as a sentencing option.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

Steven R. Miears

9

1011

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S MOTION TO DECLARE ARTICLE 37.071, § 2(b)(1) OF THE TEXAS CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL ON ITS FACE
### Constitutional Motion Number 27

BE IT REMEMBERED, that on this day the Court considered the foregoing motion to declare Article 37.071, § 2(b)(1) of the Code of Criminal Procedure Unconstitutional on its face. After consideration, the court has determined that the motion shall be, and is hereby:

_____ GRANTED.  IT IS THEREFORE ORDERED that the statute is declared unconstitutional and the State is precluded from seeking the death penalty against the defendant.

_____ DENIED, to which the Defendant excepts.

SIGNED the _____ day of _____, 2007.

_____
JUDGE PRESIDING

1012

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO DECLARE ARTICLE 37.071 § 2(a) OF THE TEXAS CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL ON ITS FACE
### Constitutional Motion Number 28

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by and through counsel and files this motion to declare Article 37.071 § 2(a) of the Texas Code of Criminal Procedure unconstitutional on its face. In support, the defendant will show the court the following.

### Background

The Defendant has been indicted by the Collin County Grand Jury for the offense of capital murder. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306 (1993) and *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Article 37.071 of the Texas Code of Criminal Procedure sets out the framework for the trial of this criminal case.

### Analysis

Article 37.071, § 2(a) of the Texas Code of Criminal Procedure provides in pertinent part:

In the proceeding, evidence may be presented by the state and the defendant or the defendant's counsel as to any matter *that the court deems relevant to sentence*, including the evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty. This subsection shall not b construed to authorize the introduction of any

1

evidence secured in violation of the Constitution or the United States or of the State of Texas.

TEX. CODE CRIM. PROC. art. 37.071 § 2(a) (emphasis added). This provision fails to set objective standards regarding the possible universe of relevant considerations for the imposition of the death penalty.

Texas jurists disagree about the meaning of this statute and published case law has not imposed any consistent limitations restricting admission of evidence during Texas death penalty punishment phase trials. Judge McCormick, for instance, argues that the rules of evidence have no bearing on the question of admissibility of such evidence. "Article 37.071, Section 2 makes the trial court the decision-maker on what evidence to admit at the punishment phase of a capital murder trial, subject to reversal by [the Court of Criminal Appeals] only if the defendant shows a constitutional violation and harm." *Mosley v. State*, 983 S.W.2d 249, 267 (Tex. Crim. App. 1998) (McCormick, J. concurring). Further, in the current debate on the admissibility of victim impact evidence, the Court of Criminal Appeals has held, inconsistently, that victim impact evidence is relevant only insofar as it related to the mitigation issue, *id.* at 263, but in subsequent cases, upheld the trial court's admission of victim impact evidence without any limitation. *Cf. id.* and *Solomon v. State*, 49 S.W.3d 356, 365-66 (Tex. Crim. App. 2001). As the Honorable Judge Clinton put it, "what is 'relevant' to determining proper punishment is more a question of policy than of logic. In creating the separate punishment proceeding in 1965, the Legislature clearly intended to remove the blinders inherent in a unitary trial. Unfortunately . . . it has given no clear guidance as to what considerations should inform the jury's [or judge's] punishment decision." *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988). The statute is unconstitutional because neither the statute itself, nor the case law interpreting it, set any

2

discernable standards guiding the admissibility of evidence at a capital murder punishment phase trial. As such, Article 37.071 § 2(a) violates the separation of powers requirement of the Texas Constitution, Art. II § 1, the defendant's right to due course of law under Texas Code of Criminal Procedure, Art. 1.04 and the Texas Constitution, Article I, § 19, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the right to trial by jury guaranteed by Texas Code of Criminal Procedure Arts. 1.05, 1.12, 1.15, Article I, §§ 10, 15 and 15a of the Texas Constitution, the Sixth and Fourteenth Amendments to the United States Constitution, as well as the defendant's right to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

A.     Sixth Amendment

On June 24, 2002, the Supreme Court declared that Arizona's capital sentencing scheme violates the Sixth Amendment's jury trial guarantee because it entrusts to the trial judge the determination whether aggravating factors exist that will justify the imposition of the death penalty. *Ring v. Arizona*, 536 U.S. 584, 609 (2002). Applying the holdings from its previous decisions in *Jones v. United States*, 526 U.S. 227 (1999) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[u]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n.6. The Supreme Court in *Ring* rejected the distinction between elements of an offense and sentencing factors that it had relied on in *Walton v. Arizona*, 497 U.S. 639 (1990), because that analysis was obviated by the holding of *Apprendi*. *Ring*, 536 U.S. at 604. "If a State makes an increase in a

3

defendant's authorized punishment contingent on the finding of a fact, that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt." *Apprendi*, 530 U.S. at 482-83. Thus, "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.* at 495. Because Arizona's aggravating factors operated as the functional equivalent of an element of the greater offense of capital murder, the Sixth Amendment required that they be found by a jury. *Ring*, 536 U.S. at 609. The Supreme Court concluded that Arizona's capital sentencing scheme violated the Sixth Amendment's guarantee of a right to trial by jury on every element of the offense charged, because, under Arizona law, the trial judge alone determined the existence or nonexistence of the enumerated aggravating factors. *Id.*

The Supreme Court has distinguished "sentencing factors," that is, any fact that is not an element of the offense but that serves to enhance a sentence, allowing such factors to be found by the sentencing body by a lower standard of proof, typically by a preponderance of the evidence. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91092 (1986). In *McMillan*, the Supreme Court considered the constitutionality of a Pennsylvania statute that provided that anyone convicted of certain enumerated felonies was subject to a mandatory minimum sentence of five years in prison if the sentencing judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense. *Id.* at 81. The Supreme Court concluded that the visible possession of a firearm was not an element of the offense but a sentencing factor, stressing that a legislature's characterization is dispositive if it does not transgress constitutional limits. *Id.* The Court identified several features that indicated that

4

Pennsylvania's characterization of visible possession of a firearm as a sentencing factor was constitutionally permissible. The most significant feature was the fact that the statute "neither altered the maximum penalty for the crime committed nor created a separate offense calling for a separate penalty. *Id.* at 87-88.

In 1999, the Supreme Court took up the question whether the federal car jacking statute, 18 U.S.C. § 2119, set out three separate offenses by providing for a fifteen year maximum penalty; a 25 years maximum penalty if serious bodily injury resulted; and a maximum penalty of life imprisonment if death resulted. *Jones,* 526 U.S. at 230. The Court noted, "it is at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit." *Id.* at 233. Further,

> if a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determination of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment.

*Id.* at 243-44.

The following year the Supreme Court put to rest the element versus sentencing factor debate. *Apprendi,* 530 U.S. 466, involved a New Jersey "hate crime" statute that provided for a longer term of imprisonment if a trial judge found, by a preponderance of the evidence, that a defendant committed a crime with a biased purpose, as described in the statute. The Court held that the Due Process Clause required that such a factual determination be made by a jury on the basis of proof beyond a reasonable doubt and, therefore, struck down the statute. *Id.* at 469.

*Apprendi* was extended to capital prosecutions in *Ring*. Ring was convicted of felony

murder in the course of armed robbery. Under Arizona law, he could not be sentenced to the statutory maximum penalty of death unless further factual determinations were made by the sentencing judge concerning the presence of absence of aggravating and mitigating circumstances. Only if the court found at least one statutory aggravating circumstance beyond a reasonable doubt and no mitigating circumstances, "sufficiently substantial to call for leniency," could it impose the death penalty. *Ring*, 536 U.S. 593. The United States Supreme Court reversed Ring's death sentence holding that, under *Apprendi*, "because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a grater offense,' the Sixth Amendment requires that they be found by a jury. *Ring*, 536 U.S. at 609.

In sum, this line of cases, read together, means that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are elements of the crime for the purposes of the constitutional analysis. *Harris v. United States*, 536 U.S. 545, 549 (2002). Regardless of whether particular statutory factors have been labeled, considered or construed as elements or sentencing factors, they must now be treated as elements under the authority of *Jones*, *Apprendi* and *Ring*.

The Supreme Court's holding that death-eligibility factors are the functional equivalents of elements of the offense, requires that all fair trial guarantees be imported into the fact-finding process for these factors. Article 37.071 § 2(a) permits the jury to consider any information which the judge "deems relevant" to the proceedings. Using this relaxed evidentiary standard for the determination of death-eligibility factors violates the demands of the Fourteenth Amendment's guarantee of due process and the Sixth Amendment rights of confrontation and cross-examination because under the current state of Texas law, a trial judge can "deem

6

1013

relevant" and admit almost anything, including untrustworthy hearsay. The rights to confront and cross-examine witnesses . . . have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Indeed, "the absence of proper confrontation at trial calls into question the ultimate integrity of the fact-finding process." *Ohio v. Roberts*, 448 U.S. 56, 64 (1980) (internal quotation omitted) (overruled on other grounds by *Crawford v. Washington*, 158 L. Ed. 2d 177, 199 (2004)). Likewise, trial courts have "deemed relevant" the admission of an accomplice's out of court statement implicating the defendant, which is impermissible unless the defendant is afforded his rights of confrontation and cross examination. *E.g.*, *Schepps v. State*, 432 S.W.2d 926, 940 (Tex. Crim. App. 1968) (citing *Bruton v. United States*, 391 U.S. 123 (1968)).

Given the unique and momentous interest at stake – the death-eligibility determination is the stage at which the penalty of life imprisonment can be converted to a death sentence – procedural rights that will ensure the highest degree of reliability in the fact-finding process are imperative. *United States v. Fell*, 217 F. Supp. 2d 469 (D. Vt. 2002) (striking down the Federal Death Penalty Act because of relaxed evidentiary standards employed in the determination of aggravating and mitigating factors).

B.    Separation of Powers

Article II, § 1 of the Texas Constitution states:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another, *and no person*, or collection of persons,

7

1019

*being of one of these departments, shall exercise any power properly attached to*

*either of the others*, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1 (emphasis added). Article 37.071, § 2(a) of the Code of Criminal Procedure violates this provision because it fails to provide an objective standard for determining the admissibility of punishment evidence, and impermissibly allows the judiciary, indeed, each individual judge, to set a standard for the admission of evidence including extraneous offense evidence, when determination of such standard properly belongs to the legislature.

The separation of powers provision not only prevents the accumulation of excessive power in a single branch of government, but it "also has the incidental effect of promoting effective government by assigning functions to the branches that are best suited to discharge them." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990). Under this statute, admissibility of evidence is determined entirely by an individual trial judge based on what he or she deems relevant, rather than what is relevant under Rule 401 of the Texas Rules of Evidence. *See Grunsfeld v. State*, 843 S.W.2d 521, 547 (Tex. Crim. App. 1992) (Clinton, J., concurring) ("[T]he Legislature still has not supplied . . . any 'polestar' . . . by which the trial court can make the essential 'relevancy' determination."). The legislature, not judges, should determine what class of evidence should be admitted. *See* TEX. RULE OF EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

While not controlling, the United States Supreme Count's interpretation of the federal separation of powers doctrine is helpful. The United States Supreme Court has said that so long

8

1020

as the legislative branch lays down "'by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *J. W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928). *See also Grunsfeld*, 843 S.W.2d at 547. Under this statute, the phrase "any matter the court deems relevant" constitutes an improper delegation of authority to the judiciary because the legislative branch has delegated to trial courts to decide ad hoc punishment relevancy without first declaring a policy or fixing a standard. *See Ex parte Granviel*, 561 S.W.2d 503, 514 (Tex. Crim. App. 1978). By essentially delegating to the trial courts the function of declaring punishment policy case-by-case, the legislative branch has delegated power belonging to its own governmental branch, and thereby violated the Texas separation of powers provision.

C.    Due Process of Due Course of Law

By permitting trial court to decide case-by-case what issues are deemed relevant to punishment without first declaring a policy or fixing a standard by which the courts may decide admissibility, Article 37.071, § 2(a) of the Code of Criminal Procedure deprives the defendant of due course of law under Article I, § 19 of the Texas Constitution and due process under the Fourteenth Amendment to the United States Constitution because it introduces arbitrariness into punishment proceedings and it eliminates the defendant's right to appellate review of the trial court's decisions. It also violates the prohibition against overly-vague criminal laws.

1.    Arbitrariness

Article 37.031 § 2(a)'s phrase "any matter the court deems relevant" meets the very definition of arbitrariness. *See Black's law Dictionary*, p. 96 (West 5th ed. 1989) (arbitrariness is

"Conduct or acts based alone upon one's will, and not upon any course of reasoning and exercise of judgment;" "Without adequate determining principle."). Arbitrary punishment is that punishment "which is left to the decision of the judge, in distinction from those defined by statute." *Id.* What is admissible is left completely to the unfettered whim of each different trial judge in Texas. Each trial court may admit not only evidence which *is* relevant, but also any evidence a particular judge *deems* relevant. Each judge under this statute is a legislature unto himself. Under any definition, there is no more arbitrary statute than the one in question here.

2.     Right to Appeal Eliminated

The defendant has a right to a meaningful review of decisions complained of at the trial court level. *See Evitts v. Lucey*, 469 U.S. 387, 396-99 (1985); *see also* TEX. CONST. Art. V, § 6. Under this statute, however, there can be no meaningful appellate review of trial court decisions as to the admissibility of evidence because no objective standard exists. Whatever a particular court subjectively "deems" relevant to the proceedings is admissible. There is no standard against which the trial court's decision may be measured. If the trial court admits the evidence, the decision can never be error, whether there is an objection or not, because such evidence *is* relevant whenever the judge *deems* it relevant. By eliminating any objective standard by which to guide trial courts, Article 37.071, § 2(a) also eliminates any methods by which an appellate court may gauge the propriety of the trial court's evidentiary decisions, thereby precluding any meaningful review of trial court decisions regarding admissibility of punishment evidence.

3.     Due Process – Void for Vagueness

The statute in question violates the due process prohibition against vague criminal laws.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful

10

conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. *Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.* Third, but related, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)(emphasis added) (footnotes and quotation marks omitted). The defendant challenges the constitutionality of Article 37.071 § 2(a) of the Code of Criminal Procedure on the second and "more important aspect of the vagueness doctrine . . . , [namely] 'the requirement that a legislature establish minimal guidelines to govern law enforcement.' [citation omitted] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors and juries to pursue their personal predilections.'" *Kolender v. Lawson*, 461 U.S. 352, 538 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574-75 (1974)).

The phrase "any matter the court deems relevant to sentencing," is as uncertain a "standard" as the English language can produce. From this statutory wording no one can know what is relevant at the punishment phase of a Texas criminal trial. "[A] law must be sufficiently definite that its terms and provisions may be known, understood and applied; otherwise, it is void and unenforceable." *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978); *Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App. 1978). Indeed, the judiciary itself is at a loss to know the relevant matters of a criminal punishment trial without legislative guidance. *See Grunsfeld v. State*, 843 S.W.2d 521, 547 (Tex. Crim. App. 1992) (Clinton, J., concurring) (reviewing same provision for non-death penalty cases). If the courts themselves are unable to

11

know what is prohibited from admission as evidence in a criminal punishment trial from the face

of the statute, then the law is void for vagueness because it makes it impossible for the judiciary

to construe the statute and tell when it has been violated. Because the legislature has failed to

declare exactly what matters in Texas death penalty punishment trials are admissible, but instead

shifted the policy issues to the judiciary, the statute is void for vagueness under Article I, § 19 of

the Texas Constitution, and under the Fifth and Fourteenth Amendments to the United States

Constitution. *See May v. State*, 765 S.W.2d 438 (Tex. Crim. App. 1989) (finding harassment

statute unconstitutionally vague).

D.   Cruel and Unusual Punishment

The Eighth Amendment proscribes the infliction of "cruel and unusual punishment." U.

S. CONST. amend. VIII.   Article I, § 13 of the Texas Constitution forbids cruel or unusual

punishment. *See e.g., Francis v. State*, 877 S.W.2d 441 (Tex. App.—Austin, 1994, pet. ref'd).

Because Article 37.071, § 2(a) gives no guidance whatsoever to the admissibility of evidence,

sentences imposed under this state are "cruel and unusual in the same way that being struck by

lightning is cruel and unusual." *Furman v. Georgia*, 408 U.S. 238, 309 (1972) (Stewart, J.,

concurring).   The defendant's sentence will be determined on an unconstitutionally unreliable

basis because the trial judge "deemed" certain evidence relevant and admissible.

The exact scope of the constitutional phrase "cruel and unusual" has not been

detailed by this Court. . . . The basic concept underlying the Eighth Amendment is

nothing less than the dignity of man.   *While the State has the power to punish, the*

*Amendment stands to assure that this power be exercised within the limits of*

*civilized standards.* . . . [T]he words of the Amendment are not precise, and . . .

12

1024

their scope is not static. The Amendment must draw its meaning from the

evolving standards of decency that mark the progress of a maturing society.

*Trop v. Dulles*, 356 U.S. 86, 99-101 (1958) (emphasis added) (footnotes omitted). The Eighth

Amendment requires that punishment be assessed within the limits of "civilized standards."

Article 37.071, § 2(a) violates Article I, § 13 of the Texas Constitution and the Eighth and

Fourteenth Amendments to the United States Constitution because it does not contain a standard.

## CONCLUSION

Based on the forgoing, the defendant urges this court to declare Article 37.071, § 2(a) of

the Texas Code of Criminal Procedure unconstitutional on its face, and preclude the State from

employing this unconstitutional provision in seeking the death penalty against the defendant.

The defendant prays for all other relief to which he shows himself justly entitled.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

1023

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June, 2007.

_____
Steven R. Miears

1023

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION TO DECLARE ARTICLE 37.071 § 2(a) OF THE
## TEXAS CODE OF CRIMINAL PROCEDURE
## UNCONSTITUTIONAL ON ITS FACE
### Constitutional Motion Number 28

BE IT REMEMBERED, that on the _____ day of _____, 2007,

came to be considered the foregoing motion to declare Article 37.071, § 2(a) of the Texas Code

of Criminal Procedure unconstitutional on its face. After consideration, the court has

determined that the motion shall be, and is hereby:

_____ GRANTED. IT IS THEREFORE ORDERED that the statute is

declared unconstitutional and the State is precluded from seeking the death penalty against the

defendant.

_____ DENIED, to which the Defendant excepts.

SIGNED the _____ day of _____, 2007.

_____
JUDGE PRESIDING

1027

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO HOLD UNCONSTITUTIONAL TEX. CODE CRIM. PROC. ART. 37.071 SEC. 2(e) AND (f) - BURDEN OF PROOF
Constitutional Motion Number 29

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by and through his attorney of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and makes this his Motion to Hold Unconstitutional Tex. Code Crim. Proc. arts. 37.071 Sec. 2(e) and (f) - Burden of Proof, and as grounds therefore would show the Court as follows:

1. Effective September 1, 1991, a jury which has convicted a defendant of capital murder, in which the State is seeking the death penalty, shall be charged as follows:

Tex. Code Crim. Proc. Art. 37.071, Sec. 2

(e) The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) of this article, it shall answer the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

(f) The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury:

(1) shall answer the issue "yes" or "no";

(2) may not answer the issue "no" unless it agrees

FILED
2007 JUN 22 PM 1: 07
HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY_____ DEPUTY

unanimously and may not answer the issue "yes" unless 10 or more jurors agree.

2. This statute is unconstitutional for the following reasons:

(a) It impermissibly shifts the burden of proof on mitigation to the Defendant in violation of Article I §10 of the Texas Constitution. The statute requires the jury to consider, along with mitigating evidence, the "moral culpability of the defendant." This is the jury that has just found the defendant had no defense to the charge of capital murder and that he was guilty of that offense, beyond a reasonable doubt.

The statute then demands that the defense produce "sufficient" mitigation (while considering this same "moral culpability") to warrant a sentence of life imprisonment. The mitigating evidence must be "sufficient" to overcome "moral culpability" that has already been established in the minds of the jurors. In death penalty deliberations, "moral culpability" is not evidence, it is a finding that the jury has already made. The statute places an unfair, undue and unconstitutional emphasis on the finding that the jury has already made. The Defendant, if he is to save his life, must offer evidence that is somehow greater than the finding of moral culpability beyond a reasonable doubt.

(b) Aside from shifting the burden of proof to the Defendant, the statute provides no other guidance to the jury that is called upon to make this life and death decision. As a result, the death penalty is imposed in a wanton and freakish manner in violation of the Defendant's rights to due process and protection from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I §13 of the Texas Constitution.

(c) This impermissible shift of the burden to the Defendant is made more unconscionable by the language of Tex. Code Crim. Proc. art. 37.071(2)(f) which provides that the jury shall not

answer the mitigation issue "yes" (resulting in a life sentence) unless 10 or more jurors agree. The Defense, according to the instructions to the jury, must then offer "sufficient" mitigating evidence to not only overcome the "moral culpability" that has already been established in the eyes of the jury, but 10 or those jurors must be convinced of the sufficiency of that evidence.

### 3. State Law Violations

The infirmities in the statute discussed above are also in violation of State Constitutional Law. Under the "due course of the law" provision of the Texas Constitution, Article I §10, the citizens of this state are guaranteed that any punishment for an offense will be in accordance with the law. *McFarlane v. State*, 254 S.W.2d 136 (Tex. Crim. App. 1953). When the burden of proof is shifted to the Defendant, the State's burden has essentially been reduced. *See e.g., Cobarrubio v. State*, 675 S.W.2d 749 (Tex. Crim. App. 1983) (overruled in part, *Lawrence v. State*, 700 S.W.2d 208 (Tex. Crim. App. 1985)); and *Elliott v. State*, 858 S.W.2d 478, 487-488 (Tex. Crim. App. 1993). Such a punishment, based on a reduced burden, is not in accordance with Texas law and is unconstitutional.

WHEREFORE, PREMISES CONSIDERED, Defendant prays this court will hold this statute unconstitutional, and for such other relief as Defendant may be entitled.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of

_____ June , 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

**ORDER OF THE COURT ON THE DEFENDANT'S**
**MOTION TO HOLD UNCONSTITUTIONAL TEX. CODE CRIM. PROC.**
**ART. 37.071 SEC. 2(e) AND (f) - BURDEN OF PROOF**
Constitutional Motion Number 29

BE IT REMEMBERED, that on this day the Court considered the above motion. After

consideration of the motion, it is the opinion of the court that Defendant's motion be:

_____ GRANTED.  IT IS THEREFORE ORDERED that Article 37.071 of

the Texas Code of Criminal Procedure is declared unconstitutional and the State is precluded

from seeking the death penalty against the defendant.



_____ DENIED, to which the Defendant excepts.



So ORDERED on this the \_\_ day of _____, 2007.



_____
Judge Presiding

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

<u>MOTION TO DECLARE SECTION 19:02-19:03</u>
<u>TEXAS PENAL CODE UNCONSTITUTIONAL</u>
Constitutional Motion Number 30

TO THE HONORABLE JUDGE OF SAID COURT

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by and

through his attorneys of record, and pursuant to the 5th, 6th, 8th and 14th Amendments to the

United States Constitution and Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution

and respectfully moves the Court to find that sections 19.02 and 19.03 of the Texas Penal Code

unconstitutional . The Defendant would show the Court the following.

1. The Defendant has been indicted by the Collin County Grand Jury for the offense of

capital murder. The State is seeking the death penalty. The Eight Amendment requires a greater

degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*,

508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306 (1993) and *Woodson v. North Carolina*, 428

U.S. 280, 305 (1976).

2. The statute now provides that a person commits murder if he … intentionally or

knowingly cause the death of an individual. It is capital murder if the Defendant commits the

offense of robbery during the same criminal transaction.

3. Texas law requires that murder be done "intentionally or knowingly" Tex. Penal Code

19.02(b)(1).

1033

4. Intentionally is defined as an act done with the conscious objective or desire to cause the result Tex. Penal Code 6.03 (a) Penal Code. Knowingly, is defined as the defendant is aware ·that his conduct is reasonably certain to cause the result. Tex. Penal Code 6.03 (b).

5. Texas law also provides that if an act is done under the influence of sudden passion-adequate cause, the crime is less serious. Tex. Penal Code 19.03 (d) Penal Code.

6. Sudden Passion-adequate cause is a state of mind wherein the mind of the actor is "incapable of cool reflection".

## FIRST ARGUMENT–EIGHTH AMENDMENT VIOLATION, MISLEADING THE JURY

If a person is laboring under anger, rage, resentment, or terror to the point that he is incapable of cool reflection, then he cannot be acting with the state of mind with the conscious objective to cause the result or to be aware of the result. *Mullaney v. Wilbur, 421 U.S. 684* (1975). Should a jury find that he was acting intentionally or knowingly, then the jury cannot ever find that he was acting under sudden passion, without engaging in jury nullification. The law is calling the jury to do an illogical act, to find intent, and then to expressly negate that finding. Such a statutory system where jurors are required to engage in jury nullification in order to return a correct verdict is unconstitutional, *Penry II.*

Prior Texas law that had the two states of mind set out in the guilt phase, as murder and voluntary manslaughter was logical and legal. Either the defendant acted intentionally or knowingly, or he acted under sudden passion, or he was not guilty. By moving the issue to punishment, (and placing the burden on the Defendant) the statue is the same as the Maine Statute that the United States Supreme Court found unconstitutional in *Mullaney v. Wilbur,* 421 U.S. 684 (1975).

The Texas Court of Criminal Appeals wrote *Ex parte Watkins* 73 S.W.3d 264( Tex. Crim.

App. 2002), in which Justice Cochran wrote:

The state also argues that because "sudden passion" is no longer a guilt/innocence fact, but rather a mitigating punishment fact, it is not a fact that is subject to collateral estoppel (footnote omitted) This position does not make sense logically or legally. It also poses the risk of expressed by Justice Scalia in the dissent in *Monge* . It raise the sinister specter of reconfiguring all criminal offenses into punishment facts to  . . .  dispensing with proof beyond a reasonable doubt, right to a jury trial, etc .

> *Ex parte Watkins* page 13

The identical problem is present in this case at the bar. The jury must be apprised of the fact that a murder done in the heat of sudden passion is a lesser offense than a murder done intentionally or knowingly.  The instruction and finding cannot be done in the punishment phase of a capital case; it must be done in the guilt phase.  The Court in *Watkins, supra,* noted that there is no logical reason to distinguish between facts that decrease a sentence from facts that increase the sentence. (citing *Apprendi v. New Jersey* 530 U.S. 466 (2000)).

## SECOND ARGUMENT EIGHT AMENDMENT PROPORTIONALITY VIOLATION

In *Mullaney v. Wilbur, supra,* the United States Supreme Court held that Maine violated the due process and 14th amendment clauses of the United States Constitution. The 14th amendment requires that the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the crime alleged.  The Maine scheme invalidated is very similar to the current Texas scheme on murder and sudden passion. The Maine law of homicide punished murder by life imprisonment unless proven by the defendant by preponderance of the evidence that the murder was committed in the heat of passion on sudden provocation in which case it was punished as manslaughter. The presence or absence of the heat of passion on sudden provocation has been, almost from the inception of the common law of homicide the single most important factor in determining the degree of culpability by attaching to an unlawful homicide. Criminal law is concerned not only with the guilt or innocence in the abstract but also with the degree of

criminal culpability. The distinction between murder and manslaughter may be of greater importance than the difference between guilt or innocent for many lesser crimes. *Mullaney, supra,* specifically holds that a state cannot circumvent the constitutional protection of *In re Winship* by re-defining the elements of an crime by a characterization of these elements as factors that bear solely on the extent of punishment. This is the same holding in *Apprendi v New Jersey.* Under the existing scheme in Texas a defendant can be given a life sentence when the evidence shows that he was guilty of what was called Voluntary Manslaughter, (maximum sentence of 20 years). Far worse in Texas a defendant can be subject to the death penalty in such a case. The law as drafted provides no mechanism for the jury to act on this evidence. To paraphrase Justice Harlan, "It is far worse to sentence one guilty only of manslaughter as a murderer than sentence a murder to the lesser."

The Supreme Court has required that there must be proportionality before the death penalty is constitutional *Furman v. Georgia* 408 U.S. 238 (1972). Rape cannot be the basis of the death penalty as there is no proportionality between the crime and the punishment. *Coker v. Georgia,* 433 U.S. 584 (1977).

> (T)he . . .Eighth Amendment bars not only those punishments that are "barbaric," but also those that are "excessive" in relation to the crime committed. Under *Gregg,* a punishment is "excessive" and unconstitutional if it (1) . . .(2) is grossly out of proportion to the severity of the crime.. . .. Furthermore, these Eighth Amendment judgments should not be, or appear to be, merely the subjective views of individual Justices; judgment should be informed by objective factors to the maximum possible extent. To this end, attention must be given to the public attitudes concerning a particular sentence history and precedent, legislative attitudes, and the response of juries reflected in their sentencing decisions are to be consulted

> *Coker v. Georgia,* 433 U.S. 584 (1977)

Texas law recognizes that some murders are punishable by no more than 20 years in prison, if the murder occurred under the influence of sudden passion. It would be a clear

violation of the eighth amendment proportionality law to put to death a person who the underlying crime was only punishable by twenty years. In this case the evidence the state presented at the bond hearing raise a crime of passion with adequate cause. Where the primary crime is not punishable by life, no aggravating factor can then raise the crime first to life, and then to death, without violating the constitutional ban on proportionality. *Coker v. Georgia, supra.*

The fact that there are two persons dead in the same episode does not change the underlying problem: If a defendant's state of mind was 'sudden passion' he has committed a lesser crime, or crimes by the definition by the legislators of what is the crime of murder. If it is a lesser crime, the punishment cannot be death. A search of 25 state statutes by counsel has failed to find even one state that does not recognize in some form that murder under 'sudden passion' is not a lesser crime. The Model Penal Code adopted by over 30 states notes the reduction in culpability where there is sudden passion.

Texas is out of line when it attempts to make manslaughter a crime punishable by death.

### THIRD ARGUMENT -- EQUAL PROTECTION.

If a person was laboring under sudden passion, and kills two persons, the Defendant is denied equal protection and due process under the current statutory scheme If the state elects to charge the crime as capital murder, verses charging the crime as two murders. Texas law permits the defendant who is not charged with capital murder to seek a finding of sudden passion. A defendant charged with capital murder cannot seek that finding, even though he has been accused of committing the identical act.

### CONCLUSION

The placement of "sudden passion" in the punishment phase of the murder prosecution is

unconstitutional. The Defendant prays that he be permitted to introduce evidence and the jury be so charged that if he did act in sudden passion, he cannot be found guilty of capital murder.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays for relief as requested herein.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____ June _____, 2007.

