IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KOSOUL CHANTHAKOUMMANE, | § | |
| | § | |
| Petitioner, | § | |
| | § | Civil No. 4:13-CV-067 |
| v. | § | |
| | § | |
| Director, | § | * DEATH PENALTY CASE * |
| TDJC-CID Texas Department, | § | |
| | § | |
| Respondent. | § | |

## MOTION TO FILE PROPOSED BUDGET, INCLUDING FUNDS FOR ANCILLARY SERVICES PURSUANT TO 18 U.S.C. § 3599(f), *EX PARTE* AND UNDER SEAL

Applicant Kosoul Chanthakoummane requests leave to file *ex parte* and under seal a proposed case budget, including funding for provider services under 18 U.S.C. § 3599(f). **Counsel attaches a proposed case budget, under *ex parte* and under-seal cover, contingent upon this Court's ruling on the present Motion. This attachment has not been served on opposing counsel and should not be posted publicly. Should this Court deny the present Motion, counsel withdraws the *ex parte* attachment.**

Should this Court grant the present Motion, counsel requests an *ex parte* hearing on the attached *ex parte* filing.

The Criminal Justice Act Guidelines advise counsel to include ancillary services, along with counsel fees and expenses, in a single budget that represents "the

1

best preliminary estimate that can be made of the cost of all services (counsel, expert, investigative, and other) for the entire case ….." CJA Guidelines, § 640.30(b).[1] Accordingly, counsel has included the cost of all services in the proposed budget. The present preliminary motion is filed, however, because the Code requires a specific showing before an *ex parte* forum may be invoked to request investigative, expert, or other services.

I. **AUTHORITY TO SUBMIT *EX PARTE* PAPERS IN SUPPORT OF ANCILLARY SERVICES**

   A. **The prudential and policy preference for *ex parte* defense requests for ancillary services.**

Mr. Chanthakoummane is entitled to "quality legal representation" under 18 U.S.C. § 3599, "to foster 'fundamental fairness in the imposition of the death penalty.'" *Martel v. Clair*, 565 U.S. 648, 659 (2012) (quoting *McFarland v. Scott*, 512 U.S. 849, 855. 859 (1994)). In this case, ensuring quality legal representation will require authorizing certain ancillary services, a resource that § 3599(f) provides.

But it will be impossible for Petitioner to demonstrate that the requested services are reasonably necessary without disclosing privileged communications and confidential attorney work product, such as case theories, preliminary expert

---

[1] *See also* Fifth Circuit Case Budgeting Attorney, *Case Budgeting Overview Memorandum*, at 3 (July 20, 2016), available at https://www.lb5.uscourts.gov/CJA2/CaseBudgetingDocs/CaseBudgetingOverview.pdf.
(case budgets include "funding for service providers, including investigators, mitigation specialists, paralegals, and case-specific experts"); *id.* at 5 ("The case budget should include authorization for service providers including paralegals, investigators, and experts."). The CJA Guidelines also provide that a court, in its discretion, may direct counsel to submit budgets covering shorter time intervals. *Id*. at § 640.30(b)

consultations, and other information ordinarily and properly not shared with an opposing party.

Accordingly, counsel seeks to provide that information to the Court *ex parte* and under seal, a protection § 3599(f) also provides upon "proper showing . . . concerning the need for confidentiality." The CJA Guidelines contemplate that ancillary service requests should be incorporated within a larger case budget, which "should be submitted *ex parte* and filed and maintained under seal."[2] The Defender Services Office of the Administrative Office of the U.S. Courts, Legal and Policy Division, has expressed the same view, emphasizing the importance of confidentiality in this context.[3] Professional standards also counsel using *ex parte* procedures when seeking defense resources in general,[4] and the Supreme Court has given attorney

---

[2] CJA Guidelines, § 640.20(b) ("Case budgets should be submitted *ex parte* and filed and maintained under seal.").

