IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KOSOUL CHANTHAKOUMMANE, | § § | |
| *Petitioner,* | § § | |
| v. | § § | Civ. No. 4:13-cv-067 (Death Penalty Case) |
| BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| *Respondent.* | § | |

## RESPONDENT'S OPPOSITION
## TO EX PARTE FILING AND ANCILLARY FUNDING

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

RACHEL L. PATTON\*
Assistant Attorney General
State Bar No. 24039030

\* *Counsel of Record*

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
(512) 936-1280 (Facsimile)
Rachel.Patton@oag.texas.gov

*Counsel for Respondent*

## OPPOSITION TO MOTION TO FILE PROPOSED BUDGET, INCLUDING FUNDS FOR ANCILLARY SERVICES PURSUANT TO 18 U.S.C § 3599(f), EX PARTE AND UNDER SEAL

Pursuant to a judgment and sentence of death out of Collin County, Texas, Kosoul Chanthakoummane's execution is scheduled for August 17, 2022. After exhausting the state postconviction review process, on February 5, 2013, Chanthakoummane filed his initial petition for writ of habeas corpus. ECF No. 15. The Director filed an answer on July 28, 2014, and on March 20, 2015, this Court denied relief. ECF 31, 34. Chanthakoummane filed a motion for a certificate of appealability with the Fifth Circuit Court of Appeals which was denied. *Chanthakoummane v. Stephens*, 816 F.3d 62 (5th Cir. 2016). The Supreme Court denied a petition for writ of certiorari on October 3, 2016. *Chanthakoummane v. Davis*, 137 S.Ct. 280 (2016). The 380th Judicial District Court of Collin County, Texas set an execution date of January 25, 2017.

On January 13, 2017, Chanthakoummane filed a subsequent application for a writ of habeas corpus. 1 SHCR at 7. In response, that same day, the State filed a motion to modify Chanthakoummane's execution date to July 19, 2017. 8 SHCR at 1908–11. The state court granted the motion, modified the execution date, and ordered the district clerk to send Chanthakoummane's subsequent writ to the Texas Court of Criminal Appeals (CCA). 8 SHCR-2[1] at

---

[1] SHCR-2 refers to the Collin County District Clerk's record of Chanthakoummane's second state writ filed in Court of Criminal Appeals cause number WR-78,107-2.

1912–20. The CCA concluded that Chanthakoummane's application met the requirements of Article 11.071 § 5. *Ex parte Chanthakoummane,* 2017 WL 2464720, *1 (Tex. Crim. App. Jun. 7, 2017). Therefore, Chanthakoummane's execution was stayed, and the application was "remanded to the trial court for review of the issues raised." *Ex parte Chanthakoummane,* 2017 WL 2464720, *1.

On remand, the state trial court conducted a hearing on the issues raised by Chanthakoummane's application and entered findings of fact and conclusions of law recommending that all four of the claims raised be denied. Supp. SHCR at 112–13, 116, 118, 121; 1–6 SHRR. The CCA adopted the trial court's findings of fact and conclusions of law and denied Chanthakoummane relief on all claims. *Ex parte Chanthakoummane*, 2020 WL 5927442, *4 (Tex. Crim. App. Oct. 7, 2020). The Supreme Court denied Chanthakoummane's petition for writ of certiorari. *Chanthakoummane v. State*, 141 S.Ct. 2573, 2573 (2021).

On May 13, 2019, while this state application was still pending, Chanthakoummane filed another state application for writ of habeas corpus which was denied by the CCA as an abuse of the writ pursuant to Texas Code of Criminal Procedure article 11.071 §5. *Ex parte Chanthakoummane,* 2021 WL 1208474, *1 (Tex. Crim. App. Mar. 31, 2021).

On June 16, 2021, Chanthakoummane was given a new execution date of November 10, 2021. Exhibit A. However, on October 18, 2021, counsel for the State and counsel for Chanthakoummane agreed to modify his execution date to August 17, 2022. Exhibit B. Further, pursuant to Texas Code of Criminal Procedure article 64.04, the State agreed to DNA testing on two of the state's exhibits that had not been previously tested. On October 19, 2021, having received the report generated as a result of the testing, the state trial court entered findings that "had the results been available during the trial of the offense, it is NOT reasonably probable that Chanthakoummane would not have been convicted." Exhibit C.