Steven R. Miears

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

ORDER OF THE COURT
ON THE DEFENDANT'S MOTION TO DECLARE SECTION 19:02-19:03
TEXAS PENAL CODE UNCONSTITUTIONAL
Constitutional Motion Number 30

BE IT REMEMBERED, that on the _____ day of _____, 2007, came

to be considered the above motion. After consideration of the motion, it is the opinion of the

court that Defendant's motion be:

GRANTED    _____

DENIED    _____, to which action the Defendant excepts.


_____
Judge Presiding

1039

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO SUPPRESS EVIDENCE
## OBTAINED PURSUANT TO WARRANT NO. W219-09052006-2

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-entitled

and numbered criminal action, by and through counsel, and moves to suppress certain items of

physical evidence and any statements he allegedly made to law enforcement. In support, the

Defendant will show the following.

### Background

The Defendant has been indicted by the Collin County Grand Jury for capital murder.

The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree

of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v.

Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North

Carolina, 428 U.S. 280, 305 (1976).

### Facts

On September 5, 2006, Judge Curt Henderson, Presiding Judge of the 219th District

Court, Collin County, Texas, signed warrant number W219-09052006-2 (hereafter "warrant"), a

copy of which is attached hereto as Exhibit "A" and incorporated herein by reference. The

warrant allowed for the search and seizure of the following items in a 1993 Ford Mustang car:

> "knives, jewelry, ledgers, journals, photographs, recording devices, pawn
> tickets, medical bills and documents, written documents, bank records,

1

ATM transactions records, gas station receipts, cellular phone bills and statements, computers and other electronic data storage and transmission devices, clothing, body fluids, and body hair **associated with the murder of Sarah Anne Walker in McKinney, Texas...**" (emphasis added).

According to the "Return and Inventory" (hereafter "return") prepared by K. Hudson, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference, the warrant was executed September 8, 2006. The items seized by law enforcement pursuant to the warrant are described in the return.

## Analysis

1. SEARCH AND SEIZURE WITHOUT A WARRANT

Law enforcement officers must have a search warrant, based on probable cause, issued by a neutral and detached magistrate to seize a person's property or search that person. U.S. Const. amend. IV and XIV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. art. 1.04 and 1.06. If a law enforcement officer searches a person or seizes his property without a warrant, unless there is a valid exception to the warrant requirement, he violates the dictates of the United States and Texas Constitutions as well as the Texas Code of Criminal Procedure, and, thus, the evidence obtained as a result must be suppressed. Mapp v. Ohio, 367 U.S. 643, 660 (1961); Tex. Code of Crim. Proc. art. 38.23. The Defendant was searched and his property was seized without a valid warrant. Therefore, the evidence obtained from the warrant must be suppressed.

2. SEARCH AND SEIZURE WITH A WARRANT

The Defendant's vehicle was searched and seized pursuant to a warrant. No search warrant shall issue unless sufficient facts are presented to a neutral magistrate establishing

2

1041

probable cause.[1] U.S. Const. amend IV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. art. 1.06.

Probable cause is sufficient to support the issuance of a search warrant where the facts contained

in the affidavit and reasonable inferences drawn therefrom justify a conclusion that the object of

the search is probably on the premises at the time the warrant is issued. Cassias v. State, 719

S.W.2d 585, 587 (Tex. Crim. App. 1986); Janecka v. State, 739 S.W.2d 813, 823 (Tex. Crim.

App. 1987); Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992).

3.    CONFIDENTIAL INFORMANT AND HEARSAY

Probable cause may be based on information provided by a confidential informant and

based on hearsay.  However, the veracity and basis of knowledge of persons supplying hearsay

information are relevant considerations in determining whether probable cause exists. Barraza v.

State, 900 S.W.2d 840, 842 (Tex. App.—Corpus Christi 1995).  An unnamed informant's

reliability may be established by the affiant's general assertions stated in the affidavit concerning

the informant's prior reliability. Cerda, 846 S.W.2d at 534. Id. at 223.  Furthermore, an affiant

may rely on hearsay as long as a substantial basis for crediting the hearsay is presented. Gates,

462 U.S. at 241-42; Green v. State, 736 S.W.2d 218, 219 (Tex. App.—Corpus Christi 1987, no

pet.).  Thus, an informant's tip should be corroborated through the independent investigation of

the police or through other sources of information. Gates, 462 U.S. at 241-42; Green, 736

S.W.2d at 219.  In Barraza v. State, 900 S.W.2d 840, 842 (Tex. App. – Corpus Christi 1999), the

Court of Appeals held that the evidence should be suppressed where, in respect to the reliability

---

[1]These facts must be set forth in a sworn affidavit.  Tex. Code Crim. Proc. art. 18.01.
The affidavit must recite facts and circumstances within the affiant's knowledge and belief of
which the affiant has reasonably trustworthy information sufficient to warrant a reasonably
cautious person's belief that the offense has been committed.  Illinois v. Gates, 462 U.S. 213,
238-39 (1983) (overruled on other grounds); Wynn v. State, 996 S.W.2d 324, 324 (Tex. App. –
Ft. Worth 1999).  A mere conclusory statement will not do. Gates, 462 U.S. at 239.

1042

of the informant, the affiant simply stated that he was told by a law enforcement officer that he "had been contacted by a reliable and credible confidential informant." 900 S.W.2d at 842. The court held that this mere conclusory statement as to the reliability of the informant is insufficient because there is nothing in the affidavit to show that the informant had previously given information which turned out to be reliable. Id.

4.  FALSE STATEMENT

A search warrant must not contain false information. In Franks v. Delaware, 438 U.S. 154, 667 (1978), the Supreme Court held that when a defendant makes a substantial preliminary showing that a false statement, made knowingly, intentionally, or with reckless disregard for the truth, is included in the search warrant affidavit and that the false statement was necessary to the finding of probable cause, the Fourth Amendment requires a hearing at the defendant's request. Franks, 438 U.S. at 155-56; Hinojosa v. State, 4 S.W.3d 240, 246-49 (Tex. Crim. App. 1999). Under Franks, to be entitled to an evidentiary hearing on the allegations concerning the veracity of the affidavit, the defendant must (1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false;[2] (2) accompany these allegations with an offer of proof stating the supporting reasons;[3] and (3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant. Franks, 438 U.S. at 171-72.

---

[2] Allegations of negligence or innocent mistakes are insufficient, and the allegations must be more than conclusory.

[3] Affidavits or otherwise reliable statements of witnesses should be furnished. If not, the absence of written support of the allegations must be satisfactorily explained.

4

5.  LANGUAGE OF WARRANT

Not only must the search warrant affidavit establish probable cause, it must also

particularly describe the place to be searched.  The test for ascertaining the adequacy of a search

warrant's description of the place to be searched is whether the place described is sufficient to

inform officers of the place where they are to conduct the search.  Haynes v. State, 475 S.W.2d

739, 740 (Tex. Crim. App. 1971); Mansell v. State, 756 S.W.2d 95, 98 (Tex. App.—San Antonio

1988, pet. ref'd).

The warrant very clearly specifies the property to be seized, and the warrant provides that

those specific items to be seized must be "…associated with the murder of Sarah Ann Walker in

McKinney, Texas."  For example, the warrant does not broadly authorize the seizure of any and

all knives and jewelry to be found in the suspected place; rather, the warrant authorizes law

enforcement to take only those knives and jewelry "associated with the murder of Sarah Ann

Walker."

The warrant's language requires the executing officer to know that the seized property is

"associated with the murder of Sarah Ann Walker" before it may be seized.  The warrant does

not authorize the removal of the listed items if they are merely present in the suspected place, nor

does it permit the seizure of items that may be related to the alleged murder.  On the contrary, the

warrant requires more:  seizure of the listed items may only occur if the items are "associated

with the murder of Sarah Ann Walker."  Therefore, prior to seizing any property pursuant to the

warrant, the law enforcement officers would have had to know that the property was in truth and

in fact "associated with the murder of Sarah Ann Walker."  Unless the individual officers seizing

the items described in the warrant knew at the time of the seizure that the items were in truth and

5

in fact "associated with the murder of Sarah Ann Walker" then the seized property should be suppressed because the seizing officers acted outside the scope and authority of the warrant.

The 4th Amendment to the United States Constitution has as its basic purpose the intention of safeguarding the privacy and security of individuals against arbitrary invasion of governmental officials. Berger v. New York, 388 U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The specificity requirement for search warrants prohibits general searches and seeks to prevent the vesting of complete discretion in the officer executing the warrant. Berger v. New York at 55-56, 87 S.Ct. 1873. Article I Section 9 of the Texas Constitution also prohibits general, vague warrants. As stated by the Court in Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):

> "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

The warrant at issue here is unambiguously clear: the items listed in the warrant may only be seized if, and only if, they are "associated with the murder of Sarah Anne Walker."

6. THE WARRANT DOES **NOT** AUTHORIZE SEIZURE OF THE VEHICLE

According to the plain language of the warrant, the seizing officers were not authorized to seize the entire vehicle. Rather, the warrant only permitted the officers to enter the vehicle and to then search and seize the particularly described items. Law enforcement officers exceeded the warrant's grant of authority, and actually took possession and control of the vehicle and removed it from its location and transported it to a police facility to search, disassemble, and process it.

6

According to the return, law enforcement seized items and parts of the vehicle not authorized by the warrant. In particular, the following items were seized by law enforcement officers even though the warrant did not give authority to do so: driver seat; right front passenger seat; driver floor mat; right front floor mat; back left floor mat; carpet; center console; shifter boot; shifter knob; left front door panel; right front seat belt lock (cut out due to bolt being stripped); driver side seat belt lock; shoulder & lap belt seat belt (left front); shoulder strap & lap belt (right front); rear view mirror; gas pedal; brake pedal; clutch pedal; driver side sun visor; towel from bag in back right floor board; towel from bag in back right floor board.

These items were seized even though the warrant did not allow it. The Defendant objects that the seizure of these items exceeded the grant of authority in the warrant and was therefore an illegal and unconstitutional taking; an illegal search and seizure prohibited by the 4th Amendment to the U.S. Constitution, and was a denial of the Defendant's due process and equal protection rights as guaranteed by the U.S. Constitution and the Texas Constitution.

6.   IN THE ALTERNATIVE, THE WARRANT IS VAGUE, AMBIGUOUS AND OVER BROAD

Not only must the search warrant affidavit establish probable cause, but it must also particularly describe the place to be searched. The test for ascertaining the adequacy of a search warrant's description of the place to be searched is whether the place described is sufficient to inform officers of the place where they are to conduct the search. Haynes v. State, 475 S.W.2d 739, 740 (Tex. Crim. App. 1971); Mansell v. State, 756 S.W.2d 95, 98 (Tex. App.—San Antonio 1988, pet. ref'd).

The 4th Amendment to the United States Constitution has as its basic purpose the intention of safeguarding the privacy and security of individuals against arbitrary invasion of

1C 49

governmental officials. Berger v. New York, 388 U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040

(1967). The specificity requirement for search warrants prohibits general searches and seeks to

prevent the vesting of complete discretion in the officer executing the warrant. Berger v. New

York at 55-56, 87 S.Ct. 1873. Article I Section 9 of the Texas Constitution also prohibits

general, vague warrants. As stated by the Court in Marron v. United States, 275 U.S. 192, 196,

48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):

> "The requirement that warrants shall particularly describe the things to be
> seized makes general searches under them impossible and prevents the
> seizure of one thing under a warrant describing another. As to what is to be
> taken, nothing is left to the discretion of the officer executing the warrant."

The warrant at issue here is unconstitutionally vague and authorized a general,

exploratory search which is prohibited by the United States Constitution and the Texas

Constitution. Walthall v. State, 594 S.W.2d 74 (Tex.Crim.App. 1980); see also Stanford v.

Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) (general exploratory searches are

illegal). Here, the Defendant objects that the warrant was not specific enough in defining the

items to be seized, and therefore vested the executing officer with too much discretion in

executing the warrant.

Furthermore, the warrant authorizes the seizure of "ledgers . . . journals . . . written

documents . . . computers and other electronic data storage and transmission devices." The

Defendant objects that such language in the warrant calls for seizure of his personal writings in

violation of Article 18.02 of the Texas Code of Criminal Procedure and the First, Fourth, and

Fifth Amendments to the United States Constitution. In Warden v. Hayden, 387 U.S. 294, 301,

87 S.Ct. 1642. 18 L.Ed. 782 (1967), the United States Supreme Court found that the Fourth

Amendment did not support a distinction between a warrant for "mere evidence" of a crime and

8

a warrant for the "instrumentalities or fruits of a crime." The Texas Legislature, in 1977, added a "mere evidence" provision to Art. 18.02 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. Art. 18.02(10) (Vernon Supp. 2006). The personal writings exception was included to protect persons from searches designed to discovery written evidence by which a person might incriminate himself. See Reeves v. State, 969 S.W.2d 471, 483 (Tex.App.-Waco 1988, pet. ref'd), cert denied, 526 U.S. 1068, 119 S.Ct. 1462, 143 L.Ed.2d 547 (1999). Although Art. 18.02(10) authorizes a search for mere evidence of a crime, personal writings of the accused are specifically disallowed. Id. "Personal writings" refers to writings such as diaries, memos, and journals, that were not intended by the writer to be published to third parties. Id. at 486.

The Defendant therefore moves to suppress any and all writings ledgers, journals, and written documents seized by law enforcement pursuant to the warrant. If any Art. 18.02(10) writings are found in the computers and other electronic data storage and transmission devices seized by law enforcement pursuant to the warrant, the Defendant moves to suppress those for the foregoing reasons.

7.   FOUR CORNERS OF AFFIDAVIT

In judging the adequacy of a search warrant affidavit, this court must look within the "four corners" of the affidavit because that is what the magistrate had before it when the warrant issued. Cassias, 719 S.W.2d at 587-88; Cerda v. State, 846 S.W.2d 533, 534 (Tex. App.— Corpus Christi 1993, no pet.). The magistrate, not the officer, is responsible for determining whether probable cause exists. Tex. Code Crim. Proc. art. 18.01.

9

8.    STANDARD OF REVIEW

In evaluating whether probable cause exists for the issuance of a warrant, this court must assess the totality of the circumstances. Gates, 462 U.S. at 238-39; Wynn, 996 S.W.2d at 326-27. Furthermore, this court must review the determination of probable cause de novo. Ornelas v. United States, 517 U.S. 690, 696-97 (1996); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Based on the foregoing, the evidence obtained as a result of the search warrants must be suppressed under exclusionary rule articulated in Mapp v. Ohio, 367 U.S. 643, 660 (1961), and its progeny, and Article 38.23 of the Texas Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this motion be granted and for any other relief to which he is entitled.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of June, 2007.

Steven R. Miears

1000

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER ON THE DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE

BE IT REMEMBERED, that on the _____ day of _____,

2007, came to be considered the above Motion to Suppress. After consideration of the motion, it

is the opinion of the court that defendant's motion be:

GRANTED _____

DENIED _____, to which the Defendant excepts.


_____

JUDGE PRESIDING

12

1051

## SEARCH AND ARREST WARRANT

W219- 09052006 -2

THE STATE OF TEXAS      §

COUNTY OF COLLIN      §

THE STATE OF TEXAS, to the Sheriff or any Peace Officer of Collin County, Texas, or any Peace Officer of the State of Texas, GREETINGS:

WHEREAS the Affiant whose signature is affixed to the attached Affidavit is a Peace Officer under the laws of the State of Texas, and did heretofore this day subscribe and swear to said Affidavit before me (which Affidavit is incorporated into and made a part of this Search Warrant for all purposes), and whereas I find that the verified facts stated by Affiant in said Affidavit demonstrate that Affiant has probable cause for the belief she expresses therein, and has established the existence of proper grounds for the issuance of this Search Warrant: now, therefore,

YOU ARE COMMANDED to enter the suspected place and premises described as a white 1993 Ford Mustang coupe bearing Texas License Z80 YBJ; VIN# 1FACP41E3PF144018, parked at Gates de Provence Apartments located at 3613 Frankford Road, Dallas, Denton County, Texas, and to there search for and seize the following items of property: knives, jewelry, ledgers, journals, photographs, recording devices, pawn tickets, medical bills and documents, written documents, bank records, ATM transaction records, gas station receipts, cellular phone bills and statements, computers and other electronic data storage and transmission devices, clothing, body fluids, and body hair associated with the murder of Sarah Anne Walker in McKinney, Texas.

YOU ARE FURTHER ORDERED, pursuant to the provisions of Texas Code of Criminal Procedure Article 18.10, to return to Collin County with any property seized pursuant to this Search Warrant and to retain custody of it until further order of this court or any other court of appropriate jurisdiction shall otherwise direct the manner of safekeeping said property. This court grants you leave and authority to subsequently remove any such seized property from Collin County if such removal is expressly authorized by the provisions of Texas Code of Criminal Procedure Article 18.10.

YOU ARE FURTHER ORDERED, pursuant to Texas Code of Criminal Procedures Article 18.10 and as soon as you are reasonably able to do so, to file a Return and Inventory of all property taken into your possession under this Search Warrant subsequent to your execution thereof.



**EXHIBIT**

**A**

1052

P 00180

HEREIN FAIL NOT, but execute this Search Warrant within three days, exclusive of the day of its issuance, and exclusive of the day of its execution, and return it forthwith to me with your Return and Inventory thereon, showing how you have executed same.

ISSUED at _10:40_ o'clock _P_.m. on this the _5_ day of _Sept_, 200_6_, to certify which witness my hand this day.

_219th Judicial District Court_

MAGISTRATE
COLLIN COUNTY, TEXAS

WZ19- 09052006-2

| AFFIDAVIT FOR SEARCH WARRANT |

THE STATE OF TEXAS    }
        COLLIN
COUNTY OF ~~DENTON~~    }

THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF TEXAS AND BEING DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS AND ACCUSATIONS:

1.  THERE IS IN DENTON COUNTY, TEXAS A SUSPECTED PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS:

    A white 1993 Ford Mustang coupe bearing Texas License Z80 YBJ; VIN# 1FACP41E3PF144018 parked at Gates de Provence Apartments located at 3613 Frankford Road, Dallas, Denton County, Texas.

2.  THERE IS AT SAID SUSPECTED PLACE AND PREMISES PERSONAL PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF TEXAS AND DESCRIBED AS FOLLOWS:

    knives, jewelry, ledgers, journals, photographs, recording devices, pawn tickets, medical bills and documents, written documents, bank records, ATM transaction records, gas station receipts, cellular phone bills and statements, computers and other electronic data storage and transmission devices, clothing, body fluids, and body hair associated with the murder of Sarah Anne Walker in McKinney, Texas.

3.  SAID SUSPECTED PLACE AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS:

    Kosoul Chanthakoummane an Asian male whose date of birth is 10-01-1980, and who is further described as 5'07" in height and who weighs approximately 180 pounds, with black hair and brown eyes.

4.  IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY CHARGES AND ACCUSES THAT ON OR ABOUT JULY 8, 2006, IN COLLIN COUNTY, TEXAS, KOSOUL CHANTHAKOUMMANE DID INTENTIONALLY OR KNOWINGLY KILL SARAH ANNE WALKER BY STABBING HER WITH A KNIFE WHILE IN THE COURSE OF OR ATTEMPTED COURSE OF COMMITTING ROBBERY, IN VIOLATION OF TEXAS PENAL CODE SECTION 19.03.

5.  AFFIANT HAS PROBABLE CAUSE FOR THE STATEMENTS AND BELIEFS SET FORTH ABOVE BY REASON OF THE FOLLOWING FACTS:

1054

5.1 On 07-08-06 at approximately 1:23 p.m., McKinney Police Dispatch received a 911 call from a female who identified herself as Jane Lilliston. Lilliston said she and her husband David Lilliston found a woman inside a DR Horton model town home located at 5700 Conch Train Drive, McKinney, Texas, that the woman's head appeared to be smashed in, and that she was possibly dead. Affiant learned this information July 8, 2006 by reviewing the McKinney Public Safety Incident Dispatch Detail Report.

5.2 McKinney Fire Department Paramedics J. Stinson, J. Hockett and C. Roberts responded to the location described in the preceding numbered paragraph, located the victim, and determined that she was deceased. Affiant learned this information July 8, 2006 by speaking over the phone to paramedic J. Hockett.

5.3 McKinney PD Officers J. Amadee and J. Harrison also responded to the model town home in question, as did on-call McKinney PD Detective J. Taylor. They observed the deceased female to have a large quantity of blood on her head, neck, and clothing, and that she appeared to have suffered multiple stab injuries. Officer Amadee filed McKinney Police Department offense report #06-34122 for Murder. Affiant learned of this information July 8, 2006 by reading Officer Amadee's offense report.

5.4 Detective Taylor contacted Amy Clasen, an employee of DR Horton Homes July 8, 2006. Amy Clasen identified the victim as Sarah Ann Walker and said Walker was a sales representative for DR Horton Homes at the model home in which she was found. Affiant learned this information July 8, 2006 from speaking to Detective Taylor.

5.5 McKinney PD Detectives P. Copin and B. Walterscheid processed the crime scene in question for evidence by photographing and videotaping the scene, dusting for latent fingerprints, and collecting physical evidence. During this process, Detectives Copin and Walterscheid found a substance that appeared to be blood on the entryway window blind pull cords, on the entry door deadbolt locking mechanism, and in several places on the floor between the entry door and where the victim was found. Because these drops appeared to have fallen vertically and without any lateral movement, the detectives surmised that the suspect cut himself during the attack and bled at the crime scene. The detectives collected several articles and pieces of furniture from the model home, as well as the deadbolt lock from the entry door, the pull cords from the entryway blinds, and samples of the flooring containing the substance believed to be blood, and then processed the remainder of the model home for trace evidence using various standard techniques. Detective Copin forwarded the samples containing the suspected blood to Southwest Institute of Forensic Sciences for DNA processing. Affiant learned this information by speaking to Detectives Copin and Walterscheid on July 11, 2006.

1055

5.6 On the evening of July 8, 2006, Sarah Walker's ex-husband Randy Tate called and left a voicemail message for Det. Sergeant Steve Riley. Tate said Sarah showed him a new Rolex watch earlier that morning and she told him she bought it for herself. Your Affiant learned this July 9, 2006 by listening to the voicemail message herself. There was no Rolex watch found on the victim's body at the crime scene as none was logged by crime scene detectives. There was no Rolex watch found as a result of the search warrants your Affiant served on the victim's home or vehicle.

5.7 The victim's body was transported to the Collin County Medical Examiner's Office, where Dr. W. Rohr performed an autopsy on July 9, 2006. McKinney Police Detective Sergeant S. Riley and Texas Ranger Sergeant A.P. Davidson viewed the autopsy. Dr. Rohr determined the manner of death for Sarah Walker was homicide due to multiple sharp force injuries, strangulation, and blunt head injury. Affiant learned this by reviewing Dr. Rohr's autopsy report August 3, 2006.

5.8 During the autopsy what appeared to be a human bite mark was located on the back of the victim's neck. William Schell D.D.S., and Brent Hutson D.D.S. responded to Dr. Rohr's request to examine and process the bite mark on the victim. Drs. Schell and Hutson photographed the bite mark and processed it. Affiant learned this by speaking via phone to Dr. Hutson July 27, 2006 and by reviewing the Forensic Dentistry Consultation Preliminary Report August 3, 2006.

5.9 On July 9, 2006, Witness Mamie Sharpless called the McKinney Police Department and told the call taker, Juan Flores, she and her husband Nelson Villavicencio had been at the Hemingway development approximately 1 hour before Sarah Walker was discovered murdered. Sharpless stated that she saw a white car, possibly a Ford Mustang, in the area. McKinney PD Det. D. Tilton entered this information into the FBI Rapid Start database utilized by McKinney Police CID for information tracking while working major cases. A lead was created and assigned to McKinney PD Detective Marco Robles. Affiant learned this information September 5, 2006 by reading Event DL 17 in that database.

5.10 Det. Robles spoke to Mamie Sharpless, a realtor, and her husband Nelson Villavicencio. Sharpless said on the morning of July 8, 2006, at approximately 0940A and again at 0947A, she received phone calls from a male who identified himself as Chan Lee. He told her he picked up the Keller Williams Red Book from the 7-11 Store and saw her advertisement. He told her that he was a recent graduate of UNCC and had moved to Texas within the past month from Charlotte, North Carolina. He said that he wanted to look at the town home in the Hemingway subdivision. The phone cut off before Sharpless could get further information or set up a time to meet. At approximately 1145A that day,

Sharpless and her husband Villavicencio arrived at the Hemingway subdivision, where they saw a white Ford Mustang pass them and park across the street from the DR Horton model home located at 5700 Conch Train, north of Trolley Trail. Both Sharpless and Villavicencio asked the Asian male in the Mustang if he was Chan Lee. He said he was not. The male had very short hair, was muscular, and wore a blue tank top or tee-shirt. Sharpless looked at the license plate to see if it was a North Carolina plate, but saw that it was a Texas plate. Sharpless and Villavicencio drove to the north end of Conch Train and turned around. When they drove back south on Conch Train the white Mustang was gone. Sharpless and Villavicencio waited inside the town home at 8945 Trolley Trail for a scheduled viewing appointment. Villavicencio was looking out the master bedroom window and could see both Trolley Trail and Conch Train. He saw a black Porsche Boxster park on the east side of Conch Train. A blonde woman got out of the car and walked towards the model home. Villavicencio commented about that to his wife. Sharpless looked at the car and said, "That's Sarah." After Sharpless showed the town home to the prospective buyer who had contacted her for an appointment, Villavicencio looked out the master bedroom window again and saw the white Mustang parked in front of the model home. Sharpless and Villavicencio left the area at approximately 1250P. Affiant learned this information September 5, 2006 by reading Sharpless' and Villavicencio's written statements.

5.11    On July 11, 2006, your Affiant obtained a search warrant for the victim's vehicle. Upon service of the warrant, Affiant located bank documents in the victim's purse. These documents indicated that the victim had made financial transactions during the morning of July 8, 2006, at Bank of America in Frisco. Detective J. Taylor obtained bank video of victim Sarah Walker on the day of her murder. The bank video shows her wearing a light-colored ring with a large stone on her right hand. Det. Taylor relayed this information to your Affiant. No such ring was recovered from the victim's body at the crime scene as none was logged by the crime scene detectives. No such ring was recovered from her home or from her vehicle where your Affiant served search warrants.

5.12    On July 19, 2006 Evangeline Russell spoke to McKinney PD Detective Corporal Darlene Jones about Sarah Walker. Russell worked with Sarah Walker and said that Walker had a personal journal that she wrote in and kept by her bedside. Walker also had a day planner that she kept with her at all times. Your Affiant read this in Evangeline Russell's written statement September 5, 2006. The day planner should have been on her desk by the office phone in the model home according to Evangeline Russell's statement. Neither the journal nor the day planner were located at the model home crime scene or at Sarah Walker's house where Affiant served an evidentiary search warrant July 9, 2006.

5.13    On August 11, 2006, Nelson Villavicencio met with Officer Ray Clark from the Rowlett Police Department. Villavicencio described to Clark the Asian male he

saw at the Hemingway subdivision the day Sarah Walker was murdered. Based on his descriptions, Clark drew a composite sketch of the Asian male. The sketch and information about the white Mustang was released to the media via McKinney Police Department press release dated August 17, 2006. Your Affiant learned of the sketch August 11, 2006 and of the press release August 17, 2006.

5.14 On August 19, 2006, Witness and realtor Barbara Johnson from Carrollton, Texas, called the McKinney Police Department to report she had seen the sketch described in the preceding numbered paragraph in the newspaper and she had some information regarding a suspicious circumstance that occurred at her home on July 7, 2006. Det. D. Tilton spoke to her via phone and entered her information into the Rapid Start database for follow up. Your Affiant learned of this September 2, 2006 by reading the database leads.

5.15 On August 30, 2006, Det. P. Copin received information from Stacy McDonald at Southwest Institute of Forensic Science that a male DNA full profile sample from the model home crime scene matched a DNA profile already in the national Combined DNA Index System (CODIS). McDonald said the sample in CODIS was from a known convicted felon and had been entered in CODIS in North Carolina.

5.16 On September 1, 2006, Detective P. Copin received information from Chris Parker from the North Carolina State Bureau of Criminal Investigation Forensic Biology Section CODIS lab, that the DNA profile from North Carolina belonged to an offender whose last known address was Carrollton, Texas. Det. Copin said that because of the federal Labor Day holiday, the name of the offender would not be released to McKinney detectives until Tuesday, September 05, 2006. Detectives, including your Affiant, working the investigation began searching existing leads for males with connections to either North Carolina or Carrollton, Texas.

5.17 On September 2, 2006, Allen Police Department Det. Sgt. Annie Wigzell worked the August 19, 2006, lead in which Barbara Johnson said she called Carrollton Police about the Asian male at her door (see paragraph 14. above). Sgt. Wigzell requested from Carrollton Police a fax of the incident report at Johnson's house and received the same. In the faxed document was the name of the Asian man who knocked at Johnson's door. Sgt. Wigzell ran this subject's name, Kosoul Chanthakoummane, through the FBI's National Crime Information Computer and located a criminal history out of North Carolina showing 1998 convictions for Robbery and Kidnapping. Sgt. Wigzell met with and relayed this information to Det. D. Tilton and your Affiant on Saturday September 2, 2006. Affiant noticed that the Carrollton Police Department's incident report stated the white vehicle in Johnson's driveway had Texas License 080 JBJ.

5.18 On September 2, 2006, your Affiant called North Carolina Department of Corrections and spoke to Officer J. Crawford. Officer Crawford informed your Affiant that Kosoul Chanthakoummane had been paroled to 1220 Indian Run Dr. #718, Carrollton, Texas on February 19, 2006.

5.19 On September 4, 2006, Det. D. Tilton called Barbara Johnson for additional information. Johnson emailed a statement, which your Affiant read, to Det. Tilton. In her statement Johnson said that on July 7, 2006, at approximately 930P an Asian man knocked on her door and said his car was broken down in her driveway in the back. She offered the use of her phone. When she returned to the front door with the phone the Asian man was no longer there but was at her fence. Johnson handed the phone over the fence and he made a call. He handed the phone back and asked for a bottle of water. He then started opening the back gate but she told him not to because it was broken. She brought him some water and she went back inside her house. The Asian man knocked on her front door again and asked for the phone. Johnson closed and locked the door before getting the phone. She brought the phone to the front door but the Asian man was not there. She said she was not going to the back door again because she had no porch light there. A short time later Johnson heard him knocking on her back glass door even though she had told him not to open the gate because it was broken. Johnson called 911 and the Carrollton Police responded.