[3] *See* Administrative Office of the U.S. Courts Defender Services Office, Legal and Policy Division, *Explanatory Memorandum for Case Budgeting in Federal Capital Habeas Corpus Panel Attorney Representations Arising out of a State Court Death Sentence* (undated), at 3, available at https://www.fd.org/sites/default/files/cja_resources/explanatory-memo-capital-habeas-062112.pdf (Case budgets "must be treated as confidential and should not be disclosed to the prosecutor" because they "lay out counsel's entire litigation plan, including matters of strategy and witness development." Thus, "[a]ll documents relating to case budgeting should be filed *ex parte* and under seal[.]") (citing CJA Guidelines § 640.20(b) and (d)); *id.* ("The need for confidentiality is generally established in the budgeting process because such applications disclose matters protected by the attorney-client or work-product privileges, and also may prematurely reveal defense strategies."). The judiciary's former standard form (prior to adoption of eVoucher) for authorizing and compensating service providers is in fact labeled "CJA 31 Death Penalty Proceedings: Ex Parte Request for Authorization and Voucher for Expert and Other Services." Available at https://www.uscourts.gov/forms/vouchers/death-penalty-proceedings-ex-parte-request-authorization-and-voucher-expert-and-other (instructions); https://www.uscourts.gov/sites/default/files/cja31.pdf (fillable form).

[4] American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 31 Hofstra L.Rev. 913, Guidelines 49 & 63-66 (2003) (black-letter guidelines formally approved by the American Bar Association House of Delegates as official policy, recognizing that "[b]ecause the defense should not be required to disclose

work product a highly-protected classification, both in its caselaw and in promulgating the Federal Rules of Civil Procedure.[5]

### B. The statutory standard for invoking an *ex parte* forum for service provider requests.

Section 3599 and controlling decisions interpreting it authorize a court to provide funding for "investigative, expert, or other services" that are "reasonably necessary for the representation[.]" § 3599(f). The same section permits *ex parte* requests once "a proper showing is made concerning the need for confidentiality." *Id.*

---

privileged communications or strategy to the prosecution in order to secure these resources, it is counsel's obligation to insist upon making such requests *ex parte* and *in camera*."); *see also* Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, 36 Hofstra L.Rev. 677, Guideline 4.1(A) (2008) ("Applications to the court for the funding of mitigation services should be conducted *ex parte*, *in camera*, and under seal."); State Bar of Texas, GUIDELINES FOR STANDARDS FOR TEXAS CAPITAL COUNSEL 12.2(B)(6)(a) (2006) ("Because counsel should not have to disclose privileged communications or strategy to the prosecution in order to secure these resources, counsel must insist upon making such requests *ex parte* and *in camera*."); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 (generally describing the need for confidentiality).

[5] *See, e.g., Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947) ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways--aptly though roughly termed . . . the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness, and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."). *See also* Fed. R. Civ. P. 26(b)(3) (excluding habeas proceedings from initial disclosure rules); *id.*, Advisory Comm. Notes, 1970 Amendment (work-product privilege "protects against disclosure of the mental impressions, conclusions, opinions or legal theories concerning the litigation of an attorney or other representative of a party.").

*Ex parte* proceedings are equally available at the clemency stage.[6]

### C. The procedure for making a "proper showing . . . concerning the need for confidentiality" under § 3599(f).

#### a. No single method prescribed by law.

Current law prescribes no single method for presenting/receiving a "proper showing . . . concerning the need for confidentiality" under § 3599(f). Some district courts in Texas have permitted a purely *in camera* showing for this preliminary

---

[6] *See, e.g., Threadgill v. Thaler*, No. 3:05-CV-2217-D, 2012 U.S. Dist. LEXIS 188386, at *3 (N.D. Tex. Oct. 11, 2012) (Fitzwater, C.J.) (permitting *ex parte* application where counsel provided a statement describing the "type of outside services needed or the issues that necessitated the services," and "demonstrated a need to protect attorney work product related to counsel's chosen clemency strategy, based on her assessment of the existing record in the case.").

5

purpose.[7] That is consistent with guidance from the Defender Services Office,[8] and is the traditional mechanism by which federal courts test claims that information is privileged.[9]

Other Texas district courts desire a non-confidential showing that may vary in its degree of detail.