On July 14, 2022, Chanthakoummane filed a Motion to File Proposed Budget, Including Funds for Ancillary Services Pursuant to 18 U.S.C. § 3599(f) to which was attached an ex parte and under-seal proposed budget. ECF 60. On July 21, 2022, Chanthakoummane filed a "Motion to Expedite Ruling." ECF 61. The Director opposes Chanthakoummane's motion to file a budget ex parte.

## REASONS FOR DENYING THE MOTION

## I.  Chanthakoummane Has Failed to Make an Adequate Showing of the Need for an Ex Parte Proceeding.

A court may not consider an ex parte request pursuant to 18 U.S.C § 3599 unless the prisoner makes a proper showing of his need for confidentiality. 18 U.S.C. § 3599(f). Regardless of the form in which the

prisoner attempts to make such a showing, the "request shall be transcribed and made a part of the record available for appellate review." *Id.* Even if the prisoner meets the threshold showing, he is not automatically entitled to make his request ex parte. 18 U.S.C. § 3599(f). This Court retains the discretion to deny Chanthakoummane's request.

The Fifth Circuit has noted Congress's deliberate weakening of the ex parte standard with the enactment of the AEDPA. *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997). Before AEDPA, the statute *required* the courts to allow an ex parte communication once the petitioner met the threshold showing of a need for confidentiality; since AEDPA, the courts *may* allow an ex parte communication if the petitioner meets the threshold showing. *Id.* at 502. "Asserting a generic need for confidentiality of the sort which arises in most capital cases is not an adequate showing for purposes of the statute." *Graves v. Johnson*, 101 F. Supp. 2d 496, 499 (S.D. Tex. 2000).

Chanthakoummane argues that he should be permitted to demonstrate his need for confidentiality under § 3599(f) in camera. ECF 60 at 6–7. Therefore, the Director has only the "abbreviated" information with which to craft a responsive pleading. ECF 60 at 7. Chanthakoummane merely tells us that he "requests funding for the expert assistance of a DNA expert, who is seeking funding to review DNA (forensic) evidence, and Mr. Chanthakoummane and his counsel do not yet know whether the expert's

findings could be helpful or harmful." ECF 60 at 15. He later indicates that this information would be relevant to clemency. ECF 60 at 15; ECF 61 at 1. This limited explanation is insufficient to demonstrate that Chanthakoummane is entitled to present his request ex parte or that the funding he desires is reasonably necessary under the statute. 18 U.S.C. § 3599(f).

However, the Director should nevertheless be given the chance to respond to more than Chanthakoummane's generic reasons for funding before any such funding is granted. In other words, given that the decision to grant funding is tied to a claim's potential merit, Chanthakoummane's lack of specificity hampers the Director's ability to respond to Chanthakoummane's funding request. The Court should therefore deny Chanthakoummane's request to have his funding motion examined in camera, and make this a fair, adversarial proceeding.

Chanthakoummane asserts there are "prudential and policy preferences for ex parte defense requests for ancillary services." ECF 60 at 2. He alleges that "it will be impossible for Petitioner to demonstrate that the requested services are reasonably necessary without disclosing privileged communications and confidential attorney work product." ECF 60 at 2. Chanthakoummane points to a litany of general guidelines discussing the need

to ensure proper confidentiality when making budget requests.[2] ECF 60 at 3–5. However, none of these documents suggest that this Court should ignore the statutory requirements and permit Chanthakoummane to make ex parte requests without requiring the necessary showing of need.

Providing any further details, Chanthakoummane contends, "would reveal information about counsel's strategy, potential theories supporting Mr. Chanthakoummane's innocence (relevant to clemency) and other information." ECF 60 at 15. These proposed, equivocal reasons are generic and are not sufficient to permit ex parte consideration. *See Patrick v. Johnson*, 37 F. Supp. 2d 815, 816 (N.D. Tex. 2000) (finding an assertion of "attorney work product" insufficient to establish need for confidentiality).