5.20 Later in the day on September 4, 2006, Det. Tilton left a voicemail message for Barbara Johnson asking her to retrieve the phone number the Asian male called from her phone. Johnson returned Det. Tilton's call and they spoke about the Asian male. Johnson said he was driving a white Mustang when he was at her house. Johnson asked Det. Tilton several questions regarding the Asian male but she could only tell her his name was Chin or Chang Lee and his address was on Indian Run in Carrollton, Texas. Because Johnson is a realtor who works with people to find them apartments she thought maybe she had leased him an apartment. After hanging up with Det. Tilton, Johnson went to her office and found from her records that she had leased an apartment to Kosoul Chanphakoummane at Gates de Provence Apartments #233 at 3613 Frankford Road in Dallas, Texas. Johnson did not recognize him when he was at her house but she was shook up over the incident. Johnson emailed this information in a statement to Det. Tilton, which your Affiant subsequently read.

5.22 On September 4, 2006, Detectives D. Tilton and T. Morrison went to Gates de Provence to look for a white Mustang. Detectives located a white Mustang parked on the property. The Mustang had Texas License Z80 YBY. They checked Texas Motor Vehicle records, which indicated the owner of the vehicle to be Kosoul Chanthakoummane at 1220 Indian Run #718, Carrollton, Texas. Det. Morrison relayed this information to your Affiant.

5.23  On September 5, 2006 Detective Sergeant Joe Ellenburg conducted surveillance at the Gates de Provence Apartments. Sgt. Ellenburg saw a white Ford Mustang with Texas license plate Z80 YBY parked in the apartment parking lot. Sgt. Ellenburg saw a subject he recognized as Kosoul Chathakoummane use a key to enter apartment #233. Sgt. Ellenburg recognized this subject because he had seen his Texas Driver License photograph. Your Affiant learned this from speaking to Sgt. Ellenburg.

5.24  Affiant has been a police officer for 17 years and a detective for 4 years. Affiant has participated in the investigations of numerous criminal offenses including murders. Based on Affiant's experience and training, Affiant knows that evidence linking a suspect to a victim is often located close to a suspect, frequently in a suspect's residence or vehicles. Murder suspects are known to sometimes take souvenirs from their victims and to keep records or notes about the offenses they have committed. Therefore, Affiant has reason to believe clues and/or evidence linking Kosoul Chanthakoummane to the murder of Sarah Walker will be found at his residence, inside his vehicle, and on his person.

On September 5, 2006 Stacy McDonald from SWIFS called Det. Tilton and it told her the DNA match from North Carolina was from Kosoul Chanthakoummane.

K Hudson
_____
AFFIANT

Subscribed and sworn to before me by said Affiant on the 5 day of Sept 2006.

_____
MAGISTRATE

219th Judicial District Court
Collin Co. TX

W 219-0905 2006-2

## RETURN AND INVENTORY

STATE OF TEXAS

COUNTY OF COLLIN

THE UNDERSIGNED AFFIDAVIT, being a Peace Officer under the Laws of the State of Texas and being duly sworn on oath, certifies that the foregoing Warrant came to hand on the day it was issued and that it was executed on the _8th_ day of _September_, 2006, by making the search directed therein and seizing during such search the following described property:

_See attached list_

_K. Hudson_
**Affiant**

SUBSCRIBED AND SWORN to before me, the undersigned authority, on this the _8th_ day of _September_, 2006.

DAVID A. WALDSCHMIDT
Notary Public
STATE OF TEXAS
My Comm. Exp. 03/11/2007

Notary Public in and for the
State of Texas

1061



EXHIBIT
**B**

P 00189

W219 - 09052006-2

1993 Ford Mustang Texas License Plate # Z80 YBJ VIN # 1FACP41E3PF144018
09/08/2006-09/09/2006
P Copin #22/ Brent Walterscheid #82

Inventory items removed from car

1)  Driver seat
2)  Right front passenger seat
3)  Driver floor mat
4)  Right front floor mat
5)  Back right floor mat
6)  Back left floor mat
7)  Carpet
8)  Center console
9)  Shifter boot
10)  Shifter knob
11)  Left front door panel
12)  Right front door panel
13)  Right front seat belt lock (cut out due to bolt being stripped)
14)  Driver side seat belt lock
15)  Shoulder & lap belt seat belt (left front)
16)  Shoulder strap & lap belt (right front)
17)  Rear view mirror
18)  Gas pedal
19)  Brake pedal
20)  Clutch pedal
21)  Driver side sun visor
22)  Plastic bag containing documents & receipts from glove box
23)  Towel from bag in back right floor board
24)  Towel from bag in back right floor board
25)  One hair sample from back right floor mat
26)  4 swabs from steering wheel
27)  1 swab from outside driver door

1002

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## **MOTION TO SUPPRESS EVIDENCE**
## **OBTAINED PURSUANT TO WARRANT NO. W219-09202006-1**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-entitled

and numbered criminal action, by and through counsel, and moves to suppress certain items of

physical evidence and any statements he allegedly made to law enforcement. In support, the

Defendant will show the following.

### Background

The Defendant has been indicted by the Collin County Grand Jury for capital murder.

The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree

of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v.

Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North

Carolina, 428 U.S. 280, 305 (1976).

### Facts

On September 20, 2006, Presiding Judge Curt Henderson of the 219th District Court,

Collin County, Texas, signed warrant number W219-09202006-1 (hereafter "warrant"), a copy

of which is attached hereto as Exhibit "A" and incorporated herein by reference. The warrant

allowed for the search and seizure of Defendant's property as follows: "... a Dell CPU Serial #

5GV8521, and a laptop hard drive serial # G23191S, for the purpose of conducting a search of

1

the electronic memory contained within said items for the following categories of information: a.) electronic communications, including e-mail messages and the text of instant message communications; b.) lists of personal and business contacts, along with their associated physical and e-mail address, and telephone numbers; c.) personal calendars, schedules, and associated notes; d.) other information and/or data, including photographs and other visual images." The Dell CPU Serial # 5GV8521 will be referred to herein as "Dell", and the laptop hard drive serial # G23191S will be referred to herein as "laptop."

According to the "Return and Inventory" (hereafter "return") prepared by Diana Tilton, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference, the warrant was executed September 21, 2006. The return shows that the following items were seized pursuant to the warrant: Dell CPU Serial # 5GV8521; laptop hard drive Serial # G23191S."

According to the warrant and the affidavit in support thereof, the Dell and laptop to be seized pursuant to the warrant were located "in the Property and Evidence Section of the McKinney Police Department, 2200 Taylor-Burk Drive, City of McKinney, Collin County, Texas." In other words, the police already had the Dell and laptop in their custody when they sought the warrant at issue herein to conduct testing on the Dell and laptop.

According to paragraph 5.24 of the affidavit in support of the warrant, the police seized the Dell and laptop while executing a separate warrant at the Defendant's home. The warrant relied upon by law enforcement to seize the Dell and laptop is warrant number W219-09052006-1. A copy of warrant number W219-09052006-1 is attached hereto as Exhibit "C" and incorporated herein by reference.

1034

The Defendant has separately moved the Court to suppress the fruits of the search authorized by warrant number W219-09052006-1. Should the Court grant that request, the Defendant moves the Court to suppress the fruits of the search pursuant to the warrant herein authorizing a search and testing of the Dell and laptop as fruits of the poisonous tree. The Defendant further moves the Court to suppress illegally seized evidence as set out herein.

Analysis

1.   SEARCH AND SEIZURE WITHOUT A WARRANT

Law enforcement officers must have a search warrant, based on probable cause, issued by a neutral and detached magistrate to seize a person's property or search that person. U.S. Const. amend. IV and XIV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. art. 1.04 and 1.06. If a law enforcement officer searches a person or seizes his property without a warrant, unless there is a valid exception to the warrant requirement, he violates the dictates of the United States and Texas Constitutions as well as the Texas Code of Criminal Procedure, and, thus, the evidence obtained as a result must be suppressed. Mapp v. Ohio, 367 U.S. 643, 660 (1961); Tex. Code of Crim. Proc. art. 38.23. The Defendant was searched and his property was seized without a valid warrant. Therefore, the evidence obtained from the warrant must be suppressed.

2.   SEARCH AND SEIZURE WITH A WARRANT

The Defendant's Dell and laptop were searched and seized pursuant to a warrant. No search warrant shall issue unless sufficient facts are presented to a neutral magistrate establishing probable cause.[1] U.S. Const. amend IV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. art. 1.06.

---

[1]These facts must be set forth in a sworn affidavit. Tex. Code Crim. Proc. art. 18.01. The affidavit must recite facts and circumstances within the affiant's knowledge and belief of which the affiant has reasonably trustworthy information sufficient to warrant a reasonably cautious person's belief that the offense has been committed. Illinois v. Gates, 462 U.S. 213,

3

Probable cause is sufficient to support the issuance of a search warrant where the facts contained in the affidavit and reasonable inferences drawn therefrom justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); Janecka v. State, 739 S.W.2d 813, 823 (Tex. Crim. App. 1987); Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992).

3.    CONFIDENTIAL INFORMANT AND HEARSAY

Probable cause may be based on information provided by a confidential informant and based on hearsay. However, the veracity and basis of knowledge of persons supplying hearsay information are relevant considerations in determining whether probable cause exists. Barraza v. State, 900 S.W.2d 840, 842 (Tex. App.—Corpus Christi 1995). An unnamed informant's reliability may be established by the affiant's general assertions stated in the affidavit concerning the informant's prior reliability. Cerda, 846 S.W.2d at 534. Id. at 223. Furthermore, an affiant may rely on hearsay as long as a substantial basis for crediting the hearsay is presented. Gates, 462 U.S. at 241-42; Green v. State, 736 S.W.2d 218, 219 (Tex. App.—Corpus Christi 1987, no pet.). Thus, an informant's tip should be corroborated through the independent investigation of the police or through other sources of information. Gates, 462 U.S. at 241-42; Green, 736 S.W.2d at 219. In Barraza v. State, 900 S.W.2d 840, 842 (Tex. App. – Corpus Christi 1999), the Court of Appeals held that the evidence should be suppressed where, in respect to the reliability of the informant, the affiant simply stated that he was told by a law enforcement officer that he "had been contacted by a reliable and credible confidential informant." 900 S.W.2d at 842. The court held that this mere conclusory statement as to the reliability of the informant is insufficient

---

238-39 (1983) (overruled on other grounds); Wynn v. State, 996 S.W.2d 324, 324 (Tex. App. – Ft. Worth 1999). A mere conclusory statement will not do. Gates, 462 U.S. at 239.

1088

because there is nothing in the affidavit to show that the informant had previously given information which turned out to be reliable. Id.

4. DESCRIPTION

Not only must the search warrant affidavit establish probable cause, but it must also particularly describe the place to be searched. The test for ascertaining the adequacy of a search warrant's description of the place to be searched is whether the place described is sufficient to inform officers of the place where they are to conduct the search. Haynes v. State, 475 S.W.2d 739, 740 (Tex. Crim. App. 1971); Mansell v. State, 756 S.W.2d 95, 98 (Tex. App.—San Antonio 1988, pet. ref'd).

Here, the warrant is vague, ambiguous and overbroad in its description of the tests and/or analysis to be performed on the Dell and laptop. Specifically, the warrant allows for a search of the electronic memory contained within said items for the following categories of information: a.) electronic communications, including e-mail messages and the text of instant message communications; b.) lists of personal and business contacts, along with their associated physical and e-mail address, and telephone numbers; c.) personal calendars, schedules, and associated notes; d.) other information and/or data, including photographs and other visual images."

The Defendant objects that this language does not inform an officer what he is to search and seize; it allows for a general, broad sweeping search. The search is not limited in scope, for example, the warrant does not say to seize only the listed information that relates to the alleged murder of Sarah Anne Walker. Instead, the officers conducting the search and seizure are given unfettered discretion in doing whatever they please with the Dell computer and laptop.

5

Furthermore, the warrant authorizes the seizure of "e-mails, personal calendars, schedules, and associated notes; and other information and/or data..." The Defendant objects that this language is vague, ambiguous, and over broad. The Defendant also objects that such language in the warrant calls for seizure of his personal writings in violation of Article 18.02 of the Texas Code of Criminal Procedure and the First, Fourth, and Fifth Amendments to the United States Constitution.

In Warden v. Hayden, 387 U.S. 294, 301, 87 S.Ct. 1642. 18 L.Ed. 782 (1967), the United States Supreme Court found that the Fourth Amendment did not support a distinction between a warrant for "mere evidence" of a crime and a warrant for the "instrumentalities or fruits of a crime." The Texas Legislature, in 1977, added a "mere evidence" provision to Art. 18.02 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. Art. 18.02(10) (Vernon Supp. 2006). The personal writings exception was included to protect persons from searches designed to discovery written evidence by which a person might incriminate himself. See Reeves v. State, 969 S.W.2d 471, 483 (Tex.App.-Waco 1988, pet. ref'd), cert denied, 526 U.S. 1068, 119 S.Ct. 1462, 143 L.Ed.2d 547 (1999). Although Art. 18.02(10) authorizes a search for mere evidence of a crime, personal writings of the accused are specifically disallowed. *Id.* "Personal writings" refers to writings such as diaries, memos, and journals that were not intended by the writer to be published to third parties. *Id.* at 486. The Defendant moves the Court to suppress any and all Article 18.02(10) writings found in the computers and other electronic data storage and transmission devices seized by law enforcement pursuant to the warrant.

The 4th Amendment to the United States Constitution has as its basic purpose the intention of safeguarding the privacy and security of individuals against arbitrary invasion of

1003

governmental officials. <u>Berger v. New York</u>, 388 U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040

(1967). The specificity requirement for search warrants prohibits general searches and seeks to

prevent the vesting of complete discretion in the officer executing the warrant. <u>Berger v. New

York</u> at 55-56, 87 S.Ct. 1873. Article I Section 9 of the Texas Constitution also prohibits

general, vague warrants. As stated by the Court in Marron v. United States, 275 U.S. 192, 196,

48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):

> "The requirement that warrants shall particularly describe the things to be
> seized makes general searches under them impossible and prevents the
> seizure of one thing under a warrant describing another. As to what is to be
> taken, nothing is left to the discretion of the officer executing the warrant."

The warrant at issue here is unconstitutionally vague and authorized a general,

exploratory search prohibited by the United States Constitution and the Texas Constitution.

<u>Walthall v. State</u>, 594 S.W.2d 74 (Tex.Crim.App. 1980); see also <u>Stanford v. Texas</u>, 379 U.S.

476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) (general exploratory searches are illegal).

5.   <u>FOUR CORNERS OF AFFIDAVIT</u>

In judging the adequacy of a search warrant affidavit, this court must look within the

"four corners" of the affidavit because that is what the magistrate had before it when the warrant

issued. <u>Cassias</u>, 719 S.W.2d at 587-88; <u>Cerda v. State</u>, 846 S.W.2d 533, 534 (Tex. App.—

Corpus Christi 1993, no pet.). The magistrate, not the officer, is responsible for determining

whether probable cause exists. Tex. Code Crim. Proc. art. 18.01.

6.   <u>STANDARD OF REVIEW</u>

In evaluating whether probable cause exists for the issuance of a warrant, this court must

assess the totality of the circumstances. <u>Gates</u>, 462 U.S. at 238-39; <u>Wynn</u>, 996 S.W.2d at 326-

27. Furthermore, this court must review the determination of probable cause <u>de novo</u>. <u>Ornelas</u>

1069

v. United States, 517 U.S. 690, 696-97 (1996); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Based on the foregoing, the evidence obtained as a result of the search warrants must be suppressed under exclusionary rule articulated in Mapp v. Ohio, 367 U.S. 643, 660 (1961), and its progeny, and Article 38.23 of the Texas Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this motion be granted and for any other relief to which he is entitled.

Respectfully submitted,

_____

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of June, 2007.

_____

Steven R. Miears

8

1070

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER ON THE DEFENDANT'S MOTION TO
## SUPPRESS EVIDENCE AND STATEMENTS

BE IT REMEMBERED, that on the _____ day of _____,

2007, came to be considered the above Motion to Suppress. After consideration of the motion, it

is the opinion of the court that defendant's motion be:

GRANTED _____

DENIED _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

9

WARRANT # W219- 09202006 - 1

THE STATE OF TEXAS

COUNTY OF COLLIN

THE STATE OF TEXAS, to the Sheriff or any Peace Officer of Collin County, Texas, or any Peace Officer of the State of Texas, GREETINGS:

WHEREAS the Affiant whose signature is affixed to the attached Affidavit is a Peace Officer under the laws of the State of Texas, and did heretofore this day subscribe and swear to said Affidavit before me (which Affidavit is incorporated into and made a part of this Search Warrant for all purposes), and whereas I find that the verified facts stated by Affiant in said Affidavit demonstrate that Affiant has probable cause for the belief she expresses therein, and has established the existence of proper grounds for the issuance of this Search Warrant: now, therefore,

YOU ARE COMMANDED to enter the suspected place and premises described as Property and Evidence Section of the McKinney Police Department, 2200 Taylor-Burk Drive, City of McKinney, Collin County, Texas, in order to locate and seize a Dell CPU Serial # 5GV8521, and a laptop hard drive serial # G23191S, for the purpose of conducting a search of the electronic memory contained within said items for the following categories of information: a.) electronic communications, including e-mail messages and the text of instant message communications; b.) lists of personal and business contacts, along with their associated physical and e-mail addresses, and telephone numbers; c.) personal calendars, schedules, and associated notes; d.) other information and/or data, including photographs and other visual images.

YOU ARE FURTHER ORDERED, pursuant to the provisions of Texas Code of Criminal Procedure Article 18.10, to return to Collin County with any property seized pursuant to this Search Warrant and to retain custody of it until further order of this court or any other court of appropriate jurisdiction shall otherwise direct the manner of safekeeping said property. This court grants you leave and authority to remove any such seized property from Collin County if such removal is expressly authorized by the provisions of Texas Code of Criminal Procedure Article 18.10.

YOU ARE FURTHER ORDERED, pursuant to Texas Code of Criminal Procedures Article 18.10, and as soon as you are reasonably able to do so, to file a Return and Inventory of all property taken into your possession under this Search Warrant subsequent to your execution thereof.

HEREIN FAIL NOT, but execute this Search Warrant within three days, exclusive of the day of its issuance, and exclusive of the day of its execution, and return it forthwith to me with your Return and Inventory thereon, showing how you have executed same.

ISSUED at 1:50 o'clock P .m. on this the 20 day of September, 2006, to certify which witness my hand this day.

219 rb

MAGISTRATE

COLLIN COUNTY, TEXAS

EXHIBIT

A

1072

WARRANT NO. _446219- 09202006- 1_

| RETURN AND INVENTORY |

STATE OF TEXAS

COUNTY OF COLLIN

THE UNDERSIGNED AFFIANT, being a Peace Officer under the Laws of the State of Texas and being duly sworn on oath, certifies that the foregoing Warrant came to hand on the day it was issued and that it was executed on the _21_ day of _September_, 2006, by making the search directed therein and seizing during such search the following described property:

_Dell CPU Serial # 5GV8521_

_Laptop hard drive Serial # G2319U_

_Diane D. Tipton_
**Affiant**

SUBSCRIBED AND SWORN to before me, the undersigned authority, on this the _21_ day of _September_, 2006.

_Lori G. Harvell_
Notary Public in and for the State of Texas

LORI G. HARVELL
Notary Public
STATE OF TEXAS
My Comm. Exp. 08/03/2010

1673

WARRANT NO. _____ W217- 0920 2006-1

THE STATE OF TEXAS       }

COUNTY OF COLLIN         }

THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF TEXAS AND BEING DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS AND ACCUSATIONS:

1.  THERE IS IN COLLIN COUNTY, TEXAS, A SUSPECTED PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS:

    A Dell CPU Serial # 5GV8521, and a laptop hard drive serial # G23191S, now stored as evidence in the Property and Evidence Section of the McKinney Police Department, 2200 Taylor-Burk Drive, City of McKinney, Collin County, Texas.

2.  THERE IS AT SAID SUSPECTED PLACE AND PREMISES PERSONAL PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF TEXAS AND DESCRIBED AS FOLLOWS:

    a.) electronic communications, including e-mail messages and the text of instant message communications; b.) lists of personal and business contacts, along with their associated physical and e-mail addresses, and telephone numbers; c.) personal calendars, schedules, and associated notes; d.) other information and/or data, including photographs and other visual images.

3.  SAID SUSPECTED PLACE AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS:

    The items described above in Paragraph 2. of this Affidavit, and the Dell CPU and laptop hard drive described above in Paragraph 1. of this Affidavit, are in the custody and control of the McKinney Police Department Property and Evidence Section, 2200 Taylor-Burk Drive, City of McKinney, Collin County, Texas 75071.

4.  IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY CHARGES AND ACCUSES THAT ON OR ABOUT JULY 8, 2006, IN COLLIN COUNTY, TEXAS, KOSOUL CHANTHAKOUMMANE DID INTENTIONALLY OR KNOWINGLY KILL SARAH ANNE WALKER BY STABBING HER WITH A KNIFE WHILE IN THE COURSE OF OR ATTEMPTED COURSE OF COMMITTING ROBBERY, IN VIOLATION OF TEXAS PENAL CODE SECTION 19.03.

5.  AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING:

    Affiant, Diana G. Tilton, is a Texas Peace Officer employed by the City of McKinney Police Department and is currently assigned to the Criminal Investigation Division. Affiant bases her request for this search warrant on the following:

5.1 On July 8, 2006, at approximately 1:23 p.m., McKinney Police Dispatch received a 911 call from a female who identified herself as Jane Lilliston. Lilliston said she and her husband David Lilliston found a woman inside a DR Horton model town home located at 5700 Conch Train Drive, McKinney, Texas, that the woman's head appeared to be smashed in, and that she was possibly dead. Affiant learned this information July 8, 2006, by reviewing the McKinney Public Safety Incident Dispatch Detail Report.

5.2 McKinney Fire Department Paramedics J. Stinson, J. Hockett and C. Roberts responded to the location described in the preceding numbered paragraph, located the victim, and determined that she was deceased. Affiant learned this information July 8, 2006, by speaking to Detective Kathy Hudson, who learned this information in telephone conversations with paramedic J. Hockett. Firefighter/paramedic J. C. Stinson completed McKinney Fire Department Incident report number 01-2006-0003878-000.

5.3 McKinney PD Officers J. Amadee and J. Harrison also responded to the model town home in question, as did on-call McKinney PD Detective J. Taylor. They observed the deceased female to have a large quantity of blood on her head, neck, and clothing, and that she appeared to have suffered multiple stab injuries. Officer Amadee filed McKinney Police Department offense report #06-34122 for Murder. Affiant learned this information July 8, 2006, by reading Officer Amadee's offense report.

5.4 Detective Taylor contacted Amy Clasen, an employee of DR Horton Homes July 8, 2006. Amy Clasen identified the victim as Sarah Ann Walker and said Walker was a sales representative for DR Horton Homes at the model home in which she was found. Affiant learned this information July 8, 2006, from speaking to Detective Taylor.

5.5 McKinney PD Detectives P. Copin and B. Walterscheid processed the crime scene in question for evidence by photographing and videotaping the scene, dusting for latent fingerprints, and collecting physical evidence. During this process, Detectives Copin and Walterscheid found a substance that appeared to be blood on the entryway window blind pull cords, on the entry door deadbolt locking mechanism, and in several places on the floor between the entry door and where the victim was found. Because these drops appeared to have fallen vertically and without any lateral movement, the detectives surmised that the suspect cut himself during the attack and bled at the crime scene. The detectives collected several articles and pieces of furniture from the model home, as well as the deadbolt lock from the entry door, the pull cords from the entryway blinds, and samples of the flooring containing the substance believed to be blood, and then processed the remainder of the model home for trace evidence using various standard techniques. Detective Copin forwarded the samples containing the suspected blood to Southwest Institute of Forensic Sciences for DNA processing. Affiant learned this information by speaking to Detectives Copin and Walterscheid on July 11, 2006.

5.6 On the evening of July 8, 2006, Sarah Walker's ex-husband Randy Tate called and left a voicemail message for Det. Sergeant Steve Riley. Tate said Sarah showed him a new Rolex watch earlier that morning and she told him she bought it for herself. Your Affiant learned this July 9, 2006, by listening to the voicemail message herself. There was no Rolex watch found on the victim's body at the crime scene as none was logged by crime scene detectives. Your Affiant learned this information on July 8, 2006 by speaking to Detective Pete Copin by telephone. There was no Rolex watch found as a result of the

1075

search warrant subsequently served on the victim's home. Your Affiant learned this information on July 8, 2006 by participating in the search of the victim's home. There was no Rolex watch found as a result of the search warrant subsequently served on the victim's car. Your Affiant learned this information on July 14, 2006, by speaking to Detective Kathy Hudson.

5.7 The victim's body was transported to the Collin County Medical Examiner's Office, where Dr. W. Rohr performed an autopsy on July 9, 2006. McKinney Police Detective Sergeant S. Riley and Texas Ranger Sergeant A.P. Davidson viewed the autopsy. Dr. Rohr determined the manner of death for Sarah Walker was homicide due to multiple sharp force injuries, strangulation, and blunt head injury. Your Affiant learned this by reviewing Dr. Rohr's autopsy report August 3, 2006.

5.8 During the autopsy what appeared to be a human bite mark was located on the back of the victim's neck. William Schell D.D.S., and Brent Hutson D.D.S. responded to Dr. Rohr's request to examine and process the bite mark on the victim. Drs. Schell and Hutson photographed the bite mark and processed it. Your Affiant learned this by reviewing the Forensic Dentistry Consultation Preliminary Report August 3, 2006.

5.9 On July 9, 2006, Witness Mamie Sharpless called the McKinney Police Department and told the call taker, Juan Flores, she and her husband Nelson Villavicencio had been at the Hemingway development approximately 1 hour before Sarah Walker was discovered murdered. Sharpless stated that she saw a white car, possibly a Ford Mustang, in the area. Affiant entered this information into the FBI Rapid Start database utilized by McKinney Police CID for information tracking while working major cases. A lead was created and assigned to McKinney PD Detective Marco Robles. Your Affiant learned this information on Sunday July 9, 2006, via an email from Detective Robles.

5.10 Det. Robles spoke to Mamie Sharpless, a realtor, and her husband Nelson Villavicencio. Sharpless said on the morning of July 8, 2006, at approximately 9:40 a.m. and again at 9:47 a.m., she received phone calls from a male who identified himself as Chan Lee. He told her he picked up the Keller Williams Red Book from the 7-11 Store and saw her advertisement. He told her that he was a recent graduate of UNCC and had moved to Texas within the past month from Charlotte, North Carolina. He said that he wanted to look at the town home in the Hemingway subdivision. The phone cut off before Sharpless could get further information or set up a time to meet. At approximately 11:45 a.m. that day, Sharpless and her husband Villavicencio arrived at the Hemingway subdivision, where they saw a white Ford Mustang pass them and park across the street from the DR Horton model home located at 5700 Conch Train, north of Trolley Trail. Both Sharpless and Villavicencio asked the Asian male in the Mustang if he was Chan Lee. He said he was not. The male had very short hair, was muscular, and wore a blue tank top or tee-shirt. Sharpless looked at the license plate to see if it was a North Carolina plate, but saw that it was a Texas plate. Sharpless and Villavicencio drove to the north end of Conch Train and turned around. When they drove back south on Conch Train the white Mustang was gone. Sharpless and Villavicencio waited inside the town home at 8945 Trolley Trail for a scheduled viewing appointment. Villavicencio was looking out the master bedroom window and could see both Trolley Trail and Conch Train. He saw a black Porsche Boxster park on the east side of Conch Train. A blonde woman got out of the car and walked towards the model home. Villavicencio commented about that to his wife. Sharpless looked at the car and said, "That's Sarah."



P 00213

After Sharpless showed the town home to the prospective buyer who had contacted her for an appointment, Villavicencio looked out the master bedroom window again and saw the same white Mustang parked in front of the model home. Sharpless and Villavicencio left the area at approximately 12:50 p.m. Your Affiant learned this information September 5, 2006, by reading Sharpless' and Villavicencio's written statements.

5.11   On July 11, 2006, Detective Kathy Hudson obtained a search warrant for the victim's vehicle. Upon service of the warrant, Detective Hudson located bank documents in the victim's purse. These documents indicated that the victim had made financial transactions during the morning of July 8, 2006, at Bank of America in Frisco. Detective J. Taylor obtained bank video of victim Sarah Walker on the day of her murder. The bank video shows her wearing a light-colored ring with a large stone on her right hand. Det. Taylor relayed this information to your Affiant. No such ring was recovered from the victim's body at the crime scene as none was logged by the crime scene detectives. No such ring was recovered from her home where Detective Hudson served search warrants. Affiant learned this information on July 8, 2006, by participating in the search of the victim's home. There was no such ring found as a result of the search warrant subsequently served on the victim's car. Your Affiant learned this information on July 14, 2006, by speaking to Detective Kathy Hudson.

5.12   On July 19, 2006, Evangeline Russell spoke to McKinney PD Detective Corporal Darlene Jones about Sarah Walker. Russell worked with Sarah Walker and said that Walker had a personal journal that she wrote in and kept by her bedside. Walker also had a day planner that she kept with her at all times. Your Affiant read this in Evangeline Russell's written statement July 21, 2006. The day planner should have been on her desk by the office phone in the model home according to Evangeline Russell's statement. Neither the journal nor the day planner were located at the model home crime scene or at Sarah Walker's house where Detective Hudson served an evidentiary search warrant July 8, 2006. Your Affiant learned this information on July 8, 2006 by speaking to Detective Pete Copin, who was at the model home crime scene and first hand knowledge by participating in the search of the victim's home on July 8, 2006.

5.13   On August 11, 2006, Nelson Villavicencio met with Officer Ray Clark from the Rowlett Police Department. Villavicencio described to Clark the Asian male he saw at the Hemingway subdivision the day Sarah Walker was murdered. Based on his descriptions, Clark drew a composite sketch of the Asian male. The sketch and information about the white Mustang was released to the media via McKinney Police Department press release dated August 17, 2006. Your Affiant learned of the sketch August 11, 2006, and of the press release August 17, 2006.

5.14   On August 19, 2006, Witness and realtor Barbara Johnson from Carrollton, Texas, called the McKinney Police Department to report she had seen the sketch described in the preceding numbered paragraph in the newspaper and she had some information regarding a suspicious circumstance that occurred at her home on July 7, 2006. Your Affiant learned of this when she spoke to her via phone and entered her information into the Rapid Start database for follow up.

5.15   On August 30, 2006, Det. P. Copin received information from Stacy McDonald at Southwest Institute of Forensic Science that a male DNA full profile sample from the model home crime scene matched a DNA profile already in the national Combined DNA

1077

P 00214

Index System (CODIS). McDonald said the sample in CODIS was from a known convicted felon and had been entered in CODIS in North Carolina. Your Affiant learned this on August 30, 2006, by speaking directly to Detective Pete Copin.