Mr. Chanthakoummane asks this Court to conduct an *in camera* review of the attached *ex parte* request, and to rule on the present Motion on that factual basis. Alternatively, counsel makes out an abbreviated non-confidential showing below, and

---

[7] *See Miller-El v. Johnson*, No. 3:96-CV-1992-H, Dkt. 54 (N.D. Tex. June 18, 1997) (Sanders, J.) ("recogniz[ing] that there is some ambiguity in the [1996] statute as to whether the request for *ex parte* consideration itself can be made in an *ex parte* motion," court denied State's request to strike petitioner's *ex parte* sealed motions for investigative funds and allowed petitioner to proceed *ex parte*; "[a]llowing the Respondent access to the confidential information contained in Petitioner's request to proceed *ex parte* directly conflicts with Congress' intent to authorize *ex parte* proceedings upon a proper showing"). *See also Medrano v. Davis*, No. 7:17-cv-00069 Dkt. 14 (S.D. Tex. Jan. 16, 2018) (Ormsby, M.J.) (granting, in part, *ex parte* motion for investigative funds over state objection; the request to file *ex parte* is itself held under seal and, presumably, *ex parte*); *Devoe v. Stephens*, No. 1:14-cv-00151-SS Dkt. 26 (W.D. Tex. Mar. 23, 2015) (Sparks, J.) (regarding a motion for leave to seek expert funding *ex parte*, granted in Dkt. 26, the motion for leave to file [Dkt.24] is itself held under seal); *Eldridge v. Thaler*, 2011 U.S. Dist. LEXIS 61673, *1-2 (S.D. Tex. Jun. 9, 2011) (Rosenthal, J.) (granting leave to seek funds *ex parte* where no sealing motion was filed, because the "motion explains that he seeks expert assistance to help prepare a response to the State's answer to his petition."); *Reed v. Dretke*, No. 1:02-cv-00142-LY, Dkt. 141-145 (W.D. Tex. Jan-Feb. 2010) (Austin, M.J.) (granting a motion for investigative funding, which was submitted *ex parte* with a sealing motion that is also under seal and presumably *ex parte*, at Dkt. 142). Some case dockets do not reflect entries for meritorious sealing motions, implying that they may have been held *ex parte* along with the funding motions themselves. *See Ward v. Stephens*, No. 3:10-cv-02101-N, Dkt. 21 (N.D. Tex. Aug. 18, 2011) (Godbey, J.) (order granting sealing motion to move for investigative funding *ex parte*; the sealing motion is noted to be document #20, but no Dkt. #20 is present; neither is the *ex parte* application itself (Dkt. #16) present).

[8] DSO 2254 Budgeting Memo, at 3 ("While the budget remains confidential, by law the court must determine on an *ex parte* basis whether a sufficient showing of a need for confidentiality has been made before authorizing the use of investigative, expert, or other services.").

[9] *See United States v. Zolin*, 491 U.S. 554, 569 (1989) (observing that the use of *in camera* inspection to test claims of privilege is well established in the federal courts).

requests this Court consider that showing in tandem with its *in camera* review of the *ex parte* attachment. Lastly, and also alternatively, counsel submits that the abbreviated showing incorporated below should satisfy the statutory requirement of a "proper showing . . . concerning the need for confidentiality." § 3599(f).

### D. The legal standard for a "proper showing . . . concerning the need for confidentiality" under § 3599(f).

#### a. No settled standard.

Neither the Supreme Court nor the Fifth Circuit has defined what it means to make a "proper showing . . . [of] the need for confidentiality" under § 3599(f). District courts in Texas have applied a range of thresholds for granting an *ex parte* forum under that provision, with most settling on a reasonable test sometimes referred-to as the "*Patrick* standard."

#### b. The *Patrick* standard.

Most district courts in Texas have adopted a standard attributed to the cases of *Dowthitt*[10]/*Shields*[11] in the Southern District, and *Patrick*[12]/*Graves*[13] in the Northern District. Under this standard, counsel need divulge only a "short, case-specific statement of the need for confidentiality . . . . [that] generically identif[ies] the type of services needed and the broad issue or topic (for example, innocence) for

---

[10] *Dowthitt v. Johnson*, 4:98-cv-03282 (S.D. Tex. Dec. 2, 1998) (Atlas, J.).

[11] *Shields v. Johnson*, 48 F. Supp. 2d 719, 720-21 (S.D. Tex. 1999) (Kent, J.).

[12] *Patrick v. Johnson*, 37 F.Supp. 2d 815, 816 (N.D. Tex. 1999) (Kaplan, M.J.)