Chanthakoummane's failure to provide more details in his motion is unjustifiable. Given the extensive litigation of his case over the years, and with only thirteen days remaining until his clemency application is due, an argument that providing a proper showing that DNA investigation would improperly reveal counsel's strategies or theories falls flat. He argues that he "should not be forced to disclose details prematurely to the State." ECF 60 at 15. However, disclosure thirteen days prior to his clemency deadline could

---

[2]     These include the CJA Guidelines, a federal defender service policy manual, ABA standards, law review articles, disciplinary rules, Supreme Court cases, and federal civil rules. ECF 60 at 3-5.

hardly be considered premature. Chanthakoummane's decision to file his request at all is not based on any reasonable expectation that he will benefit beyond having his execution delayed. His decision to withhold information that would show him entitled to file an ex parte request is merely a strategy to increase the likelihood that such a baseless delay would be granted.

The dilatory nature of Chanthakoummane's request is evident. First, DNA has been an important part of this case since the very beginning. Numerous items of evidence tested for DNA prior to trial and the results were admitted as evidence against Chanthakoummane. *Chanthakoummane,* 2010 WL 1696789, at *3. On direct appeal, Chanthakoummane challenged the qualifications of the State's testifying DNA expert at trial. *Chanthakoummane,* 2010 WL 1696789, at *3. Among only four issues raised, Chanthakoummane's 2017 state writ addressed concerns over the DNA evidence. *Ex parte Chanthakoummane,* 2020 WL 5927442 (Tex. Crim. App. Oct. 7, 2020). Furthermore, in the fall of 2021, the State agreed to additional DNA testing at Chanthakoummane's request. Exhibit C.

Nonetheless, although Chanthakoummane's current execution date has been pending for almost ten months he waited until there were a mere thirty-five days prior to his scheduled execution to file his motion. He has known the date his clemency application would be due all of this time. *See* ECF 60. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) ("This circuit

has held, however, that the work product privilege is waived when . . . the attorney discloses the information to the court voluntarily[.]").

## III. This Court Should Deny Chanthakoummane's Request for Funding Because It Is Not Reasonably Necessary.

### A. The reasonably necessary standard

Chanthakoummane "requests funding for the expert assistance of a DNA expert, who is seeking funding to review DNA (forensic) evidence, and Mr. Chanthakoummane and his counsel do not yet know whether the expert's findings could be helpful or harmful." ECF 60 at 15. He later indicates that this information would be relevant to clemency. ECF 60 at 15; ECF 61 at 1. This Court "may authorize [and] order the payment of fees and expenses" for investigative assistance if it is "reasonably necessary for the representation of the" inmate. 18 U.S.C. § 3599(f). The Supreme Court recently defined "reasonably necessary" as "whether a reasonable attorney would regard the services as sufficiently important[.]" *Ayestas v. Davis*, 138 S. Ct. 1080, 1093 (2018).

"Proper application" of this standard includes considering "the potential merit of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way." *Id.* at 1093–94. Services cannot be reasonably necessary—"in fact, [they] would

be quite unreasonable"—if "they stand little hope of helping [the applicant] win relief." *Id*. at 1094.

### B. Chanthakoummane fails to show that his request for funding is reasonably necessary under § 3599.

A "district court may, in the exercise of its sound discretion, authorize federal funding for investigative and expert services in subsequent state clemency proceedings." *Wilkins v. Davis,* 832 F.3d 547, 552 (5th Cir. 2016) (citing *Brown v. Stephens*, 762 F.3d 454, 459–61 (5th Cir. 2014)). To prove eligibility for funding, the inmate must "show that the requested services are reasonably necessary to provide the Governor and Board of Pardons and Paroles the information they need in order to determine whether to exercise their discretion to extend grace to the [inmate] in order to prevent a miscarriage of justice." *Id.* (quoting *Brown*, 762 F.3d at 460). To do this, a court may "consider 'the merits of the proposed investigation' when deciding whether to grant or deny funding." *Id.* (quoting *Brown*, 762 F.3d at 460). This, in turn, allows for consideration of "the facts of [the] crime w[hich] weigh heavily in . . . clemency proceedings." *Brown*, 762 F.3d at 460. A court does not abuse its discretion in denying funding where the proposed investigation "'would only supplement prior evidence that had already been considered in the judicial proceedings' preceding the clemency petition." *Wilkins*, 832 F.3d at 552 (quoting Brown, 762 F.3d at 460–61)). That is because such evidence would