5.16 On September 1, 2006, Detective P. Copin received information from Chris Parker from the North Carolina State Bureau of Criminal Investigation Forensic Biology Section CODIS lab, that the DNA profile from North Carolina belonged to an offender whose last known address was Carrollton, Texas. Det. Copin said that because of the federal Labor Day holiday, the name of the offender would not be released to McKinney detectives until Tuesday, September 05, 2006. Detectives, including your Affiant, working the investigation began searching existing leads for males with connections to either North Carolina or Carrollton, Texas. Your Affiant located event number DL 397, in which the caller was from Carrollton Texas and assigned it to Allen Police Department Sgt. Anne Wigzell.

5.17 On September 2, 2006, Allen Police Department Det. Sgt. Annie Wigzell worked the August 19, 2006, lead in which Barbara Johnson said she called Carrollton Police about the Asian male at her door (see paragraph 14. above). Sgt. Wigzell requested from Carrollton Police a fax of the incident report at Johnson's house and received the same. In the faxed document was the name of the Asian man who knocked at Johnson's door. Sgt. Wigzell ran this subject's name, Kosoul Chanthakoummane, through the FBI's National Crime Information Computer and located a criminal history out of North Carolina showing 1998 convictions for Robbery and Kidnapping. Sgt. Wigzell met with and relayed this information to your Affiant on Saturday September 2, 2006. Affiant noticed that the Carrollton Police Department's incident report stated the white vehicle in Johnson's driveway had Texas License Z80 JBJ. Your affiant was aware that motor vehicle registration records showed a 1993 Ford Mustang with Texas License plate number Z80 YBJ was owned by Kosoul Chanthakoummane. Affiant learned this information on September 2, 2006, by speaking to Detective Kathy Hudson.

5.18 On September 2, 2006, Detective Kathy Hudson called North Carolina Department of Corrections and spoke to Officer J. Crawford. Officer Crawford informed her that Kosoul Chanthakoummane had been paroled to 1220 Indian Run Dr. #718, Carrollton, Texas on February 19, 2006. Affiant learned this information on September 2, 2006, by speaking to Detective Kathy Hudson.

5.19 On September 4, 2006, your Affiant left a voicemail message for Barbara Johnson asking her to retrieve the phone number the Asian male called from her phone the night he was at her home. Johnson returned Affiant's call and they spoke about the Asian male. Johnson said he was driving a white car with a big hood when he was at her house. Your Affiant asked Johnson to check her up cards (contact cards) for any Asian male from North Carolina that may have given a name of Chan, Chen or Chang Lee and may have used an address on Indian Run in Carrollton Texas. Because Johnson is a realtor who works with people to find them apartments your Affiant thought maybe Johnson had leased him an apartment or had prior contact with the Asian male. After hanging up with your Affiant, Johnson went to her office and found from her records that she had leased an apartment to Kosoul Chanphakoummane at Gates de Provence Apartments #233 at 3613 Frankford Road in Dallas, Texas. Johnson did not recognize him when he was at her house but she was shook up over the incident. Your Affiant

1078

learned this information on September 5, 2006 upon receipt of Johnson's emailed statement.

5.20     On September 4, 2006, your Affiant called and emailed Barbara Johnson for additional information. Johnson emailed a statement. In her statement Johnson said that on July 7, 2006, at approximately 930P an Asian man knocked on her door and said his car had broken down in her driveway in the back. She offered the use of her phone. When she returned to the front door with the phone the Asian man was no longer there but was at her fence. Johnson handed the phone over the fence and he made a call. He handed the phone back and asked for a bottle of water. He then started opening the back gate but she told him not to because it was broken. She brought him some water and he asked her if she would let her dog out to keep him company. She said no and went back inside her house. The Asian man knocked on her front door again and asked for the phone. Johnson closed and locked the door before getting the phone. She brought the phone to the front door but the Asian man was not there. She said she was not going to the back door again because she had no porch light there. A short time later Johnson heard him knocking on her back glass door even though she told him not to open the gate because it was broken. Johnson called 911 and the Carrollton Police responded. Your Affiant learned this information on September 5, 2006 upon receipt of Johnson's emailed statement.

5.21     On September 4, 2006, your Affiant and Detective Terry Morrison went to Gates de Provence to look for a white Mustang. Detectives located a white Mustang parked on the property. The Mustang had Texas License ZB0 JBY. They checked Texas Motor Vehicle records, which indicated the owner of the vehicle to be Kosoul Chanthakoummane at 1220 Indian Run #718, Carrollton, Texas. Your affiant already had knowledge of the registration information on September 2, 2006, by speaking to Detective Kathy Hudson.

5.22     On September 5, 2006, Your Affiant received a phone call from Stacy McDonald at Southwest Institute of Forensic Science. Ms. McDonald stated she had just received a fax from the North Carolina State Bureau of Criminal Investigation Forensic Biology Section CODIS lab, that the DNA profile from North Carolina was matched to Kosoul Chanthakoummane.

5.23     On September 5, 2006, Detective Sergeant Joe Ellenburg conducted surveillance at the Gates de Provence Apartments. Sgt. Ellenburg saw a subject he recognized as Kosoul Chanthakoummane. Sgt. Ellenburg recognized this subject because he had seen his Texas driver license photograph. Your Affiant learned this from speaking to Sgt. Ellenburg.

5.24     On September 5, 2006, Detective Kathy Hudson was the affiant for an arrest and search warrant number WL1909052000-1 for the arrest of Kosoul Chanthakoummane for Capital Murder and a search of his residence at 3613 Frankford #233, Dallas, Texas. The search and arrest warrant was executed on September 5, 2006, at about 11:30pm. A Dell CPU Serial # 5GV8521. and a laptop hard drive serial # G23191S were seized from the premises by Detective Jeff Taylor. Your Affiant learned this by speaking to Detective Jeff Taylor on September 7, 2006. .

1679

5.25 Affiant has been a police officer for 23 years and a detective for 7 years. Affiant has participated in the investigations of numerous criminal offenses including murders. Based on Affiant's experience and training, Affiant knows that criminals who commit violent crimes often have personal and or professional relationships with the victim and often communicate with them prior to the commission of the violent crime. Such criminals also often communicate with others before or after the commission of a violent crime or about that crime. These communications may occur in many forms, including but not limited to, email or instant message communications. Therefore, Affiant desires access to the electronically stored information on the Dell CPU and the laptop hard drive to aid in identifying persons Kosoul Chanthakoummane may have communicated with prior to the Capital Murder, during the approximate time of the Capital Murder, and after the Capital Murder. Affiant also desires access to any electronic communications, including e-mail messages and the text of instant message communications; of personal and business contacts, along with their associated physical and e-mail addresses, and telephone numbers; personal calendars, schedules, and associated notes; and other information and/or data, including photographs and other visual images; which may lead to additional leads in this investigation. Affiant believes it is likely that the CPU and hard drive described above in Paragraph 1 of this Affidavit will contain the categories of information described above in Paragraph 2 of this Affidavit that will tend to connect Kosoul Chanthakoummane to the commission of the murder described above in Paragraph 4 of this Affidavit.

_Diane D. Tilton_
**Affiant**

Subscribed and sworn to before me by said Affiant on the _20_ day of _Sept_ 2006.

_tmc ly_      2.19 72
**MAGISTRATE**

1080

P 00217

WARRANT NO. 442-19-09202006-1

## RETURN AND INVENTORY

STATE OF TEXAS

COUNTY OF COLLIN

THE UNDERSIGNED AFFIANT, being a Peace Officer under the Laws of the State of Texas and being duly sworn on oath, certifies that the foregoing Warrant came to hand on the day it was issued and that it was executed on the 21 day of September, 2006, by making the search directed therein and seizing during such search the following described property:

Dell CPU Serial # 5GV8521

laptop hard drive Serial # G2319U

_Diane SDelton_
**Affiant**

SUBSCRIBED AND SWORN to before me, the undersigned authority, on this the 21 day of September, 2006.

_Lori G Harvell_
Notary Public in and for the State of Texas



LORI G. HARVELL
Notary Public
STATE OF TEXAS
My Comm. Exp. 08/03/2010

P 00210

EXHIBIT
**B**

1081

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO SUPPRESS EVIDENCE
## OBTAINED PURSUANT TO WARRANT NO. W219-09182006-1

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, Defendant in the above-entitled

and numbered criminal action, by and through counsel, and moves to suppress certain items of

physical evidence and any statements he allegedly made to law enforcement. In support, the

Defendant will show the following.

### Background

The Defendant has been indicted by the Collin County Grand Jury for capital murder.

The State of Texas is seeking the death penalty. The Eight Amendment requires a greater degree

of accuracy and procedural safeguards than would be true in a non-capital case. Gilmore v.

Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993), and Woodson v. North

Carolina, 428 U.S. 280, 305 (1976).

### Facts

On September 18, 2006, Presiding Judge Curt Henderson of the 219th District Court,

Collin County, Texas, signed warrant number W219-09182006-1 (hereafter "warrant"), a copy

of which is attached hereto as Exhibit "A" and incorporated herein by reference. The warrant

allowed for the search and seizure of Defendant's property as follows: "a Motorola T-Mobile

Model VGA4X Zoom camera cellular telephone, Serial number not accessible due to fear of

2007 JUN 22 PM 1:03

HANNAH KUEHLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS

BY_____ DEPUTY

1

losing data by removing the battery, telephone number 214-909-6647, for the purpose of conducting a search of the electronic memory contained within said item for the following categories of information: a.) all of this telephone mechanism's internally stored telephone numbers and e-mail addresses; b.) stored codes; c.) stored names; d.) stored messages; e.) stored photographs; and f.) all other stored electronic data." The telephone the subject of the warrant will be referred to herein as the "phone."

According to the "Return and Inventory" (hereafter "return") prepared by Diana Tilton, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference, the warrant was executed September 21, 2006. The return shows that the following items were seized pursuant to the warrant: one (1) Motorola T-Mobile Model VGA4X zoom camera cellular telephone (214) 909-6647.

According to the warrant and the affidavit in support thereof, the phone to be seized pursuant to the warrant was located "in the Property and Evidence Section of the McKinney Police Department, 2200 Taylor-Burk Drive, City of McKinney, Collin County, Texas." In other words, the police already had the phone in their custody when they sought the warrant at issue herein to conduct testing on the phone.

According to paragraph 5.24 of the affidavit in support of the warrant, the police seized the phone while executing a separate warrant for the search of the home of and the arrest of Defendant. The warrant relied upon by law enforcement to search the home of and arrest Defendant is warrant number W219-09052006-1. A copy of warrant number W219-09052006-1 is attached hereto as Exhibit "C" and incorporated herein by reference.

2

Warrant number W219-09052006-1 specifically authorized the police to search and seize the following items: "knives, jewelry, ledgers, journals, photographs, recording devices, pawn tickets, medical bills and documents, written documents, bank records, ATM transactions records, gas station receipts, cellular phone bills and statements, computers and other electronic data storage and transmission devices, clothing, body fluids, and body hair associated with the murder of Sarah Anne Walker in McKinney, Texas…"

While warrant number W219-09052006-1 empowers the executing police officers to seize "cellular phone bills and statements," it does not permit the seizure of any of Defendant's phones or cell phones. That the police admit to seizing Defendant's phone pursuant to warrant number W219-09052006-1 forecloses any claim that they came into possession of by another means. Consequently, the police acted outside warrant number W219-09052006-1, and therefore without authority, when they seized Defendant's phone.

This motion to suppress asks the Court to suppress the fruits of the search of the phone as authorized by the warrant because the police had possession of the phone in the first place by virtue of an unconstitutional taking, and for other reasons set forth below.

Analysis

1.  SEARCH AND SEIZURE WITHOUT A WARRANT

Law enforcement officers must have a search warrant, based on probable cause, issued by a neutral and detached magistrate to seize a person's property or search that person. U.S. Const. amend. IV and XIV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. art. 1.04 and 1.06. If a law enforcement officer searches a person or seizes his property without a warrant, unless there is a valid exception to the warrant requirement, he violates the dictates of the United States and

3

Texas Constitutions as well as the Texas Code of Criminal Procedure, and, thus, the evidence obtained as a result must be suppressed. Mapp v. Ohio, 367 U.S. 643, 660 (1961); Tex. Code of Crim. Proc. art. 38.23. The Defendant was searched and his property was seized without a valid warrant. Therefore, the evidence obtained from the warrant must be suppressed.

2.    SEARCH AND SEIZURE WITH A WARRANT

The Defendant was searched and seized pursuant to a warrant. No search warrant shall issue unless sufficient facts are presented to a neutral magistrate establishing probable cause.[1] U.S. Const. amend IV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. art. 1.06. Probable cause is sufficient to support the issuance of a search warrant where the facts contained in the affidavit and reasonable inferences drawn therefrom justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); Janecka v. State, 739 S.W.2d 813, 823 (Tex. Crim. App. 1987); Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992).

3.    CONFIDENTIAL INFORMANT AND HEARSAY

Probable cause may be based on information provided by a confidential informant and based on hearsay. However, the veracity and basis of knowledge of persons supplying hearsay information are relevant considerations in determining whether probable cause exists. Barraza v. State, 900 S.W.2d 840, 842 (Tex. App.—Corpus Christi 1995). An unnamed informant's reliability may be established by the affiant's general assertions stated in the affidavit concerning

---

[1]These facts must be set forth in a sworn affidavit. Tex. Code Crim. Proc. art. 18.01. The affidavit must recite facts and circumstances within the affiant's knowledge and belief of which the affiant has reasonably trustworthy information sufficient to warrant a reasonably cautious person's belief that the offense has been committed. Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (overruled on other grounds); Wynn v. State, 996 S.W.2d 324, 324 (Tex. App. – Ft. Worth 1999). A mere conclusory statement will not do. Gates, 462 U.S. at 239.

4

the informant's prior reliability. Cerda, 846 S.W.2d at 534. Id. at 223. Furthermore, an affiant

may rely on hearsay as long as a substantial basis for crediting the hearsay is presented. Gates,

462 U.S. at 241-42; Green v. State, 736 S.W.2d 218, 219 (Tex. App.—Corpus Christi 1987, no

pet.). Thus, an informant's tip should be corroborated through the independent investigation of

the police or through other sources of information. Gates, 462 U.S. at 241-42; Green, 736

S.W.2d at 219. In Barraza v. State, 900 S.W.2d 840, 842 (Tex. App. – Corpus Christi 1999), the

Court of Appeals held that the evidence should be suppressed where, in respect to the reliability

of the informant, the affiant simply stated that he was told by a law enforcement officer that he

"had been contacted by a reliable and credible confidential informant." 900 S.W.2d at 842. The

court held that this mere conclusory statement as to the reliability of the informant is insufficient

because there is nothing in the affidavit to show that the informant had previously given

information which turned out to be reliable. Id.

4.   DESCRIPTION

     Not only must the search warrant affidavit establish probable cause, but it must also

particularly describe the place to be searched. The test for ascertaining the adequacy of a search

warrant's description of the place to be searched is whether the place described is sufficient to

inform officers of the place where they are to conduct the search. Haynes v. State, 475 S.W.2d

739, 740 (Tex. Crim. App. 1971); Mansell v. State, 756 S.W.2d 95, 98 (Tex. App.—San Antonio

1988, pet. ref'd).

     Here, the warrant is vague, ambiguous and overbroad in its description of the phone to be

searched and seized. The warrant and affidavit do not contain the serial number of the phone to

be searched and seized. In fact, this information is intentionally left out of the warrant "… due to

1085

fear of losing data by removing the battery..." What is left is a generic description of a common phone; such a description is unconstitutionally vague, ambiguous, and overbroad. The Defendant objects that this language does not inform an officer what he is to search and seize.

The 4th Amendment to the United States Constitution has as its basic purpose the intention of safeguarding the privacy and security of individuals against arbitrary invasion of governmental officials. Berger v. New York, 388 U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The specificity requirement for search warrants prohibits general searches and seeks to prevent the vesting of complete discretion in the officer executing the warrant. Berger v. New York at 55-56, 87 S.Ct. 1873. Article I Section 9 of the Texas Constitution also prohibits general, vague warrants. As stated by the Court in Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):

> "The requirement that warrants shall particularly describe the things to be
> seized makes general searches under them impossible and prevents the
> seizure of one thing under a warrant describing another. As to what is to be
> taken, nothing is left to the discretion of the officer executing the warrant."

The warrant at issue here is unconstitutionally vague and authorized a general, exploratory search prohibited by the United States Constitution and the Texas Constitution. Walthall v. State, 594 S.W.2d 74 (Tex.Crim.App. 1980); see also Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) (general exploratory searches are illegal).

5.    FOUR CORNERS OF AFFIDAVIT

In judging the adequacy of a search warrant affidavit, this court must look within the "four corners" of the affidavit because that is what the magistrate had before it when the warrant issued. Cassias, 719 S.W.2d at 587-88; Cerda v. State, 846 S.W.2d 533, 534 (Tex. App.—

1087

Corpus Christi 1993, no pet.). The magistrate, not the officer, is responsible for determining whether probable cause exists. Tex. Code Crim. Proc. art. 18.01.

6. STANDARD OF REVIEW

In evaluating whether probable cause exists for the issuance of a warrant, this court must assess the totality of the circumstances. Gates, 462 U.S. at 238-39; Wynn, 996 S.W.2d at 326-27. Furthermore, this court must review the determination of probable cause de novo. Ornelas v. United States, 517 U.S. 690, 696-97 (1996); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Based on the foregoing, the evidence obtained as a result of the search warrants must be suppressed under exclusionary rule articulated in Mapp v. Ohio, 367 U.S. 643, 660 (1961), and its progeny, and Article 38.23 of the Texas Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this motion be granted and for any other relief to which he is entitled.

Respectfully submitted,

_____

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

7

1086

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of June, 2007.

_____
Steven R. Miears

8

1089

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
## OBTAINED PURSUANT TO WARRANT NO. W219-09182006-1

BE IT REMEMBERED, that on the _____ day of _____,

2007, came to be considered the above Motion to Suppress.  After consideration of the motion, it

is the opinion of the court that defendant's motion be:

GRANTED      _____

DENIED      _____, to which the Defendant excepts.

_____
JUDGE PRESIDING

1000

## SEARCH WARRANT

WARRANT # _W219- 0918 2006 - 1_

**THE STATE OF TEXAS**

**COUNTY OF COLLIN**

THE STATE OF TEXAS, to the Sheriff or any Peace Officer of Collin County, Texas, or any Peace Officer of the State of Texas, GREETINGS:

WHEREAS the Affiant whose signature is affixed to the attached Affidavit is a Peace Officer under the laws of the State of Texas, and did heretofore this day subscribe and swear to said Affidavit before me (which Affidavit is incorporated into and made a part of this Search Warrant for all purposes), and whereas I find that the verified facts stated by Affiant in said Affidavit demonstrate that Affiant has probable cause for the belief she expresses therein, and has established the existence of proper grounds for the issuance of this Search Warrant: now, therefore,

YOU ARE COMMANDED to enter the suspected place and premises described as Property and Evidence Section of the McKinney Police Department 2200 Taylor-Burk Drive, City of McKinney, Collin County, Texas, in order to locate and seize a Motorola T-Mobile Model VGA4X Zoom camera cellular telephone, Serial number not accessible due to fear of losing data by removing the battery, telephone number 214-909-6647, for the purpose of conducting a search of the electronic memory contained within said item for the following categories of information: a.) all of this telephone mechanism's internally stored telephone numbers and e-mail addresses; b.) stored codes; c.) stored names; d.) stored messages; e.) stored photographs; and f.) all other stored electronic data.

YOU ARE FURTHER ORDERED, pursuant to the provisions of Texas Code of Criminal Procedure Article 18.10, to return to Collin County with any property seized pursuant to this Search Warrant and to retain custody of it until further order of this court or any other court of appropriate jurisdiction shall otherwise direct the manner of safekeeping said property. This court grants you leave and authority to remove any such seized property from Collin County if such removal is expressly authorized by the provisions of Texas Code of Criminal Procedure Article 18.10.

YOU ARE FURTHER ORDERED, pursuant to Texas Code of Criminal Procedures Article 18.10 and as soon as you are reasonably able to do so, to file a Return and Inventory of all property taken into your possession under this Search Warrant subsequent to your execution thereof.

HEREIN FAIL NOT, but execute this Search Warrant within three days, exclusive of the day of its issuance, and exclusive of the day of its execution, and return it forthwith to me with your Return and Inventory thereon, showing how you have executed same.

ISSUED at _1 45_ o'clock _P_.m. on this the _18_ day of September, 2006, to certify which witness my hand this day.

_____ _219 th_

MAGISTRATE

COLLIN COUNTY, TEXAS

**EXHIBIT**
**A**

1081

P 00200

| AFFIDAVIT FOR SEARCH WARRANT |
| --- |

THE STATE OF TEXAS     }

COUNTY OF COLLIN     }

THE UNDERSIGNED AFFIANT, BEING A PEACE OFFICER UNDER THE LAWS OF TEXAS AND BEING DULY SWORN, ON OATH MAKES THE FOLLOWING STATEMENTS AND ACCUSATIONS:

1.     THERE IS IN COLLIN COUNTY, TEXAS, A SUSPECTED PLACE AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS:

    A Motorola T-Mobile Model VGA4X Zoom camera cellular phone, Serial number not accessible due to fear of losing data by removing the battery; phone number 214-909-6647, now stored as evidence in the Property and Evidence Section of the McKinney Police Department, 2200 Taylor-Burk Drive, City of McKinney, Collin County, Texas.

2.     THERE IS AT SAID SUSPECTED PLACE AND PREMISES PERSONAL PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF TEXAS AND DESCRIBED AS FOLLOWS:

    a.) all of this telephone mechanism's internally stored telephone numbers and e-mail addresses; b.) stored codes; c.) stored names; d.) stored messages; e.) stored photographs; and f.) all other stored electronic data.

3.     SAID SUSPECTED PLACE AND PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS:

    The items described above in Paragraph 2 of this Affidavit, and the Motorola T-Mobile Model VGA4X Zoom camera cellular telephone described above in Paragraph 1 of this Affidavit, are in the custody and control of the McKinney Police Department Property and Evidence Section, 2200 Taylor-Burk Drive, City of McKinney, Collin County, Texas, 75071.

4.     IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY CHARGES AND ACCUSES THAT ON OR ABOUT JULY 8, 2006, IN COLLIN COUNTY, TEXAS, KOSOUL CHANTHAKOUMMANE DID INTENTIONALLY OR KNOWINGLY KILL SARAH ANNE WALKER BY STABBING HER WITH A KNIFE WHILE IN THE COURSE OF OR ATTEMPTED COURSE OF COMMITTING ROBBERY, IN VIOLATION OF TEXAS PENAL CODE SECTION 19.03.

5.     AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING:

    Affiant, Diana G. Tilton, is a Texas Peace Officer employed by the City of McKinney Police Department and is currently assigned to the Criminal Investigation Division Affiant bases this affidavit on the following:

5.1     On July 8, 2006, at approximately 1:23 p.m., McKinney Police Dispatch received a 911 call from a female who identified herself as Jane Lilliston. Lilliston said she and her husband David Lilliston found a woman inside a DR Horton model town home located at 5700 Conch Train Drive, McKinney, Texas, that the woman's head appeared to be smashed in, and that she was

1092

possibly dead. Affiant learned this information July 8, 2006, by reviewing the McKinney Public Safety Incident Dispatch Detail Report.

5.2 McKinney Fire Department Paramedics J. Stinson, J. Hockett and C. Roberts responded to the location described in the preceding numbered paragraph, located the victim, and determined that she was deceased. Affiant learned this information July 8, 2006, by speaking to Detective Kathy Hudson, who learned this information in telephone conversations with paramedic J. Hockett. Firefighter/paramedic J. C. Stinson completed McKinney Fire Department Incident report number 01-2006-0003878-000.

5.3 McKinney PD Officers J. Amadee and J. Harrison also responded to the model town home in question, as did on-call McKinney PD Detective J. Taylor. They observed the deceased female to have a large quantity of blood on her head, neck, and clothing, and that she appeared to have suffered multiple stab injuries. Officer Amadee filed McKinney Police Department offense report #06-34122 for Murder. Affiant learned of this information July 8, 2006, by reading Officer Amadee's offense report.

5.4 Detective Taylor contacted Amy Clasen, an employee of DR Horton Homes July 8, 2006. Amy Clasen identified the victim as Sarah Ann Walker and said Walker was a sales representative for DR Horton Homes at the model home in which she was found. Affiant learned this information July 8, 2006, from speaking to Detective Taylor.

5.5 McKinney PD Detectives P. Copin and B. Walterscheid processed the crime scene in question for evidence by photographing and videotaping the scene, dusting for latent fingerprints, and collecting physical evidence. During this process, Detectives Copin and Walterscheid found a substance that appeared to be blood on the entryway window blind pull cords, on the entry door deadbolt locking mechanism, and in several places on the floor between the entry door and where the victim was found. Because these drops appeared to have fallen vertically and without any lateral movement, the detectives surmised that the suspect cut himself during the attack and bled at the crime scene. The detectives collected several articles and pieces of furniture from the model home, as well as the deadbolt lock from the entry door, the pull cords from the entryway blinds, and samples of the flooring containing the substance believed to be blood, and then processed the remainder of the model home for trace evidence using various standard techniques. Detective Copin forwarded the samples containing the suspected blood to Southwest Institute of Forensic Sciences for DNA processing. Affiant learned this information by speaking to Detectives Copin and Walterscheid on July 11, 2006.

5.6 On the evening of July 8, 2006, Sarah Walker's ex-husband Randy Tate called and left a voicemail message for Det. Sergeant Steve Riley. Tate said Sarah showed him a new Rolex watch earlier that morning and she told him she bought it for herself. Your Affiant learned this July 9, 2006, by listening to the voicemail message herself. There was no Rolex watch found on the victim's body at the crime scene as none was logged by crime scene detectives. Your Affiant learned this information on July 8, 2006 by speaking to Detective Pete Copin by telephone. There was no Rolex watch found as a result of the search warrant subsequently served on the victim's home. Your Affiant learned this information on July 8, 2006 by participating in the search of the victim's home. There was no Rolex watch found as a result of the search warrant subsequently served on the victim's car. Your Affiant learned this information on July 14, 2006, by speaking to Detective Kathy Hudson.

1093

P 00202

5.7 The victim's body was transported to the Collin County Medical Examiner's Office, where Dr. W. Rohr performed an autopsy on July 9, 2006. McKinney Police Detective Sergeant S. Riley and Texas Ranger Sergeant A.P. Davidson viewed the autopsy. Dr. Rohr determined the manner of death for Sarah Walker was homicide due to multiple sharp force injuries, strangulation, and blunt head injury. Your Affiant learned this by reviewing Dr. Rohr's autopsy report August 3, 2006.

5.8 During the autopsy what appeared to be a human bite mark was located on the back of the victim's neck. William Schell D.D.S., and Brent Hutson D.D.S. responded to Dr. Rohr's request to examine and process the bite mark on the victim. Drs. Schell and Hutson photographed the bite mark and processed it. Your Affiant learned this by reviewing the Forensic Dentistry Consultation Preliminary Report August 3, 2006.

5.9 On July 9, 2006, Witness Mamie Sharpless called the McKinney Police Department and told the call taker, Juan Flores, she and her husband Nelson Villavicenclo had been at the Hemingway development approximately 1 hour before Sarah Walker was discovered murdered. Sharpless stated that she saw a white car, possibly a Ford Mustang, in the area. Affiant entered this information into the FBI Rapid Start database utilized by McKinney Police CID for information tracking while working major cases. A lead was created and assigned to McKinney PD Detective Marco Robles. Your Affiant learned this information on Sunday July 9, 2006, via an email from Detective Robles.

5.10 Det. Robles spoke to Mamie Sharpless, a realtor, and her husband Nelson Villavicencio. Sharpless said on the morning of July 8, 2006, at approximately 9:40 a.m. and again at 9:47 a.m., she received phone calls from a male who identified himself as Chan Lee. He told her he picked up the Keller Williams Red Book from the 7-11 Store and saw her advertisement. He told her that he was a recent graduate of UNCC and had moved to Texas within the past month from Charlotte, North Carolina. He said that he wanted to look at the town home in the Hemingway subdivision. The phone cut off before Sharpless could get further information or set up a time to meet. At approximately 11:45 a.m. that day, Sharpless and her husband Villavicencio arrived at the Hemingway subdivision, where they saw a white Ford Mustang pass them and park across the street from the DR Horton model home located at 5700 Conch Train, north of Trolley Trail. Both Sharpless and Villavicencio asked the Asian male in the Mustang if he was Chan Lee. He said he was not. The male had very short hair, was muscular, and wore a blue tank top or tee-shirt. Sharpless looked at the license plate to see if it was a North Carolina plate, but saw that it was a Texas plate. Sharpless and Villavicencio drove to the north end of Conch Train and turned around. When they drove back south on Conch Train the white Mustang was gone. Sharpless and Villavicencio waited inside the town home at 8945 Trolley Trail for a scheduled viewing appointment. Villavicencio was looking out the master bedroom window and could see both Trolley Trail and Conch Train. He saw a black Porsche Boxster park on the east side of Conch Train. A blonde woman got out of the car and walked towards the model home. Villavicencio commented about that to his wife. Sharpless looked at the car and said, "That's Sarah." After Sharpless showed the town home to the prospective buyer who had contacted her for an appointment, Villavicencio looked out the master bedroom window again and saw the same white Mustang parked in front of the model home. Sharpless and Villavicencio left the area at approximately 12:50 p.m. Your Affiant learned this information September 5, 2006, by reading Sharpless' and Villavicencio's written statements.

1094

5.11 On July 11, 2006, Detective Kathy Hudson obtained a search warrant for the victim's vehicle. Upon service of the warrant, Detective Hudson located bank documents in the victim's purse. These documents indicated that the victim had made financial transactions during the morning of July 8, 2006, at Bank of America in Frisco. Detective J. Taylor obtained bank video of victim Sarah Walker on the day of her murder. The bank video shows her wearing a light-colored ring with a large stone on her right hand. Det. Taylor relayed this information to your Affiant. No such ring was recovered from the victim's body at the crime scene as none was logged by the crime scene detectives. No such ring was recovered from her home where Detective Hudson served search warrants. Affiant learned this information on July 8, 2006, by participating in the search of the victim's home. There was no such ring found as a result of the search warrant subsequently served on the victim's car. Your Affiant learned this information on July 14, 2006, by speaking to Detective Kathy Hudson.