[13] *Graves v. Johnson*, 101 F. Supp. 2d 496, 499 (S.D. Tex. 2000) (Kent, J.).

which the services are needed."[14] Under this standard, the court considers counsel's "short, case-specific statement" alongside the simultaneously-filed *ex parte* request for the requested ancillary services that contains more detail (often filed, as here, as an attachment to the sealing motion).[15]

The *Patrick* standard has been used by judges in all Texas districts.[16] Under this standard, the public "case-specific statement of the need for confidentiality" need

---

[14] *Id.*

[15] *Id. See Patrick*, 37 F.Supp. 2d at 816 ("petitioner[s] seeking expense authorization" should file, with service to opposing counsel, "a brief motion seeking general authorization for investigative or expert expenses, [including] a short case-specific statement of the need for confidentiality . . . [that] merely must identify generically the type of services needed and the broad issue or topic (*e.g.* innocence) for which the services are necessary"; "simultaneously, the petitioner must file *ex parte* and under seal his detailed application for authorization for the investigator or expert, and must estimate the amount of fees or expenses likely to be incurred . . . [and] provide factual support for the funding request"; only "the motion, but not the application with supporting materials, must be served on the respondent") (citing other district court cases). *See also Barbee v. Thaler*, No. 4:09-cv-00074-Y, Dkt. 15 (N.D. Tex. Jan. 11, 2010) (Means, J.) (requiring a simultaneous filing of the proposed *ex parte* pleading under *Patrick*; the motion was ultimately granted, at Dkt. 20).

[16] *See, e.g., Prible v. Davis*, No. 4:09-cv-01896 Dkt. 134 (S.D. Tex. Jul. 8, 2016) (Ellison, J.) (granting without analysis an opposed motion to proceed *ex parte* that relied on *Shields* and *Dowthitt*, Dkt. 107); *Hamilton v. Stephens*, No. 4:15-cv-1996, Dkt. 11 & 15 (S.D. Tex. Jan.-Feb. 2016) (Bennett, J.) (granting, without analysis, a motion to proceed *ex parte* that relied on *Patrick* and *Dowthitt*); *Slater v. Stephens*, No.4:14-cv-03576 Dkt. 20 (S.D. Tex. Aug. 10, 2015) (Bennett, J.) (same); *Rhoades v. Stephens*, No. 4:14-cv-03152 Dkt. 10 (S.D. Tex. Feb. 20, 2015) (Hittner, J.) (granting, without analysis, motion to seal *ex parte* filing in support of motion for funds relying on *Dowthitt*, Dkt. 8); *Gallo v. Stephens*, No. 4:13-cv-01897, Dkt. 35 (S.D. Tex. Jan. 1, 2015) (Gilmore, J.) (granting leave to file *ex parte* motion for funding where petitioner made a "proper showing" under *Dowthitt* by "identif[ying] the general nature of the claims he wishes to investigate and the services he expects to request."); *Murphy v. Stephens*, No. 3:09-cv-1368, Dkt. 69 (N.D. Tex. Sept 3, 2014) (Lindsay, J.) (applying *Patrick* test and granting leave to file request for PTSD expert funding *ex parte*); *Coble v. Thaler*, No. 6:12-cv-00039-WSS Dkt, 10 & 11 (W.D. Tex. May, 2012) (Smith, J.) (order granting, without analysis, a motion for leave to proceed *ex parte* that utilized the procedure from *Patrick*, *Dowthitt*, *Shields*, and *Graves*); *Tabler v. Thaler*, No. 6:10-cv-00034-RP, Dkt. 15 & 19 (W.D. Tex. Feb-Mar. 2011) (Smith, J.) (order granting, without analysis, Petitioner's Motion for Leave to File Detailed Ex Parte Application for Reasonably Necessary Services Under Seal, and Counsel's Statement of Need for Confidentiality, which followed the procedure of *Dowthitt*, *Patrick*, and *Shields*); *Gardner v. Director*, No 1:10-CV-610, Dkt. 8 (E.D. Tex.

only be reasonable, not onerous or overly detailed; counsel may still "generically identify the type of services needed and the broad issue or topic (for example, innocence) for which the services are needed."[17] This is enough to rise above an inadequate request that merely asserts "a generic need for confidentiality of the sort which arises in most capital cases,"[18] without including any case-specific explanation.