already be readily "available to the Board and the Governor." *Brown*, 762 F.3d at 460; *see also Foley v. White*, 835 F.3d 561, 563 (6th Cir. 2016); *Gary v. Warden, Ga. Diagnostic Prison*, 686 F.3d 1261, 1268 (11th Cir. 2012).

Chanthakoummane should not be given funding to conduct investigations that are, by his own admission, no more likely to help to him than they are to harm his case. *See Ayestas*, 138 S. Ct. at 1094 (holding that the "reasonably necessary" determination for funding requests should be guided, in part, by the "potential merit of the claims that the applicant wants to pursue").

As noted above, the existence or absence of DNA evidence and the re-calculation of the results of the testing has been thoroughly covered in the numerous postconviction proceedings that have taken place in the fifteen years since Chanthakoummane's conviction and sentence of death for the brutal murder of Sarah Walker. None of the DNA results have been remotely exculpatory. Any belief by Chanthakoummane that further DNA investigation would yield results that will be helpful to his case is a fantasy. In fact, he admits that he does "not yet know whether the expert's findings could be helpful or harmful." ECF 60 at 15. Chanthakoummane's request is at best a fishing expedition. It is very likely that further review of the DNA testing results, which have not been favorable to him, will also be unfavorable. In

truth, the only benefit Chanthakoummane can truly hope for is a delay of his impending execution.

Even under the best-case scenario, further testing results would show that he was excluded as a contributor of some mixture of DNA from the scene.[3] Yet the absence of evidence is not evidence of absence. And, should Chanthakoummane's last ditch effort miraculously produce such helpful evidence, it would never be sufficient to cast doubt on the volume of other inculpatory evidence which would remain untouched.[4] As such, a request for funding to engage in such fruitless investigation is not "reasonably necessary to provide the Governor and Board of Pardons and Paroles the information they need in order to determine whether to exercise their discretion to extend grace to the [inmate] in order to prevent a miscarriage of justice." *Wilkins,* 832 F.3d at 552.

---

[3]     This is demonstrated by the fact that the results of the last round of DNA testing were not remotely helpful to Chanthakoummane. The victim's DNA was found on one of the tested items. Exhibit C at 2. The other object yielded a single source profile from which Chanthakoummane could not be excluded. Exhibit C at 2. These results do not bode well for any further testing conducted on Chanthakoummane's behalf.

[4]     Evidence presented at trial included among other things, two eyewitnesses that placed Chanthakoummane outside of the murder scene around the time when the victim was murdered; DNA profiles that were consistent with Chanthakoummane's from the victim's fingernails, window pull cords, deadbolt lock and faceplate, swabs from various locations in the living room, entry, and kitchen; and circumstantial evidence such as the evidence of scratches and injuries to Chanthakoummane's hands at the time of the arrest. Supp. SHCR at 86.

Chanthakoummane is required to make a proper showing of his need for confidentiality in order to be allowed to submit an ex parte request. He fails to do so. Further, he bears the burden to show entitlement to funding, but he gives no such required explanation. For these reasons, this Court should deny Chanthakoummane's motion to file ex parte and motion for funding.

## CONCLUSION

Respectfully, Chanthakoummane's motion to proceed ex parte and for funds for ancillary services should be denied for the foregoing reasons.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ *Rachel L. Patton*
RACHEL L. PATTON*

*\* Counsel of Record*

Assistant Attorney General
State Bar No. 24039030

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
(512) 936-1280 (Facsimile)
rachel.patton@oag.texas.gov

*Counsel for Respondent*

## CERTIFICATE OF SERVICE

I do hereby certify that on July 22, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to counsel of record, who has consented in writing to accept same as service of this document by electronic means.

/s/ *Rachel L. Patton*
RACHEL L. PATTON
Assistant Attorney General