5.12 On July 19, 2006, Evangeline Russell spoke to McKinney PD Detective Corporal Darlene Jones about Sarah Walker. Russell worked with Sarah Walker and said that Walker had a personal journal that she wrote in and kept by her bedside. Walker also had a day planner that she kept with her at all times. Your Affiant read this in Evangeline Russell's written statement July 21, 2006. The day planner should have been on her desk by the office phone in the model home according to Evangeline Russell's statement. Neither the journal nor the day planner were located at the model home crime scene or at Sarah Walker's house where Detective Hudson served an evidentiary search warrant July 8, 2006. Your Affiant learned this information on July 8, 2006 by speaking to Detective Pete Copin, who was at the model home crime scene and first hand knowledge by participating in the search of the victim's home on July 8, 2006.

5.13 On August 11, 2006, Nelson Villavicencio met with Officer Ray Clark from the Rowlett Police Department. Villavicencio described to Clark the Asian male he saw at the Hemingway subdivision the day Sarah Walker was murdered. Based on his descriptions, Clark drew a composite sketch of the Asian male. The sketch and information about the white Mustang was released to the media via McKinney Police Department press release dated August 17, 2006. Your Affiant learned of the sketch August 11, 2006, and of the press release August 17, 2006.

5.14 On August 19, 2006, Witness and realtor Barbara Johnson from Carrollton, Texas, called the McKinney Police Department to report she had seen the sketch described in the preceding numbered paragraph in the newspaper and she had some information regarding a suspicious circumstance that occurred at her home on July 7, 2006. Your Affiant learned of this when she spoke to her via phone and entered her information into the Rapid Start database for follow up.

5.15 On August 30, 2006, Det. P. Copin received information from Stacy McDonald at Southwest Institute of Forensic Science that a male DNA full profile sample from the model home crime scene matched a DNA profile already in the national Combined DNA Index System (CODIS). McDonald said the sample in CODIS was from a known convicted felon and had been entered in CODIS in North Carolina. Your Affiant learned this on August 30, 2006, by speaking directly to Detective Pete Copin.

5.16 On September 1, 2006, Detective P. Copin received information from Chris Parker from the North Carolina State Bureau of Criminal Investigation Forensic Biology Section CODIS lab, that the DNA profile from North Carolina belonged to an offender whose last known address was

1095

P 00204

Carrollton, Texas. Det. Copin said that because of the federal Labor Day holiday, the name of the offender would not be released to McKinney detectives until Tuesday, September 05, 2006. Detectives, including your Affiant, working the investigation began searching existing leads for males with connections to either North Carolina or Carrollton, Texas. Your Affiant located event number DL 397, in which the caller was from Carrollton Texas and assigned it to Allen Police Department Sgt. Anne Wigzell.

5.17    On September 2, 2006, Allen Police Department Det. Sgt. Annie Wigzell worked the August 19, 2006, lead in which Barbara Johnson said she called Carrollton Police about the Asian male at her door (see paragraph 14. above). Sgt. Wigzell requested from Carrollton Police a fax of the incident report at Johnson's house and received the same. In the faxed document was the name of the Asian man who knocked at Johnson's door. Sgt. Wigzell ran this subject's name, Kosoul Chanthakoummane, through the FBI's National Crime Information Computer and located a criminal history out of North Carolina showing 1998 convictions for Robbery and Kidnapping. Sgt. Wigzell met with and relayed this information to your Affiant on Saturday September 2, 2006. Affiant noticed that the Carrollton Police Department's incident report stated the white vehicle in Johnson's driveway had Texas License Z80 JBJ. Your affiant was aware that motor vehicle registration records showed a 1993 Ford Mustang with Texas License plate number Z80 YBJ was owned by Kosoul Chanthakoummane. Affiant learned this information on September 2, 2006, by speaking to Detective Kathy Hudson.

5.18    On September 2, 2006, Detective Kathy Hudson called North Carolina Department of Corrections and spoke to Officer J. Crawford. Officer Crawford informed her that Kosoul Chanthakoummane had been paroled to 1220 Indian Run Dr. #718, Carrollton, Texas on February 19, 2006. Affiant learned this information on September 2, 2006, by speaking to Detective Kathy Hudson.

5.19    On September 4, 2006, your Affiant left a voicemail message for Barbara Johnson asking her to retrieve the phone number the Asian male called from her phone the night he was at her home. Johnson returned Affiant's call and they spoke about the Asian male. Johnson said he was driving a white car with a big hood when he was at her house. Your Affiant asked Johnson to check her up cards (contact cards) for any Asian male from North Carolina that may have given a name of Chan, Chen or Chang Lee and may have used an address on Indian Run in Carrollton Texas. Because Johnson is a realtor who works with people to find them apartments your Affiant thought maybe Johnson had leased him an apartment or had prior contact with the Asian male. After hanging up with your Affiant, Johnson went to her office and found from her records that she had leased an apartment to Kosoul Chanphakoummane at Gates de Provence Apartments #233 at 3613 Frankford Road in Dallas, Texas. Johnson did not recognize him when he was at her house but she was shook up over the incident. Johnson emailed this information in a statement to the Affiant on September 5, 2006.

5.20    On September 4, 2006, your Affiant called and emailed Barbara Johnson for additional information. Johnson emailed a statement. In her statement Johnson said that on July 7, 2006, at approximately 930P an Asian man knocked on her door and said his car had broken down in her driveway in the back. She offered the use of her phone. When she returned to the front door with the phone the Asian man was no longer there but was at her fence. Johnson handed the phone over the fence and he made a call. He handed the phone back and asked for a bottle of water. He then started opening the back gate but she told him not to because it was broken.

She brought him some water and he asked her if she would let her dog out to keep him company. She said no and went back inside her house. The Asian man knocked on her front door again and asked for the phone. Johnson closed and locked the door before getting the phone. She brought the phone to the front door but the Asian man was not there. She said she was not going to the back door again because she had no porch light there. A short time later Johnson heard him knocking on her back glass door even though she had told him not to open the gate because it was broken. Johnson called 911 and the Carrollton Police responded.

5.21 On September 4, 2006, your Affiant and Detective Terry Morrison went to Gates de Provence to look for a white Mustang. Detectives located a white Mustang parked on the property. The Mustang had Texas License Z80 JBY. They checked Texas Motor Vehicle records, which indicated the owner of the vehicle to be Kosoul Chanthakoummane at 1220 Indian Run #718, Carrollton, Texas. Your affiant already had knowledge of the registration information on September 2, 2006, by speaking to Detective Kathy Hudson.

5.22 On September 5, 2006, Your Affiant received a phone call from Stacy McDonald at Southwest Institute of Forensic Science. Ms. McDonald stated she had just received a fax from the North Carolina State Bureau of Criminal Investigation Forensic Biology Section CODIS lab, that the DNA profile from North Carolina was matched to Kosoul Chanthakoummane.

5.23 On September 5, 2006, Detective Sergeant Joe Ellenburg conducted surveillance at the Gates de Provence Apartments. Sgt. Ellenburg saw a subject he recognized as Kosoul Chanthakoummane. Sgt. Ellenburg recognized this subject because he had seen his Texas driver license photograph. Your Affiant learned this from speaking to Sgt. Ellenburg.

5.24 On September 5, 2006, Detective Kathy Hudson was the affiant for an arrest and search warrant number WL1909052000-1 for the arrest of Kosoul Chanthakoummane for Capital Murder and a search of his residence at 3613 Frankford #233, Dallas, Texas. The search and arrest warrant was executed on September 5, 2006, at about 11:30pm. A cell phone was seized from the premises. The phone is a Motorola T-Mobile Model VGA4X Zoom camera cellular telephone, serial number not accessible due to fear of losing data by removing the battery, telephone number 214-909-6647. Your Affiant learned this information on September 6, 2006, by speaking to Detective Marco Robles.

1097

5.25   Affiant has been a police officer for 23 years and a detective for 7 years. Affiant has participated in the investigations of numerous criminal offenses including murders. Based on Affiant's experience and training, Affiant knows that criminals who commit violent crimes often have personal and or professional relationships with the victim and often communicate with them prior to the commission of the violent crime. Such criminals also often communicate with others before or after the commission of a violent crime or about that crime. These communications may occur in many forms, including but not limited to, telephone conversations or text messages. Therefore, Affiant desires access to the electronically stored information on Kosoul Chanthakoummane's cellular telephone to aid in identifying persons who called Kosoul Chanthakoummane prior to the Capital Murder, during the approximate time of the Capital Murder, and after the Capital Murder. Affiant also desires access to any text messages, voice mail messages, the stored numbers, contact lists and photographs within the phone, which may lead to additional leads in this investigation. Affiant believes it is likely that the cellular telephone described above in Paragraph 1 of this Affidavit will contain the categories of information described above in Paragraph 2 of this Affidavit that will tend to connect Kosoul Chanthakoummane to the commission of the murder described above in Paragraph 4 of this Affidavit.

_____

**Affiant**

Subscribed and sworn to before me by said Affiant on the _18_ day of September, 2006.

_____

**MAGISTRATE**

1098

P 00207

WARRANT NO. _U219-0918 2006-1_

STATE OF TEXAS

COUNTY OF COLLIN

THE UNDERSIGNED AFFIANT, being a Peace Officer under the Laws of the State of Texas and being duly sworn on oath, certifies that the foregoing Warrant came to hand on the day it was issued and that it was executed on the __21__ day of __September__, 2006, by making the search directed therein and seizing during such search the following described property:

_1 Motorola T-Mobile Model VGA4X Zoom Camera_

_Cellular telephone  (214-909-6647)_

_____
**Affiant**

SUBSCRIBED AND SWORN to before me, the undersigned authority, on this the

__21__ day of __September__, 2006.

_Lori S Harvell_
Notary    Public    in    and    for    the
State of Texas

LORI G. HARVELL
Notary Public
STATE OF TEXAS
My COTT. Exp. 08/03/2010

**EXHIBIT**
exhibitor
**B**

1099

P 00208

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## MOTION TO HOLD UNCONSTITUTIONAL TEX. CODE CRIM. PROC. ART. 37.071 SEC. 2(e) AND (f) - BURDEN OF PROOF
### Constitutional Motion Number 25

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KOSOUL CHANTHAKOUMMANE, the Defendant herein, by and through his attorney of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and makes this his Motion to Hold Unconstitutional Tex. Code Crim. Proc. arts. 37.071 Sec. 2(e) and (f) - Burden of Proof, and as grounds therefore would show the Court as follows:

1. Effective September 1, 1991, a jury which has convicted a defendant of capital murder, in which the State is seeking the death penalty, shall be charged as follows:

Tex. Code Crim. Proc. Art. 37.071, Sec. 2



2007 JUN 22 PM 1: 07
HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY____DEPUTY

(e) The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) of this article, it shall answer the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

(f) The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury:

(1) shall answer the issue "yes" or "no";

(2) may not answer the issue "no" unless it agrees

unanimously and may not answer the issue "yes" unless 10
or more jurors agree.

2. This statute is unconstitutional for the following reasons:

(a) It impermissibly shifts the burden of proof on mitigation to the Defendant in
violation of Article I §10 of the Texas Constitution. The statute requires the jury to consider,
along with mitigating evidence, the "moral culpability of the defendant." This is the jury that has
just found the defendant had no defense to the charge of capital murder and that he was guilty of
that offense, beyond a reasonable doubt.

The statute then demands that the defense produce "sufficient" mitigation (while
considering this same "moral culpability") to warrant a sentence of life imprisonment. The
mitigating evidence must be "sufficient" to overcome "moral culpability" that has already been
established in the minds of the jurors. In death penalty deliberations, "moral culpability" is not
evidence, it is a finding that the jury has already made. The statute places an unfair, undue and
unconstitutional emphasis on the finding that the jury has already made. The Defendant, if he is
to save his life, must offer evidence that is somehow greater than the finding of moral culpability
beyond a reasonable doubt.

(b) Aside from shifting the burden of proof to the Defendant, the statute provides no other
guidance to the jury that is called upon to make this life and death decision. As a result, the
death penalty is imposed in a wanton and freakish manner in violation of the Defendant's rights
to due process and protection from cruel and unusual punishment under the Eighth and
Fourteenth Amendments to the United States Constitution, as well as Article I §13 of the Texas
Constitution.

(c) This impermissible shift of the burden to the Defendant is made more unconscionable
by the language of Tex. Code Crim. Proc. art. 37.071(2)(f) which provides that the jury shall not

1101

answer the mitigation issue "yes" (resulting in a life sentence) unless 10 or more jurors agree. The Defense, according to the instructions to the jury, must then offer "sufficient" mitigating evidence to not only overcome the "moral culpability" that has already been established in the eyes of the jury, but 10 or those jurors must be convinced of the sufficiency of that evidence.

3. State Law Violations

The infirmities in the statute discussed above are also in violation of State Constitutional Law. Under the "due course of the law" provision of the Texas Constitution, Article I §10, the citizens of this state are guaranteed that any punishment for an offense will be in accordance with the law. *McFarlane v. State*, 254 S.W.2d 136 (Tex. Crim. App. 1953). When the burden of proof is shifted to the Defendant, the State's burden has essentially been reduced. *See e.g., Cobarrubio v. State*, 675 S.W.2d 749 (Tex. Crim. App. 1983) (overruled in part, *Lawrence v. State*, 700 S.W.2d 208 (Tex. Crim. App. 1985)); and *Elliott v. State*, 858 S.W.2d 478, 487-488 (Tex. Crim. App. 1993). Such a punishment, based on a reduced burden, is not in accordance with Texas law and is unconstitutional.

WHEREFORE, PREMISES CONSIDERED, Defendant prays this court will hold this statute unconstitutional, and for such other relief as Defendant may be entitled.

Respectfully submitted,

Steven R. Miears
State Bar No. 14025600
Post Office Box 736
211 North Main
Bonham, Texas 75418
Telephone: 903-640-4963
Telefax: 903-640-4964
Attorney for Kosoul Chanthakoummane

1102

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 22 day of _____June_____, 2007.

_____
Steven R. Miears

1103

CAUSE NUMBER 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S MOTION TO HOLD UNCONSTITUTIONAL TEX. CODE CRIM. PROC. ART. 37.071 SEC. 2(e) AND (f) - BURDEN OF PROOF
Constitutional Motion Number 25

BE IT REMEMBERED, that on this day the Court considered the above motion. After consideration of the motion, it is the opinion of the court that Defendant's motion be:

_____ GRANTED. IT IS THEREFORE ORDERED that Article 37.071 of the Texas Code of Criminal Procedure is declared unconstitutional and the State is precluded from seeking the death penalty against the defendant.

_____ DENIED, to which the Defendant excepts.

So ORDERED on this the ___ day of _____, 2007.

_____
Judge Presiding

1102

NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 380th JUDICIAL |
| | § | |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## STATE'S SUPPLEMENTAL DESIGNATION OF WITNESSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas by and through her Assistant District Attorney,

Gregory S. Davis, and pursuant to the Court's Pretrial Discovery and Scheduling Order files this

State's Designation of Witnesses, and respectfully shows:

I.

In addition to the witnesses previously designated by separate pleading, the following

individuals may testify as witnesses at the trial of this cause

1. CHARLOTTE MECKLENBURG POLICE DEPARTMENT (704) 336-2311
   S. Sarvis
   N. C. Tritt
   A. Morrison
   S. Morton

2. CIVILIANS
   Shawn Bank            5/14/82      704-532-1721
   Lawrence Stuart Smith  9/17/78      704-333-9704

Respectfully submitted,

GREGORY S. DAVIS
First Assistant District Attorney
Collin County, Texas
Bar No. 05493550

1106

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing instrument was delivered by certified mail to opposing counsel on the 27th day of June, 2007.

GREGORY S. DAVIS

CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V. | § | COLLIN COUNTY, TEXAS |
| KOSOUL CHANTHAKOUMMANE | § | 380th JUDICIAL DISTRICT |

## MOTION FOR DISCOVERY OF GRAND JURY TRANSCRIPTS

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, KOSOUL CHANTHAKOUMMANE, defendant in the above styled and numbered cause and makes this Motion for Discovery of Grand Jury Transcripts of all witnesses who have testified before grand juries investigating this case pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, article 1 §§3, 10, 13 and 19 of the Texas Constitution, and article 39.14 of the Texas Code of Criminal Procedure, and shows the following:

1. A defendant is entitled to disclosure of grand jury testimony upon a showing of "particularized need." *Dennis v. United States*, 84 U.S. 855, 874 (1966).

2. Defendant asserts that a "particularized need" exists justifying this motion for Production and inspection of grand jury testimony for the following reasons:

   1. It is a reasonable deduction that the state has utilized this grand jury, at least in part for discovery purposes. It is fundamentally unfair for the state to deny defendant equal access to this "storehouse of relevant fact."

   2. This grand jury testimony is available to the state, if so desired, to Impeach witnesses. It is fundamentally unfair for the state to deny defendant equal access to this material for the impeachment and cross-examination of witnesses.

   3. This grand jury testimony is available to refresh witnesses' recollection, if necessary. It is fundamentally unfair to deny defendant equal access to this potential refresher material.

**MOTION FOR DISCOVERY OF GRAND JURY TRANSCRIPTS – Page 1**

1108

4. The state has used this grand jury testimony to prepare this case. Defendant ought to have equal access to the material to prepare its defense.

5. The grand jury testimony contains exculpatory material discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963).

3. If the witnesses who testified before the grand jury testify for the state at trial, the state will be required to produce their grand jury testimony for purposes of cross examination. Tex.R.Evid. 614(f)(3). Because of the volume of material, counsel for defendant will be required to ask for a recess after each witness has testified if delivery is delayed until trial. Such recess will have to be granted "for a reasonable examination of such statement and for preparation for its us in trial." Tex.R.Evid. 614(d). Such recesses will be prejudicial to defendant and will slow down the trial.

4. The term of the grand jury that investigated this case has expired, thus rendering considerations of grand jury secrecy minimal.

5. The information contained in the grand jury transcripts is material and relevant to defendant's case.

6. The information contained in the grand jury transcripts is not privileged. However, even if privileged, the privilege must give way to the overriding interest defendant has in the following: (i) in preparing and presenting his case to preserve defendant's right to compulsory process; (ii) to confront and cross-examine witnesses against him, to assure effective assistance of counsel; (iii) to insure his rights to due process and to equal protection of the law; (iv)

**MOTION FOR DISCOVERY OF GRAND JURY TRANSCRIPTS** – Page 2

guaranteed by the above cited provision of the United States and Texas
Constitutions.

7. The making of this motion is well in advance of trial, in good faith and not for
the purposes of delay.

8. The grand jury transcripts are presently in possession and exclusive control of
the state, and are not otherwise procurable by the defendant through the
exercise of due diligence. The undersigned counsel is unaware of the identity
and number of all witnesses who have testified before the grand jury, and
whose testimony has been transcribed, but he has filed motions to discover
same.

9. Defendant requests that the grand jury transcripts of all witnesses who so
testified before the grand jury in connection with this and related cases be
provided to counsel at the earliest possible opportunity. In the alternative,
counsel requests that such testimony be provided immediately following the
direct examination, and before cross-examination, of all witnesses who testify
for the state of Texas.

10. In the alternative, defendant moves that this court order an in-camera hearing
to determine whether the grand jury transcripts requested by the defendant be
disclosed.

WHEREFORE, PREMISES CONSIDERED, defendant respectfully prays that this Court
grant this motion in all things.

<u>**MOTION FOR DISCOVERY OF GRAND JURY TRANSCRIPTS**</u> – **Page 3**

Respectfully submitted on this 2nd day of _July_, 2007.

_____

STEVEN R. MIEARS
State Bar No. 14025600
211 North Main
P.O. Box 736
Bonham, TX 75418
903-640-4963
903-640-4964 FAX
E-mail: stevenmiears@msn.com

Attorney for Defendant


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the 2nd day of

_____ _July_____, 2007.

_____
Steven R. Miears

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## ORDER OF THE COURT ON THE DEFENDANT'S
## MOTION FOR DISCOVERY OF GRAND JURY TRANSCRIPTS

BE IT REMEMBERED, that on this day, came to be considered the above Motion for

Discovery of Grand Jury Transcripts. After consideration of the motion, it is the opinion of the

court that defendant's motion be:

GRANTED   _____

DENIED   _____ (to which action the Defendant excepts).

So Ordered on this the _____ day of _____, 2007.

_____

JUDGE PRESIDING

# STEVEN R. MIEARS, P.C.

**MAILING ADDRESS:**
P.O. Box 736
Bonham, TX 75418

Bonham, Texas Office:
211 North Main
Bonham, Texas 75418
903-640-4963
903-640-4964 FAX
E-mail: stevenmiears@msn.com

Board Certified in Criminal Law
Texas Board of Legal Specialization

June 29, 2007

Ms. Hannah Kunkle
Collin County Courthouse
210 S. McDonald
McKinney, TX 75069

Re:  Cause No. 380-82629-06, The State of Texas vs. Kosoul Chanthakoummane

Dear Ms. Kunkle:

Enclosed is Defendant's Motion for Discovery of Grand Jury Transcripts, together with two copies, to be filed in the above referenced case.   Please return the file-marked copies to my office in the enclosed self-addressed, prepaid postage envelope provided for your convenience.

By copy of this letter, I am forwarding a copy of the Motion for Discovery of Grand Jury Transcripts to the Collin County District Attorney.

Thank you for your attention this matter.

Sincerely,

Steven Richard Miears
Lawyer

SRM/pd

Enclosures

Cc:  Collin County District Attorney  w/encl.      Via CMRRR # 7006 0100 0004 0137 3569

Cc:  Keith Gore

FILED 2007 JUL -3 PH 2: 13 HANNAH KUNKLE DISTRICT CLERK COLLIN COUNTY, TEXAS BY _____ DEPUTY

1113

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | § | IN DISTRICT COURT |
| VS. | § | 380TH JUDICIAL DISTRICT |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## APPLICATION FOR SUBPOENA DUCES TECUM

### TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the Defendant by and through his Attorney and makes application for the issuance of a subpoena duces tecum for the following named individual to compel his attendance as witness for the Defendant and the following named entity to compel the attendance of its representative as witness for the Defendant; exact location and vocation of said witnesses (where known), appears as follows, to-wit:

| WITNESS NAME: | DUCES TECUM: |
|---|---|
| 1. Editor-in-Chief<br>Dallas Morning News<br>508 Young Street<br>Dallas, TX 75202<br>214-977-8222 | All documents relating to the following:<br>a. All newspaper articles published relating to the murder of Sarah Ann Walker on 7/8/2006 until the present<br>b. All newspaper stories or articles relating to the arrest of Defendant Kosoul Chanthakoummane<br>c. All journalistic notes, be they typed, hand-written, stored digitally or on audio or video tape<br>d. All readers' responses, be they received in writing, e-mail, fax or audio recorded pertaining to the murder of Sarah Ann Walker and the arrest of Defendant Kosoul Chanthakoummane |
| 2. Circulation Manager<br>Dallas Morning News<br>508 Young Street<br>Dallas, TX 75202<br>214-977-8222 | All documents pertaining to the following:<br>a. Daily circulation records<br>b. Week-end circulation records<br>c. Average daily sales<br>d. Data on areas of circulation |

S. Miears

903-640-4963

(call with Booley)

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY _____ DEPUTY

1114

| | |
|---|---|
| 3. Editor-in-Chief<br>Star Telegram<br>400 W. 7th St.<br>Ft. Worth, TX  75102<br>817-390-7400 | All documents relating to the following:<br>a.  All newspaper articles published relating to the murder of Sarah Ann Walker on 7/8/2006 until the present<br>b.  All newspaper stories or articles relating to the arrest of Defendant Kosoul Chanthakoummane<br>c.   All journalistic notes, be they typed, hand-written, stored digitally or on audio or video tape<br>d.   All readers' responses, be they received in writing, e-mail, fax or audio recorded pertaining to the murder of Sarah Ann Walker and the arrest of Defendant Kosoul Chanthakoummane |
| 4. Circulation Manager<br>Star Telegram<br>400 W. 7th St.<br>Ft. Worth, TX  75102<br>817-390-7400 | All documents pertaining to the following:<br>a.  Daily circulation records<br>b.  Week-end circulation records<br>c.  Average daily sales<br>d.  Data on areas of circulation |
| 5. Editor-in-Chief<br>Star Community Newspapers<br>624 Krona Drive #170<br>Plano, TX  75074<br>972-398-4200<br><br>(Operating under the names of Lewisville Leader, Flower Mound Leader, Carrollton Leader, Southlake Times, Coppell Gazette, The Colony Leader, Celina Record, Frisco Enterprise, Little Elk Journal, Mesquite News, Rowlett Lakeshore Times, McKinney Courier-Gazette, Allen American, Plano Courier) | All documents relating to the following:<br>a.  All newspaper articles published relating to the murder of Sarah Ann Walker on 7/8/2006 until the present<br>b.  All newspaper stories or articles relating to the arrest of Defendant Kosoul Chanthakoummane<br>c.   All journalistic notes, be they typed, hand-written, stored digitally or on audio or video tape<br>d.   All readers' responses, be they received in writing, e-mail, fax or audio recorded pertaining to the murder of Sarah Ann Walker and the arrest of Defendant Kosoul Chanthakoummane |

| Circulation Manager<br>Star Community Newspapers<br>624 Krona Drive #170<br>Plano, TX 75074<br>972-398-4200<br><br>(Operating under the names of<br>Lewisville Leader, Flower Mound<br>Leader, Carrollton Leader, Southlake<br>Times, Coppell Gazette, The Colony<br>Leader, Celina Record, Frisco<br>Enterprise, Little Elk Journal,<br>Mesquite News, Rowlett Lakeshore<br>Times, McKinney Courier-Gazette,<br>Allen American, Plano Courier) | All documents pertaining to the following:<br><br>a. Daily circulation records<br>b. Weekend circulation records<br>c. Average daily sales<br>d. Data on areas of circulation |
| --- | --- |

Said persons are witnesses on behalf of the Defendant in the above entitled and numbered cause, and the testimony of said witness is material for the Defendant on trial in said case.

Applicant prays that said the subpoena be made returnable on the 30th day of August, 2007 at 8:30 a.m. in the 380th Judicial District Courtroom, Collin County Courthouse, McKinney, Texas. In the alternative, the documents subpoenaed duces tecum can be delivered to the Law Office of Steven Richard Miears at 211 North Main, Bonham, Texas on or before 8:30 a.m. on August 30 , 2007.

STEVEN RICHARD MIEARS
Attorney for Defendant

FILED: _____

HANNAH KUNKLE
District Clerk
Collin County, Texas
By:_____
      Deputy Clerk

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | § | IN DISTRICT COURT |
| VS. | § | 380TH JUDICIAL DISTRICT |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## APPLICATION FOR SUBPOENA DUCES TECUM

### TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the Defendant by and through his Attorney and makes application for the issuance of a subpoena duces tecum for the following named individual to compel his attendance as witness for the Defendant and the following named entity to compel the attendance of its representative as witness for the Defendant; exact location and vocation of said witnesses (where known), appears as follows, to-wit:

| WITNESS NAME: | DUCES TECUM: |
|---|---|
| 1. Kelly Reeves, General Sales Mgr.<br>WBAP News Talk 820<br>2221 East Lamar Blvd., Suite 300<br>Arlington, TX 76006<br>817-695-1820 | All documents relating to the following demographics:<br>a. Total of listening audience<br>b. Total of listening audience during news broadcast<br>c. Average educational level of listening audience<br>d. Average income level of listening audience<br>e. Area of coverage<br>f. Ethnic diversity of listening audience |
| 2. Neal Peden, Chief Engineer<br>WBAP News Talk 820<br>2221 East Lamar Blvd., Suite 300<br>Arlington, TX 76006<br>817-695-1820 | All documents relating to the following:<br>a. Total power out-put of station<br>b. Location of repeater stations and/or repeater towers |

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
2006 JUL -8 AM 8:
BY_____DEPUTY

1113

| 3. | Richard Frish, General Sales Mgr.<br>KLIF 570<br>General Sales Manager<br>3500 Maple Aev.<br>Dallas, TX 75219-1600 | All documents relating to the following demographics:<br>a. Total of listening audience<br>b. Total of listening audience during news broadcast<br>c. Average educational level of listening audience<br>d. Average income level of listening audience<br>e. Area of coverage<br>f. Ethnic diversity of listening audience |
|---|---|---|
| 4. | Jim Fisher, Program Director<br>KLIF 570<br>General Sales Manager<br>3500 Maple Aev.<br>Dallas, TX 75219-1600 | All documents relating to the following:<br>a. Total number of news broadcasts relating to the murder of Sarah Ann Walker, beginning 7/8/2006 until present<br>b. Total amount of air-time devoted to various aspects of the murder of Sarah Ann Walker<br>c. Total amount of air-time relating to the arrest of Defendant, Kosoul Chanthakoummane<br>d. Any and all listening audience responses to all broadcasts relating to the murder of Sarah Ann Walker, be the response in written form, fax, e-mails or recorded telephonic communications<br>e. Any and all reporters' notes, be they written or digitally recorded or stored on audio or video tape. |

Said persons are witnesses on behalf of the Defendant in the above entitled and numbered cause, and the testimony of said witness is material for the Defendant on trial in said case.

Applicant prays that said the subpoena be made returnable on the 30th day of August, 2007 at 8:30 a.m. in the 380th Judicial District Courtroom, Collin County Courthouse, McKinney, Texas. In the alternative, the documents subpoenaed duces tecum can be delivered to the Law Office of Steven Richard Miears at 211 North Main, Bonham, Texas on or before 8:30 a.m. on August 30, 2007.