Applying this test, some courts have insisted that counsel show "a specific need for confidentiality . . . not merely a general assertion of a blanket attorney/client or work product privilege."[19] Others, however, have authorized *ex parte* proceedings when petitioners have asserted no more than that their supporting argument would compromise privileged work product or communications,[20] and identified the type of

---

December 2, 2010) (Clark, J.) ("Petitioner's request to file his motion under seal is well taken. He has satisfied the requirements by filing a brief motion seeking authorization for expert expenses, as well as stated his need for confidentiality and identifying the type of services needed."); *Barbee v. Thaler*, No. 4:09-cv-00074-Y, Dkt. 15 (N.D. Tex. Jan. 11, 2010) (Means, J.) (requiring a simultaneous filing of the proposed *ex parte* pleading under *Patrick*; the motion was ultimately granted, at Dkt. 20); *Bradford v. Johnson*, 162 F.Supp.2d 578, 579 N.1 (N.D. Tex. 2001) (Boyle, M.J.) (noting that petitioner was permitted to move *ex parte* for investigative or expert assistance because he made "[t]he requisite showing . . . [of] a 'short case-specific statement of the need for confidentiality.'") (citing *Patrick* and *Graves*).

[17] *Graves*, 101 F. Supp. 2d at 499.

[18] *Id.*

[19] *Marshall v. Stephens*, No. 4:14-cv-03438 Dkt. 44, pp.2-3 (S.D. Tex Mar. 24, 2016) (Hoyt, J.) (quoting *Robertson*, at *4); *Thompson v. Stephens*, No. 4:13-cv-01900 Dkt. 13 (S.D. Tex. Feb. 2, 2007) (Miller, J.) (same).

[20] *See, e.g., Green v. Stephens*, No. 4:13-cv-01899 Dkt. 37 (S.D. Tex. Mar. 13, 2015) (Ellison, J.) ("Disclosure of the information in the motion could compromise attorney work product. This is sufficient to make proper showing of the need for confidentiality."); *Medina v. Thaler*, No. 4:09-cv-03223 Dkt. 38 & 42 (S.D. Tex. June 2012) (Rainey, J.) (granting, without analysis, motion for leave to file expert funding request that stated merely: "The circumstances that give rise to the need for the requested services, which are described more fully in Mr. Medina's sealed, *ex parte* filing, have come to light through the work product of counsel. Thus, counsel for Mr. Medina cannot describe their need for services without divulging privileged information."); *Sprouse v. Thaler*, No. 3:10-cv-00317-P, Dkt. 18 (N.D. Tex. Feb. 8, 2011) (Solis,

expert and the claim for which their services are necessary,[21] with just enough case-specific detail.[22]

---

J.) (order granting sealing motion for expert assistance funds request, which [filed at Dkt. 12] stated only: "In the instant case, Petitioner has applied to the Court to retain the services of a particular type of mental health professional. In connection with that Application, Petitioner has supplied the court with a detailed application with estimate of the fees incurred. These documents are attorney-work product and contain information revealed to the undersigned counsel by Mr. Sprouse, his prior counsel, and the prospective mental health professional."); *Shuffield v. Thaler*, No. 6:08cv180, Dkt. 40 (E.D. Tex. June 2, 2010) (Davis, J.) ("Shuffield has followed the procedure set forth in *Shields*. He has identified both the type of services needed (investigative) and the broad issues or topics for which those services are needed (prosecutorial misconduct). Accordingly, his motion is GRANTED[.]"); *id.* Dkt. 38, p.2 (motion stating only: "Petitioner demonstrates the need for confidentiality in making his request for expert assistance by specifying the services needed and the broad issue or topic for which the services are required. *See Patrick* []. Petitioner requires the assistance of an investigator to investigate recently revealed potential prosecutorial misconduct. The services of an investigator are reasonably necessary for the representation of Mr. Shuffield in this proceeding. Petitioner asks for leave to contemporaneously file a more detailed funding application which will necessarily reveal privileged work product in the course of describing the need for funding.").