_____

STEVEN RICHARD MIEARS
Attorney for Defendant

1119

FILED: _____

HANNAH KUNKLE
District Clerk
Collin County, Texas


By:_____
        Deputy Clerk

## CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN DISTRICT COURT |
| VS. | § | 380TH JUDICIAL DISTRICT |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

### APPLICATION FOR SUBPOENA DUCES TECUM

**TO THE CLERK OF SAID COURT, GREETINGS:**

Comes now the Defendant by and through his Attorney and makes application for the issuance of a subpoena duces tecum for the following named individual to compel his attendance as witness for the Defendant and the following named entity to compel the attendance of its representative as witness for the Defendant; exact location and vocation of said witnesses (where known), appears as follows, to-wit:

| WITNESS NAME: | DUCES TECUM: |
|---|---|
| 1. Chief Technical Engineer<br>NBC/KXAS-TV<br>3900 Barnett St.<br>Ft. Worth, TX 76103<br>817-654-6300 | All documents relating to the following:<br>a. Total power out-put of station<br>b. Location of repeater stations and/or repeater towers |
| 2. News Director<br>NBC/KXAS-TV<br>3900 Barnett St.<br>Ft. Worth, TX 76103<br>817-654-6300 | All documents relating to the following:<br>a. Total number of news broadcasts relating to the murder of Sarah Ann Walker, beginning 7/8/2006 until present<br>b. Total amount of air-time devoted to various aspects of the murder of Sarah Ann Walker<br>c. Total amount of air-time relating to the arrest of Defendant, Kosoul Chanthakoummane<br>d. Any and all viewer responses to all broadcasts relating to the murder of Sarah Ann Walker, be the response in written form, fax, e-mails or recorded telephonic communications<br>e. Any and all reporters' notes, be they written or digitally recorded or stored on audio or video tape |

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
DEPUTY
2007 JUL -6 AM 8 43

1121

| | |
|---|---|
| | f.  Copies of all broadcasts relating to the murder of Sarah Ann Walker, either in video or DVD form<br><br>g.  Copies of all broadcasts relating to the Defendant Kosoul Chanthakoummane, either in video or DVD form |
| 3.  Sales Manager<br>NBC/KXAS-TV<br>3900 Barnett St.<br>Ft. Worth, TX    76103<br>817-654-6300 | All documents relating to the following:<br>a.  Total of viewing audience<br>b.  Total of viewing audience during news broadcast<br>c.  Average educational level of viewers<br>d.  Average income level of viewers<br>e.  Area of coverage<br>f.  Ethnic diversity of viewers |
| 4.  Chief Technical Engineer<br>WFAA/ Channel 8 – TV<br>606 Young Street<br>Dallas, TX   75202<br>214-748-9631 | All documents relating to the following:<br>a.  Total power out-put of station<br>b.  Location of repeater stations and/or repeater towers |
| 5.  News Director<br>WFAA/ Channel 8 – TV<br>606 Young Street<br>Dallas, TX   75202<br>214-748-9631 | All documents relating to the following:<br>a.  Total number of news broadcasts relating to the murder of Sarah Ann Walker, beginning 7/8/2006 until present<br>b.  Total amount of air-time devoted to various aspects of the murder of Sarah Ann Walker<br>c.  Total amount of air-time relating to the arrest of Defendant, Kosoul Chanthakoummane<br>d. Any and all viewer responses to all broadcasts relating to the murder of Sarah Ann Walker, be the response in written form, fax, e-mails or recorded telephonic communications<br>e. Any and all reporters' notes, be they written or digitally recorded or stored on audio or video tape<br>f.  Copies of all broadcasts relating to the murder of Sarah Ann Walker, either in video or DVD form |

| | |
|---|---|
| | g. Copies of all broadcasts relating to the Defendant Kosoul Chanthakoummane, either in video or DVD form |
| 6. Sales Manager<br>WFAA/ Channel 8 – TV<br>606 Young Street<br>Dallas, TX  75202<br>214-748-9631 | All documents relating to the following:<br>a. Total of viewing audience<br>b. Total of viewing audience during news broadcast<br>c. Average educational level of viewers<br>d. Average income level of viewers<br>e. Area of coverage<br>f. Ethnic diversity of viewers |
| 7. Chief Technical Engineer<br>KDFW-TV / Fox 4 Dallas<br>400 N. Griffin St.<br>Dallas, TX<br>214-720-4444 | All documents relating to the following:<br>a. Total power out-put of station<br>b. Location of repeater stations and/or repeater towers |
| 8. News Director<br>KDFW-TV / Fox 4 Dallas<br>400 N. Griffin St.<br>Dallas, TX<br>214-720-4444 | All documents relating to the following:<br>a. Total number of news broadcasts relating to the murder of Sarah Ann Walker, beginning 7/8/2006 until present<br>b. Total amount of air-time devoted to various aspects of the murder of Sarah Ann Walker<br>c. Total amount of air-time relating to the arrest of Defendant, Kosoul Chanthakoummane<br>d. Any and all viewer responses to all broadcasts relating to the murder of Sarah Ann Walker, be the response in written form, fax, e-mails or recorded telephonic communications<br>e. Any and all reporters' notes, be they written or digitally recorded or stored on audio or video tape |

| | |
|---|---|
| | f. Copies of all broadcasts relating to the murder of Sarah Ann Walker, either in video or DVD form<br><br>g. Copies of all broadcasts relating to the Defendant Kosoul Chanthakoummane, either in video or DVD form |
| 9. Sales Manager<br>KDFW-TV / Fox 4 Dallas<br>400 N. Griffin St.<br>Dallas, TX<br>214-720-4444 | All documents relating to the following:<br>a. Total of viewing audience<br>b. Total of viewing audience during news broadcast<br>c. Average educational level of viewers<br>d. Average income level of viewers<br>e. Area of coverage<br>f. Ethnic diversity of viewers |
| 10. Chief Technical Engineer<br>CBS / 11 TV<br>5233 Bridge St.<br>Ft. Worth, TX 76103<br>817-451-1111 | All documents relating to the following:<br>a. Total power out-put of station<br>b. Location of repeater stations and/or repeater towers |
| 11. News Director<br>CBS / 11 TV<br>5233 Bridge St.<br>Ft. Worth, TX 76103<br>817-451-1111 | All documents relating to the following:<br>a. Total number of news broadcasts relating to the murder of Sarah Ann Walker, beginning 7/8/2006 until present<br><br>b. Total amount of air-time devoted to various aspects of the murder of Sarah Ann Walker<br>c. Total amount of air-time relating to the arrest of Defendant, Kosoul Chanthakoummane<br>d. Any and all viewer responses to all broadcasts relating to the murder of Sarah Ann Walker, be the response in written form, fax, e-mails or recorded telephonic communications<br>e. Any and all reporters' notes, be they written or digitally recorded or stored on audio or video tape |

| | |
|---|---|
| | f.  Copies of all broadcasts relating to the murder of Sarah Ann Walker, either in video or DVD form<br>g.  Copies of all broadcasts relating to the Defendant Kosoul Chanthakoummane, either in video or DVD form |
| 12.  Sales Manager<br>    CBS / 11 TV<br>    5233 Bridge St.<br>    Ft. Worth, TX  76103<br>    817-451-1111 | All documents relating to the following:<br>a.  Total of viewing audience<br>b.  Total of viewing audience during news broadcast<br>c.  Average educational level of viewers<br>d.  Average income level of viewers<br>e.  Area of coverage<br>f.  Ethnic diversity of viewers |

Said persons are witnesses on behalf of the Defendant in the above entitled and numbered cause, and the testimony of said witness is material for the Defendant on trial in said case.

Applicant prays that said the subpoena be made returnable on the 30th day of August, 2007 at  8:30  a.m. in the 380th Judicial District Courtroom, Collin County Courthouse, McKinney, Texas. In the alternative, the documents subpoenaed duces tecum can be delivered to the Law Office of Steven Richard Miears at 211 North Main, Bonham, Texas on or before 8:30 a.m. on August 30, 2007.

STEVEN RICHARD MIEARS
Attorney for Defendant

FILED: _____

HANNAH KUNKLE
District Clerk
Collin County, Texas

By:_____
        Deputy Clerk

1125

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | § | IN DISTRICT COURT |
| VS. | § | 380TH JUDICIAL DISTRICT |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## APPLICATION FOR SUBPOENA

### TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the Defendant by and through his Attorney and makes application for the issuance of a subpoena for the following named individual to compel his attendance as witness for the Defendant and the following named entity to compel the attendance of its representative as witness for the Defendant; exact location and vocation of said witnesses (where known), appears as follows, to-wit:

**WITNESS NAME:**

**Captain Randy Roland**
**McKinney Police Department**
**McKinney, Texas**

Said persons is a witness on behalf of the Defendant in the above entitled and numbered cause, and the testimony of said witness is material for the Defendant on trial in said case.

Applicant prays that said the subpoena be made returnable on the 30th day of August, 2007 at 8:30 a.m. in the 380th Judicial District Courtroom, Collin County Courthouse, McKinney, Texas.

STEVEN RICHARD MIEARS
Attorney for Defendant

FILED: _____

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS

By:_____
             Deputy Clerk

FILED

07 JUL 10 AM 11: 3

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY_____ DEPUTY

1125

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V. | § | COLLIN COUNTY, TEXAS |
| KOSOUL CHANTHAKOUMMANE | § | 380th JUDICIAL DISTRICT |

## MOTION FOR DISCOVERY OF GRAND JURY TRANSCRIPTS

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, KOSOUL CHANTHAKOUMMANE, defendant in the above styled

and numbered cause and makes this Motion for Discovery of Grand Jury Transcripts of

all witnesses who have testified before grand juries investigating this case pursuant to the

Fifth, Sixth and Fourteenth Amendments to the United States Constitution, article 1 §3,

10, 13 and 19 of the Texas Constitution, and article 39.14 of the Texas Code of Criminal

Procedure, and shows the following:

1. A defendant is entitled to disclosure of grand jury testimony upon a showing of "particularized need." *Dennis v. United States*, 84 U.S. 855, 874 (1966).

2. Defendant asserts that a "particularized need" exists justifying this motion for Production and inspection of grand jury testimony for the following reasons:

    1. It is a reasonable deduction that the state has utilized this grand jury, at least in part for discovery purposes. It is fundamentally unfair for the state to deny defendant equal access to this "storehouse of relevant fact."

    2. This grand jury testimony is available to the state, if so desired, to Impeach witnesses. It is fundamentally unfair for the state to deny defendant equal access to this material for the impeachment and cross-examination of witnesses.

    3. This grand jury testimony is available to refresh witnesses' recollection, if necessary. It is fundamentally unfair to deny defendant equal access to this potential refresher material.

4. The state has used this grand jury testimony to prepare this case. Defendant ought to have equal access to the material to prepare its defense.

5. The grand jury testimony contains exculpatory material discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963).

3. If the witnesses who testified before the grand jury testify for the state at trial, the state will be required to produce their grand jury testimony for purposes of cross examination. Tex.R.Evid. 614(f)(3). Because of the volume of material, counsel for defendant will be required to ask for a recess after each witness has testified if delivery is delayed until trial. Such recess will have to be granted "for a reasonable examination of such statement and for preparation for its us in trial." Tex.R.Evid. 614(d). Such recesses will be prejudicial to defendant and will slow down the trial.

4. The term of the grand jury that investigated this case has expired, thus rendering considerations of grand jury secrecy minimal.

5. The information contained in the grand jury transcripts is material and relevant to defendant's case.

6. The information contained in the grand jury transcripts is not privileged. However, even if privileged, the privilege must give way to the overriding interest defendant has in the following: (i) in preparing and presenting his case to preserve defendant's right to compulsory process; (ii) to confront and cross-examine witnesses against him, to assure effective assistance of counsel; (iii) to insure his rights to due process and to equal protection of the law; (iv)

guaranteed by the above cited provision of the United States and Texas Constitutions.

7. The making of this motion is well in advance of trial, in good faith and not for the purposes of delay.

8. The grand jury transcripts are presently in possession and exclusive control of the state, and are not otherwise procurable by the defendant through the exercise of due diligence. The undersigned counsel is unaware of the identity and number of all witnesses who have testified before the grand jury, and whose testimony has been transcribed, but he has filed motions to discover same.

9. Defendant requests that the grand jury transcripts of all witnesses who so testified before the grand jury in connection with this and related cases be provided to counsel at the earliest possible opportunity. In the alternative, counsel requests that such testimony be provided immediately following the direct examination, and before cross-examination, of all witnesses who testify for the state of Texas.

10. In the alternative, defendant moves that this court order an in-camera hearing to determine whether the grand jury transcripts requested by the defendant be disclosed.

WHEREFORE, PREMISES CONSIDERED, defendant respectfully prays that this Court grant this motion in all things.

1129

Respectfully submitted on this /0 day of July, 2007.

_____
STEVEN R. MIEARS
State Bar No. 14025600
211 North Main
P.O. Box 736
Bonham, TX  75418
903-640-4963
903-640-4964  FAX
E-mail:   stevenmiears@msn.com

Attorney for Defendant


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the /0 day of

_____July_____, 2007.

_____
Steven R. Miears

CAUSE NUMBER 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

**ORDER OF THE COURT ON THE DEFENDANT'S
MOTION FOR DISCOVERY OF GRAND JURY TRANSCRIPTS**

BE IT REMEMBERED, that on this day, came to be considered the above Motion for

Discovery of Grand Jury Transcripts. After consideration of the motion, it is the opinion of the

court that defendant's motion be:

GRANTED _____

DENIED _____ (to which action the Defendant excepts).

So Ordered on this the _____ day of _____, 2007.


_____
JUDGE PRESIDING

No. 380.82629.06

THE STATE OF TEXAS

vs.

Kosoul Chanthakoummane

..............................................

IN DISTRICT COURT

380 Judicial District

.....................County, Texas

.....................Term, 20......

To the Clerk of said Court: Keith Gore

..............................................  the defendant's attorney*

herein being duly sworn, states on oath that the testimony of the following named witnesses is material to the defense, and that the name, location, and vocation, where known, of each such witness, is as follows:

| Names of Witnesses | County of Residence | Exact Location | Vocation |
|---|---|---|---|
| John Roach | 210 S. McDonald McKinney Tx 75069 | Collin County District Attorney's Office Collin County Court House | Collin County District Attorney |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Wherefore ....he applies for subpoena to issue forthwith to compel attendance of the above named witness for the defense in this cause, such subpoena to be made returnable on the ..................23..........................day of .............July.................................................A.D., 20.07.

..........................................................
~~Defendant~~  Attorney for defendant

Subscribed and sworn to before me by ...............................................................................................

..........................................................., this the ...........................................................................day of

...................................................... A.D. 20...........

By ................................., Deputy.    District Clerk, Hannah Kunkle, .........................County, Texas.

*Strike out according to facts.

attorney to serve Keith Gore

1132

# STEVEN R. MIEARS, P.C.

**MAILING ADDRESS:**
P.O. Box 736
Bonham, TX 75418

Bonham, Texas Office:
211 North Main
Bonham, Texas 75418
903-640-4963
903-640-4964 FAX
E-mail: stevenmiears@msn.com

**Board Certified in Criminal Law**
**Texas Board of Legal Specialization**

April 11, 2007

**_Via CMRRR # 7007 1490 0001 7586 6492_**
Ms. Hannah Kunkle
District Clerk
Collin County Courthouse
2100 Bloomdale Rd., Suite 10353
McKinney, TX    75071

Re:    Cause No. 380-82629-06, The State of Texas vs. Kosoul Chanthakoummane

Dear Ms. Kunkle:

Enclosed is Defendant's Second Supplemental Notice of Experts that May Testify at Trial Under Article 39.14(b) of the Texas Code of Criminal Procedure, together with two copies, to be filed in the above referenced case.   Please return the file-marked copies to my office in the enclosed self-addressed, prepaid postage envelope provided for your convenience.

By copy of this letter, I am forwarding a copy of the Second Supplemental Notice of Experts to the Collin County District Attorney.

Thank you for your attention this matter.

Sincerely,

Steven Richard Miears
Lawyer

SRM/pd

Enclosures

Cc:    Collin County District Attorney  w/encl.    Via CMRRR # 7007 1490 0001 7586 7178

FILED

2007 APR 17 PM 12: 06

HANNAH KUNKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY_____DEPUTY

1133

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 380TH JUDICIAL DISTRICT |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

**SECOND SUPPLEMENTAL NOTICE OF EXPERTS THAT MAY TESTIFY AT TRIAL UNDER ARTICLE 39.14(b) OF THE TEXAS CODE OF CRIMINAL PROCEDURE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant, KOSOUL CHANTHAKOUMMANE, by and through his attorneys, and files this Supplemental Notice pursuant to Article 39.14 of the Texas Code of Criminal Procedure of expert witnesses that may testify on behalf of the Defendant in the above numbered and styled cause in addition to the expert witnesses designated by separate pleadings:

1.  Ed Wagoner, LPC
    Childhood Sexual Abuse Expert
    850 Gun Club Road
    Denison, TX   75021
    903-821-3489  Work
    903-464-9396  FAX

2.  Phyllis Kornfeld
    Prison Art Expert
    P.O. Box 1470
    Stockbridge, MA   01262
    413-298-3145

Respectfully submitted,

_____
STEVEN R. MIEARS

1134

State Bar No. 14025600
211 North Main
P.O. Box 736
Bonham, TX 75418
903-640-4963
903-640-4964 FAX
stevenmiears@msn.com


KEITH GORE
State Bar No. 24002164
2301 W. Virginia Parkway
McKinney, TX 75071
972-670-6288


COUNSEL FOR DEFENDANT


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Second Supplemental Notice of

Experts that May Testify at Trial has been served on counsel for the State by first class mail

on this __14__ day of August, 2007.

_____
COUNSEL FOR DEFENDANT

CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 380TH JUDICIAL DISTRICT |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

**SUPPLEMENTAL NOTICE OF EXPERTS THAT MAY TESTIFY AT TRIAL
UNDER ARTICLE 39.14(b) OF THE TEXAS CODE OF CRIMINAL
PROCEDURE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant, KOSOUL CHANTHAKOUMMANE, by and

through his attorneys, and files this Supplemental Notice pursuant to Article 39.14 of the

Texas Code of Criminal Procedure of expert witnesses that may testify on behalf of the

Defendant in the above numbered and styled cause in addition to the expert witnesses

designated by separate pleading:

    1.    David R. Senn, DDS, DABFO
           Director
           The University of Texas Health Science Center
           at San Antonio Dental School
           7703 Floyd Curl Drive, Mail Code 7979
           San Antonio, TX   78229-3900
           210-567-3379

    2.    Walter Y. Quijano, Ph.D.
           Psychologist
           2300 Holloman St.
           Conroe, TX  77301
           936-539-2226

    3.    R. Brad Fisher, Ph.D.
           Clinical Psychologist
           108 Sydney Green St.
           Chapel Hill, NC  27516
           919-968-4931

FILED

07 JUL 23 PM 1: 08

HANNAH KIRTLE
COLLIN COUNTY, TEXAS
BY_____ DEPUTY

1136

Respectfully submitted,

STEVEN R. MIEARS
State Bar No. 14025600
211 North Main
P.O. Box 736
Bonham, TX 75418
903-640-4963
903-640-4964 FAX
stevenmiears@msn.com


KEITH GORE
State Bar No. 24002164
2301 W. Virginia Parkway
McKinney, TX 75071
972-670-6288


COUNSEL FOR DEFENDANT


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice of Experts that May Testify

at Trial has been served on counsel for the State by first class mail on this _23_ day of

July, 2007.

COUNSEL FOR DEFENDANT

1137

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 380TH |
| | § | |
| v. | § | JUDICIAL DISTRICT COURT OF |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## STATE'S MOTION TO QUASH SUBPOENA

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, the State of Texas, by and through John R. Roach, Criminal District Attorney of Collin County, Texas, and moves this Court to quash the subpoena issued against John R. Roach in the above-styled cause. In support whereof, the State would show the following:

### I.

Kosoul Chanthakoummane ("Defendant") is charged with capital murder. The Court has set Defendant's pre-trial motions, including his motions to declare the death penalty unconstitutional, for a hearing on July 23, 2007. In his motions, Defendant complains the death penalty is administered in an arbitrary fashion due to the lack of a statewide mechanism to determine when to seek the death penalty against a particular defendant. In support of his motions, Defendant issued a subpoena against John R. Roach, Criminal District Attorney of Collin County, to testify at the hearing regarding his policies and practices in determining when to seek the death penalty.

### II.

Defendant is not entitled to the testimony of the Criminal District Attorney in this matter. The Supreme Court of the United States and the Court of Criminal Appeals have repeatedly held that prosecutorial discretion in capital cases is not unconstitutional. *See,*

1

*e.g., Gregg v. Georgia*, 428 U.S. 153, 199 (1976); *Crutsinger v. State*, 206 S.W.3d 607, 612 (Tex. Crim. App. 2006). In *Hankins v. State*, the Court of Criminal Appeals further held that a defendant is "not entitled to subpoena District Attorneys and question them regarding the exercise of their discretion which we have held to be constitutional." 132 S.W.3d 380, 388 (Tex. Crim. App. 2004).

III.

To be entitled to compulsory process, Defendant must show the witness's testimony would be both material and favorable to his defense. *Coleman v. State*, 966 S.W.2d 525, 528 (Tex. Crim. App. 1998). Because he is not entitled to question District Attorneys regarding their exercise of discretion in seeking the death penalty, Defendant cannot show the testimony of the Criminal District Attorney would be material and favorable to his defense in this case. *See Hankins*, 132 S.W.3d at 388.

**WHEREFORE, PREMISES CONSIDERED,** the State prays that this Court quash Appellant's subpoena of Criminal District Attorney John R. Roach in this cause.

Respectfully submitted,

Andrea L. Westerfeld
Assistant Criminal District Attorney
Collin County Courthouse
210 S. McDonald St., Suite 324
McKinney, Texas 75069
(972) 548-4323
Bar No. 24042143

1139

2

## CERTIFICATE OF SERVICE

I hereby certify that on the __19__ day of July, 2007, a true and correct copy of the State's Motion to Quash Subpoena was sent via facsimile to counsel for Defendant, the Honorable Steven R. Miears, (903) 640-4964.

Andrea L. Westerfeld
Assistant Criminal District Attorney

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | IN THE DISTRICT COURT OF |
|---|---|
| V. | COLLIN COUNTY, TEXAS |
| KOSOUL CHANTHAKOUMMANE | 380th JUDICIAL DISTRICT |

## <u>MOTION FOR CHANGE OF VENUE</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes Defendant, KOSOUL CHANTHAKOUMMANE, and brings this Motion for Change of Venue, pursuant to the guarantees of the U.S. Constitution's 5th, 6th, and 14 amendments to a fair trial, due process, a fair and impartial jury, and effective assistance of counsel and the corresponding rights under Article I of the Texas Constitution and Article 31.03 of the Texas Code of Criminal Procedure, and in support shows:

1.      Movant seeks a change of venue because there is so great a prejudice against Movant in this county that a fair and impartial trial cannot be obtained. Specifically, there has been extensive and pervasive pretrial publicity surrounding the allegations against the accused. The case of the murder of Ms. Walker has generated extensive press coverage locally, and in the surrounding counties of Collin County. This coverage has been in all forms of media including television, newspaper, radio, internet, and by word – of – mouth.   This coverage has included facts concerning the arrest of the defendant, and prejudicial remarks by law enforcement concerning the nature and quality of the evidence which the state will rely upon for conviction, and in furtherance of its effort to achieve a death sentence.

2.      Movant seeks a change of venue to an appropriate county in Texas. Movant suggests the Texas counties of El Paso, Travis or Bexar are counties in which venue is proper.

**MOTION FOR CHANGE OF VENUE – Page 1**

FILED

At _____ M

AUG 15 2007

HANNAH KUNKLE
Clerk District Court Collin County, Texas

1141

3. Movant's affidavit is attached along with those of two credible residents of this county.

4. The denial of Defendant's motion would amount to a violation of Defendant's right to a fair and impartial jury, effective assistance of counsel, due process, due course, and equal protection of the law, guaranteed by the United States and Texas Constitution.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays the Court set this matter for a hearing so that evidence may be presented, grant this Motion for Change of Venue, and upon the completion of the hearing grant this motion for change of venue to one of the suggested Counties in Texas.

Respectfully submitted,

Steven R. Miears, P.C.
Lawyer
211 N. Main
Bonham, Texas 75418
Tel: (903) 640-4963
Fax: (903) 640-4964

By:_____
STEVEN R. MIEARS
State Bar No. 14025600
Attorney for
KOSOUL CHANTHAKOUMMANE

## CERTIFICATE OF SERVICE

This is to certify that on August _15_ 2007, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Collin County, Texas, by certified mail, return receipt requested.

_____
STEVEN R. MIEARS

**MOTION FOR CHANGE OF VENUE – Page 2**

CAUSE NO. 380-82629-06

| | |
|---|---|
| THE STATE OF TEXAS | IN THE DISTRICT COURT |
| V. | COLLIN COUNTY, TEXAS |
| KOSOUL CHANTHAKOUMMANE | 380th JUDICIAL DISTRICT |

## AFFIDAVIT IN SUPPORT OF MOTION
## TO TRANSFER VENUE

BEFORE ME, the undersigned authority, on this day personally appeared _Richard_

_Weaver_____, who after being duly sworn stated:

"My name is _Richard Weaver_____. I am a resident of Collin

County, Texas, the county in which the case of the State of Texas v. Kosoul Chanthakoummane, Cause

No. 380-2629-06, is currently pending. I am aware of the contents of the defendant's motion for change of

venue in the above-entitled and numbered cause, and I state upon my oath that the defendant cannot

obtain a fair and impartial trial in Collin County, Texas. The defendant is unable to receive a fair trial due

to inflammatory and prejudicial newspaper articles and radio and television broadcasts concerning the

defendant that have created so great a prejudice against the defendant in Collin County, Texas, that a fair

trial is not possible. The fact of this prejudice has been revealed to me during conversation with other

residents of Collin County, Texas, who have also stated that the defendant cannot receive a fair and

impartial trial in Collin County, Texas.

                                                  _[signature]_
                                                            **Affiant**

SUBSCRIBED AND SWORN TO BEFORE ME on the _13th_ day of August, 2007.

DALE DRAKE
Notary Public
State of Texas
My Commission Expires
July 09, 2009

                          _[signature]_
                          Notary Public in and for
                          Collin County, Texas

143

CAUSE NO. 380-82629-06

| | |
|---|---|
| THE STATE OF TEXAS | IN THE DISTRICT COURT |
| V. | COLLIN COUNTY, TEXAS |
| KOSOUL CHANTHAKOUMMANE | 380th JUDICIAL DISTRICT |

**DEFENDANT'S AFFIDAVIT IN SUPPORT OF MOTION TO TRANSFER VENUE**

BEFORE ME, the undersigned authority, on this day personally appeared KOSOUL

CHANTHAKOUMMANE who after being duly sworn stated:

"I am the defendant in the above-entitled and numbered cause. I have read the foregoing Motion for

Change of Venue and swear that all of the allegations of fact contained therein are true and correct."

_Kosoul Chanthakoummane_

SUBSCRIBED AND SWORN TO BEFORE ME on the _____15_____ day of August, 2007.

REBECCA J. SEALS
Notary Public
STATE OF TEXAS
My Comm. Exp. 10/29/2010

Notary Public in and for
Collin County, Texas

**MOTION FOR CHANGE OF VENUE – Page 3**

1144

CAUSE NO. 380-82629-06

| | |
|---|---|
| THE STATE OF TEXAS | IN THE DISTRICT COURT |
| V. | COLLIN COUNTY, TEXAS |
| KOSOUL CHANTHAKOUMMANE | 380ᵗʰ JUDICIAL DISTRICT |

## AFFIDAVIT IN SUPPORT OF MOTION
## TO TRANSFER VENUE

BEFORE ME, the undersigned authority, on this day personally appeared ___MICHAEL___ ___D.___

___CURRAN_____, who after being duly sworn stated:

"My name is ___MICHAEL___ ___D.___ ___CURRAN___, I am a resident of Collin

County, Texas, the county in which the case of the State of Texas v. Kosoul Chanthakoummane, Cause

No. 380-2629-06, is currently pending. I am aware of the contents of the defendant's motion for change of

venue in the above-entitled and numbered cause, and I state upon my oath that the defendant cannot

obtain a fair and impartial trial in Collin County, Texas. The defendant is unable to receive a fair trial due

to inflammatory and prejudicial newspaper articles and radio and television broadcasts concerning the

defendant that have created so great a prejudice against the defendant in Collin County, Texas, that a fair

trial is not possible. The fact of this prejudice has been revealed to me during conversation with other

residents of Collin County, Texas, who have also stated that the defendant cannot receive a fair and

impartial trial in Collin County, Texas.

_____
                                    Affiant

SUBSCRIBED AND SWORN TO BEFORE ME on the ___14th___ day of August, 2007.

_____
Notary Public in and for
Collin County, Texas

Darla D Rencher
My Commission Expires
03/29/2011

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | IN THE DISTRICT COURT OF |
|---|---|
| V. | COLLIN COUNTY, TEXAS |
| KOSOUL CHANTHAKOUMMANE | 380th JUDICIAL DISTRICT |

**O R D E R**

On _____, 2007, came on to be considered KOSOUL CHANTHAKOUMMANE's Motion for Change of Venue, and said motion is hereby

(Granted and It is Hereby Ordered that Venue in this case is transferred to _____County, Texas.

(Denied)

_____

JUDGE PRESIDING

MOTION FOR CHANGE OF VENUE – Page 4

1146

CAUSE NO. 380-82629-06

| STATE OF TEXAS | § | IN THE 380TH |
| | § | |
| v. | § | JUDICIAL DISTRICT COURT OF |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## STATE'S OPPOSITION TO
## DEFENDANT'S MOTION FOR CHANGE OF VENUE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the State of Texas, by and through John R. Roach, Criminal

District Attorney of Collin County, Texas, and files its opposition to Defendant's Motion

for Change of Venue. In support whereof, the State has attached affidavits to this motion

controverting Defendant's assertions. Upon filing of controverting affidavits by the

State, this Court must conduct a hearing to determine whether Defendant can obtain a fair

trial in Collin County. *Dewberry v. State,* 4 S.W.3d 735, 744 (Tex. Crim. App. 1999).

WHEREFORE, PREMISES CONSIDERED, the State prays that this Court

hold a hearing on Defendant's motion and, upon hearing the testimony therein, deny

Defendant's Motion for Change of Venue.

Respectfully submitted,

Andrea L. Westerfeld
Assistant Criminal District Attorney
Collin County Courthouse
2100 Bloomdale Rd., Ste. 20004
McKinney, Texas 75071
(972) 548-4323
Bar No. 24042143

## CERTIFICATE OF SERVICE

I hereby certify that on the _28_ day of August, 2007, a true and correct copy of the State's Opposition to Defendant's Motion for Change of Venue was sent via first class mail to counsel for Defendant, the Honorable Steven R. Miears, 211 N. Main, Bonham, Texas 75418.

Andrea L. Westerfeld
Assistant Criminal District Attorney

STATE OF TEXAS

COUNTY OF COLLIN

## AFFIDAVIT

BEFORE ME, the undersigned official, on this day appeared Tim Wyatt, who is personally known to me, and first being duly sworn according to law upon his oath, deposed and said as follows:

My name is Tim Wyatt. I am over 18 years of age and I am fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

I am a public information officer for the Commissioners Court in Collin County, and am not in the employ of the Collin County District Attorney's Office. I have been a Collin County resident for the past 5 years. I have been a public information officer here since November 2006. Before that, I worked as a journalist for *The Dallas Morning News* for more than 20 years, and reported on eight (8) death penalty trials, dozens of capital murder trials in which the death penalty was not sought by prosecutors, dozens of other murder trials, and literally scores of other high-profile criminal trials in state and federal courts as a criminal justice beat reporter in Dallas and Collin counties since 1999. Many of those trials included extensive media coverage for a year or more before the cases were brought before a jury.