[21] *See, e.g., Crutsinger v. Quarterman*, N. 4:07-cv-00703-Y, Dkt. 12 (N.D. Tex. Apr. 29, 2008) (Means, J.) (granting sealing motion for filing on the basis of this representation: "The Petitioner seeks investigative services to discover evidence that would demonstrate a viable *Wiggins/Rompilla* claim and that those claims should be decided by this court on the merits," finding that while "brief," it satisfies the *Patrick* Standard).

[22] *See, e.g., Speer v. Director*, No. 2:04-cv-00269-JRG-RSP, Dkt. 67 (E.D. Tex. Nov. 9, 2015) (Payne, M.J.) (granting motion to proceed *ex parte* on motion for mitigation investigator funding where: "He asserts that the services of a mitigation expert are necessary to develop the factual basis of his ineffective assistance of counsel claims. He is seeking leave to file *ex parte* and under seal his application for funding authorization. The motion is reasonable."); *id.*, Dkt. 64 (motion stating only that "[c]onfidentiality of the application is necessary under 18 U.S.C. § 3599(f) because the application discloses the undersigned counsel's work product concerning his preliminary investigation of the bases for Mr. Speer's ineffective-assistance-of-trial-counsel claims and some of his communications with Attorney Craig Henry, who represented Mr. Speer during his state habeas proceedings and continues to represent Mr. Speer before this Court."); *Gardner v. Director*, No 1:10-CV-610, Dkt. 8 (E.D. Tex. December 2, 2010) (Clark, J.) ("Petitioner's request to file his motion under seal is well taken. He has satisfied the requirements by filing a brief motion seeking authorization for expert expenses, and well as stated his need for confidentiality and identifying the type of services needed."); *id.*, Dkt. 8 at 2-3 (motion stating only that "[i]n his state habeas application, Mr. Gardner plead, and provided factual support for, an [IAC] claim for failure to adequately investigate, develop and present mitigation evidence. Prior to filing the state application, Mr. Gardner had sought funding for expert assistance, which the state court denied. Mr. Gardner now

Even though the non-confidential statement is brief in these cases, the process provides Respondent an opportunity to lodge arguments in opposition, which the court may choose to consider during the subsequent *ex parte* litigation.[23]

### c. A higher threshold would be contrary to Congress's intent and the Constitution.

Any standard higher than the one adopted in *Patrick* raises statutory and constitutional concerns. Section 3599(f)'s language imposes a low threshold to obtaining an *ex parte* forum. Imposing a higher hurdle would be contrary to Congress's intent, as evidenced by the parallel provision for noncapital petitioners found in 18 U.S.C. § 3006A, and the legislative history of the provision. It would also offend equal protection principles.

Section 3006A guarantees *non*capital petitioners an *ex parte* forum without any threshold showing at all.[24] Interpreting the threshold showing required by §

---

seeks funding for an expert to provide additional evidentiary support for this IAC claim, which had been fairly presented to the state court, and will be plead in the federal habeas petition. Formerly, such applications were routinely heard *ex parte* in federal habeas proceedings. To further detail his funding request in this motion would require Petitioner to reveal work product or privileged information to adequately justify funding requests under 18 U.S.C. § 3599(f).").

[23] *See Murphy v. Stephens*, No. 3:09-cv-01368-L-BN, Dkt. 69 (N.D. Tex. Sept. 3, 2014) (Lindsay, J.) (finding Petitioner satisfied *Patrick* with regard to a request for funding for a PTSD expert, and expressing its intent to consider the arguments in Respondent's opposition to the sealing motion "in ruling on the *ex parte* application."). Undersigned does not concede, however, that Respondent has standing to oppose the underlying motion. *Cf. Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 959 (11th Cir. 2022) ("Indeed, the State concedes that it has no interest in how federal funds are spent.").