I reported extensively on the Lisa Diaz capital murder case from the discovery of the bodies of her two young daughters in 2003 to Ms. Diaz's trial in Collin County in which she was found not guilty by reason of insanity in 2004 by a Collin County jury. Despite months of intense media coverage from print, internet, radio and television regarding the drowning of the two little girls by their mother, I do not recall any mention of media coverage interfering with either the selection of an impartial jury, or the jury's final decision in that case.

I read and watched a lot of the coverage regarding Kosoul Chanthakoummane since his September 2006 arrest, and have noted that, as has been my experience with many criminal cases, media attention actually waned in the weeks and months following his indictment. I believe that there is no prejudice against Mr. Chanthakoummane in Collin County and that he can obtain a fair and impartial trial here. The coverage, on television, on the radio, and in print, has been informative and factually based. Moreover, that same coverage has also included the victim's father openly stating his opposition to the death penalty being sought against Mr.

Chanthakoummane. In my opinion, the media coverage has not generated a prejudice against Kosoul Chanthakoummane that would deprive him of a fair and impartial trial in Collin County.

Furthermore, I have reviewed the affidavits and articles attached to Kosoul Chanthakoummane's Motion for Change of Venue. The affidavits are conclusory and do not state facts demonstrating the existence of prejudice.

_____
Tim Wyatt

**SUBSCRIBED AND SWORN TO BEFORE ME**, on the 27th day of August, 2007, to certify which witness my hand and official seal.

_____
Notary Public

TERESA A. MERCER
Notary Public
STATE OF TEXAS
My Comm. Exp. 03/29/2011

1150

CAUSE NO. 380-82629-06

| STATE OF TEXAS | § | IN THE 380TH |
|---|---|---|
| | § | |
| v. | § | JUDICIAL DISTRICT COURT OF |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

## CONTROVERTING AFFIDAVIT

BEFORE ME, the undersigned authority personally appeared *Melva Edwards* affiant, who upon his oath says and deposes thusly:

"My name is *Melva Edwards*. I am a resident of Collin County, Texas. I am aware that prosecution is pending against **KOSOUL CHANTHAKOUMANE** for Capital Murder.

"I have been exposed to some of the pre-trial publicity.

"I have read the Motion for Change of Venue and affidavits of Richard Weaver and Michael Curran, and I find the conclusions expressed therein are incorrect. I believe that a fair and impartial jury can be impaneled in Collin County and the defendant can be insured a fair and impartial trial.

"Further, the population of Collin County has not been overly subjected to inflammatory or unfair publicity such that would create hostility toward the defendant and prevent him from receiving a fair trial. As such, defendant could receive a fair trial in Collin County."

*Melva Edwards*

AFFIANT

Sworn to and subscribed before me on this the ___ day of *August*, 2007.

*[signature]*
Notary Public in and for Collin County, TX
My Commission Expires 10 10 2007

LARA E. JARAMILLO
Notary Public
STATE OF TEXAS
My Comm. Exp. 10/10/2007

1151

CAUSE NO. 380-82629-06

| STATE OF TEXAS | § | IN THE 380TH |
| | § | |
| v. | § | JUDICIAL DISTRICT COURT OF |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

<u>CONTROVERTING AFFIDAVIT</u>

**BEFORE ME,** the undersigned authority personally appeared ~~_Ernestston Scott_~~ affiant, who upon his oath says and deposes thusly:

"My name is ~~_Ernestston Scott_~~. I am a resident of Collin County, Texas. I am aware that prosecution is pending against **KOSOUL CHANTHAKOUMANE** for Capital Murder.

"I have been exposed to some of the pre-trial publicity.

"I have read the Motion for Change of Venue and affidavits of Richard Weaver and Michael Curran, and I find the conclusions expressed therein are incorrect. I believe that a fair and impartial jury can be impaneled in Collin County and the defendant can be insured a fair and impartial trial.

"Further, the population of Collin County has not been overly subjected to inflammatory or unfair publicity such that would create hostility toward the defendant and prevent him from receiving a fair trial. As such, defendant could receive a fair trial in Collin County."

_____
AFFIANT

Sworn to and subscribed before me on this the 24th day of August, 2007.

_____
Notary Public in and for Collin County, TX
My Commission Expires 10-10-2007

LARA E. JARAMILLO
Notary Public
STATE OF TEXAS
My Comm. Exp. 10/10/2007

1152

CAUSE NO. 380-82629-06

| STATE OF TEXAS | § | IN THE 380TH |
| | § | |
| v. | § | JUDICIAL DISTRICT COURT OF |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | COLLIN COUNTY, TEXAS |

<u>CONTROVERTING AFFIDAVIT</u>

**BEFORE ME,** the undersigned authority personally appeared *Linda Gentry* affiant, who upon his oath says and deposes thusly:

"My name is *Linda Gentry*. I am a resident of Collin County, Texas. I am aware that prosecution is pending against **KOSOUL CHANTHAKOUMANE** for Capital Murder.

"I have been exposed to some of the pre-trial publicity.

"I have read the Motion for Change of Venue and affidavits of Richard Weaver and Michael Curran, and I find the conclusions expressed therein are incorrect. I believe that a fair and impartial jury can be impaneled in Collin County and the defendant can be insured a fair and impartial trial.

"Further, the population of Collin County has not been overly subjected to inflammatory or unfair publicity such that would create hostility toward the defendant and prevent him from receiving a fair trial. As such, defendant could receive a fair trial in Collin County."

_____
AFFIANT

Sworn to and subscribed before me on this the 24th day of August, 2007.

LARA E. JARAMILLO
Notary Public
STATE OF TEXAS
My Comm. Exp. 10/10/2007

_____
Notary Public in and/for Collin County, TX
My Commission Expires 10-10-2007

1153



www.sdma.com

919 Congress Avenue, Suite 1250
Austin, Texas 78701-3656
Tel: 512.481.8400  Fax: 512.481.8444

August 29, 2007

**VIA COURIER**

Ms. Hannah Kunkle
Collin County District Clerk
Collin County Courthouse
2100 Bloomdale Rd., Suite 10353
McKinney, TX 75071

Re:     Cause No. 380-82629-06; *The State of Texas v. Kosoul Chanthakoummane*; In the 380th Judicial District Court of Collin County, Texas
File No.: 3571.000001

Dear Ms. Kunkle:

Enclosed for filing with your records in the above-referenced cause are the originals and one copy of the following:

(1) KDFW and KXAS's Response and Objections to Subpoena of News Director;

(2) KDFW and KXAS's Response and Objections to Subpoena of Sales Managers;

(3) KDFW and KXAS's Response to Subpoena of Chief Technical Engineers;

(4) Affidavit of Sharla Alford regarding the business records for KXAS-TV; and

(5) Affidavit of Bruce Smith regarding the business records for KDFW FOX 4.

Please file the original with the Court and return a file-stamped copy of each with the courier making this delivery. All counsel of record have been served with copies of these documents either via hand delivery or regular mail.

1154

DL/2161648v1

Thank you for your assistance in this matter.

Sincerely,

Diane E. Janner
Legal Secretary
Sedgwick, Detert, Moran & Arnold LLP

/dej
Enclosures
cc:   Mr. Steven Miears
      Mr. Gregory S. Davis

CAUSE NO. 380-82629-06

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## AFFIDAVIT OF BRUCE SMITH

Before me, the undersigned notary public, personally appeared Bruce Smith, who being duly sworn upon his oath did depose and state as follows:

1.      "My name is Bruce Smith. I am over the age of 21 years and am fully competent to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct.

2.      "I am the Assistant News Director for NW Communications of Texas, Inc., on behalf of its television station KDFW FOX 4 ("KDFW") in Dallas, Texas, and, in that capacity, I prepared the attached materials.

3.      "Attached hereto as Exhibit A is a true and correct copy of the KDFW FOX 4 broadcasts relating to the murder of Sarah Ann Walker and/or the arrest of Kosoul Chanthakoummane from July 8, 2006 (hereinafter "the broadcasts"). This DVD is kept by KDFW FOX 4 in the regular course of business, and it was the regular course of business of KDFW FOX 4 for an employee or representative of KDFW FOX 4, with knowledge of the act, event, condition, opinion or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The record attached hereto is the original or an exact duplicate of the original reports that aired since July 8, 2006."



At _____M

**FILED**

AUG 2 9 2007

Clerk District Court Coll___ County, Texas
By _____

1155

4. "Attached as Exhibit B is the document relating to the total power out-put of the station as requested in the Criminal Subpoena served on KDFW-TV/Fox 4 Dallas Chief Technical Engineer in Cause No. 380-82629-06.

5. "Attached as Exhibit C is the area of coverage map for KDFW as requested in the Criminal Subpoena served on the Sales Manger for KDFW-TV/Fox 4 Dallas in Cause No. 380-82629-06.

6. "The attached materials are a full and accurate representation of what KDFW believes to be the nonprivileged, nonproprietary information it possesses in response to the three subpoenas it received in the case: *The State of Texas v. Chanthakoummane, Kosoul*, Cause NO. 380-82629-06. Any remaining information requested either does not exist or is proprietary or confidential information that KDFW is not permitted to disclose and that is held by a third party.

Further Affiant sayeth not."

Bruce Smith

STATE OF TEXAS     §
                    §
COUNTY OF DALLAS    §

Subscribed and sworn before me on this ___28th___ day of ___August___, 2007.

*(Notary seal: MARY F. KNIGHT, My Commission Expires July 28, 2011)*

_____
Notary Public For the State of Texas

MARY F. KNIGHT
[Typed/Printed Name]

My Commission Expires: _July 28, 2011_

**Affidavit of Bruce Smith**

Page 2 of 2

1157

# EXHIBIT "A"

# EXHIBIT "B"



**Callsign:** KDFW     **Service:** TV     **Community:** DALLAS, TX, US

**Licensee:** KDFW LICENSE, INC.

**Channel:** 4     **Offset:** Plus

**Specified Channel:** 4     **Max HAAT:** 550 m

**File No.:** BLCT-19900611KE     **Cutoff Date:**     **Dom. Status:** LIC

**Facility ID:** 33770     **Application ID:** 149434     **ASRN:**

| | | | | |
|---|---|---|---|---|
| **Latitude:** | N | 32° | 35 ' | 6 " |
| **Longitude:** | W | 96° | 58 ' | 41 " |

**ERP:** 100 kw
**HAAT:** 511 m
**RCAMSL:** 703 m
**RCAGL:** 456 m
**Zone:** Not in a Border Zone

**Antenna:**
Non-DA
**Beam Tilt:** Yes     **Electrical Deg:** 1

**Polarization:** Circular     **Rotation:**
**Antenna ID:** 35724     **Make:** DIE     **Model:** TDM-7A4 C

---

**Callsign:** KDFW     **Service:** DT     **Community:** DALLAS, TX, US

**Licensee:** KDFW LICENSE, INC.

**Channel:** 4     **Offset:**

**Specified Channel:** 35     **Max HAAT:** 550 m

**File No.:** BLCDT-19981117KF     **Cutoff Date:**     **Dom. Status:** LIC

**Facility ID:** 33770     **Application ID:** 277246     **ASRN:** 1011407

**Latitude:**     N     32°     35 '     6 "

1160

**Longitude:** W 58 ' 41 "

**ERP:** 857 kw
**HAAT:** 510 m
**RCAMSL:** 703 m
**RCAGL:** 456 m
**Zone:** Not in a Border Zone

**Antenna:**
Directional
**Beam Tilt:** Yes          **Electrical Deg:** 1

**Polarization:**          Elliptical          **Rotation:** 0
**Antenna ID:** 38940          **Make:** AND          **Model:** ATW22H4-ESC1-35S

**Antenna Pattern for the Directional Antenna:**

Directional antenna relative field values do not include clockwise rotation, if shown above.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 0° | 0.9 | 10° | 0.89 | 20° | 0.87 | 30° | 0.86 | 40° | 0.87 | 50° | 0.89 |
| 60° | 0.92 | 70° | 0.96 | 80° | 0.99 | 90° | 1 | 100° | 0.98 | 110° | 0.93 |
| 120° | 0.85 | 130° | 0.74 | 140° | 0.62 | 150° | 0.52 | 160° | 0.43 | 170° | 0.39 |
| 180° | 0.38 | 190° | 0.4 | 200° | 0.45 | 210° | 0.52 | 220° | 0.62 | 230° | 0.73 |
| 240° | 0.83 | 250° | 0.91 | 260° | 0.96 | 270° | 0.98 | 280° | 0.98 | 290° | 0.97 |
| 300° | 0.93 | 310° | 0.91 | 320° | 0.9 | 330° | 0.9 | 340° | 0.91 | 350° | 0.91 |

Additional Azimuths:

Please send comments via standard mail to the Federal Communications Commission, Consumer and Governmental Affairs Bureau, 445 12th Street, S.W., Washington, D.C., 20554. Questions can also be answered by calling the FCC's National Call Center, toll free, at 1-888-Call FCC (1-888-225-5322).

Federal Communications Commission          Phone: 1-888-CALL-FCC (1-888-225-5322)          - Privacy Policy
445 12th Street SW          TTY: 1-888-TELL-FCC (1-888-835-5322)          - Website Policies & Notices
Washington, DC 20554          Fax: 1-866-418-0232          - Required Browser Plug-ins
More FCC Contact Information...          E-mail: fccinfo@fcc.gov          - Freedom of Information Act

# EXHIBIT "C"


## Audio and Video Divisions

**Contour Maps**

FM and TV Service



(202)-418-2700    FCC > MB > Audio Division - Video Division    FM Query    TV Query

# Service Area on a Tiger Census Map



| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | COLLIN COUNTY, TEXAS |
| v. | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## AFFIDAVIT OF SHARLA ALFORD

Before me, the undersigned notary public, personally appeared Sharla Alford, who being duly sworn upon her oath did depose and state as follows:

1. "My name is Sharla Alford, I am of sound mind, capable of making this affidavit, over the age of 21 years and personally acquainted with the facts herein stated:

2. "I am the Custodian of Records for NBC Subsidiary (KXAS-TV), a Division of Station Ventures Operations, LP ("KXAS") and I am responsible for responding to the Criminal Subpoenas issued in the above-referenced matter. I have the authority to certify the DVD of the requested footage and copies of it. I prepared the attached materials to this Affidavit."

3. "Attached hereto as Exhibit A is a true and correct copy of the KXAS-TV broadcasts relating to the murder of Sarah Ann Walker and/or the arrest of Kosoul Chanthakoummane from July 8, 2006 (hereinafter "the Broadcasts"). This DVD is kept by KXAS-TV in the regular course of business, and it was the regular course of business of KXAS-TV for an employee or representative of KXAS-TV, with knowledge of the act, event, condition, opinion or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The record attached hereto is the original or an exact duplicate of the original reports that aired since July 8, 2006."

FILED

At _____ M

AUG 29 2007

Clerk District Court, Collin County, Texas

By _____

1104

4. "Attached as Exhibit B are the viewer responses to the Broadcasts that were received by KXAS-TV as requested in the Criminal Subpoena served on KXAS-TV's News Director in Cause No. 380-82629-06.

5. "Attached as Exhibit C is the document relating to the total power out-put of the station as requested in the Criminal Subpoena served on KXAS-TV's Chief Technical Engineer in Cause No. 380-82629-06.

6. "Attached as Exhibit D is the area of coverage map for KXAS-TV as requested in the Criminal Subpoena served on the Sales Manger KXAS-TV Dallas in Cause No. 380-82629-06.

7. "The attached materials are a full and accurate representation of what KXAS believes to be the nonprivileged, nonproprietary information it possesses in response to the three subpoenas it received in the case: *The State of Texas v. Chanthakoummane, Kosoul*, Cause No. 380-82629-06. Any remaining information requested either does not exist or is proprietary or confidential information that KXAS is not permitted to disclose and that is held by a third party.

Further Affiant sayeth not."

Sharla Alford, Executive Assistant
NBC Subsidiary (KXAS-TV), A Division of
Station Venture Operations, L.P.

STATE OF TEXAS            §
                         §
COUNTY OF DALLAS         §

Subscribed and sworn before me on this ___28___ day of ___Aug___, 2007.

_____
Notary Public For the State of Texas

_____
DON LOGAN
[Typed/Printed Name]

My Commission Expires: ___5-1-08___

DON LOGAN
Notary Public, State of Texas
My Commission Exp. 05-01-2008

# EXHIBIT "A"

1167

# EXHIBIT "B"



**NBC 5/KXAS-TV**
FORT WORTH/DALLAS

3900 Barnett Street   Fort Worth, Texas 76103   Switchboard 817/429-5555
A Television Station of National Broadcasting Company, Inc.

August 17, 2007

To Whom It May Concern:

I did a computer search of all viewer emails from July 2006 through December 2006. I
used the following search words:
  Sarah Ann Walker
  Sarah Anne Walker
  Chanthakoummane
  Real estate murder
  Display home murder
  Murder
  Sales agent
  Killed
  Walker

Attached are printouts of all emails found related to the subpoena request.

Eileen Wissore

## Wissore, Eileen (NBC Universal)

**From:** Marilyn Coulonge [mcoulonge@hhomesltd.com]

**Posted At:** Tuesday, July 11, 2006 3:24 PM

**Conversation:** Murder of Sales Agent

**Subject:** Re: Murder of Sales Agent

Please use discretion and caution in your description of the circumstances faced by sales agents in our jobs. Those of us in the home sales and real estate industries, who wait, often alone, for clients, would appreciate that you do not emphasize how vulnerable we are. Trust me - we know. Some conditions surrounding the current tragedy suggest that this one may not have been a random killing, but there are many other unbalanced people who may be looking for a new way to select victims. Please don't help them target us. Thank you.

## Wissore, Eileen (NBC Universal)

**From:** Tricia Moore [tmoore@etconline.net]
**Posted At:** Monday, July 17, 2006 1:16 PM
**Conversation:** Sarah Anne Walker
**Subject:** Sarah Anne Walker

I missed the report you aired on Friday 7/14 on the 10PM news. Will you upload it to your website?
Thanks!

**tricia l. moore, CTC**
director of meetings, events & incentives
etc group
1112 e. copeland rd., ste-400
arlington, tx 76011
(817) 462-0114 direct
(972) 571-9199 mobile

1171

## Wissore, Eileen (NBC Universal)

**From:** Trae Gardner [trae@traegardner.com]
**Posted At:** Monday, July 17, 2006 11:35 AM
**Conversation:** Realtor Killed in McKinney
**Subject:** Realtor Killed in McKinney

To Whom It May Concern

I wanted to submit something that might be of interest to you. I am a Realtor here in North Texas. I had come up with a new way of showing off my clients homes. It is with an Network/IP Camera. People from all over the world can see inside someone's listed property while setting at their own computer. It has worked great.

After seeing the story of a fellow Realtor being killed in the model home, I realized that this technology would have helped the police find the killer and see exactly what took place. I have a demo camera set up for my clients to see at In Home Camera When it ask for Username: <u>guest</u> Password: "<u>leave blank</u>" This camera can record video as well as audio. It has a motion sensor on the camera as well. It doesn't cost that much, but would be of great benefit to builders and employees safety in the homes.

Let me know if you would care to talk about this. You can reach me at the numbers below.

**All The Best,**

**Trae Gardner**
**Stonebridge Realty Group**
**(O) 214-245-5289**
**(Cell) 214-707-8723**

**Get 100 Open House Viewings A Day**



Subscribe to Our Blog

Jul 12, 2006
**Please Help The Sarah Anne Walker Family**
from DFW Real Estate Advice

🔊 **Subscribe now**

**Get Pre-qualified for Financing Here:**
*Jon Rutherford* 214-731-0109 ext.244

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and its attachments, if any, destroy any hard copies you may have created and notify me immediately.

1172

## Wissore, Eileen (NBC Universal)

| | |
|---|---|
| **From:** | Rob&Cathy [scamboa@comcast.net] |
| **Posted At:** | Tuesday, July 18, 2006 12:14 AM |
| **Conversation:** | Sales Agent Murder |
| **Subject:** | Sales Agent Murder |

I amhaving a difficult time finding any recent news or developements on this case. Can you send a linkor an update as rho what they are looking for? Last I heard it may be a jelous woman or the dating online.

Thank you,

Cathy Hudson

**Wissore, Eileen (NBC Universal)**

**From:** bbruce@wildblue.net
**Posted At:** Monday, July 31, 2006 7:28 PM
**Conversation:** Sarah Walker/Slain Sales Woman

**Subject:** Sarah Walker/Slain Sales Woman

TWIMC,

My name is Brandy Bruce and I am wondering if NBC 5 heard anything about Sarah Walker's murderer. Was he/she ever caught, prosecuted etc.

My husband and I knew Sarah and today were told that a woman from CA. was in fact the murderer. She was the ex-wife of a man that Sarah had met on line and dated. She was caught by trying to sell Sarah's Rolex watch at a pawn shop in CA.

Does NBC5 know if there is any truth behind this or is it a vicious rumor?
Or did NBC5 let the story go after Sarah's funeral?

I watch channel 5 news religiously, regardless of whether or not there is any info on Sarah. But I think that I am not the only woman out there wondering if someone has been apprehended for the most violent crime.

Please email me back any information you may have.

Thank you,

BBruce

**Wissore, Eileen (NBC Universal)**

From: Steve Nichols [steve@stevenichols.com]
Posted At: Tuesday, August 22, 2006 11:23 AM
Conversation: Sarah Walker Murder

Subject: Sarah Walker Murder

I just wanted to pass on some general information. It seems the neighborhood which Sarah sold has 100 to 125 homes. The problem is only about 5 have anyone living in them. It seems investors from groups out of Vegas, National Basketball Association and others invested in the area. The problem is that the area is not seeing the rapid inflation as they were led to believe. This along with the builder not developing the area as fast as promised has led to investor frustration. Several of the investors have apparently had to file for bankruptcy as a result of this investment. The value of the combined investment in the neighborhood would be $25,000,000+. I believe this is a stronger motive due to the simple fact that phone and security lines were cut at the model over a simple emotional rage. The average person with emotional range is a poor planner.

Steve Nichols
Steve Nichols Appraisal Services, Inc.
(972) 733-0505 O
(972) 733-1897 F

1

# EXHIBIT "C"

Frequency (MHz):  76.0 - 82.0

Carrier Frequency (MHz):  77.26 Visual    81.76 Aural

Channel:   5

Hours of Operation: Unlimited

Main Studio Address:

     TX-3900 BARNETT STREET, FORT WORTH

Transmitter location (address or description):

     1204 W. BELTLINE ROAD, CEDAR HILL, TEXAS

Transmitter: Type accepted.  See Sections 73.1660, 73.1665 and 73.1670
     of the Commission's Rules.

Antenna type: (directional or non-directional): Non-directional

   Desc: DIELECTRIC TDM-7A5(S)

   Beam Tilt:       .70 degrees electrical

   Major lobe directions (degrees true): Not Applicable

Antenna coordinates: North Latitude:  32 35 15.0
               West Longitude:  96 57 59.0

                       Visual

Transmitter output power . . . . . . . :  39.8 kW
                               16.0 dBk

Maximum effective radiated power (peak):   100 kW
                               20.0 dBk

Height of radiation center above ground . . . . :    456.0 Meters

Height of radiation center above mean sea level :    703.0 Meters

Height of radiation center above average terrain:    514.0 Meters

Overall height of antenna structure above ground (including obstruction
     lighting, if any) . . . . . . . :    469.0 meters

1177

EXHIBIT "D"

1178



PREDICTED DTV COVERAGE CONTOURS
DALLAS – FORT WORTH TV MARKET
du Treil, Lundin & Rackley, Inc. Sarasota, Florida

KLDT – Lake Dallas, TX (41 dBu)

KMPX – Decatur, TX (41 dBu)

KHSX – Irving, TX (41 dBu)

KDTX – Dallas, TX (41 dBu)

KDTX – Dallas, TX (41 dBu)

KTRA – Decatur, TX (41 dBu)

KDFI – Dallas, TX (41 dBu)

KTVT – Fort Worth, TX (41 dBu)

WFAA – Dallas, TX (36 dBu)

KDFW – Dallas, TX (41 dBu)

KXAS – Fort Worth, TX (41 dBu)

KUVN – Garland, TX (41 dBu)

KTAQ – Greenville, TX (41 dBu)

CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## KDFW AND KXAS'S RESPONSE TO SUBPOENA
## OF CHIEF TECHNICAL ENGINEERS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KDFW-TV/FOX 4 Dallas and NBC/KXAS-TV and files this their Response

to the Criminal Subpoena served on their Chief Technical Engineers and in support thereof would

respectfully show the Court as follows:

Criminal Defendant Kosoul Chanthakoummane served a Criminal Subpoena to both KDFW

and KXAS requesting the following materials from their Chief Technical Engineers:

(1)  Documents concerning total power out-put of station

(2)  Location of repeater stations and/or repeater towers

In conjunction with this Response, both KDFW and KXAS are submitting an affidavit with the

information concerning their total power out-put of each station.  Neither station has a repeater

station or repeater tower.



At _____ M

FILED

AUG 2 9 2007

HAND DELIVERED
Clerk District Court Collin County, Texas
By _____

1160

Respectfully submitted,

SEDGWICK, DETERT, MORAN & ARNOLD, LLP


By: _____
       Laura Lee Prather
       State Bar No. 16234200

919 Congress Ave., Suite 1250
Austin, Texas 78701
Telephone: (512) 481-8400
Telecopier: (512) 481-8444

ATTORNEYS FOR KDFW-TV/FOX 4 DALLAS AND
NBC/KXAS-TV

## CERTIFICATE OF SERVICE

    I certify that, on August 29, 2007 I served a true and correct copy of the foregoing Response to Criminal Subpoena of Chief Technical Engineers was served on the following:

| | |
|---|---|
| Steven Richard Miears | Gregory Davis |
| 211 N. Main | Attn: District Attorney's Office |
| P.O. Box 736 | 210 S. McDonald, Suite 324 |
| Bonham, TX, 75418 | McKinney, TX 75069 |
| *Via Hand Delivery* | *Via Regular Mail* |


_____
Laura Lee Prather

CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | COLLIN COUNTY, TEXAS |
| v. | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## KDFW AND KXAS'S RESPONSE AND OBJECTIONS
## TO SUBPOENA OF SALES MANAGERS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KDFW-TV/FOX 4 Dallas and NBC/KXAS-TV and files this their Response

and Objections to the Criminal Subpoena served on their Sales Managers and in support thereof

would respectfully show the Court as follows:

Criminal Defendant Kosoul Chanthakoummane served a Criminal Subpoena to both KDFW

and KXAS requesting the following materials from their Sales Managers:

(1)     Documents concerning total of viewing audience.

(2)     Documents concerning total of viewing audience during news broadcast.

(3)     Documents concerning average educational level of viewers.

(4)     Documents concerning average income level of viewers.

(5)     Documents concerning area of coverage.

(6)     Documents concerning ethnic diversity of viewers.

In conjunction with this Response, both KDFW and KXAS are submitting an affidavit with

an area of coverage map which satisfies item (5) above. With regard to the remainder of the requests

(items 1-4 and 6), KDFW and KXAS object to these requests as overly broad, unduly burdensome

and nonsensical. For instance, there is no time period specified for any of the information the

criminal defendant is seeking, and, read literally, he is asking for all of these materials since the

FILED

AUG 2 9 2007

Clerk District ... ... ...
By _____ Texas



1182

inception of the stations. Additionally, much of the information requested is not kept in the ordinary course of business in the manner indicated by the subpoena. As an example, the "total of viewing audience" cannot be calculated without further specificity and would likely include overlap because an individual viewer could watch both a 5 p.m. and a 10 p.m. newscasts and would be counted in a duplicative fashion if the information were tallied the way the request is posed. Furthermore, the information requested is confidential, proprietary information held by a third party, and neither KDFW nor KXAS is permitted to disclose the information requested, to the extent it even exists.

Respectfully submitted,

SEDGWICK, DETERT, MORAN & ARNOLD

By: _____
Laura Lee Prather
State Bar No. 16234200

919 Congress Avenue, Suite 1250
Austin, Texas 78701
Telephone:     (512) 481-8400
Telecopier:     (512) 481-8444

ATTORNEYS FOR KDFW-TV/FOX 4 DALLAS
AND NBC/KXAS-TV

## CERTIFICATE OF SERVICE

I certify that, on August 29, 2007 I served a true and correct copy of the foregoing Response and Objections to Subpoena on Sales Managers on the following:

Steven Richard Miears
211 N. Main
P.O. Box 736
Bonham, TX, 75418
*Via Hand Delivery*

Gregory Davis
Attn: District Attorney's Office
210 S. McDonald, Suite 324
McKinney, TX 75069
*Via Regular Mail*

_____
Laura Lee Prather

1183

CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | COLLIN COUNTY, TEXAS |
| v. | § | |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## KDFW AND KXAS'S RESPONSE AND OBJECTIONS
## TO SUBPOENA OF NEWS DIRECTORS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KDFW-TV/FOX 4 Dallas and NBC/KXAS-TV and files this their Response

and Objections to the Criminal Subpoena served on their News Directors and in support thereof

would respectfully show the Court as follows:

Criminal Defendant Kosoul Chanthakoummane served a Criminal Subpoena to both KDFW

and KXAS requesting the following materials from their News Directors:

(1) Total number of news broadcasts relating to the murder of Sarah Ann Walker, beginning 7/8/2006 until present.

(2) Total amount of air-time devoted to various aspects of the murder of Sarah Ann Walker.

(3) Total amount of air-time relating to the arrest of Defendant, Kosoul Chanthakoummane.

(4) Any and all viewer responses to all broadcasts relating to the murder of Sarah Ann Walker, be the response in written form, fax, emails or recorded telephonic communications.

(5) Any and all reporter's notes, be they written or digitally recorded or stored on audio or video tape.

(6) Copies of all broadcasts relating to the murder of Sarah Ann Walker, either in video or DVD form.

(7) Copies of all broadcasts relating to the Defendant Kosoul Chanthakoummane, either in video or DVD form.

FILED

At _____ M

AUG 29 2007    1196

Clerk District Court Collin County, Texas

In conjunction with this Response, both KDFW and KXAS are submitting an affidavit with a DVD of all of the broadcasts that aired on their stations concerning the murder of Sarah Ann Walker and/or the arrest of Defendant, Kosoul Chanthakoummane. This DVD is produced in response to items (6) and (7) above, and with this DVD, defense counsel can determine the answers to (1), (2), and (3) above. Additionally, KXAS is including with its affidavit viewer responses it received concerning the broadcasts. KDFW does not have any viewer responses. Neither KDFW nor KXAS will be producing anything in response to item (5) above because there can be no showing of relevance or materiality for any reporter's notes in this matter. *See Coleman v. State*, 966 S.W.2d 525 (Tex. Crim. App. 1998)(the Texas Court of Criminal Appeals applied a relevancy and materiality test to determine whether the reporter's testimony should be compelled). In *Coleman*, as here, the reporters were not first hand witnesses to the alleged crime and, therefore, the "relevance and importance" of their testimony could not be shown. As a result, the subpoena issued to them was properly quashed. *Id.* at 528. KDFW and KXAS also believe their reporter's notes to be protected by the First Amendment to the United States Constitution and Article 1, Section 8 of the Texas Constitution[1]. *See, e.g., Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)(The United States Supreme Court recognized a qualified First Amendment privilege). Finally, it is believed that neither KDFW nor KXAS has any reporter's notes concerning this matter.