[24] The parallel provision of the Criminal Justice Act governing the funding of non-counsel services in all other CJA-appointed cases in the district courts provides explicitly for an "ex parte application" and an "appropriate inquiry in an ex parte proceeding" as to whether requested services are necessary. 18 U.S.C. § 3006A(e)(1) ("Upon request. Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary

11

3599(f) to hew close to the § 3006A standard garners support from the Supreme Court's decision in *Martel v. Clair*. *Martel* held that the standard for substituting counsel under § 3599 must be the same as the parallel standard for substituting counsel under § 3006A, explaining: "depriv[ing] capital defendants of a tool they formerly had, and defendants facing lesser penalties still have, to handle serious represental problems" precluded use of a more stringent test for capital petitioners.[25]

Congress's intent to keep the threshold standard low is also demonstrated by the provision's legislative history. The predecessor to § 3599(f), 21 U.S.C. § 848(q), originally provided a mandatory *ex parte* forum for ancillary services requests without any threshold showing, just as § 3006A still does.[26] In 1996, AEDPA changed § 848(q)(9), removing the *ex parte* proceeding requirement and changing mandatory "shall" language to a discretionary "may."[27] This amendment was labeled "technical."[28] Technical amendments typically correct errors or unclear language in

---

for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services.").

[25] *Clair*, 565 U.S. 648, 660. The *Clair* opinion further noted "that in spinning off § 3599 [from the CJA, § 3006A], Congress enacted a set of reforms to *improve* the quality of lawyering in capital litigation[.]" *Id.* at 659 (emphasis added). The enactment of § 3599 "only point[ed] in one direction": toward enhancing the representation of capital litigants. *Id.* at 659.

[26] *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7001, 102 Stat 4181, 4394 (1988) (amended 1996) ("Upon a finding in ex parte proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with the issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore, under paragraph (10).").

[27] AEDPA § 108, Pub. L. No. 104-132, 110 Stat. 1214, 1226 (1996).

[28] *Id.* ("§ 108. TECHNICAL AMENDMENT: § 408(q) of the Controlled Substances Act (21 U.S.C. 848(q)) is amended by amending paragraph (9) to read as follows: "(9) Upon a finding

existing statutes, rather than effect substantive changes.[29] This technical amendment should not be read to place a new, onerous burden on a capitally sentenced habeas applicant.

Secondary authorities instruct that in interpreting § 3599(f)'s confidentiality threshold, "courts may appropriately consider the extensive caselaw—developed under the original version of [§ 3599(f)] as well as the Criminal Justice Act, the Constitution, and state statutes—documenting the need for and propriety of *ex parte* proceedings to guard against unwarranted unilateral provision of discovery to the government."[30]

---

that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10). No ex parte proceeding, communication, or request may be considered pursuant to this § unless a proper showing is made concerning the need for confidentiality. Any such proceeding, communication, or request shall be transcribed and made a part of the record available for appellate review."). *See also Lindh v. Murphy*, 521 U.S. 320, 327 n.3 (1997) ("§ 108 further adds a "technical amendment" regarding expert and investigative fees for the defense under 21 U.S.C. § 848(q). 110 Stat. 1226.").

[29] *See, e.g.*, *The United Servs. Auto Ass'n v. Perry*, 102 F.3d 144, 152 (5th Cir. 1996) (DeMoss, J., dissenting); *Estey v. Comm'r, Maine Dep't of Human Servs.*, 21 F.3d 1198, 1206 (1st Cir. 1994).

[30] Hertz & Liebman, Federal Habeas Corpus Practice and Procedure, 7th Ed. (Matthew Bender), § 19.3, at 1045 n.17, citing: *Lawson v. Dixon*, 3 F.3d 743, 751 (4th Cir. 1993) ("[E]*x parte* proceedings are the only proper means of adjudicated appointment motions contemplated by the language of both the Title 18 and Title 21 statutes."). *See also* 18 U.S.C. § 3006A(e)(1) []; Fed. R. Crim. P. 17(b) (authorizing indigent defendants to make requests for subpoenas *ex parte*); *Ake v. Oklahoma*, 470 U.S. 68, 82-83 (1985) (threshold showing sufficient to invoke constitutional right to expert assistance at trial may be made *ex parte*); *United States v. Greshner*, 802 F.2d 373, 379-80 (10th Cir. 1986), *cert denied*, 480 U.S. 908 (1987) (absent waiver by defendant, it is error for trial court to allow government attorneys to attend hearing on defendant's application for penologist, pathologist, blood tests, and subpoenas); *United States v. Edwards*, 488 F.2d 1154, 1162 (5th Cir. 1974) (government access to information critical to defense is "forbidden under our concept of criminal procedure"); *United States v. Meriwether*, 486 F.2d 498, 506 (5th Cir.), *cert. denied*, 417 U.S. 948 (1973) (purpose of *ex parte* provision is to "shield theory of . . . defense from the prosecutor's scrutiny"); *United*