---

[1] The Texas Supreme Court and the Texas Court of Criminal Appeals both have recognized that Article I, Section 8 of the Texas Constitution provides greater protection for the press and speech than its federal counterpart. *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992); *Houston Chronicle Pub. Co. v. Shaver*, 630 S.W.2d 927 (Tex. Crim. App. 1982).

Respectfully submitted,

SEDGWICK, DETERT, MORAN & ARNOLD

By: _Laura Lee Prather_
        Laura Lee Prather
        State Bar No. 16234200

919 Congress Avenue, Suite 1250
Austin, Texas 78701
Telephone:   (512) 481-8400
Telecopier:   (512) 481-8444

ATTORNEYS FOR KDFW-TV/FOX 4 DALLAS
AND NBC/KXAS-TV

## CERTIFICATE OF SERVICE

I certify that, on August 29, 2007 I served a true and correct copy of the foregoing Response and Objections of Subpoena on News Directors on the following:

Steven Richard Miears
211 N. Main
P.O. Box 736
Bonham, TX, 75418
*Via Hand Delivery*

Gregory Davis
Attn: District Attorney's Office
210 S. McDonald, Suite 324
McKinney, TX 75069
*Via Regular Mail*

_Laura Lee Prather_
Laura Lee Prather

1186

2161079_1



## CANTEY HANGER LLP

A T T O R N E Y S

JOHN R. THOMPSON III
DIRECT: 817.877.2808
EMAIL: jthompson@canteyhanger.com
www.canteyhanger.com

BURNETT PLAZA, SUITE 2100
801 CHERRY STREET, UNIT #2
FORT WORTH, TEXAS 76102-6881
817.877.2800 – METRO: 817.429.3815
FAX: 817.877.2807

AME93 / 98238

August 29, 2007

**VIA HAND DELIVERY**

Hannah Kunkle, District Clerk
Collin County Courthouse
2100 Bloomdale Rd., Suite 10353
McKinney, TX 75071

RE:   Cause No. 380-82629-06; *The State of Texas v. Kosoul Chanthakoummane*; in
the 380th District Court, Collin County, Texas

Dear Ms. Kunkle:

Please find enclosed an original and one copy of Star Community Newspapers, David
Sorter, and Ken McEwen's Motion to Quash Defendant's Subpoena Duces Tecum to be filed
among the Court's papers in the above-referenced cause. Please file-mark the copy and
return it to me with the courier delivering same.

By copy of this letter I am serving the enclosed document on all counsel of record as
noted.

Thank you for your assistance with this matter.

Sincerely,

*John R. Thompson III*

John R. Thompson III

JRTIII:kag
Enclosure
clerk-01-kosoul.doc

**FILED**

2007 AUG 29 PM 2: 04

HANNAH KUNKLE
SOUTHLAKE
COLLIN COUNTY, TEXAS

1197

DALLAS   •   FORT WORTH   •   AUSTIN   •   SOUTHLAKE

MERITAS LAW FIRMS WORLDWIDE

Ms. Hannah Kunkle
August 29, 2007
Page 2

cc:     (with enclosure)

Steven Richard Miears                              VIA FACSIMILE (903) 640-4964 and
Law Offices of Steven Richard Miears              CM RRR # 7005 0390 0004 7471 1970
211 North Main
Bonham, Texas  75418

Collin County District Attorney                    VIA FACSIMILE (972) 548-4388 and
Collin County Government Center                    CM RRR # 7005 0390 0004 7471 1987
Annex A & B
210 S. McDonald Street
McKinney, Texas  75069

CAUSE NO. 380-82629-06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | COLLIN COUNTY, TEXAS |
| | § | |
| KOSOUL CHANTHAKOUMMANE | § | 380TH JUDICIAL DISTRICT |

## STAR COMMUNITY NEWSPAPERS, DAVID SORTER, AND KEN MCEWEN'S MOTION TO QUASH DEFENDANT'S SUBPOENA DUCES TECUM

TO THE HONORABLE JUDGE OF SAID COURT:

Star Community Newspapers ("Star"), David Sorter ("Sorter"), and Ken McEwen ("McEwen"), who are not parties to this matter, file this, their Motion to Quash Defendant's Subpoenas Duces Tecum, pursuant to article 24.08 of the code of criminal procedure and would respectfully show cause to the Court in support of this Motion as follows:

1.

On July 6, 2007, Sorter, the editor-in-chief of Star, was served with a subpoena duces tecum in the above captioned case requiring Sorter to appear in the 380th District Court of Collin County, Texas on August 30, 2007 at 8:30 a.m., and to produce at that time various documents, including the following:

a. All journalistic notes, be they typed, hand-written, stored digitally or on audio or video tape.[1]

---

[1] A true and correct copy of this subpoena duces tecum is attached hereto as Exhibit "A"

FILED
2007 AUG 29 PM 2:04
HANNAH KUNKLE
DISTRICT CLERK
COUNTY, TEXAS
BY
1189

On the same day, McEwen, the circulation manager for Star, was also served with a subpoena duces tecum in the same case, requiring McEwen to appear in the 380th District Court of Collin County, Texas on August 30, 2007 at 8:30 a.m., and to produce at that time all documents pertaining to daily circulation records, weekend circulation records, average daily sales, and data on areas of circulation regarding numerous publications.[2]

## 2.

Star and Sorter object to the portions of the subpoena that Defendant served on Sorter seeking all journalistic notes, be they typed, hand-written, stored digitally or on audio or video tape because the request is overly broad, indefinite in time, and unduly burdensome on Star and Sorter and because the Defendant has not met and cannot meet the initial burden of showing materiality of the information sought. *See Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998) (to secure information for trial, a defendant must make the necessary showing the relevance and importance of the information sought to the success of the defense); *Donald v. State*, 453 S.W.2d 825, 826 (Tex. Crim. App. 1969) (stating that a subpoena duces tecum must contain a definite time period). Further, the request is not limited to notes relating to articles or investigations regarding to the murder of Sarah Ann Walker, but rather encompasses all journalistic notes in Star or Sorter's possession, custody, or control.

1180

---

[2] A true and correct copy of this subpoena duces tecum is attached hereto as Exhibit "B."

Further, the requested documents are not material to the Defendant's case because there is no reasonable probability that journalistic notes that have nothing to do with the murder of Sarah Ann Walker will change the outcome of the trial or hearing. *See Luvano v. State*, 183 S.W.3d 918, 924-25 (Tex. App.---Eastland 2006, no pet.). A subpoena duces tecum must be based on a showing of materiality and relevance. *See Ealoms v. State*, 983 S.W.2d 853, 859 (Tex. App.---Waco, 1998, pet. ref'd). Materiality requires that the information directly impact the outcome of the case, as opposed to potentially providing helpful information. *See United States v.* Agurs, 427 U.S. 97, 109-10 (1976). The documents requested are not relevant or material to the Defendant's case because they include journalistic notes that have nothing to do with the murder of Sarah Ann Walker. Therefore, it is proper for this Court to quash the subpoena served on Sorter. *See Luvano*, 183 S.W.3d at 924-25; *Martin v. Darnell*, 960 S.W.2d 838, 840-41 (Tex. App.---Amarillo 1997, no pet.).

Star and Sorter request that the Court sustain these objections and quash the subpoena duces tecum to the extent it seeks journalistic notes that have nothing to do with the murder of Sarah Ann Walker. Star and Sorter are willing to produce journalistic notes regarding the murder of Sarah Ann Walker if they exist.[3]

---

[3] Based on an initial review, it appears that no such journalistic notes exist.

**3.**

Star and McEwen object to the subpoena that Defendant served on McEwen requesting all documents pertaining to daily circulation records, weekend circulation records, average daily sales, and data on areas of circulation on the grounds that it is overly broad, unduly burdensome, and seeks documents that are neither relevant nor material to the Defendant's case. Star has been in business for many years and the subpoena seeks all circulation records, weekend circulation records, average daily sales, documents pertaining to daily circulation records, and data on areas of circulation in Star's possession, custody, and control. In addition, the request is not limited to circulation records within the years surrounding Sarah Ann Walker's death.

Further, the information requested from McEwen is not material because it is highly unlikely that any circulation records that precede the death of Sarah Ann Walker could produce a favorable outcome in the Defendant's case. Therefore, this Court should quash the subpoena served on McEwen. *See Luvano*, 183 S.W.3d at 924-25; *Martin* 960 S.W.2d at 840-41.

Star and McEwen request that the Court sustain these objections and quash the subpoena duces tecum to the extent it seeks documents regarding circulation records, sales, and data on areas of circulation prior to the murder of Sarah Ann Walker. Star and McEwen are willing to produce audit reports from several months before Sarah Ann Walker's death to date.

1192

WHEREFORE, PREMISES CONSIDERED, Star, Sorter and McEwen pray that

this Honorable Court sustain the foregoing objections and grant this Motion to Quash, and

for any other further relief that it may be so justly entitled to in law or in equity.

Respectfully submitted,

BY: _____

JOHN R. THOMPSON III
State Bar No. 24027917
MARY HAZLEWOOD
State Bar No. 24050737

CANTEY HANGER LLP
Burnett Plaza, Suite 2100
801 Cherry Street, Unit #2
Fort Worth, TX 76102
817/877-2810
817/877-2807 - FAX

**ATTORNEYS FOR STAR
COMMUNITY NEWSPAPERS**

1153

## CERTIFICATE OF CONFERENCE

I hereby certify that on several occasions, including the 28th day of August, 2007, I attempted to confer with Steven Richard Miears, counsel for the Defendant herein, regarding the relief requested in this motion, but I have not been able to contact Mr. Miears and therefore presume that this motion is opposed. It is therefore presented to the Court for determination.

JOHN R. THOMPSON III

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Quash has, this 29th day of August, 2007, been served via facsimile transmission and certified mail, return receipt requested, on all parties of record as follows:

Steven Richard Miears
Law Offices of Steven Richard Miears
211 North Main
Bonham, Texas 75418

Via Facsimile (903) 640-4964 and
CM RRR 7005 0390 0004 7471 1970

Collin County District Attorney
Collin County Government Center
Annex A & B
210 S. McDonald Street
McKinney, Texas 75069

Via Facsimile (972) 548-4388 and
CM RRR 7005 0390 0004 7471 1987

JOHN R. THOMPSON III

1194

THE STATE OF TEXAS
CRIMINAL SUBPOENA    Duces Tecum

Cause 380-82629-06

THE STATE OF TEXAS                          v.   CHANTHAKOUMMANE,KOSOUL

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS      GREETINGS:

YOU ARE COMMANDED TO SUMMON EDITOR-IN-CHEIF/STAR        972/398-4200
                             COMMUNITY NEWSPAPERS
                             624 KRONA DRIVE #170
                             PLANO            TX 75074

to be and appear before the Honorable 380th District Court of Collin o
County to be held at the Court House thereof, in McKinney, in said
County, on the 30th day of  AUGUST   A.D. 2007, at  8:30 o'clock A.M.,
then and there to testify in behalf of the Defendant in the above
styled and numbered cause, now pending in said Court and there remain
from day to day and from term to term until discharged by due course
of law.  Said above named witness is further commanded to produce at
said time and place above set forth the following books, papers,
documents or other tangible things, to wit:
     ****
     *****SEE ATTACHED SHEET*****
     **
     IN THE ALTERNATIVE, THE DOCUMENTS SUBPOENAED DUCES TECUM CAN BE
     DELIVERED TO THE LAW OFFICE OF STEVEN RICHARD MIEARS AT 211
     NORTH MAIN, BONHAM, TEXAS ON OR BEFORE 8:30 A.M. ON AUGUST 30,
     2007.

Returnable the 30th day of  AUGUST   A.D. 2007  at  8:30 o'clock A.M.

Herein fail not, but of this writ make due return, showing how you have
executed the same.

Witness my official signature at McKinney, Texas this ___ day of

_____  Hannah Kunkle
                    Deputy   District Clerk, Collin County, Texas

Exhibit "A"

1195

Editor-in-Chief
Star Community Newspapers
624 Krona Drive #170
Plano, TX 75074
972-398-4200

(Operating under the names of
Lewisville Leader, Flower Mound
Leader, Carrollton Leader, Southlake
Times, Coppell Gazette, The Colony
Leader, Celina Record, Frisco
Enterprise, Little Elk Journal,
Mesquite News, Rowlett Lakeshore
Times, McKinney Courier-Gazette,
Allen American, Plano Courier)

All documents relating to the following:
a. All newspaper articles published relating to the murder of Sarah Ann Walker on 7/8/2006 until the present
b. All newspaper stories or articles relating to the arrest of Defendant Kosoul Chanthakoummane
c. All journalistic notes, be they typed, hand-written, stored digitally or on audio or video tape
d. All readers' responses, be they received in writing, e-mail, fax or audio recorded pertaining to the murder of Sarah Ann Walker and the arrest of Defendant Kosoul Chanthakoummane

# OFFICER'S RETURN

Came to hand _6th_ day of _July_, _2007_, at _2:00_ o'clock _P_ M,
and executed the _2nd_ day of _August_, _2007_, at _10:30_ o'clock _A_ M,
by delivering to the within named _Samantha Sawyer_ at _824 Stone 170 Elmo TX_
in _Collin_ County, Texas, in person, a true copy of this Subpoena.

FEES: $ _50_

_____
County, Texas

by: _William A. Bean_
_____

SEND TO: ATTORNEY FOR SERVICE
STEVEN RICHARD MIEARS


COURT PROCEEDINGS ARE SERIOUS MATTERS DESERVING OF THE HIGHEST STANDARDS
OF DIGNITY AND DECORUM. PLEASE DRESS APPROPRIATELY.

THE STATE OF TEXAS
CRIMINAL SUBPOENA    Duces Tecum

Cause 380-82629-06

THE STATE OF TEXAS                          v.  CHANTHAKOUMMANE,KOSOUL

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS      GREETINGS:

YOU ARE COMMANDED TO SUMMON CIRCULATION MANAGER/STAR      972/398-4200
                            COMMUNITY NEWSPAPERS
                            624 KRONA DRIVE #170
                            PLANO                TX 75074

to be and appear before the Honorable 380th District Court of Collin o
County to be held at the Court House thereof, in McKinney, in said
County, on the 30th day of  AUGUST   A.D. 2007, at  8:30 o'clock A.M.,
then and there to testify in behalf of the Defendant in the above
styled and numbered cause, now pending in said Court and there remain
from day to day and from term to term until discharged by due course
of law.  Said above named witness is further commanded to produce at
said time and place above set forth the following books, papers,
documents or other tangible things, to wit:
        ****
        *****SEE ATTACHED SHEET*****
        **
        IN THE ALTERNATIVE, THE DOCUMENTS SUBPOENAED DUCES TECUM CAN BE
        DELIVERED TO THE LAW OFFICE OF STEVEN RICHARD MIEARS AT 211
        NORTH MAIN, BONHAM, TEXAS ON OR BEFORE 8:30 A.M. ON AUGUST 30,
        2007.


Returnable the 30th day of  AUGUST   A.D. 2007  at  8:30 o'clock A.M.

Herein fail not, but of this writ make due return, showing how you have
executed the same.

Witness my official signature at McKinney, Texas this ___6___ day of

                                    Hannah Kunkle
                        Deputy   District Clerk, Collin County, Texas

**Exhibit "B"**

| Circulation Manager<br>Star Community Newspapers<br>624 Krona Drive #170<br>Plano, TX  75074<br>972-398-4200<br><br>(Operating under the names of<br>Lewisville Leader, Flower Mound<br>Leader, Carrollton Leader, Southlake<br>Times, Coppell Gazette, The Colony<br>Leader, Celina Record, Frisco<br>Enterprise, Little Elk Journal,<br>Mesquite News, Rowlett Lakeshore<br>Times, McKinney Courier-Gazette,<br>Allen American, Plano Courier) | All documents pertaining to the following:<br><br>a.  Daily circulation records<br>b.  Weekend circulation records<br>c.  Average daily sales<br>d.  Data on areas of circulation |
|---|---|

## OFFICER'S RETURN

Came to hand _6th_ day of _July_, _2007_, at _2:50_ o'clock _P_ M, and executed the _2nd_ day of _August_, _2007_, at _10:30_ o'clock _A_ M, by delivering to the within named _Samatha Sampson_ at _624 Room #170 Plano, Tx._ in _Collin_ County, Texas, in person, a true copy of this Subpoena.

FEES: $ _50.00_

_____ County, Texas

by: _William A. Brown_ _____

SEND TO: ATTORNEY FOR SERVICE
STEVEN RICHARD MIEARS

COURT PROCEEDINGS ARE SERIOUS MATTERS DESERVING OF THE HIGHEST STANDARDS OF DIGNITY AND DECORUM.  PLEASE DRESS APPROPRIATELY.

Cause 380-82025-06

THE STATE OF TEXAS

vs

CHANTHAKOUMMANE, KOSOUL
Capital Murder

380th District Court
of Collin County, Texas

July Term, 2007
FX

TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the State by her Criminal District Attorney and makes application for the issuance of subpoenas for the following named persons to compel their attendance as witnesses for the State; place of residence, exact location and vocation of said witnesses (where known), appears opposite the respective names, as follows, to wit:

| Witness Name | Residence | Exact Location | Vocation |
|---|---|---|---|
| TIARA ELLIS | | | |

Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.

Applicant prays that said subpoenas be made returnable on the 30th day of    AUGUST  A.D. 2007 at  9:30 o'clock A.M.

_____
Criminal District Attorney

Filed District Clerk    AUGUST  30, 2007
Hannah Kunkle, Clerk
Collin County, Texas

Issued 8-30-07

Printed out saying for the defendant —
Patricia O.K'd changing to State. J James —

1201

ause 380-82629-06

HE STATE OF TEXAS                          380th District Court

s                                          of Collin County, Texas

HANTHAKOUMMANE, KOSOUL                      July Term, 2007
apital Murder                                       FX

O THE CLERK OF SAID COURT, GREETINGS:

    Comes now the State by her Criminal District Attorney and makes
application for the issuance of subpoenas for the following named
persons to compel their attendance as witnesses for the State; place of
residence, exact location and vocation of said witnesses (where known),
appears opposite the respective names, as follows, to wit:

| Witness Name | Residence | Exact Location | Vocation |
|---|---|---|---|
| COLLIN COUNTY SHERIFFS OFFICE | | COLLIN COUNTY JAIL | |

    Said persons are witnesses in behalf of the State in the above
entitled and numbered case, and the testimony of said witnesses is
material for the State on the trial of said case.
    Applicant prays that said subpoenas be made returnable on the
7th day of SEPTEMBER A.D. 2007 at 9:00 o'clock A.M.

_____
Criminal District Attorney

Filed District Clerk     AUGUST   31, 2007
Hannah Kunkle, Clerk
Collin County, Texas

*Issued 8-31-07*

*[signature]*

1202

Cause 380-02029-06

THE STATE OF TEXAS

vs

CHANTHAKOUMMANE, KOSOUL
Capital Murder

380th District Court

of Collin County, Texas

July Term, 2007
                              FX

TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the State by her Criminal District Attorney and makes application for the issuance of subpoenas for the following named persons to compel their attendance as witnesses for the State; place of residence, exact location and vocation of said witnesses (where known), appears opposite the respective names, as follows, to wit:

| Witness Name | Residence | Exact Location | Vocation |
|---|---|---|---|
| COLLIN COUNTY SHERIFFS OFFICE | | COLLIN COUNTY JAIL | |

Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.

Applicant prays that said subpoenas be made returnable on the 7th day of SEPTEMBER A.D. 2007 at 9:00 o'clock A.M.

_____
Criminal District Attorney

Filed District Clerk     AUGUST  31, 2007
Hannah Kunkle, Clerk
Collin County, Texas

Issued 8-31-07

1203

HE STATE OF TEXAS                    380th District Court

s                                    of Collin County, Texas

HANTHAKOUMMANE, KOSOUL               July Term, 2007
apital Murder                                        FX

O THE CLERK OF SAID COURT, GREETINGS:

    Comes now the State by her Criminal District Attorney and makes pplication for the issuance of subpoenas for the following named ersons to compel their attendance as witnesses for the State; place of esidence, exact location and vocation of said witnesses (where known), ppears opposite the respective names, as follows, to wit:

| Witness Name | Residence | Exact Location | Vocation |
|---|---|---|---|
| ANDY LILLISTON | PLANO | | |
| BARBARA JOHNSON | CARROLLTON | | |
| BRENT HUTSON, D.D.S | DALLAS | BAYLOR COLLEGE OF DE | |
| DETECTIVE SUSAN SARVIS | | CHARLOTTE-MECKLENBUR | |
| JASON HERRIN | CARROLLTON | 2118 SOUTHMOOR DR | |
| JESSICA ALLEN | DALLAS | 7640 ROLLING ACRES | |
| LAWRENCE STUART SMITH | | | |
| MAMIE SHARPLESS | PLANO | | |
| NORMAN JOSEPH SMITH | | | |
| RANDY TATE | PLANO | 5901 KENT | |
| SHAWN BRANDON BANK | | | |
| SPECIAL AGENT JEFF SHAFFER | | US SECRET SERVICE | |
| STACY MCDONALD | DALLAS | SWIFS | |

    Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.
    Applicant prays that said subpoenas be made returnable on the 8th day of  OCTOBER A.D. 2007 at  9:00 o'clock A.M.

_____
             Criminal District Attorney

Filed District ClerkSEPTEMBER   4, 2007
Hannah Kunkle, Clerk
Collin County, Texas

Issued 9-4-07

1204

Cause 380-82029-06

THE STATE OF TEXAS | 380th District Court

vs | of Collin County, Texas

CHANTHAKOUMMANE, KOSOUL | July Term, 2007
Capital Murder | FX

TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the State by her Criminal District Attorney and makes application for the issuance of subpoenas for the following named persons to compel their attendance as witnesses for the State; place of residence, exact location and vocation of said witnesses (where known), appears opposite the respective names, as follows, to wit:

Witness Name | Residence Exact Location | Vocation
NELSON VILLAVICENCIO

Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.

Applicant prays that said subpoenas be made returnable on the 8th day of   OCTOBER A.D. 2007 at  9:00 o'clock A.M.

_____
Criminal District Attorney

Filed District ClerkSEPTEMBER  10, 2007
Hannah Kunkle, Clerk
Collin County, Texas

Issued 9-10-07

1205

THE STATE OF TEXAS

vs

CHANTHAKOUMMANE, KOSOUL
Capital Murder

380th District Court

of Collin County, Texas

July Term, 2007
FX

TO THE CLERK OF SAID COURT, GREETINGS:

    Comes now the State by her Criminal District Attorney and makes application for the issuance of subpoenas for the following named persons to compel their attendance as witnesses for the State; place of residence, exact location and vocation of said witnesses (where known), appears opposite the respective names, as follows, to wit:

| Witness Name | Residence | Exact Location | Vocation |
|---|---|---|---|
| MARTHA ALLEN | | | |

    Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.

    Applicant prays that said subpoenas be made returnable on the 8th day of OCTOBER A.D. 2007 at 9:00 o'clock A.M.

_____
Criminal District Attorney

Filed District Clerk SEPTEMBER 26, 2007
Hannah Kunkle, Clerk
Collin County, Texas





1206

THE STATE OF TEXAS

's

HANTHAKOUMMANE, KOSOUL
Capital Murder

380th District Court

of Collin County, Texas

July Term, 2007
FX

TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the State by her Criminal District Attorney and makes application for the issuance of subpoenas for the following named persons to compel their attendance as witnesses for the State; place of residence, exact location and vocation of said witnesses (where known), appears opposite the respective names, as follows, to wit:

| Witness Name | Residence | Exact Location | Vocation |
|---|---|---|---|
| TEDRICK GARDNER | | TEXAS STATE PAROLE | |

Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.

Applicant prays that said subpoenas be made returnable on the 8th day of OCTOBER A.D. 2007 at 10:00 o'clock A.M.

_____
Criminal District Attorney

Filed District ClerkSEPTEMBER 25, 2007
Hannah Kunkle, Clerk
Collin County, Texas

1207



THE STATE OF TEXAS

vs

CHANTHAKOUMMANE, KOSOUL
Capital Murder

380th District Court

of Collin County, Texas

July Term, 2007
                FX

TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the State by her Criminal District Attorney and makes application for the issuance of subpoenas for the following named persons to compel their attendance as witnesses for the State; place of residence, exact location and vocation of said witnesses (where known), appears opposite the respective names, as follows, to wit:

Witness Name                    Residence   Exact Location       Vocation
  LT ROBERT ROLLINS

Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.

Applicant prays that said subpoenas be made returnable on the 15th day of   OCTOBER  A.D. 2007 at  9:00 o'clock A.M.

_____
Criminal District Attorney

Filed District ClerkSEPTEMBER  28, 2007
Hannah Kunkle, Clerk
Collin County, Texas

*Issued 9-28-07*

1208

THE STATE OF TEXAS

vs

CHANTHAKOUMMANE, KOSOUL
Capital Murder

380th District Court

of Collin County, Texas

July Term, 2007
FX

TO THE CLERK OF SAID COURT, GREETINGS:

Comes now the State by her Criminal District Attorney and makes application for the issuance of subpoenas for the following named persons to compel their attendance as witnesses for the State; place of residence, exact location and vocation of said witnesses (where known), appears opposite the respective names, as follows, to wit:

Witness Name            Residence   Exact Location      Vocation
 JERED HYDU

Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.

Applicant prays that said subpoenas be made returnable on the 3rd day of OCTOBER A.D. 2007 at 9:00 o'clock A.M.

_____
Criminal District Attorney

Filed District Clerk SEPTEMBER 28, 2007
Hannah Kunkle, Clerk
Collin County, Texas

Issued 9.28.07

Cause 380-82029-06

THE STATE OF TEXAS

vs

CHANTHAKOUMMANE, KOSOUL
Capital Murder

380th District Court

of Collin County, Texas

July Term, 2007
                    FX

TO THE CLERK OF SAID COURT, GREETINGS:

    Comes now the State by her Criminal District Attorney and makes application for the issuance of subpoenas for the following named persons to compel their attendance as witnesses for the State; place of residence, exact location and vocation of said witnesses (where known), appears opposite the respective names, as follows, to wit:

Witness Name                    Residence  Exact Location        Vocation
  PAUL BRYAN CONNER

    Said persons are witnesses in behalf of the State in the above entitled and numbered case, and the testimony of said witnesses is material for the State on the trial of said case.
    Applicant prays that said subpoenas be made returnable on the 15th day of   OCTOBER  A.D. 2007 at  9:00 o'clock A.M.

                            _____
                            Criminal District Attorney

Filed District ClerkSEPTEMBER  28, 2007
Hannah Kunkle, Clerk
Collin County, Texas

Issued 9-28-07

THE STATE OF TEXAS                    380th District Court

vs                                    of Collin County, Texas

CHANTHAKOUMMANE,KOSOUL                July Term, 2007
Capital Murder                                    FX

TO THE CLERK OF SAID COURT, GREETINGS:

    Comes now the State by her Criminal District Attorney and makes
application for the issuance of subpoenas for the following named
persons to compel their attendance as witnesses for the State; place of
residence, exact location and vocation of said witnesses (where known),
appears opposite the respective names, as follows, to wit:

Witness Name                    Residence   Exact Location        Vocation
  A.P. MARILOTT                                                  WITNESS

    Said persons are witnesses in behalf of the State in the above
entitled and numbered case, and the testimony of said witnesses is
material for the State on the trial of said case.
    Applicant prays that said subpoenas be made returnable on the
17th day of   OCTOBER  A.D. 2007 at  8:30 o'clock A.M.

                                  ————————————————————
                                   Criminal District Attorney

Filed District Clerk   OCTOBER   16, 2007
Hannah Kunkle, Clerk
Collin County, Texas                         Iss  10-16-07

                                                           ①



                                                           12

# THE STATE OF TEXAS,

No. <u>380-82629-06</u>     vs

<u>KOSOUL CHANTHAKOUMMANE</u>

_____

§
§
§
§
§
§
§

IN THE <u>380TH</u>

JUDICIAL DISTRICT COURT

OF COLLIN COUNTY, TEXAS

<u>JULY</u> TERM, A.D., 2007

Now comes the District Attorney of Collin County, Texas and asks the Court to dismiss the above entitled and numbered cause, for the following reasons, to-wit:

The above case has been reindicted as Cause Number <u>380-81972-07</u>.

WHEREFORE PREMISES CONSIDERED, the State respectfully requests that this case be dismissed.

FILED

07 OCT 18 AM 8: 45

HANNAH KINKLE
DISTRICT CLERK
COLLIN COUNTY, TEXAS
BY _____ DEPUTY

_____
Assistant District Attorney of
Collin County, Texas

_____
District Attorney of Collin County, Texas

## <u>ORDER</u>

The foregoing Motion having been presented to me on this the 18 day of October, 2007, and the same having been considered, it is, therefore ORDERED, ADJUDGED, AND DECREED that said Motion to Dismiss Prosecution in the above entitled and numbered cause be and the same is hereby dismissed.

_____
JUDGE PRESIDING

1212

THE STATE OF TEXAS

COUNTY OF COLLIN

I, HANNAH KUNKLE, CLERK OF THE DISTRICT COURTS, IN AND FOR COLLIN

COUNTY, STATE OF TEXAS, HEREBY CERTIFY THAT THE DOCUMENTS SPECIFIED BY TEXA

RULE OF APPELLATE PROCEDURE 34.5(a) AND ALL OTHER DOCUMENTS TIMELY REQUESTE

BY A PARTY TO THIS PROCEEDING UNDER TEXAS RULE OF APPELLATE PROCEDURE 34.5()

ARE INCLUDED IN CLERK'S RECORD NO. 380-81972-07 (REINDICTMENT OF 380-82629-

ENTITLED THE STATE OF TEXAS VS. KOSOUL CHANTHAKOUMMANE.

GIVEN UNDER MY HAND AND SEAL AT MY OFFICE IN COLLIN COUNTY, TEXAS THIS THE

13TH   DAY OF FEBRUARY 2008.

HANNAH KUNKLE DISTRICT CLERK
COLLIN COUNTY, MCKINNEY, TEXAS

BY: _Carolyn McCarley_

DEPUTY

1213