Finally, requiring an indigent capital petitioner to disclose protected information to his adversary as a condition of obtaining necessary ancillary services, where a non-indigent petitioner would never be required to do so, implicates the Equal Protection Clause.[31] This court should avoid interpreting § 3599(f) in a fashion that would raise such constitutional questions.[32]

### III. STATEMENT CONCERNING THE NEED FOR CONFIDENTIALITY

Here, Mr. Chanthakoummane requests leave to file his proposed budget, including funds for ancillary services pursuant to 18 U.S.C. § 3599(f), *ex parte* and under seal. In the proposed budget, Mr. Chanthakoummane requests funding for the expert assistance of a DNA expert, who is seeking funding to review DNA (forensic)

---

*States v. Sutton*, 464 F.2d 552, 553 (5th Cir. 1972) (district court's failure to conduct hearing *ex parte* on defendant's motion for investigator requires reversal of conviction); *Marshall v. United States*, 423 F.2d 1315 (10th Cir. 1970) (defendant entitled to *ex parte* hearing). *See also* H.R. Rep. No. 864, 88th Cong., 2d Sess. (1963) *reprinted in* 2 U.S. Code Cong. & Admin. News 2990 (1964) (Criminal Justice Act's *ex parte* procedure "prevents the possibility that an open hearing may cause a defendant to reveal his defense"); S. Rep. No. 346, 88th Cong., 1st Sess. 3 (1963) (*ex parte* requirement was included in Criminal Justice Act "in order to protect the accused from premature disclosure of his case").

[31] *See James v. Strange*, 407 U.S. 128 (1972) (equal protection violated where indigent criminal defendants singled out for less protection, i.e. limitations on wage garnishment, than other debtors in the state); *Douglas v. California*, 372 U.S. 353, 371-72 (1963) ("a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. . . . there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has' . . . where the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor") (quoting *Griffin v. Illinois*, 351 U.S. 12, 19 (1956)). *See also Bush v. Gore*, 531 U.S. 98 (2000) (applying a different equal protection clause standard to a non-suspect-class: arbitrariness); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (plurality opinion) (equal protection clause forbids government to grant legal rights in a way that discriminates against some convicted defendants on account of their poverty). *See also* Henry Rose, *The Poor as a Suspect Class under the Equal Protection Clause: An Open Constitutional Question*, 34 Nova L. Rev. 407 (2010).

[32] *United States v. Delaware & Hudson Co.*, 213 U.S. 366, 407 (1909).

14

evidence in the case, and Mr. Chankthakoummane and his counsel do not yet know whether the expert's findings could be helpful or harmful. In addition, this request is supported by a declaration from the expert and by factual details surrounding the proposed DNA investigation. These details reveal information about counsel's strategy, potential theories supporting Mr. Chankthaoummane's innocence (relevant to clemency), and other information (privileged communications and strategy, matters protected by attorney-client or work-product privileges) that Mr. Chanthakoummane should not be forced to disclose prematurely to the State. Mr. Chanthakoummane's counsel should not have to disclose privileged communications or strategy to the State in order to secure these resources. *See Threadgill v. Thaler*, 3:05-CV-2217-D; 2012 U.S. Dist. LEXIS 188386 (permitting *ex parte* application where counsel provided a statement describing the "type of outside services needed or the issues that necessitated the services," thus demonstrating a need to protect attorney work product related to counsel's chosen clemency strategy.

    Respectfully submitted,

    **S/ Eric Allen**
    _____
    ERIC J ALLEN    (0073384)
    The Law Office of Eric J Allen, LTD
    4200 Regent, Suite 200
    Columbus, Ohio 43219
    Tele No. 614.443.4840
    Fax No. 614.573.2924
    Email:eric@eallenlaw.com

    Admitted in the Eastern District of Texas

**CERTIFICATE OF SERVICE**

I certify that on , I filed a true and correct copy of this document electronically with the Clerk of the Court for the Eastern District of Texas , using the electronic case filing system. A "Notice of Electronic Filing" was sent to all counsel of record.

**s/ Eric Allen**
Eric Allen
